N O T I C E
- - - - - -

To: Nisbet Stovall Kendrick III, Esq.
    Womble Carlyle Sandridge & Rice
    One Atlantic Center, Suite 3500
    1201 West Peachtree Street, N.E.
    Atlanta, GA  30309

February 25, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Emory University, et al,

                plaintiff                    CIVIL ACTION

        v.                                   NO. 1:2-cv-1181-GET

St. Paul Fire and Casualty Company, et al,

                defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
--------------------------------------------

    On 2/24/03, St. Paul Mercury Insurance Company,

filed a motion for  summary judgment in this Court, case document

number 33.

    Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

33

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

> Luther D. Thomas, Clerk
> United States District Court
> Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To: Kelly Amanda Lee, Esq.
    Womble Carlyle Sandridge & Rice
    One Atlantic Center, Suite 3500
    1201 West Peachtree Street, N.E.
    Atlanta, GA  30309


February 25, 2003


UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Emory University, et al,

                plaintiff              CIVIL ACTION

        v.                             NO. 1:2-cv-1181-GET

St. Paul Fire and Casualty Company, et al,

                defendant


NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
--------------------------------------------

On 2/24/03, St. Paul Mercury Insurance Company,

filed a motion for  summary judgment in this Court, case document

number 33.

Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

> Luther D. Thomas, Clerk
> United States District Court
> Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -


To: Michael F. Hanson, Esq.
    Womble Carlyle Sandridge & Rice
    One Atlantic Center, Suite 3500
    1201 West Peachtree Street, N.E.
    Atlanta, GA  30309


February 25, 2003


                    UNITED STATES DISTRICT COURT
                              for the
                    NORTHERN DISTRICT OF GEORGIA
                           ATLANTA DIVISION

Emory University, et al,

                    plaintiff                CIVIL ACTION

            v.                               NO. 1:2-cv-1181-GET

St. Paul Fire and Casualty Company, et al,

                    defendant


              NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
              --------------------------------------------

        On 2/24/03, St. Paul Mercury Insurance Company,

filed a motion for  summary judgment in this Court, case document

number 33.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To: David Russell Smith, Esq.
    Bovis Kyle & Burch
    Suite 300
    53 Perimeter Center East
    Atlanta, GA 30346-2298

February 25, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Emory University, et al,

                    plaintiff              CIVIL ACTION

        v.                                 NO. 1:2-cv-1181-GET

St. Paul Fire and Casualty Company, et al,

                    defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
--------------------------------------------

On 2/24/03, St. Paul Mercury Insurance Company,

filed a motion for summary judgment in this Court, case document

number 33.

Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

FILED ORIGINAL

IN THE UNITED STATES DISTRICT COURT 
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EMORY UNIVERSITY and | § | |
| NATIONAL UNION FIRE | § | |
| INSURANCE COMPANY OF | § | CIVIL ACTION FILE |
| PITTSBURGH, PA as subrogee | § | NO. 1:02-CV-1181-GET |
| of Emory University, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| ST. PAUL FIRE AND CASUALTY | § | |
| COMPANY and ST. PAUL | § | |
| MERCURY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT ST. PAUL MERCURY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS

Defendant St. Paul Mercury Insurance Company ("St. Paul Mercury") moves the court pursuant to Fed.R.Civ.P. 56 for summary judgment in its favor and against Plaintiffs on all claims asserted against Defendant St. Paul Mercury. Plaintiffs contend that nine underlying actions and proceedings triggered a duty to defend and were covered under three St. Paul Mercury Commercial General Liability Policies. Based on the depositions in the case, the Plaintiffs' Responses to St. Paul Mercury's Interrogatories and Request for Production of Documents,

the Plaintiffs' Responses to Mandatory Disclosures, the Affidavit of Duane Cochenour, the Affidavit of Maureen McDonald, a pleading from one of the underlying actions, of which St. Paul Mercury requests that the Court take judicial notice, and any other evidence in the record, St. Paul Mercury submits that it is entitled to a summary judgment on all claims.

St. Paul Mercury respectfully requests that the Court issue a summary judgment in favor of St. Paul Mercury and against Plaintiffs on all claims asserted in the Complaint.

BOVIS, KYLE & BURCH, LLC

By: _____
David Russell Smith
Georgia Bar No. 655588
Attorneys for Defendant
St. Paul Mercury Insurance Company

53 Perimeter Center East
Third Floor
Atlanta, GA    30346-2298
Phone:      770-391-9100
Facsimile:  770-668-0878

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for Defendants hereby certifies that the size and style of the type used in the foregoing is Times New Roman: 14 point.

BOVIS, KYLE & BURCH, LLC

By: _____

David Russell Smith
Georgia Bar No. 655588
Attorneys for Defendant
St. Paul Mercury Insurance Company

53 Perimeter Center East
Third Floor
Atlanta, GA    30346-2298
Phone:    770-391-9100
Facsimile:   770-668-0878

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within and foregoing **DEFENDANT ST. PAUL MERCURY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS** has been furnished to all counsel of record by **HAND DELIVERY**, addressed as follows:

Kelly Amanda Lee, Esq.
Womble Carlyle Sandridge & Rice
3500 One Atlantic Center
1201 West Peachtree Street
Atlanta GA 30309

This 24 th day of February, 2003.

BOVIS, KYLE & BURCH, LLC

By:
 David Russell Smith
 Georgia Bar No. 655588
 Attorneys for Defendant
 St. Paul Mercury Insurance Company

53 Perimeter Center East
Third Floor
Atlanta, GA   30346-2298
Phone:      770-391-9100
Facsimile:   770-668-0878

# ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 24 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EMORY UNIVERSITY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA as subrogee of Emory University, | § § § § § § | CIVIL ACTION FILE NO. 1:02-CV-1181-GET |
| Plaintiffs, | § § | |
| vs. | § § | |
| ST. PAUL FIRE AND CASUALTY COMPANY and ST. PAUL MERCURY INSURANCE COMPANY, | § § § § § | |
| Defendants. | § § | |

## DEFENDANT ST. PAUL MERCURY INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS

### SUMMARY OF ARGUMENT

This is a liability insurance coverage case in which Plaintiffs allege that nine separate underlying actions and proceedings each triggered coverage and a duty to defend under three Commercial General Liability Insurance Policies ("CGL Policies") issued by St. Paul Mercury Insurance Company ("St. Paul Mercury") to

Emory University ("Emory").[1] Most, if not all, of these underlying actions were covered under the Employment Practices Coverage included in a Directors and Officers Liability Policy issued to Emory by Plaintiff National Union Fire Insurance Company of Pittsburgh ("National Union"). National Union, as subrogee of Emory, is now suing St. Paul Mercury for reimbursement of the amounts it paid to Emory.

The underlying litigation was complicated, convoluted and extensive. However, the causes of action asserted in the litigation were relatively few and straightforward, and the undisputed evidence shows that the plaintiffs were not asserting any covered cause of action against any person insured under the St. Paul Policies. St. Paul Mercury properly denied coverage for all of the underlying actions and proceedings and is entitled to a summary judgment on all claims

## STATEMENT OF MATERIAL FACTS

### A.    The St. Paul Mercury CGL Policies

St. Paul Mercury's CGL Policies were effective from January 1, 1996 until February 1, 1999. The CGL Policies provide two types of coverage that are at issue in this suit. The first type, Bodily Injury and Property Damage Liability,

---

[1] Plaintiffs also allege that the nine underlying claims and lawsuits are covered under a claims-made Professional Liability Policy and an Umbrella Excess Policy issued by St. Paul Fire and Casualty Company. These Policies are the subject of a separate Motion for Summary Judgment filed by St. Paul Fire.

generally provides coverage for claims in which a plaintiff alleges that the insured is legally required to pay damages for "property damage"[2] or "bodily injury," [3] occurring during the policy period, which are caused by an "event."[4] ("1996, 1997 and 1998 CGL Policies," attached as Exs. 1, 2, and 3 to Affidavit of Maureen McDonald; CGL Coverage Form, p. 1 of 16.) However, lawsuits alleging that the insured expected or intended the damage, or alleging a bodily injury claim by an employee against his employer are excluded from coverage. (CGL Coverage Form, p. 11 of 16; Executive Officer and Leased Worker Endorsement.)

The second type of coverage, Personal Injury Liability, provides coverage for claims in which the plaintiff alleges the insured is legally required to pay damages for a covered "personal injury"[5] resulting from the insured's business

---

[2] "Property damage" is defined as "physical damage to tangible property of others, including all resulting loss of use of that property; or loss of use of tangible property of others that isn't physically damaged." CGL Coverage Form, p. 2 of 16

[3] By endorsement, the CGL Policies defined "bodily injury" as: "[A]ny harm to the health of other persons, including physical harm, sickness, disease and mental anguish, injury or illness. And it includes care, loss of services or death that results from such harm." CGL Coverage Form, p. 2 of 16

[4] "Event" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." CGL Coverage Form, p. 2 of 16.

[5] "Personal injury" is defined as ". . . injury, other than bodily injury or advertising injury, caused by a personal injury offense." (CGL Coverage Form, p. 2 of 16.)

activities, which is caused by a "personal injury offense"[6] occurring during the policy period. (CGL Coverage Form, p. 2 of 16.) However, employees are not insured for personal injury claims by fellow employees, or for personal injuries that result from the publication of false material that is known by the insured to be false, or from deliberately breaking the law. (CGL Coverage Form, p. 4 & 10 of 16.)

### B.   National Union's Policy

From January 20, 1998 through January 20, 2001, National Union provided claims-made coverage to Emory University and Emory Clinic, subject to a $100,000 retention. (Complaint, Ex. E, cover sheet). The Insuring Agreements of that policy provide that National Union will pay for losses and defense costs the

---

[6] The "personal injury offenses" set forth in the CGL Policies are as follows:
- False arrest, detention or imprisonment.
- Malicious prosecution.
- Wrongful entry or wrongful eviction.
- Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
- Libel or slander.
- Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
- Making known to any person or organization written or spoken material that violates an individual's right of privacy.
(CGL Coverage Form, p. 2 of 16.)

"Organization" (Emory University and Emory Clinic) and its directors and officers incur for any alleged "wrongful act." (Id. at p. 1). The Policy provides that the definition of "Insured(s) or Director(s) or Officer(s) or Trustee(s)" includes such people as a "staff physician or faculty member or employee . . . of the Organization" (Endorsement # 8, p. 2). "Wrongful acts" includes "employment practices allegations;" which include "wrongful dismissal, discharge or termination;" "employment related misrepresentation;" "wrongful failure to employ or promote, retaliation, wrongful deprivation of career opportunity, wrongful discipline; failure to grant tenure;" "workplace harassment of any kind;" and "discrimination, whether direct, indirect, intentional or unintentional." The Policy also specifically covers "breach of employment contract." (Id.)

### C. St. Paul's Handling of Claims

#### 1. First Notice of Claim and Breach of Contract Lawsuit

On January 29, 1999, St. Paul received a copy of a January 11, 1999 letter addressed to Emory's General Counsel from an attorney representing Dr. James Murtagh, a doctor on the faculty at Emory Medical School. (1/29/99 ltr. from K. Malanoski to D. Reed, ("First Notice of Claim"), attached as Ex. 1 to Affidavit of Duane Cochenour ("Cochenour Aff.")) The letter alleged that Emory breached a contract with Dr. Murtagh under which Emory had agreed to offer Dr. Murtagh the

- 5 -

position of Pulmonary Division Chief after he was promoted to an Associate Professor position in 1995. The letter went on to allege that Dr. Murtagh's promotion "engendered jealously and scorn" among his co-workers and that "a clique of Hispanic professors" had worked to discredit Dr. Murtagh and had enlisted other colleagues to pressure him to leave. (First Notice of Claim, p. 4.) The letter outlined Dr. Murtagh's potential causes of action against Emory as follows: (a) breach of contract; (b) defamation and intentional infliction of emotional distress; (c) national origin discrimination; and (d) disability discrimination. (Id., p. 2-4.)

Approximately eight months later, on October 7, 1999, St. Paul received a copy of a letter addressed to National Union enclosing a copy of a Breach of Contract Lawsuit filed by Dr. Murtagh on August 30, 1999 in the DeKalb County Superior Court. (10/4/99 K. Malanonski ltr. to R. Alberti, attaching Complaint for Damages & Equitable Relief ("Contract Compl."), attached as Ex. 2 to Cochenour Aff.) The named defendants in the Breach of Contract Complaint were Emory University; Dr. Manuel Martinez-Maldonado; Dr. Juha Kokko; and Dr. Gerald Staton, Jr. Plaintiff Murtagh, as well as the individual defendants, were all alleged to be employed by Emory University. (Contract Compl., ¶¶ 5-7.)

The Breach of Contract Complaint set forth the following causes of action against the defendants: Count I, Breach of Contract; Count II, Detrimental Reliance; and Count III, Intentional Infliction of Emotional Distress. The Allegations of Fact preceding these counts alleged that Emory had breached a contract with Dr. Murtagh and that Dr. Murtagh's supervisors and colleagues had engaged in various acts of harassment, hostility, and resentment in an effort to force him to resign from the Veterans Administration Medical Center ("VAMC"). Paragraph 25 alleged that the defendants and others had made defamatory statements to Dr. Murtagh's potential employers, but neither this paragraph nor any other paragraph of the complaint alleged that any defendant was liable for defamation or alleged any causes of action other than those expressly identified in the enumerated counts. (Contract Compl.)

On October 15, 1999, St. Paul received a facsimile from Emory attaching a an Amendment to the Contract Complaint and a letter from Emory's defense lawyer, Burton Dodd, to National Union. (10/15/99 C. Merck facsimile to D. Reed, attaching Amendment to Complaint for Breach of Contract and Equitable Relief ("Amend. Contract Compl.) and 10/15/99 B. Dodd ltr. to J. Alberti, attached as Ex. 3 to Cochenour Aff.) The Amendment specifically alleged a slander cause of action against Dr. Aguayo and alleged that Dr. Aguayo was, "at all times

relevant to [the] case, a doctor at the Atlanta VAMC." (Amend. Contract Compl., Count IV, ¶1.) The Amended Complaint did <u>not</u> allege that Dr. Aguayo was in any way connected with Emory, or that Emory was in any way liable for Dr. Aguayo's conduct. In fact, Mr. Dodd's letter to National Union stated: "I enclose a copy of the amendment, <u>which relates only to Dr. Aguayo. There is no other defamation claim asserted against the other individual defendants</u>." (10/15/99 B. Dodd ltr., (emphasis added.))

In March 2000, Duane Cochenour, a St. Paul Unit Manager, assumed primary responsibility for St. Paul's claim file regarding Dr. Murtagh's claims against Emory and retained outside coverage counsel, Bethany Culp, to assist St. Paul in evaluating coverage for the Breach of Contract Lawsuit. (Cochenour Aff. ¶ 12.) On April 17, 2000 St. Paul sent a letter to Emory inquiring as to the relationship, if any, between the VAMC and Emory, and requesting information as to whether Dr. Aguayo was considered an employee of Emory. (4/17/00 C. Barnaby ltr. to C. Merck, attached as Ex. 5 to Cochenour Aff.). Emory did not respond to St. Paul's request or provide the requested information. (Cochenour Aff., ¶¶ 15-16.)

On July 10, 2000, Mr. Cochenour wrote Emory and advised it that St. Paul was denying coverage for the Breach of Contract Lawsuit. (7/10/00 D. Cochenour

ltr. to L. Spencer, attached as Ex. 6 to Cochenour Aff.) In his letter, Mr. Cochenour confirmed St. Paul's understanding that Dr. Martinez-Maldonado and Dr. Aguayo were employed by the Department of Veteran Affairs (not Emory); that the defamation claim was based solely on statements made by Dr. Aguayo (not by any Emory employee); and that these statements were not attributed in any way to Emory's employees. The letter explained in detail why St. Paul was denying coverage for the lawsuit and quoted the various policy provisions on which the denial was based. (Id.)

2.  RICO/Whistleblower, *Qui Tam* Lawsuits and Non-Lawsuit Proceedings.

In March 2000, St. Paul learned that Dr. Murtagh had filed other lawsuits against Emory. On March 28, 2000 and July 12, 2000, St. Paul sent letters to Emory requesting copies of the complaints filed by Dr. Murtagh against Emory. (Cochenour Aff., ¶14; 3/28/00 C. Barnaby ltr. to C. Merck, attached as Ex. 4 to Cochenour Aff.) However, Emory did not provide St. Paul with copies of these other lawsuits until August 1, 2000. (Cochenour Aff., ¶ 14.) On this date, Emory provided St. Paul with copies of a *Qui Tam* Lawsuit filed November 9, 1999 and a RICO/Whistleblower Lawsuit filed December 6, 1999 against Emory and others. Emory also provided St. Paul with information relating to an April 25, 2000 EEOC Complaint; a US Dept. of Education Office of Civil Rights ("OCR") Complaint

No. 04-99-2224; OCR Complaint No. 04-00-2057; and a Discrimination Complaint Form relating to No. 04-00-2057.[7] (8/1/00 P. Alexander ltr. to D. Cochenour, attached as Ex. 9 to Cochenour Aff; Exs. 9(a)-(f) to Cochenour Aff.) On September 11, 2000, Mr. Cochenour wrote Emory a detailed letter denying coverage for the actions and proceedings submitted on August 1, 2000. (9/11/00 D. Cochenour ltr. to S. Klien, attached as Ex. 10 to Cochenour Aff.)

In their Complaint in the present case, National Union and Emory allege that St. Paul Mercury had a duty to defend the "First EOP Complaint" filed on May 14, 1998 and the "First Underlying EEOC Charge" filed on June 11, 1998. However, these complaints were not enclosed in Emory's August 1, 2000 letter, and there is no evidence that St. Paul Mercury was ever formally put on notice of these complaints and/or charges or asked to defend them. (Cochenour Aff. ¶ 27, 28, 38-41; see also fn. 7 on p. 9 supra.)

On October 16, 2000, St. Paul received a letter from Emory's coverage attorney, Robert Wedge, responding to St. Paul's July 10th and September 11[th,] 2000 denial letters. (10/16/00 R. Wedge ltr. to D. Cochenour, attached as Ex. 11 to

---

[7] Although Emory's August 1, 2000 letter purported to include copies of "OCR Complaint No. 04-99-2224" and "OCR Complaint No. 04-00-2057," this letter did not include copies of the actual complaints. Instead, Emory's letter attached copies of various letters to Emory from the OCR referencing the OCR Complaints and providing general information about OCR grievance resolution procedures. (Cochenour Aff. ¶¶ 27, 28.)

Cochenour Aff.) This was the first and only time during the course of the underlying litigation that either Emory or National Union disputed St. Paul's denial of coverage or provided any explanation whatsoever as to how the underlying actions and proceedings could be covered under the CGL Policies. (Cochenour Aff., ¶ 32, 33.) However, Mr. Wedge's letter did not advise St. Paul of any factual contentions that would have resulted in coverage for any of the underlying actions or proceedings under the CGL Policies. The letter merely consisted of legal arguments based on Emory's own interpretation of the policy language. On or about October 30, 2000, St. Paul's coverage attorney, Bethany Culp, responded to Mr. Wedge's letter in detail, explaining why the arguments set forth in his letter did not result in coverage for any of the underlying actions or proceedings. (10/30/00 B. Culp letter to R. Wedge, attached as Ex. 12 to Cochenour Aff.)

### 3. Interference with Contract Suit

On or about January 22, 2001 St. Paul received a copy of an Interference with Contract Lawsuit filed by Dr. Murtagh on December 20, 2000 against three individual doctors who were alleged to be employees of the "Emory Healthcare System." (Complaint for Damages ("Interference Compl."), attached as Ex. 13 to Cochenour Aff.; Cochenour Aff., ¶ 36.) The complaint set forth the following two counts: Count I, Interference with Contractual Relations; and Count II, Intentional

Infliction of Emotional Distress. On February 15, 2001, Mr. Cochenour wrote a letter to Emory advising that St. Paul was denying coverage for the Interference with Contract Lawsuit. (2/15/01 D. Cochenour ltr. to K. Alexander, attached as Ex. 14 to Cochenour Aff.)

## ARGUMENT AND CITATION OF AUTHORITY

### A.    Standard of Review for Summary Judgment

A party is entitled to summary judgment in his favor where the pleadings, depositions, answers to interrogatories, or admissions on file show that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.C. 2548 (1986). The non-moving party then has the burden to go beyond the documents submitted and designate specific facts showing that there is a genuine issue for trial. Id. at 324. However, the non-moving party does not create a genuine issue of material fact by relying on conclusory allegations based on subjective beliefs, and a mere scintilla of evidence in support of the non-movant's position is insufficient. Rather, there must be evidence on which the jury could reasonably find for the non-movant. JLM Enterprises, Inc. v. Houston General Ins. Co., 196 F.Supp. 2d 1299 (S.D.Ga. 2002) (finding liability insurer had no duty to defend five separate lawsuits which did not allege an "accident" or "occurrence" within meaning of a CGL policy).

## B.    Georgia Law Controls the Coverage Issues in This Case

In the present case, St. Paul Mercury CGL Policies were delivered to Emory in Georgia, and therefore, Georgia law controls the coverage issues in this case. Frank Briscoe Co. Inc. v. Ga. Sprinkler Co. Inc., 713 F.2d 1500 (11th Cir. 1983).

## C.    Insurer's Duty to Defend

An insurer must provide a defense against any complaint which, if successful, could potentially or arguably fall within the policy's coverage. To determine whether a duty to defend exists, the court must examine the allegations of the complaint, as well as the facts supporting those allegations, against the provisions of the insurance contract. Pacific Employers' Ins. Co. v. Cesnik, 219 F.3d 1328 (11th Cir. 2000), (applying Georgia law and quoting, Elan Pharm. Res. Corp. v. Employers' Ins. of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998).

If a policy requires the insurer to defend groundless suits, the insurer must defend suits asserting covered claims even if the claims are not true. However, a distinction must be drawn between groundless suits and actions which, even if successful, would not be within the policy coverage. Great Am. Ins. Co. v. McKemie, 244 Ga. 84, 259 S.E.2d 39 (1979). A party claiming coverage has the burden of proving that the claim is covered under the policy. JLM Enterprises, Inc. supra. 196 F.Supp. at 1311. Moreover, the insurer has no duty to independently

- 13 -

investigate a claim unless and until the insured notifies the carrier of "factual contentions" that would place the claim within coverage. Colonial Oil Indus. v. Underwriters Subscribing to Policy Nos. TO315046 70 & TO31504671, 268 Ga. 561, 491 S.E.2d 337 (1997).

## BREACH OF CONTRACT LAWSUIT

A.  **The Breach of Contract Lawsuit is Not Covered Under the Bodily Injury and Property Damage Liability Coverage of the CGL Policies**

   1.  Count I for Breach of Contract did not seek damages for bodily injury or property damage caused by an "event"

Count I for Breach of Contract did not seek damages for bodily injury or property damage caused by an "event" as required under the CGL Policies. Rather, Count I sought damages solely for breach of contract. In Pacific Employers' Ins. Co., supra, the court interpreted a CGL policy covering essentially the same liability as the St. Paul Mercury CGL Policies and found that an insurer has no duty to defend a breach of contract action. The court explained that the CGL policy language required some connection between the damages sought and a covered bodily injury. See also Jackson Shipyard v. Aetna Cas. & Surety Co., 961 F.2d 387 (2nd Cir. 1992) (liability policy covering "occurrences" did not cover breach of contract).

Dr. Murtagh's underlying breach of contract claim alleged that he was entitled to money damages as a result of Emory's breach of an employment contract. (Contract Compl., ¶ 27). In his prayer for relief, he asked the court to award damages for breach of contract. Dr. Murtagh's breach of contract claim is not covered under the CGL Policies because it did not allege an "event" and did not allege damages because of "bodily injury" or "property damage." Even if it did, it would be excluded by the Intentional Bodily Injury or Property Damage Exclusion. (CGL Coverage Form, p. 11 of 16).

### 2. Count II for Detrimental Reliance did not seek damages for bodily injury or property damage caused by an accident.

As with Count I, Count II relates solely to a breach of an alleged promise and does not seek damages for bodily injury or property damage caused by an "event" and is not covered under the CGL Policies. It would also be excluded by the Intentional Bodily Injury or Property Damage Exclusion.

### 3. Count III for Intentional Infliction of Emotional Distress did not seek damages caused by an "event" and is excluded by the Intentional Bodily Injury or Property Damage Exclusion

The CGL Policies include "mental anguish" in the definition of "bodily injury." However, to be covered, the mental anguish must have been caused by an "event," which is defined by the Policies as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (CGL

- 15 -

Coverage Form, p. 2 of 16, emphasis added.) A claim for intentional infliction of emotional distress does not allege accidental conduct and is not covered under the Bodily Injury and Property Damage Liability Coverage.

In O'Dell v. St. Paul Fire and Marine Ins. Co., 223 Ga.App. 578, 478 S.E.2d 418 (1996), the court held that several intentional torts, including intentional infliction of emotional distress, were not covered under a liability policy that covered "occurrences." (In O'Dell, the term "occurrence" had the same definition as the term "event" in the St. Paul Mercury CGL Policies.) In finding that the emotional distress suffered by employee was not covered under the policy, the O'Dell court noted that, "in Georgia an accident is defined as an event which takes place without one's foresight or expectation or design. An accident refers to an unexpected happening rather than one occurring through intention or design. Acts could not be unexpected unless they were accidental." Id. at 420.

Similarly, in Hain v. Allstate Ins. Co., 221 Ga.App. 486, 471 S.E.2d 521 (1996), the court noted that intentional infliction of emotional distress is, by its very nature, an intentional tort, and if an alleged injury is intentional, it can not be considered accidental. Therefore, the Hain court rejected the insured's argument that a plaintiff did not necessarily have to establish that the insured intended to cause her harm in order to prevail, and affirmed summary judgment for the insurer.

In the present case, Dr. Murtagh's Breach of Contract Lawsuit alleges that the defendants acted <u>intentionally</u>, engaging in various acts of harassment, hostility, and resentment due to professional jealousy and ethnic animosity. These allegations do not constitute an "event" under the CGL Policies and are excluded by the Intentional Bodily Injury or Property Damage Exclusion.

**B.** **The Breach of Contract Lawsuit is Not Covered Under the Personal Injury Liability Coverage**

      1.    <u>Counts I–III did not allege any "personal injury offense" against Emory University, Dr. Martinez-Maldonado, Dr. Kokko or Dr. Staton.</u>

To trigger a duty to defend under the Personal Injury Liability Coverage, a lawsuit must allege that an insured defendant is legally required to pay damages caused by a "personal injury offense."[8] Unlike the Bodily Injury and Property Damage Liability Coverage (which focus on the damages alleged), Personal Injury Liability Coverage is triggered by the cause of action alleged. If a lawsuit does not include a cause of action listed under the definition of "personal injury offense," it is not covered under the CGL Policies. Simply alleging a fact which could support a "personal injury offense" is insufficient. The policy only covers "amounts any protected person is legally required to pay as damages for covered personal injury." (<u>CGL Coverage Form</u>, p. 1 of 16.)

---

[8] <u>See</u> fn. 6 on p. 4 <u>supra</u> for a complete list of the "personal injury offenses."

In <u>C.O. Morgan Lincoln-Mercury v. Vigilant Insurance Company</u>, 521 S.W.2d 318, 319 (Tex. Civ. App. 1975), the court held that a liability insurer had no duty to defend a complaint for conversion which alleged that, prior to the conversion, the insured had spoke and uttered "libelous remarks" which were "calculated to, and did defame Plaintiff and his good character." The insurer's policy covered "personal injury," including the offenses of libel, slander or the publication of other defamatory or disparaging material. <u>Id</u>. 320. However, the court determined that the suit was not seeking damages because of a personal injury offense:

> We are of the opinion that the [underlying plaintiffs'] petition shows on its face that it is a suit for conversion and damages growing out of that conversion. It is not a suit for libel, slander or defamation of character. No damages are alleged or sought by reason of the heated words at the time of the conversion. The allegations concerning threats and harsh words are simply a recital of the facts leading up to the conversion and were given as a reason that the [underlying plaintiffs] could not recover their automobile. <u>Id</u>. at 321.

<u>See also</u> <u>Aetna Cas. & Surety Co. v. First Security Bank of Bozeman</u>, 662 F. Supp. 1126 (Mt. 1987) (although plaintiff alleged co-employee made defamatory statements, her wrongful termination suit was not covered because she did not specifically allege a claim for libel or slander).

As stated earlier, Dr. Murtagh's original Breach of Contract Complaint alleged three causes of action: (1) Breach of Contract; (2) Detrimental Reliance; and (3) Intentional Infliction of Emotional Distress against Emory University, Dr. Martinez-Maldonado, Dr. Kokko, and Dr. Staton. None of the counts or causes of action could possibly qualify as a "personal injury offense" as this term is defined in the CGL Policies. (CGL Coverage Form, p. 2 of 16.)

The Breach of Contract Lawsuit was heavily litigated, and the defendants filed numerous motions both to dismiss and for summary judgment. In response to these motions, Dr. Murtagh never argued that his complaint included a cause of action that would qualify as a "personal injury offense." (Plaintiff's Response In Opp. to Joint Mot. to Dismiss of Defendants Emory, Kokko & Staton, attached as Ex. 18 to Cochenour Aff.; Dr. Murtagh's Brief in Response to Emory University's Mot. for Summary Judgment, attached as Ex. A to St. Paul Mercury's Request for Judicial Notice.) To the contrary, even when faced with possible dismissal of this lawsuit, Dr. Murtagh steadfastly maintained that he had properly alleged claims for breach of contract, detrimental reliance or promissory estoppel, and intentional infliction of emotional distress. (Id.) It is clear that even if Dr. Murtagh made factual allegations in the Breach of Contract Lawsuit which could theoretically support a cause of action covered by "personal injury offense" (a point which St.

Paul Mercury does not concede), he never alleged that he was seeking damages for a covered "personal injury offense" such as libel or slander. Therefore, the Breach of Contract Lawsuit is not covered under the Personal Injury Liability Coverage.

> 2. Count IV alleging defamation and slander against Dr. Aguayo is not covered, because Dr. Aguayo is not an insured under the CGL Policies.

The Amended Contract Complaint added Dr. Aguayo as a defendant and alleged that he was liable for slander. However, the Amendment alleged that Dr. Aguayo was "at all times relevant to this case a doctor at the Atlanta VAMC" who could be served at his office at the Atlanta VAMC. (Amend. to Contract Compl., ¶1.) The Amendment did not allege that Dr. Aguayo was working for Emory when he committed the alleged slander, nor did it allege that Emory was in any way liable for Dr. Aguayo's alleged slander. In fact, underlying pleadings from the Breach of Contract Lawsuit show that the U.S. Attorney filed an appearance on behalf of Dr. Aguayo and certified that he was acting on behalf of the Veterans' Administration at all times relevant to the slander allegations. (Mot. to Dismiss on Behalf of the United States & Dr. Samuel Aguayo and Memo. in Support of Mot. to Dismiss on Behalf of Fed. Defendants, attached as Ex. 19 to Cochenour Aff.)

The proceedings clearly show that Dr. Aguayo was not acting on behalf of Emory when he allegedly slandered Dr. Murtagh and that Emory was not being

sued for slander. Moreover, even if Dr. Aguayo was acting for Emory at the time of the alleged slander, he would not be an insured under the Policies because employees are not insureds or protected persons for personal injury to fellow employees. (CGL Coverage Form, p. 4 of 16.)

> ### 3. Employees are not insured for "personal injury" to fellow employee.

The Complaint alleges that Dr. Murtagh, Dr. Martinez-Maldonado, Dr. Kokko and Dr. Staton were all employed by Emory University. (Contract Compl., ¶¶ 1, 5-7.) The CGL Policies provide that employees are not insureds or protected persons with regard to "personal injury" claims by fellow employees. (CGL Coverage Form, p. 4 of 16.) Therefore, there is no Personal Injury Liability Coverage available to the individual defendants.

> ### 4. The Breach of Contract Lawsuit did not include any "unstated causes of action" that would be covered under the Personal Injury Liability Coverage.

> #### (a.) "Unstated causes of action" generally

St. Paul Mercury anticipates that Plaintiffs will argue that the Breach of Contract Lawsuit triggered a duty to defend under the CGL Policies because it included some "unstated" cause of action not expressly stated in the Complaint, but

nevertheless covered under the Personal Injury Liability Coverage.[9] However, in O'Dell v. St. Paul Fire and Marine Inc. Co., 223 Ga.App. 578, 478 S.E.2d 418 (1996), the court rejected the insured's argument that a complaint in which the plaintiff expressly sought damages for assault, battery, intentional infliction of emotional distress, sexual harassment, and negligent retention of employment also included an "unstated cause of action" for slander that would be covered under the insured's Personal Injury Liability Coverage. The insured's argument was based on the fact that the plaintiff had alleged that the insured called her a "whore" and a "slut" and told people that he could have her if he wanted her. Id. at 419. Although the plaintiff did not specifically allege that the insured had committed a "personal injury offense," the insured argued that the lawsuit nevertheless alleged facts upon which a cause of action for slander could be based. Id. at 581. According to the insured, recovery for slander could have been possible based on an unstated cause of action asserted in the facts.

The O'Dell court rejected this argument and held that the plaintiff could not have been suing the insured for slander because the lawsuit had been filed more

---

[9] In his October 16, 2000 letter disputing St. Paul's denial of coverage, Robert Wedge, Emory's coverage attorney, asserted that the Breach of Contract Lawsuit asserted the "personal injury offenses" of libel, slander and "making known to any person or organization written or spoken material that belittles the products, work or completed work of others." (11/16/00 R. Wedge ltr to D. Cochenour, p. 2, ¶ 3.)

than one year after her employment and any action for slander would have been barred by a one year statute of limitation. The O'Dell court also recognized that an insurer may consider the circumstances surrounding an alleged "unstated cause of action" in evaluating whether the "unstated cause of action" is actually being asserted by the plaintiff in her complaint.

> (b.) The underlying facts and circumstances show Dr. Murtagh was not suing an insured defendant for any "unstated" slander claim.

As noted above, an insurer may properly consider the underlying facts and circumstances in determining what claims are actually asserted by the plaintiff. O'Dell, supra. In the present case, there is no reason to believe that the Breach of Contract suit included any "unstated cause of action" for slander. First, the fact that Dr. Murtagh expressly alleged a slander cause of action solely against Dr. Aguayo indicates he was not alleging slander against any other defendants. If he had wanted to assert additional claims against those defendants, he could easily have amended his complaint to allege such claims.

Second, Emory provided St. Paul with a copy of its defense attorney's letter to National Union in which Emory's own defense attorney stated that the defamation claim against Dr. Aguayo was the only defamation claim against any of the defendants in the case. (10/15/99 B. Dodd ltr.) Although this letter was

unsigned and marked "draft," the fax St. Paul received from Emory indicated that the letter had been sent to the addressee and accurately reflected which defendants had been sued for defamation.

Third, case law indicates Dr. Murtagh did not have a slander claim against any of the original defendants. In order to prove slander against Emory, Dr. Murtagh would have had to prove that Emory expressly ordered and directed an employee to say the slanderous words. Church of God, Inc., v. Shaw, 194 Ga.App. 694, 391 S.E.2d 666 (1990). Moreover, intra-corporate communications cannot be slanderous because they are not considered to have been published. Kurtz v. Williams, 188 Ga.App. 14, 371 S.E.2d 878 (1988). The Breach of Contract Lawsuit did not include an express libel or slander claim, and there is no reason to believe it included any "unstated" libel or slander claim.

> (c.) The underlying facts and circumstances show Dr. Murtagh was not suing any of the defendants for an "unstated" claim of "making known to any person or organization written or spoken material that belittles the products, work or completed work of others."

The above "personal injury offense" language has been interpreted to cover the common law tort of "trade libel." In Microtec Research, Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968 (9th Cir. 1994), the court interpreting similar "personal

injury offense" language and held that the terms "disparage" and "belittle" cover claims that arise under the tort of "trade libel:"

> The defamatory torts of libel and slander are different from trade libel. [cites omitted] The difference between the two types of actions is that an "action for defamation is designed to protect the *reputation* of the plaintiff, and the judgment vindicates that reputation, whereas the action for disparagement is based on *pecuniary damage* and lies only where such damage has been suffered." (Id. at 972.)

See also Sun Electric Corp. v. St. Paul Fire and Marine Ins., 1995 WL. 270, 230, *4, fn. 7 (N.D. Ill. 1995) (holding that the personal and advertising injury offense of belittlement is the equivalent of the tort of trade libel or commercial disparagement). Further, to state a cause of action for trade libel, the plaintiff must allege: (1) a publication; (2) which induces others not to deal with plaintiff; and (3) special damages. Aetna Cas. and Surety Co., Inc. v. Centennial Ins. Co., 838 F.2d 346, 351 (9th Cir. 1998).

It is important to note that the tort of "trade libel" or "commercial disparagement" may not even exist in Georgia. St. Paul Mercury is aware of only one Georgia case that even includes the phrase "trade libel." See Ga. Society of Plastic Surgeons v. Anderson, 257 Ga. 710, 363 S.E.2d 140 (1987) (court declined to address appellant's argument that Georgia does not recognize a cause of action for "trade libel.")

Based on the case law and the underlying facts and the circumstances, there is no reason to believe that Dr. Murtagh was suing Emory for trade libel or any other covered "personal injury offenses." Dr. Murtagh did not allege trade libel, commercial disparagement, or belittlement in the complaint or the amended complaint. He did not mention these torts in responding to the defendants' motions to dismiss and for summary judgment. He did not allege that he was entitled to recover special damages due to Emory or the other defendants belittling or disparaging the work or products "of others." (Contract Compl.; Amend. Contract Compl.) Therefore, the Breach of Contract Lawsuit does not involve any stated or unstated causes of action that would constitute a covered "personal injury offense."

## *QUI TAM* LAWSUIT

**A.    The *Qui Tam* Lawsuit is Not Covered Under the Bodily Injury Liability and Property Damage Liability Coverage of the CGL Policies.**

On November 9, 1999, Dr. Murtagh and co-realtor Diane Owen filed a complaint against Emory on behalf of the United States of America for violation of three sections of the federal False Claims Act ("FCA"). (*Qui Tam* Compl., attached as Ex. 9(a) to Cochenour Aff.). The suit was filed pursuant to the "*qui tam*" provisions of the FCA, which allow a private citizen (relator) to bring suit on

behalf of the United States seeking restitution and penalties for the defendant's intentional submission of fraudulent claims to the Government. (31 U.S.C. § 3729, *et seq.*) If the claim is successfully prosecuted, the relator may recover a percentage of the total recovery due the Government. Id. National Union and Emory allege in the instant complaint that Dr. Murtagh's *Qui Tam* Lawsuit was covered under the Bodily Injury and Property Damage Liability Coverage. (Complaint ¶ 86.)

      1.   The *Qui Tam* Lawsuit does not allege covered damages caused by an "event."

Each count of the *Qui Tam* Complaint alleges that Emory knowingly submitted false reimbursement claims to the Department of Health in violation of the FCA and tracks the express language of the statute.[10] (*Qui Tam* Compl., ¶¶ 10, 13, 16.) Such intentional conduct can not properly be characterized as an "event"

---

[10] The False Claims Act imposes liability on any person who: "(1) knowingly presents, or causes to be presented, to an officer or employee of the Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; . . . (7) knowingly makes use, or causes to be used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3791(a). The word "knowingly" means a person who "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b) (emphasis added).

(i.e. "accident") so as to trigger coverage under the CGL Policies.  In M/G Transport Services, Inc. v. Water Quality Ins. Syndicate, 234 F.3d 974, (6th Cir., 2000), the court held that an insurer had no duty to defend an FCA *qui tam* action because such actions are predicated upon the fact that defendants knowingly defrauded a government entity, and therefore can not constitute injury or damages caused by an "accident" or "occurrence."  Similarly, in New Memorial Assoc. v. Credit General Ins. Corp., 973 F.Supp. 1027 (D.N.M. 1977), the court held that an insurer had no duty to defend a *qui tam* suit in which the plaintiff alleged that defendants "knowingly" failed to enforce certain hospital standards, stating that  in its suit, the government sought recovery under the FCA for conduct "which can in no way be characterized as 'accidental.'"  Id.  Therefore, the CGL Policy's "accidental" requirement was not satisfied and the insurer had no duty to defend.

### 2. The *Qui Tam* Lawsuit did not allege damages because of "bodily injury" or "property damage."

The relators in the *Qui Tam* suit sought monetary damages or restitution of money on behalf of the U.S. Government and specifically demanded "rewards as whistleblowers."  (*Qui Tam* Compl., p. 5.)  They were not seeking damages because of "bodily injury" or "property damage" as required under the CGL Policies.  It is well established that the nature of a *qui tam* action is for recovery of monetary damages only.  Horizon West, Inc. v. St. Paul Fire and Marine Ins. Co.,

214 F. Supp. 2d 1074 (E.D. Cal. 2002). In Horizon West, the court held that an insurer had no duty to defend a claim brought under the FCA and noted that the injury suffered is the difference between the amount of money the United States actually paid and the amount it should have paid. Id. at 1076. Moreover, loss of money does not constitute "property damage." Mack v. Nationwide Mut. Fire Ins. Co., 238 Ga. App. 149, 715 S.E.2d 839 (1999).

3.  Coverage is excluded under the Employers Liability and Intentional Bodily Injury or Property Damage Exclusions

The *Qui Tam* Lawsuit specifically alleged that: "Relator Murtagh is a tenured professor of medicine at Emory" who "has been employed by Emory for approximately eight years." (*Qui Tam* Compl., ¶ 6.) Any damages for bodily injury which Dr. Murtagh could recover in this action would necessarily have arisen out of and in the course of his employment with Emory, and are therefore excluded by the Employer's Liability Exclusion included in the Policy. (Executive Worker and Leased Worker Endorsement.) They would also be excluded by the Intentional Bodily Injury or Property Damage Exclusions.

**B.  The *Qui Tam* Lawsuit is Not Covered Under the Personal Injury Liability Coverage of the CGL Policies.**

Quite simply, the *Qui Tam* Complaint does not allege any "personal injury offenses" or "advertising injury offenses," and therefore could not be covered

under these coverage sections. There are no allegations of defamatory conduct whatsoever, nor are there any facts that could form the basis of any "personal injury offense."

## RICO/WHISTLEBLOWER LAWSUIT

**A.** **All of the Wrongful Conduct and Damages Alleged in the RICO/Whistleblower Lawsuit Occurred after the Expiration of the CGL Policies.**

Emory's last CGL Policy with St. Paul Mercury expired on February 1, 1999. The RICO/Whistleblower Lawsuit is based on Emory, *et al.*'s retaliatory treatment of Dr. Murtagh *after* they learned he was assisting the federal government in an investigation of Emory's submission of fraudulent claims. It is undisputed that Emory was not even aware of Dr. Murtagh's involvement in this investigation until April 1999.[11] In his RICO/Whistleblower Complaint, Dr. Murtagh alleged the following:

---

[11] A November 6, 2000 Order entered in the case states the following: "(1) Timing: The timing of the crucial events does not appear to be disputed. Dr. Murtagh has stated (and Emory does not deny) that in April 1999, he revealed to Emory that he was participating in an investigation of alleged research grant improprieties being conducted by the National Institute of Health (NIH). His *qui tam* action was filed on November 9, 1999. Although the *qui tam* action remained under seal until February 2000, it appears that a meeting was held a few days after the action was filed, and the substance of Dr. Murtagh's accusations was discussed with Emory representatives. On December 7, 1999 Dr. Murtagh filed his complaint in the instant action, which makes reference to the qui tam action and the allegations thereof. On December 20, 1999, Dr. Murtagh was relieved of his duties

Since at least <u>June 1999</u>, Dr. Murtagh, with Defendants Emory's knowledge has been an informant and witness to and for the National Institute of Health, a federal agency, in its investigation of Defendant Emory's presentation of false and/or fraudulent claims for payment and has gathered information concerning Emory's wrongdoing . . . . (<u>RICO/Whistleblower</u> Compl., ¶ 16.)

<u>In response to this notice</u>, Emory and agents thereof ... colluded and conspired... to influence, coerce and tamper with Dr. Murtagh ... (<u>Id.</u>, ¶ 17.)

Specifically, on or about <u>October 1999</u>, the Defendants and others conspired to make accusations against Dr. Murtagh which were false . . . (<u>Id.</u>, ¶ 18.)

Such predicate acts, on or about <u>September 1999, October 1999</u> and <u>November 1999</u> are part of a pattern of racketeering, whereby informants and witnesses to federal crimes are harassed, retaliated against and influenced negatively. (<u>Id.</u>, ¶ 21.)

None of this alleged conduct occurred before February 1, 1999 when the CGL Policies expired.

Other pleadings filed by Dr. Murtagh in his RICO/Whistleblower Lawsuit also establish that his claims and damages all occurred outside the effective dates of the CGL Policies. For example, in his response to a motion for summary judgment, Dr. Murtagh stated that he informed his supervisors and various other individuals at Emory of his whistleblower activity in <u>May 1999</u>, and that

---

at Grady, removed by a security guard, and prohibited from returning to the Emory campus. <u>The court finds that the timing of this sequence of events supports Dr. Murtagh's claim that Emory retaliated against him</u>." (11/06/00 Order of Judge Beverly Martin, p.13, attached as Ex. 25 to <u>Cochenour Aff.</u>, emphasis added.)

defendants took no adverse action against him until after they knew of this whistle-blower activity. (Plaintiffs' Resp. to Defendant Grady's Mot. for Summary Judgment, ("Pl. Resp. to MSJ"), p. 2, attached as Ex. 21 to Cochenour Aff.) (emphasis added). Dr. Murtagh also alleged in this document that at the end of May 1999, certain nurses falsely alleged that he had violated DNR policies, and "four and one-half months later" he was given a letter to this effect by Dr. Martinez-Maldonado. (Id. p. 8-9.)

If the RICO/Whistleblower suit was covered under any CGL Policy, it was covered under a subsequent policy issued to Emory by Clifton Insurance Company, a wholly-owned subsidiary of Emory University. (Rule 30(b)(6) Depo. of Emory, p. 110.) Despite the fact that Dr. Murtagh's RICO/Whistleblower Lawsuit obviously concerned conduct and damages that occurred after February 1, 1999, Emory did not report this suit to Clifton. (Id., p. 110.) Rather, National Union and Emory chose to sue St. Paul for a claim that occurred during Clifton's policy period.

Despite the express language of the RICO/Whistleblower Complaint and the other pleadings filed in this case, Plaintiffs may nevertheless argue that the lawsuit alleges "personal injury offenses" which began before February 1, 1999. However, the conduct and damages that allegedly occurred before February 1,

1999 and are referenced in Emory's First Notice of Claim are entirely unrelated to the conduct and damages at issue in the RICO/Whistleblower Lawsuit. Before he filed the RICO/Whistleblower Lawsuit, Dr. Murtagh's allegations all concerned Emory's alleged breach of contract and the harassment and discrimination he suffered at the hands of his co-workers when they learned he had received tenure. The RICO/Whistleblower Lawsuit, on the other hand, is based solely on Emory's treatment of Dr. Murtagh *after* it learned of his involvement in the NIH investigation in April or May of 1999. To be covered, the alleged "personal injury offense," "bodily injury," or "property damage" must occur during the policy period. (CGL Coverage Form, p. 1 of 16.)

## B. The RICO/Whistleblower Lawsuit is not Covered Under the Bodily Injury and Property Damage Liability Coverage Because it Does Not Allege Covered Damages Caused by an "Event"

Assuming, *arguendo,* that the RICO/Whistleblower lawsuit did involve covered damage occurring during the policy period, the lawsuit still is not covered because Dr. Murtagh did not allege damages caused by an "event." In order to state a claim under the RICO statutes enumerated in his complaint, Dr. Murtagh was required to allege intentional misconduct, and in fact, his complaint alleged the defendants committed various intentional acts including conspiring to make false accusations in an attempt to dissuade Dr. Murtagh from cooperating with the

*qui tam* investigation, retaliation, interference with a witness, coercion, and harassment. (RICO/Whistleblower Compl.) Such conduct does not constitute an "accident" under Georgia law. See Pacific Employers' Ins. Co. v. Cesnik, supra, (holding that Georgia RICO claims are not covered under a CGL policy covering "accidents" because such claims are based on allegations of intentional conduct). See generally Presidential Hotel v. Canal Ins. Co., 188 Ga.App. 609, 373 S.E.2d 671 (1988); O'Dell, supra.

**C.** **The RICO/Whistleblower Lawsuit is not covered under the Personal Injury Liability Coverage**

The RICO/Whistleblower Lawsuit did not allege any causes of action that constitute "personal injury offenses." As discussed in the reference to the Breach of Contract Lawsuit, Personal Injury Coverage focuses on the offense or cause of action alleged in the underlying complaint. Dr. Murtagh never alleged that any of the defendants were legally required to pay damages for libel, slander, trade libel, or any other offense listed under the definition of "personal injury offense." Even if he alleged facts which could support a "personal injury offense" (which he clearly did not), Dr. Murtagh did not seek damages for a covered "personal injury offense."

Even faced with motions to dismiss and for summary judgment, Dr. Murtagh still did not contend that his lawsuit included any torts that would qualify as a

"personal injury offense." The pleadings in the RICO/Whistleblower Lawsuit clearly show that Dr. Murtagh's claims were limited to the Georgia RICO Statute, the Federal RICO Statutes and the Whistleblower section of the *Qui Tam* statute. (Pl. Resp. to MSJ; Plaintiff's Memo. of Law in Opp. to Defendant Fulton-DeKalb Hospital Authority's and Defendant Emory's, Guidot's and Staton's Mot. to Dismiss Pursuant to Rule 12(b)(6), attached as Ex. 22 to Cochenour Aff.)

Finally, it is worth noting that in its defense of the RICO/Whistleblower Lawsuit, Emory did not identify St. Paul Mercury's CGL Policies in its Mandatory Disclosure to the court which directed Emory attach a copy of "any insurance agreement" which may provide coverage for the suit. (Defendant Emory University's Resp. to Mand. Discl., p. 5, attached as Ex. 23 to Cochenour Aff.). In these disclosures, Emory stated that National Union was the only insurer which may provide coverage for the RICO/Whistleblower Lawsuit.

**D.    CGL Policies Do Not Cover Individual Defendants for Personal Injury Liability**

In addition to Emory, Drs. Cassarella, Guidot, and Staton are also named as defendants in the RICO/Whistleblower Action. Although the lawsuit does not allege any covered "personal injury" claims against these doctors, even if Plaintiffs could somehow show that Dr. Murtagh was suing the individual doctors for some type of "personal injury offense," there would be no coverage because the CGL

Policies do not cover personal injury claims filed by fellow employees. (CGL Coverage Form, p. 4 of 16.)

### E. Coverage for the RICO/Whistleblower Lawsuit is Barred Under the "False Material Exclusion" and the "Deliberately Breaking the Law" Exclusions

Any covered personal injury claims would be excluded by express language of the "False Material Exclusion" and the "Deliberately Breaking the Law Exclusion." (CGL Coverage Form, p. 10 of 16.) These Exclusions, which are quoted in full in St. Paul's Statement of Material Facts, operate to exclude intentional acts such as those alleged in the RICO/Whistleblower Lawsuit.

## INTERFERENCE WITH CONTRACT LAWSUIT

### A. The Interference with Contract Lawsuit is not covered under the Bodily Injury and Property Damage Liability Coverage

Like the RICO/Whistleblower Lawsuit, the Interference with Contract Lawsuit is based on the defendants' conduct after they learned that Dr. Murtagh had cooperated with the National Institute of Health. All of the alleged damages and wrongful conduct occurred after the expiration of the last CGL Policy on February 1, 1999. Therefore, this lawsuit does not allege the required bodily injury or property damage that happened while the policy was in effect. Moreover, the Complaint does not allege that the damages were caused by an "event" or "accident." All of Dr. Murtagh's damages were allegedly caused by the intentional

torts of interference with contractual relations and intentional infliction of emotional distress. The complaint would also be excluded by the intentional bodily injury or property damage exclusion.

**B.** **The Interference with Contract Lawsuit is Not Covered Under the Personal Injury Liability Coverage of the CGL Policies.**

National Union and Emory allege in their complaint that this suit is covered under the Personal Injury Liability Coverage. (Compl. ¶ 98.) Like the other suits, however, this suit does not allege any causes of actions that would be covered as "personal injury offenses." The two causes of action alleged in the complaint are: (1) interference with contractual relations, and (2) intentional infliction of emotional distress. The suit also does not allege a "personal injury offense" that occurred during the CGL policy period.

With regard to any possible "unstated causes of action," there is no reason to believe that the lawsuit included a covered slander claim as the Complaint was filed on December 20, 2000, more than a year after the last CGL Policy expired on February 1, 1999. Any potentially covered slander claim would have been barred by the one year statute of limitation governing slander. See O'Dell, supra.

Finally, even assuming the defendant doctors were employees of Emory University (which was not alleged in the Complaint), the individual defendants do not qualify as insureds or protected persons for "personal injury" claims by fellow

employees. (CGL Coverage Form, p. 4 of 16)  However, the Complaint alleges the defendant doctors were agents of "Emory Health Care System."  If the defendant doctors were not acting as employees of Emory University, they were not insured under the Policy.  The Policy only covers employees for work done within the scope of their employment with Emory University.  (CGL Coverage Form, p. 4 of 16)

## NON-LAWSUIT PROCEEDINGS

### A.    The Non-Lawsuit Proceedings are Not Covered Under the CGL Policies.

The Non-Lawsuit claims submitted to St. Paul Mercury for coverage did not seek damages covered under the CGL Policies.  On August 1, 2000, Emory provided St. Paul with formal notice of the RICO/Whistleblower and *Qui Tam* Lawsuits and the following Non-Lawsuit claims.

1.    EEOC Complaint, dated April 25, 2000;

2.    Office of Civil Rights Complaint, No. 04-99-2224;

3.    Office of Civil Rights Complaint, No. 04-00-2057;

4.    Discrimination Complaint Form relating to Complaint No. 04-00-2057.  (Cochenour Aff. ¶¶ 22-29; Ex. 9(a)-(f).)

None of these non-lawsuit claims alleged that Emory was legally required to pay damages to Dr. Murtagh.  Instead, they merely accused Emory of discrimination

and/or retaliation. The CGL Policies only cover claims where the claimant is alleging that the defendant is legally required to pay the plaintiff damages. (CGL Coverage Form, p. 1 & 2 of 16) See Campbell Soup Co. v. Lib. Mut. Ins. Co., 571 A.2d 969 (N.J. Super. 1990) (general liability carrier does not have duty to defend EEOC proceedings).

In their Complaint, National Union and Emory also allege that St. Paul Mercury had a duty to defend the "Underlying EOP Complaint" dated May 14, 1998 and the "Underlying EEOC Complaint" filed June 11, 1998. However, these non-lawsuit claims were not included in Emory's August 1, 2000 formal notice letter to St. Paul. (Cochenour Aff. ¶ 27-28.) Prior to National Union and Emory's within coverage action, there is no evidence that these two non-lawsuit proceedings were ever tendered to St. Paul Mercury for a defense. St. Paul Mercury would not be responsible for any defense costs incurred on these claims, or any other of the actions and proceedings, until they were tendered for a defense. See Elan Pharmaceutical Research Corp. v. Employers Ins. Of Wausau, 144 F.3d 1372, 1381 (11the Cir. 1998)

**B.  The Non-Lawsuit Proceedings are Not Covered Under the Bodily Injury and Property Damage Liability Coverage**

All of the Non-Lawsuit Proceedings allege discrimination and/or retaliation. Such intentional misconduct toward an employee would not be covered both

because such conduct does not constitute an "event" or "accident," and because it is excluded by the Intended Bodily Injury and Property Damage Exclusion or the Employer's Liability Exclusion. (CGL Coverage Form, p. 1,2,11 of 16; Executive Officer and Leased Worker Exclusion.)

### C. The Non-Lawsuit Proceedings are not covered under the Personal Injury Liability Coverage

None of the Non-Lawsuit Proceedings allege a covered "personal injury offense." They all allege discrimination and/or retaliation. Therefore, as discussed above, they do not trigger coverage under the Personal Injury Coverage. Additionally, they are excluded by the False Material and Deliberately Breaking the Law Exclusions.

### CONCLUSION

For all of the above reasons, none of the nine underlying actions and proceedings are covered under St. Paul Mercury's CGL Policies. St. Paul Mercury therefore respectfully submits that it is entitled to a summary judgment on all claims. However, to the extent that this Court may find that one or more of the underlying actions and proceedings could have triggered a duty to defend, St. Paul Mercury requests partial summary judgment with regard to each action or proceeding which the Court finds did not trigger a duty to defend.

BOVIS, KYLE & BURCH, LLC

By: _____
David Russell Smith
Georgia Bar No. 655588
Attorneys for Defendant
St. Paul Mercury Insurance Company

53 Perimeter Center East
Atlanta, GA    30346-2298
Phone:        770-391-9100
Facsimile:    770-668-0878

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for Defendants hereby certifies that the size and style of the type used in the foregoing is Times New Roman: 14 point.

**BOVIS, KYLE & BURCH, LLC**

By: _____
David Russell Smith
Georgia Bar No. 655588
Attorneys for Defendant
St. Paul Mercury Insurance Company

53 Perimeter Center East
Third Floor
Atlanta, GA    30346-2298
Phone:        770-391-9100
Facsimile:   770-668-0878

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within and foregoing

**DEFENDANT ST. PAUL MERCURY INSURANCE COMPANY'S BRIEF**

**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** has been

furnished to all counsel of record by HAND DELIVERY, addressed as follows:

Kelly Amanda Lee, Esq.
Womble Carlyle Sandridge & Rice
3500 One Atlantic Center
1201 West Peachtree Street
Atlanta GA 30309

This 24th day of February, 2003.

**BOVIS, KYLE & BURCH, LLC**

By: _____
David Russell Smith
Georgia Bar No. 655588
Attorneys for Defendant
St. Paul Mercury Insurance Company

53 Perimeter Center East
Third Floor
Atlanta, GA   30346-2298
Phone:       770-391-9100
Facsimile:   770-668-0878



FILED IN CLERK'S OFFICE

ORIGINAL

FEB 24 2003

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EMORY UNIVERSITY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA as subrogee of Emory University, | § § § § § | CIVIL ACTION FILE NO. 1:02-CV-1181-GET |
| Plaintiffs, | § § | |
| vs. | § § | |
| ST. PAUL FIRE AND CASUALTY COMPANY and ST. PAUL MERCURY INSURANCE COMPANY, | § § § § | |
| Defendants. | § § § § | |

### DEFENDANT ST. PAUL MERCURY INSURANCE COMPANY'S STATEMENT OF MATERIAL FACTS TO WHICH THERE EXISTS NO GENUINE ISSUE TO BE TRIED

Defendant St. Paul Mercury Insurance Company ("St. Paul Mercury") sets

forth the following list of material facts as to which there exists no genuine issue to

be tried.

#### *The National Union Policy*

1.

From January 20, 1998 through January 20, 2001, Plaintiff National Union

Fire Insurance Company ("National Union") provided coverage to Emory

University ("Emory") pursuant to a "Directors, Officers and Trustee's Insurance and Not-for-Profit Organization Reimbursement" Policy No. 861-57-16 (the "National Union Policy"). (National Union Policy, attached as Exhibit "E" to Plaintiffs' Complaint.)

2.

"Emory University" and "Emory Clinic" are the Named Insureds under the National Union Policy. (National Union Policy.)

3.

National Union's Policy covered Emory, its employees and staff physicians for "Employment Practices Allegations" including "wrongful dismissal, discharge or termination," "employment related misrepresentation," "wrongful failure to employ or promote, retaliation, wrongful deprivation of career opportunity, wrongful discipline; failure to grant tenure," "workplace harassment of any kind," "discrimination, whether direct, indirect, intentional or unintentional" and "breach of employment contract." (National Union Policy, Endorsement #8)

4.

Pursuant to the National Union Policy, and subject to a reservation of rights, National Union reimbursed Emory for the defense costs it incurred in defending certain actions and proceedings brought against Emory by Dr. James Murtagh

(described below), and contributed to the eventual settlement of these claims. (Plaintiffs' Complaint, ¶¶ 42-44.)

### *St. Paul Mercury's General Commercial Liability Policies*

5.

From January 1, 1996 through January 1, 1997, St. Paul Mercury provided coverage to Emory pursuant to a Commercial General Liability Policy, No. HG0720088 (the "1996 CGL Policy"). (1996 CGL Policy, attached as Exhibit 1 to Affidavit of Maureen McDonald ("McDonald Aff.")

6.

From January 1, 1997 through January 1, 1998, St. Paul Mercury provided coverage to Emory pursuant to a Commercial General Liability Policy, No. HG 07200088 (the "1997 CGL Policy"). (1997 CGL Policy, attached as Exhibit 2 to McDonald Aff.)

7.

From January 1, 1998 through February 1, 1999, St. Paul Mercury provided coverage to Emory pursuant to a Commercial General Liability Policy, No. HG 07200110 (the "1998 CGL Policy). (1998 CGL Policy, attached as Exhibit 3 to McDonald Aff.)

8.

The relevant coverage forms from the 1996, 1997 and 1998 CGL Policies are identical, with the only material distinction between the policies being the effective dates of coverage. (1996, 1997 & 1998 CGL Policies.)

9.

The Named Insured under each CGL Policy is "Emory University" (1996, 1997 & 1998 CGL Policies.)

10.

Each CGL Policy includes a sixteen-page Commercial General Liability Protection Coverage Form ("CGL Coverage Form"), No. 47500 Ed.4-91. (1996, 1997 & 1998 CGL Policies.)

### *"Bodily Injury and Property Damage Liability Coverage" Under CGL Policies*

11.

The CGL Coverage Form includes coverage for "Bodily Injury and Property Damage Liability," and provides in part:

> What This Agreement Covers
>
> **Bodily injury and property damage.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or premises damage that:

- happens while this agreement is in effect; and
- is caused by an event.

(1996, 1997 & 1998 CGL Policies, CGL Coverage Form, p. 1 of 16.)

12.

By endorsement, the CGL Policies define "bodily injury" as follows:

> *Bodily injury* means any health of other persons, including physical harm, sickness, disease and mental anguish, injury or illness. And it includes care, loss of services or death that results from such harm.

(1996, 1997 & 1998 CGL Policies, "Bodily Injury Definition Endorsement.")

13.

The CGL Coverage Form defines "property damage," in pertinent part, as follows:

> *Property damage* means:
> - Physical damage to tangible property of others, including all resulting loss of use of that property; or
> - loss of use of tangible property of others that isn't physically damaged.

(1996, 1997 & 1998 CGL Policies, CGL Coverage Form, p. 2 of 16.)

14.

The CGL Coverage Form defines "premises damage" as follows:

> *Premises damage* means property damage to premises that you rent, lease or borrow from others.

(1996, 1997 & 1998 CGL Policies, CGL Coverage Form, p. 2 of 16.)

15.

The CGL Coverage Form defines "event" as follows:

> *Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

([1996, 1997 & 1998 CGL Policies](), CGL Coverage Form, p. 2 of 16.)


### *Personal Injury Liability Coverage Under the CGL Policies*

16.

The "personal injury liability" coverage included in the CGL Coverage Form provides:

> What This Agreement Covers
>
> **Personal Injury Liability.** We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:
> - results from your business activities, other than advertising, broadcasting, publishing, or telecasting done by or for you; and
> - is caused by a personal injury offense committed while this agreement is in effect.

([1996, 1997 & 1998 CGL Policies](), CGL Coverage Form, p. 1 of 16.)

17.

The CGL Coverage Form defines "personal injury" as follows:

> *Personal injury* means injury, other than bodily injury or advertising injury, caused by a personal injury offense.

(1996, 1997 & 1998 CGL Policies, CGL Coverage Form, p. 2 of 16.)

18.

The CGL Coverage Form defines "personal injury offense" as follows:

*Personal injury offense* means any of the following offenses:
- False arrest, detention or imprisonment.
- Malicious prosecution.
- Wrongful entry or wrongful eviction.
- Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
- Libel or slander.
- Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
- Making known to any person or organization written or spoken material that violates an individuals right of privacy.

(1996, 1997 & 1998 CGL Policies, CGL Coverage Form, p. 2 of 16.)

## *Coverage Exclusions Under CGL Policies*

19.

The CGL Coverage Form excludes coverage for intentional bodily injury or property damage and provides in part:

### What This Agreement Won't Cover—Exclusions

**Intentional bodily injury or property damage.** We won't cover bodily injury or property damage that's expected or intended by the protected person. Nor will we cover medical expenses that result from such bodily injury.

(1996, 1997 & 1998 CGL Policies, CGL Coverage Form, p. 11 of 16.)

20.

The CGL Coverage Form excludes coverage for employer's liability and, as modified by endorsement, provides, in pertinent part:

> What This Agreement Won't Cover – Exclusions
>
> **Employer's liability.** We won't cover bodily injury to an employee arising out of and in the course of his or her:
> - employment by the protected person; or
> - performance of duties related to the conduct of the protected person's business.

(1996, 1997 & 1998 CGL Policies, Executive Officer and Learned Worker Endorsement, p. 16.)

21.

The CGL Coverage Form excludes coverage for false material, and provides as follows:

> What this Agreement Won't Cover – Exclusions
>
> **False Material.** We won't cover personal injury or advertising injury that results from making known to any person or organization false written or spoke material that:
> - Was made known by or for the protected person; and
> - The protected person knew was false when it was made known.

(1996, 1997 & 1998 CGL Policies, CGL Coverage Form, p. 10 of 16.)

22.

The CGL Coverage Form excludes coverage for deliberately breaking the law and provides as follows:

> What this Agreement Won't Cover – Exclusions
>
> **Deliberately breaking the law.**  We won't cover personal injury or advertising injury that results from:
> - The protected person knowingly breaking any criminal law; or
> - Any person or organization breaking any criminal law with the consent or knowledge of the protected person.

(1996, 1997 & 1998 CGL Policies, CGL Coverage Form, p. 10 of 16.)

## *Who is Insured Under the CGL Form*

23.

By endorsement, employees of Emory University are insureds or protected persons under certain circumstances as follows:

> Who Is Protected Under This Agreement
>
> **Employees.**  Your employees are protected persons only for:
> - Work done within the scope of their employment by you; or
> - Their performance of duties related to the conduct of your business.

(1996, 1997 and 1998 CGL Policies; CGL Coverage Form, p. 4 of 16; Executive Officer and Leased Worker Endorsement.)

24.

However, the CGL Coverage Form provides that employees are not covered

for certain claims, in pertinent part, as follows:

> However, no employee is a protected person for bodily injury or
> personal injury to:
> - You;
> - Any fellow employee;

(1996, 1997 and 1998 Policies, CGL Coverage Form, p. 4 of 16.)

25.

By endorsement, the exclusion for bodily injury to fellow employees does

not apply in certain situations as follows:

> How Coverage is Changed.
>
> The following is added to the Employees and volunteer workers
> section. This change broadens coverage.
>
> We won't apply the exclusions in this Employees and volunteer
> workers section to bodily injury to any fellow employee that results
> from work, other than the performance of or failure to perform health
> care professional services, done by any of your employees.

(1998 CGL Policy, Fellow Employee Bodily Injury Endorsement—All Employees,

Form No. 47167, Rev. 1-96.)[1]

---

[1] The 1996 and 1997 CGL Policies include an earlier version of the Fellow
Employee Bodily Injury Endorsement—All Employees, Form No. 47167, Ed. 4-
91, which is not materially different from the 1996 version of the form.

## *Plaintiffs' Breach of Contract & Contribution Suit Against St. Paul*

26.

Between 1998 and 2000, Dr. James Murtagh, an employee of Emory, filed nine separate claims and lawsuits against Emory and several individual defendants (the "underlying actions and proceedings"). (Plaintiffs' Complaint.)

27.

The underlying actions and proceedings at issue in this case and the dates they were filed are as follows:

a) Emory Equal Opportunity Programs Complaint/Grievance Form ("EOP Complaint"), filed 5/14/98;

b) Equal Employment Opportunity Commission Charge No. 110982979 ("First EEOC Complaint"), filed 6/11/98;

c) United States Department of Education Office for Civil Rights Complaint No. 04-99-2224 ("First OCR Complaint"), filed 8/4/99;

d) James J. Murtagh, Jr., M.D. v. Emory University, Manuel Martinez-Maldonado, M.D.; Juha P. Kokko, M.D., Ph.D.; Gerald W. Staton, Jr. M.D., and Samuel M. Aguayo, M.D., *originally filed in Superior Court of DeKalb County, Civil Action File No. 99-9971-4, and removed to:* U.S.D.C., N.D. Ga., Atlanta Division, Civil Action File No. 1:99-CV-2864, filed 8/30/1999 and amended 10/12/99 ("Breach of Contract Lawsuit");

e) United States of America, *ex rel.*, Diane F. Owen and James J. Murtagh, M.D. v. Emory University, U.S.D.C. N.D.Ga., Civil Action No. 1:99-CV-2909, filed 11/9/99, amended 11/13/00 and 4/30/01 ("Qui Tam Lawsuit");

f)      James J. Murtagh, Jr. v. Fulton-Dekalb Hospital Authority, Emory University, William J. Casarella, David Guidot, Gerald Staton and other presently unknown individuals, U.S.D.C. N.D.Ga., Civil Action NO. 1:99-CV-3157, filed 12/7/99, amended 1/21/00 and 4/30/01 ("RICO/Whistleblower Lawsuit");

g)      United States Department of Education Office for Civil Rights Complaint No. 04-00-2057 ("Second OCR Complaint"), filed 2/4/00;

h)      Equal Employment Opportunity Commission Charge No. 110A02422, filed 4/12/00 ("Second EEOC Complaint"); and

i)      James J. Murtagh, Jr. v. William J. Casarella, David Guidot, Gerald Staton and other presently unknown individuals, Superior Court of Fulton County, Civil Action No. 2000-CV-32025, filed 12/20/00 ("Intentional Interference with Contract Lawsuit").

(Plaintiffs' Complaint.)

28.

In their breach of contract and contribution action against St. Paul Mercury, Plaintiffs allege that each and every one of the nine underlying actions and proceedings trigger a duty to defend and coverage under the CGL Policies. (Plaintiffs' Complaint.)

## *St. Paul Mercury's First Notice of Claim*

29.

On January 29, 1999, St. Paul Global Healthcare Claims ("St. Paul Claims") received a letter from Emory requesting that St. Paul Claims establish a claim file

for a potential claim by James Murtagh, a doctor on faculty at Emory. (Affidavit of Duane Cochenour ("Cochenour Aff."), ¶ 4; 1/29/99 L. Malanoski ltr. to D. Reed, attached as Ex. 1 to Cochenour Aff.)

30.

Emory's January 29, 1999 letter attached a copy of a January 11, 1999 letter to Emory's General Counsel from Patrick McKee, an attorney representing Dr. Murtagh, which outlined several causes of action Mr. McKee believed his client "could successfully pursue against Emory University." (Cochenour Aff., ¶ 4.)

31.

This letter was St. Paul's first notice of any claims by Dr. Murtagh against Emory. (Cochenour Aff., ¶ 4.)


### *St. Paul Mercury's Handling of Actions and Proceedings*

32.

On or about October 7, 1999, St. Paul Claims received a copy of an October 4, 1999 letter from Emory to AI Management and Professional Liability Claim Adjusters ("A.I. Management") enclosing a copy of a "Complaint for Damages and Equitable Relief" filed by Dr. Murtagh in a lawsuit styled: James P. Murtagh, M.D. v. Emory University; Manuel Martinez-Maldonado, M.D.; Juha P. Kokko, M.D.,

Ph.D.; Gerald W. Staton, Jr. M.D., Superior Court of DeKalb County, Georgia, Civil Action No. 99-9971-4. (Cochenour Aff., ¶ 6; Complaint for Damages and Equitable Relief ("Breach of Contract Complaint"), attached as Exhibit No. 2 to Cochenour Aff.)

33.

A.I. Management and/or AIG Technical Services handles claims for National Union. (Deposition of AIG Technical Services, p. 9)

34.

On October 15, 1999, St. Paul received a facsimile from Emory attaching a copy of an Amendment filed by Dr. Murtagh in his Breach of Contract Lawsuit against Emory. Emory's fax also included a copy of an October 15, 1999 letter from Emory's defense attorney, Burton Dodd, to John Alberti at A.I. Management. (Cochenour Aff., ¶ 9; 10/15/99 fax from Emory to St. Paul attaching 10/15/99 B. Dodd ltr. to J. Alberti and Amendment to Complaint for Damages and Equitable Relief ("Amended Breach of Contract Complaint") attached as Ex. 3 to Cochenour Aff.)

35.

In March 2000, St. Paul learned that Dr. Murtagh had filed several additional claims against Emory. (Cochenour Aff., ¶ 14.)

36.

On March 28, 2000, St. Paul sent a letter to Emory requesting that it send St. Paul copies of all of the complaints filed against Emory by Dr. Murtagh. (Cochenour Aff., ¶ 14; 3/28/00 ltr. from C. Barnaby to C. Merck, attached as Ex. 4 to Cochenour Aff.)

37.

On April 17, 2000, St. Paul sent a letter to Emory inquiring as to the relationship, if any, between the Veteran's Administration Medical Center and Emory, and requesting information as to whether Dr. Aguayo was considered an employee of Emory. (Cochenour Aff., ¶ 14; 4/17/00 ltr. from C. Barnaby to C. Merck, attached as Ex. 5 to Cochenour Aff.)

38.

Emory did not provide St. Paul with any information regarding the nature of the relationship between Emory and the VAMC and did not respond to St. Paul's request for information regarding Dr. Aguayo's employment relationship with Emory. (Cochenour Aff., ¶ 16.)

39.

On July 10, 2000, St. Paul a letter to Emory denying coverage for the Breach

of Contract Lawsuit under St. Paul Mercury's CGL Policies. (Cochenour Aff., ¶17; 7/10/00 D. Cochenour ltr. to L. Spencer, attached as Ex. 6 to Cochenour Aff.)

40.

In St. Paul's July 10, 2000 denial letter, St. Paul confirmed its understanding that Dr. Martinez-Maldonado and Dr. Aguayo were employed by the Atlanta VAMC; that the defamation claim contained in the Amended Breach of Contract Complaint was based solely on statements made by Dr. Aguayo; and that these statements were not attributed in any way to Emory employees. (Cochenour Aff., ¶ 18; 7/10/00 D. Cochenour ltr. to L. Spencer, attached as Ex. 6 to Cochenour Aff.)

41.

In St. Paul's July 10, 2000 denial letter, St. Paul asked Emory to advise it of any information that it believed might affect St. Paul's coverage determination. (Cochenour Aff., ¶ 18; 7/10/00 D. Cochenour ltr. to L. Spencer, attached as Ex. 6 to Cochenour Aff.)

42.

A copy of St. Paul's July 10, 2000 denial letter was sent to A.I. Management. (Cochenour Aff., ¶ 19.)

43.

On July 12, 2000, St. Paul sent a fax to Ms. Shulamith Klein at Emory

requesting that Emory provide St. Paul with copies of the complaints and pleadings filed by Dr. Murtagh in his *Qui Tam* and RICO/Whistleblower Lawsuits. (Cochenour Aff., ¶ 20; 7/12/00 D. Cochenour ltr. to S. Klein, attached as Ex. 7 to Cochenour Aff.)

44.

On July 20, 2000, St. Paul received a letter from King & Spalding, Emory's defense counsel on the RICO/Whistleblower and *Qui Tam* Lawsuits, which enclosed voluminous pleadings from the underlying litigation. (Cochenour Aff., ¶ 22; 7/20/00 King & Spaulding ltr. to D. Cochenour, attached as Ex. 8 to Cochenour Aff.)

45.

On August 2, 2000, St. Paul received a letter from Phyllis Alexander with Marsh USA, Inc., Emory's insurance broker, placing St. Paul on "formal notice" of two lawsuits and three administrative proceedings filed by Dr. Murtagh against Emory. The letter referenced and purported to include the following documents:

(1)   *Qui Tam* Complaint Civil Action No. 1:99-CV-2909-TWT;

(2)   RICO Complaint and Amended RICO Complaint Civil Action No. 1:99-CV-3157;

(3)   EEOC Complaint dated April 25, 2000;

(4)   Office of Civil Rights Complaint No. 04-99-2224;

(5) Office of Civil Rights Complaint No. 04-00-2057; and

(6) Discrimination Complaint Form relating to No. 04-00-2057. (Cochenour Aff., ¶ 23; 8/2/00 P. Alexander ltr. to D. Cochenour, attached as Ex. 9 to Cochenour Aff.)

46.

Although Ms. Alexander's August 1, 2000 letter to St. Paul purported to include a copy of an "Office of Civil Rights Complaint No. 04-99-2224," her letter actually included a September 3, 1999 letter from the OCR to Dr. William Chase at Emory and an October 27, 1999 letter from the OCR to Dr. William Chase at Emory referencing OCR Complaint No. 04-99-2224 filed by Dr. Murtagh and providing general information about OCR's complaint resolution procedures. (Cochenour Aff., ¶ 27; Ex. 9(d) to Cochenour Aff.)

47.

Ms. Alexander's letter did not contain a copy of the actual OCR Complaint No. 04-99-2224. (Cochenour Aff., ¶ 27; Ex. 9(d) to Cochenour Aff.)

48.

Although Ms. Alexander's August 1, 2000 letter to St. Paul purported to include a copy of an "Office of Civil Rights Complaint No. 04-00-2057," her letter actually included a February 7, 2000 letter from the OCR to Dr. William Chase at

Emory referencing OCR Complaint No. 04-00-2057. (Cochenour Aff., ¶ 28; Ex. 9(e) to Cochenour Aff.)

49.

Ms. Alexander's letter did not contain a copy of the actual OCR Complaint No. 04-00-2057. (Cochenour Aff., ¶ 28; Ex. 9(e) to Cochenour Aff.)

50.

The "Underlying EOP Complaint" and the "First Underlying EEOC Charge" referenced in National Union and Emory's Complaint were not included in Ms. Alexander's August 1, 2000 letter providing St. Paul with formal notice of certain actions and proceedings. (Cochenour Aff., ¶ 38; 8/2/00 P. Alexander ltr. to D. Cochenour, attached as Ex. 9 to Cochenour Aff.)

51.

Emory did not formally put St. Paul on notice of these proceedings or ask St. Paul to defend or cover these proceedings. (Cochenour Aff., ¶ 38.)

52.

On September 11, 2000, St. Paul sent a letter to Shulamith Klein at Emory denying coverage for the actions and proceedings submitted on August 1, 2000. (Cochenour Aff., ¶ 30; 9/11/00 D. Cochenour ltr. to S. Klein, attached as Ex. 10 to Cochenour Aff.)

53.

On or about October 16, 2000, St. Paul received a letter from Emory's coverage counsel, Robert Wedge, responding to St. Paul's July 10 and September 11, 2000 denial letters. (Cochenour Aff., ¶ 31; 9/11/00 R. Wedge ltr to D. Cochenour ltr. attached as Ex. 11 to Cochenour Aff.)

54.

On October 31, 2000, St. Paul's coverage counsel, Bethany Culp, responded to Mr. Wedge's letter, explaining why the arguments advanced did not result in coverage for any of the underlying actions and proceedings. (Cochenour Aff., ¶ 35; 9/11/00 B. Culp ltr. to R. Wedge., attached as Ex. 12 to Cochenour Aff.)

55.

On or about January 22, 2001, St. Paul Claims received a copy of a lawsuit filed by Dr. Murtagh in a case styled: James J. Murtagh, Jr. v. William J. Casarella, David Guidot, Gerald Staton, and other presently unknown individuals filed in the Superior Court of Fulton County. (Cochenour Aff., ¶ 36; Complaint for Damages ("Interference with Contract Complaint"), attached as Ex. 13 to Cochenour Aff.)

56.

On February 15, 2001, St. Paul sent a letter to Kent Alexander at Emory advising that St. Paul was denying coverage for the Interference with Contract

Lawsuit. (Cochenour Aff., ¶ 37; 2/15/01 D. Cochenour ltr. to K. Alexander, attached as Ex. 14 to Cochenour Aff.)

<h3 align="center">***Underlying EOP Complaint***</h3>

57.

On or about May 14, 1998, Dr. Murtagh filed a Complaint against Emory with Emory University's Office of Equal Opportunity Programs (the "EOP Complaint"). (Plaintiffs' Complaint, ¶ 45; EOP Complaint/Grievance Form, attached as Exhibit 16 to Cochenour Aff. )

58.

In the Underlying EOP Complaint, Dr. Murtagh described how he was discriminated against and harassed by certain doctors at the Veterans' Administration Hospital based on his race and disability and how certain members of the "VA crowd" retaliated against Dr. Murtagh. (EOP Complaint, "Summary of Complaint.")

59.

Dr. Murtagh's Complaint specifically requests that the EOP: (1) put an end to all efforts to sever Dr. Murtagh's employment with Emory School of Medicine, (2) stop the discriminatory, defamatory, and harassing actions of other faculty

- 21 -

members; (3) ensure that Dr. Murtagh's career advancement and academic development is unaffected; (4) ensure that his "record of excellence" is reflected in all performance evaluations; (5) recognize and protect the rights of faculty with psychiatric disabilities under the ADA; (6) work to educate Emory faculty regarding the ADA; (7) arrange reimbursement for medical and legal expenses incurred as a result of the conflicts; and (8) implement policies to prevent recurrence of behaviors and retaliatory actions. (EOP Complaint, p. 1).

60.

Emory did not formally put St. Paul on notice of the Underlying EOP Complaint or ask St. Paul to defend or cover it. (Cochenour Aff., ¶ 38.)

61.

The Underlying EOP Complaint does not seek damages from Emory or any other named insured under the CGL Policies. (EOP Complaint; CGL Coverage Form, p. 1 & 2 of 16.)

62.

The Underlying EOP Complaint does not allege any conduct which constitutes an "event" as that term is defined under the CGL Policies. (EOP Complaint.; CGL Coverage Form, p. 2 of 16).

63.

The Underlying EOP Complaint alleges that Emory intended or expected to cause Dr. Murtagh injury. (EOP Complaint.)

64.

The Underlying EOP Complaint arose out of and in the course of Dr. Murtagh's employment with Emory. (EOP Complaint.)

## *First Underlying EEOC Complaint*

65.

On or about June 11, 1998, Dr. Murtagh filed a Charge of Discrimination against Emory with the Equal Opportunity Commission, Charge No. 110982979 (the "First Underlying EEOC Complaint"). (Plaintiffs' Complaint, ¶50; First Underlying EEOC Complaint, attached as Exhibit 17 to Cochenour Aff.)

66.

In the First Underlying EEOC Complaint, Dr. Murtagh stated that after he returned from disability leave, he was forced to write a letter of resignation and was discriminated and retaliated against because of his national origin (Irish American) and because of his disability. First Underlying EEOC Complaint, attached as Exhibit 17 to Cochenour Aff.)

- 23 -

67.

Emory did not formally put St. Paul on notice of the First Underlying EEOC Complaint or ask St. Paul to defend or cover it. (Cochenour Aff., ¶ 38.)

68.

The First Underlying EEOC Complaint does not seek damages from Emory or any other named insured under the CGL Policies. (First Underlying EEOC Complaint; CGL Coverage Form, p. 1 & 2 of 16.)

69.

The First Underlying EEOC Complaint does not allege any conduct which constitutes an "event" as that term is defined under the CGL Policies. (First Underlying EEOC Complaint; CGL Coverage Form, p. 2 of 16).

70.

The First Underlying EEOC Complaint alleges injury that was intended or expected by Emory. (First Underlying EEOC Complaint)

71.

The First Underlying EEOC Complaint arose out of and in the course of Dr. Murtagh's employment with Emory. (First Underlying EEOC Complaint)

## First Underlying OCR Complaint

### 72.

On or about August 4, 1999, Dr. Murtagh filed a Complaint against Emory with the United States Department of Education Office for Civil Rights, OCR No. 04-99-3334 (the "First OCR Complaint"). (Plaintiffs' Complaint, ¶ 55.)

### 73.

The First OCR Complaint does not seek damages from Emory or any other named insured under the CGL Policies. (First OCR Complaint; CGL Coverage Form, p. 1 & 2 of 16.)

### 74.

The First OCR Complaint does not allege any conduct which constitutes an "event" as that term is defined under the CGL Policies. (First OCR Complaint; CGL Coverage Form, p. 2 of 16).

### 75.

The First OCR Complaint alleges injury that was intended or expected by Emory. (First OCR Complaint; CGL Coverage Form, p. 11 of 16.)

### 76.

The First OCR Complaint arose out of and in the course of Dr. Murtagh's employment with Emory. (Executive Officer and Leased Worker Exclusion.)

## *Underlying Breach of Contract Lawsuit*

### 77.

On or about August 30, 1999, Dr. Murtagh filed a lawsuit against Emory University; Dr. Manuel Martinez-Maldonado; Dr. Juha P. Kokko; and Dr. Gerald Staton in the Superior Court of DeKalb County, Georgia, Civil Action No. 99-9971-4 (removed to U.S.D.C., N.D. Ga., Atlanta Division, Civil Action No. 1:99-CV-2864) (the "Breach of Contract Complaint"). (Plaintiffs' Complaint, ¶ 65; Complaint for Damages and Equitable Relief, ("Contract Compl.") attached as Exhibit 2 to Cochenour Aff. )

### 78.

The Breach of Contract Complaint alleged that Dr. Murtagh, Dr. Staton, Dr. Kokko, and Dr. Martinez-Maldonado were employed by Emory University. (Contract. Compl., ¶¶ 1, 5-7.)

### 79.

The Breach of Contract Complaint included three counts against Defendants Emory University, Dr. Martinez-Maldonado, Dr. Kokko and Dr. Staton as follows:

(a)   Count I - Breach of Contract,

(b)   Count II - Detrimental Reliance,

(c)    Count III - Intentional Infliction of Emotional Distress.

(Contract Compl., ¶¶ 26-32)

80.

A June 8, 2000 Order entered by the Court in the Breach of Contract Lawsuit in response to Emory University, Dr. Kokko and Dr. Staton's Motion to Dismiss characterized Plaintiff's three claims against defendants as the following "state law claims:" (1) Breach of contract; (2) Reasonable reliance to his detriment; and (3) Intentional infliction of emotional distress.  (6/8/00 Order of Judge Julie Carnes, p. 7, attached as Exhibit 20 to Cochenour Aff.)

81.

Count I for Breach of Contract alleged that Emory breached an employment contract with Dr. Murtagh when it failed to offer him the position of Chief of the Pulmonary Division after he was promoted to an Associate Professor position by a letter dated May 24, 1995 and effective September 1, 1995.  (Contract Compl. ¶ 13, 27.)

82.

Count II for Detrimental Reliance alleged that Dr. Murtagh reasonably relied to his detriment on the promise made by Emory that he would be made Chief of his Division upon his promotion in September 1995 and that he is entitled to monetary

compensation for damages. (Contract Compl., ¶¶ 13, 29.)

83.

Count III for Intentional Infliction of Emotional Distress alleged that Drs. Martinez-Maldonado, Kokko, and Staton, individually and as joint tortfeasors, both on behalf of themselves and on behalf of Emory, engaged in intentional and reckless conduct that was extreme and outrageous which caused Dr. Murtagh to suffer severe emotional and mental distress for which he was entitled to recover damages. (Contract Compl., ¶ 31.)

84.

The Breach of Contract Lawsuit did not seek damages for any physical injury to tangible property. (Contract Compl.)

85.

The Breach of Contract Lawsuit did not allege that the emotional distress the defendants inflicted upon Dr. Murtagh was accidental, due to any negligent conduct, or that the defendants did not intend or expect Dr. Murtagh to suffer emotional distress. (Contract Compl.)

86.

In the Breach of Contract Lawsuit, Dr. Murtagh alleged that his tenure and promotion to the position of Associate Professor "engendered jealousy and scorn

from his colleagues" and describes how "a clique of Hispanic professors worked to discredit Dr. Murtagh and pressure him to leave," resulting in him being hospitalized for depression. (<u>Contract Compl.</u>, ¶ 1.)

87.

Dr. Murtagh alleged that: "While suffering from this depression, Drs. Manuel Martinez-Maldonado, Juha P. Kokko and Gerald W. Staton intentionally inflicted further emotional distress on Dr. Murtagh by seeking to deny his tenure and force him to leave Emory." (<u>Contract Compl.</u>, ¶ 1,)

88.

Dr. Murtagh alleged that: "The tension and animosity among Dr. Murtagh, his supervisors and his colleagues was expressed to Dr. Murtagh through acts of harassment, hostility and resentment." (<u>Contract Compl.</u>, ¶ 15.)

89.

Dr. Murtagh alleged that Dr. Martinez-Maldonado, motivated by ethnic animosity toward Dr. Murtagh, took action to eliminate Dr. Murtagh as a member of the Pulmonary Division of the Veterans Administration Medical Center; and unilaterally, illegally and motivated by ethnic animosity toward Dr. Murtagh, encouraged Emory to revoke its tenure of Dr. Murtagh and forced Dr. Murtagh to resign from Emory. (<u>Contract Compl.</u>, ¶¶ 17-19.)

90.

Dr. Murtagh alleged that Drs. Kokko and Staton "took actions intentionally to further inflict mental and emotion distress on Dr. Murtagh," and that they accepted Dr. Murtagh's letter of resignation even though Dr. Murtagh had made it clear that he did not intend to resign from his position at Emory. (Contract Compl., ¶¶ 23-24.)

91.

The Breach of Contract Lawsuit did not allege that Emory University, Dr. Martinez-Maldonado, Dr. Staton, or Dr. Kokko were legally required to pay damages to Dr. Murtagh for libel, slander, trade libel, "making known to any person or organization written or spoken material that belittles the products, work or completed work of others," or any other "personal injury offense" listed on the CGL Policies. (Contract Compl.; 1996, 1997 and 1998 CGL Policies, CGL Coverage Form, p. 2 of 16.)

92.

In response to a joint motion filed by Defendants Emory, Kokko, and Staton to dismiss the breach of contract complaint, Dr. Murtagh stated that he had "more than adequately pleaded that movants [Emory, Kokko and Staton] had engaged in extreme and outrageous conduct;" that movants "had no right to drive him from his

job;" and that movants "were motivated by racial and ethnic animosity, disability discrimination, retaliation for enforcing contract rights, retaliation for filing a grievance, and retaliation for filing charges against the Veterans Administration Medical Center." (Plaintiff's Response in Opposition to Joint Motion to Dismiss of Defendants Emory University, Juha P. Kokko and Gerald M. Staton, Jr. p. 2-3, attached as Ex. 18 to Cochenour Aff. )

93.

In this same response, Dr. Murtagh stated that he "[did] not simply allege that movants threatened to terminate his employment at one time," but rather, he "allege[d] that over a period of time, Dr. Martinez-Maldonado and movants repeatedly and angrily demanded his termination, repeatedly informed him he was terminated, and repeatedly excluded him." (Id., p. 5.)

94.

In his response, Dr. Murtagh did not argue, contend, or allege that he was suing Defendants for damages that were not intentionally inflicted upon him by the defendants. (Id.)

95.

In his response, Dr. Murtagh did not argue, contend, or allege that he was suing defendants for libel, slander, trade libel, "making known to any person or

organization written or spoken material that belittles the products, work or completed work of others," or any other causes of action that would qualify as a "personal injury offense" or an "advertising injury offense," as defined by the CGL Policies. (Id.; 1996, 1997 and 1998 CGL Policies, CGL Coverage Form, p. 2 of 16.)

96.

On or about October 12, 1999, Dr. Murtagh amended his Breach of Contract Lawsuit to include a cause of action for defamation against Dr. Samuel Aguayo only. (Amendment to Complaint for Damages and Equitable Relief, ("Amended Contract Compl."), attached as Ex. 3 to Cochenour Aff.)

97.

On October 15, 1999, St. Paul Mercury received a copy of the Amended Breach of Contract Complaint, along with a letter from its defense attorney to National Union stating: "There is no other defamation claim asserted against the other individual defendants." (Cochenour Aff. ¶ 9; 3/28/00 B. Dodd ltr. to J. Alberti, attached as Ex. 3 to Cochenour Aff.)

98.

The Amended Complaint alleged that Dr. Aguayo was, "at all times relevant to this case a doctor at the Atlanta VAMC [Veteran's Administration Medical

Center]." (Amended Contract Compl., ¶ 1.)

99.

The Amended Complaint did not allege that Dr. Aguayo was in any way connected with Emory, or that Emory was in any way liable for Dr. Aguayo's conduct. (Amended Contract Compl.)

100.

On February 7, 2000, the U. S. Attorney filed an appearance for Dr. Aguayo certifying that Dr. Aguayo was acting within the scope of his employment with the United States at the time of the events alleged in the Amended Breach of Contract Complaint. (Motion to Dismiss on Behalf of the United States and Dr. Samuel Aguayo, attached as Exhibit 19 to Cochenour Aff.)

## *Underlying Qui Tam Lawsuit*

101.

On or about November 9, 1999, Dr. Murtagh and co-relator Diane Owen filed a *Qui Tam* Complaint on behalf of the United States of America. (Plaintiffs' Complaint, ¶ 82; Complaint ("*Qui Tam* Complaint"), attached as Exhibit 9(a) to Cochenour Aff.)

102.

The *Qui Tam* Complaint was brought by Dr. Murtagh and Diane Owens as relators on behalf of the United States of America against Emory under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§3729, *et seq.* "to recover damages sustained by, and penalties owed to, the United States as a result of [Emory's] having provided false information to the United States . . . [which allowed Emory] to over-recover direct and indirect costs associated with its federal research grants, contract, and other sponsored agreements." (*Qui Tam* Complaint, ¶ 1.)

103.

The *Complaint* was filed under the False Claims Act, pursuant to 31 U.S.C. § 3730(a), 28 U.S.C. §§ 1331 and 1345. (*Qui Tam* Complaint, ¶ 2.)

104.

The Complaint alleged that: "Emory charge[d] a significant portion of the compensation of its employees to federal sponsored project accounts in excess of the effort actually devoted to the federal sponsored projects," resulting in "false and fraudulent charges to the United States." (*Qui Tam* Complaint, ¶ 8.)

105.

The Complaint identified "the United States, on behalf of its agency, the United States Department of Health and Human Services" as Plaintiff. (*Qui Tam*

Complaint, ¶ 4.)

106.

Each count of the *Qui Tam* Complaint alleges that Emory "knowingly" submitted false claims to the Department of Health in violation of the False Claims Act. (*Qui Tam* Complaint.)

107.

Count I alleged that: "Emory knowingly presented and caused to be presented to an officer and employee of the United States false or fraudulent claims for payment or approval," by reason of which "the United States has sustained damages in an amount to be determined at trial." (*Qui Tam* Complaint, ¶¶ 10, 12.)

108.

Count II alleged that: "Emory knowingly made, used or caused to be made or used false records and statements to get false or fraudulent claims paid or approved by the United States," by reason of which "the United States had sustained damages in an amount to be determined at trial." (*Qui Tam* Complaint, ¶¶ 13, 15.)

109.

Count III alleged that: "Emory knowingly made, used or caused to be made or used false records and statements to conceal, avoid or decrease its obligations to

pay or transmit money or property to the United States," by reason of which "the United States had sustained damages in an amount to be determined at trial." (*Qui Tam* Complaint, ¶¶ 16, 17.)

110.

The Complaint demanded judgment on behalf of the United States against Defendants for treble damages and award of civil penalties, "including rewards to relators as whistleblowers." (*Qui Tam* Complaint, p. 5.)

111.

The Qui Tam Complaint did not allege any conduct which would constitute an "event" as that term is defined in the CGL Policies. (*Qui Tam* Complaint; CGL Coverage Form, p. 2, of 16).

112.

The *Qui Tam* Complaint did not allege any accidental or negligent conduct. (*Qui Tam* Complaint.)

113.

The *Qui Tam* Complaint did not allege any damage which was not intended or expected by Emory University. (*Qui Tam* Complaint.)

114.

The *Qui Tam* Complaint did not allege any "advertising injury offenses" or

"personal injury offenses" as those terms are defined by the CGL Policies. (*Qui Tam* Complaint; 1996, 1997 and 1998 CGL Policies, CGL Coverage Form, p. 2 of 16.)

115.

The *Qui Tam* Complaint did not allege any "bodily injury" or "property damage" as those terms are defined by the CGL Policies. (*Qui Tam* Complaint; 1996, 1997 and 1998 CGL Policies.)

## *Underlying RICO/Whistleblower Lawsuit*

116.

The RICO/Whistleblower Lawsuit was brought pursuant to the federal RICO Act (18 U.S.C. §§ 1981, *et seq.*); the Georgia RICO Act (O.C.G.A. § 16-14-1, *et seq.*); and the Whistleblower protection clause of the federal *Qui Tam* statute (31 U.S.C. §3730(h), *et seq.*). (RICO/Whistleblower Complaint, ¶ 1.)

117.

The RICO/Whistleblower Complaint alleged that Emory University "defrauded the United States Government of millions of dollars through an Improper use of federal funds in compensating Emory employees;" that "this wrongdoing is the subject of *Qui Tam* suit under the False Claims Act (31 U.S.C. §

3729) pending, under seal, in the Northern District of Georgia;" and that Dr. Murtagh was a key witness in the *Qui Tam* Lawsuit. (Id., ¶¶ 13, 14, 15.)

118.

All of the wrongful conduct and damages alleged in the RICO/ Whistleblower Lawsuit occurred after the expiration of the CGL Policies on February 1, 1999. (Id.)

119.

The Complaint alleged that: "Since at least June 1999, Dr. Murtagh, with Defendants Emory's and Grady's knowledge, has been an informant and witness to and for the National Institute of Health, a federal agency, in its investigation of Defendant Emory's presentation of false and/or fraudulent claims for payment and has gathered information concerning Emory's wrongdoing." (Id., ¶ 16, emphasis added.)

120.

The Complaint alleged that after Emory and the individual defendants received notice that Dr. Murtagh was an informant and witness for the federal government, Emory and agents thereof colluded and conspired together to influence, coerce, and tamper with Dr. Murtagh. (Id., ¶ 17, emphasis added.)

121.

The Complaint alleged that "on or about October 1999, the Defendants and others conspired to make accusations against Dr. Murtagh which were false" (Id., ¶ 17, emphasis added.)

122.

The Complaint alleged that predicate acts on or about September 1999, October 1999, and November 1999 were "part of a pattern of racketeering, whereby informants and witnesses to federal crimes [were] harassed, retaliated against and influenced negatively." (Id., ¶ 21, emphasis added.)

123.

A November 6, 2000 Order entered by the Court in the RICO/Whistleblower Lawsuit states that: "The timing of the crucial events does not appear to be disputed. Dr. Murtagh has stated (and Emory does not deny) that in April 1999, he revealed to Emory that he was participating in an investigation of alleged research grant improprieties being conducted by the National Institute of Health (NIH). (11/06/00 Order of Judge Beverly Martin, p.13, attached as Ex. 25 to Cochenour Aff., emphasis added.)

124.

In his Mandatory Disclosures to the Court in the RICO/Whistleblower

Lawsuit (which required Dr. Murtagh to state precisely the classification and the cause of action being filed; a brief factual outline of the case, including Plaintiff's contentions as to what Defendant did or failed to do; and a succinct statement of the legal issues in the case), Dr. Murtagh responded by stating that his action was brought pursuant to the Federal and State RICO Statutes and the Whistleblower clause of the Qui Tam Statute. (Plaintiffs' Responses to Mandatory Disclosures, p. 1-2, attached as Exhibit 24 to Cochenour Aff.)

125.

In his mandatory disclosures, Dr. Murtagh did not state that he was seeking damages for any "personal injury offense" or "advertising injury offense," as those phrases are defined in the CGL Policies. (Id.)

126.

In a memorandum of law filed by Dr. Murtagh in opposition to a motion to dismiss the RICO/Whistleblower Complaint, Dr. Murtagh stated that: "This is a civil RICO and Whistleblower action. Plaintiff is an Emory University Associate Professor and respected physician. Defendants are Dr. Murtagh's employers and their agents." (Memorandum of Law in Opposition to Defendant Fulton-Dekalb Hospital Authority's and Defendants Emory University's, David Guidot's, and Gerald Staton's Motions to Dismiss Pursuant to Rule 12(b)(6), p. 1, attached as

Exhibit 22 to <u>Cochenour Aff.</u>)

127.

In this memorandum, Dr. Murtagh did not state that he was seeking damages for any "personal injury offense" or "advertising injury offense," as those phrases are defined in the CGL Policies. (<u>Id.</u>)

128.

On or about January 21, 2000, Dr. Murtagh amended his RICO/ Whistleblower Complaint to include allegations that he had recently been suspended from his duties at Emory and Grady Hospital which was a retaliatory action within the meaning of the Whistleblower provision. (<u>Amended Complaint</u> ("Amended RICO/Whistleblower Complaint"), attached as Exhibit 9(b) to <u>Cochenour Aff.</u>)

129.

The Amended Complaint specifically alleged that the actions Dr. Murtagh faced in his employment were in response to his involvement in Federal criminal and civil proceedings. (<u>Id.</u>, ¶¶ 26-29.)

130.

In his Amended Complaint, Dr. Murtagh alleged that he had been suspended from his duties at Emory and Grady in furtherance of the a conspiracy to influence,

corrupt, and tamper with him and intimidate other witnesses who were cooperating or considering cooperation in federal investigations. (Id., ¶¶ 24-25.)

131.

The Amended Complaint also alleged that: "Dr. Murtagh's computer drives and other personal property were tampered with, damaged and/or converted in late 1999. Further, the viability of his medical practice and professional standing as well as patient relationships and academic reputation were damaged on or about June and July 1999, November 1999, and January 2000 by the enterprise due to its concerted activity to tamper with a witness." (Id., ¶ 26.)

132.

The Amended RICO/Whistleblower Lawsuit alleges that: "The persons who caused the property damage did so knowingly, with the intent to retaliate against, coerce, tamper and influence Dr. Murtagh for his involvement in the aforementioned federal investigations." (Id., ¶ 28.)

133.

The Amended Complaint alleged that the "specific predicate acts against Dr. Murtagh" which were part of the pattern of racketeering occurred "on or about June or July 1999, September 1999, October 1999, November 1999 and January 2000." (Id., ¶ 35)

134.

In a response to a motion for summary judgment filed by Grady Hospital in the underlying RICO/Whistleblower Lawsuit, Dr. Murtagh stated that: "Beginning in May 1999, Plaintiff cooperated with the National Institute of Health's investigation of grant fraud at Emory." (Plaintiff's Response to Defendant Grady's Motion for Summary Judgment, p. 5, attached as Exhibit 21 to Cochenour Aff.)

135.

In response to a motion for summary judgment filed by Grady Hospital in the underlying RICO/Whistleblower Lawsuit, Dr. Murtagh stated that he advised individuals at Emory and Grady of his cooperation with the NIH shortly after it began. (Plaintiff's Response to Defendant Grady's Motion for Summary Judgment, p. 7.)

136.

A November 6, 2000 Order entered by the Court in the RICO/ Whistleblower action denying Dr. Murtagh's motion for a preliminary injunction reinstating him to his prior duties summarizes the evidence submitted by the parties and does not include any indication that Dr. Murtagh alleged that Emory or any of the defendants were legally required to pay him damages for any "personal injury offense" or "advertising injury offense," as defined by the CGL Policies.

(11/6/00 Order of Judge Beverly Martin, attached as Exhibit ___ to Cochcnour Aff;

1996, 1997 and 1998 CGL Policies.)

137.

The RICO/Whistleblower Complaint did not allege that Dr. Murtagh

suffered "bodily injury" or "property damage" caused by an "event" as those terms

are defined by the CGL Policies. (RICO/Whistleblower Complaint; 1996, 1997

and 1998 CGL Policies, CGL Coverage Form p. 2 of 16.)

138.

The RICO/Whistleblower Complaint alleged that Defendants intended or

expected to cause damage to Dr. Murtagh. (RICO/ Whistleblower Complaint.)

139.

The RICO/Whistleblower Lawsuit did not allege that the Defendants were

legally required to pay damages for covered "personal injury," as that phrase is

defined by the CGL Policies, resulting from Emory University's business

activities, caused by a "personal injury offense," as that phrase is defined by the

CGL Policies. (RICO/Whistleblower Complaint; 1996, 1997 and 1998 CGL

Policies.)

140.

The RICO/Whistleblower Complaint did not a "personal injury offense"

committed while the CGL Policies were in effect. (Id.)

141.

The RICO/Whistleblower Lawsuit did not allege that Defendants were legally required to pay damages for "advertising injury" and did not allege an "advertising injury offense," as defined by the CGL Policies. (Id.)

142.

The RICO/Whistleblower Complaint did not allege an "advertising injury offense" committed during the effective dates of the CGL Policies. (Id.)

### *Second Underlying OCR Complaint*

143.

On or about February 4, 2000, Dr. Murtagh filed a second Discrimination Complaint Form with the United States Department of Education Office of Civil Rights. (Plaintiffs' Complaint, ¶ 60; Discrimination Complaint Form relating to No. 04-00-2057, attached as Exhibit 9(f) to Cochenour Aff.)

144.

In his Second OCR Complaint, Dr. Murtagh alleged that: "Retaliation against Dr. Murtagh began after he filed claims under Title VII with the EEOC and continues even now. (Discrimination Complaint Form, p. 2.)

145.

In his Second OCR Complaint, Dr. Murtagh stated that "an injunctive order mandating an adequate processing mechanism for handling internal complaints" would be an "equitable resolution" to the complaint. (Discrimination Complaint Form, p. 4.)

146.

The Second OCR Complaint does not seek damages from Emory or any other named insured under the CGL Policies. ((Discrimination Complaint Form,)

147.

The Second OCR Complaint does not allege any conduct which constitutes an "event" as that term is defined under the CGL Policies. (Discrimination Complaint Form; CGL Coverage Form, p. 2 of 16).

148.

The Second OCR alleges injury that was intended or expected by Emory. (Discrimination Complaint Form)

149.

The Second OCR Complaint arose out of and in the course of Dr. Murtagh's employment with Emory. (Discrimination Complaint Form)

## *Second EEOC Complaint*

### 150.

On or about April 25, 2000, Dr. Murtagh filed a second Charge of Discrimination against Emory with the Equal Employment Opportunity Commission, Charge No. 110A02422 (the "Second EEOC Complaint). (Plaintiffs' Complaint, ¶ 89; EEOC Complaint No. 110A02422, attached as Exhibit 9(c) to Cochenour Aff.)

### 151.

In his Second EEOC Complaint, Dr. Murtagh alleged that since filing his First EEOC Complaint on or about June 11, 1998, he had been subjected to a hostile work environment and was treated less favorably than other similarly situated employees because of his exercise of statutorily protected activity through filing and pursuing a charge of discrimination. (Second EEOC Complaint, ¶ 1.)

### 152.

In his Second EEOC Complaint, Dr. Murtagh alleged that "throughout the past year," Emory had engaged in a continuing violation of the ADA through unequal treatment and maintenance of a hostile work environment because of Dr. Murtagh's perceived disability. (Id. ¶ 4.)

153.

All the alleged misconduct at issue in the Second EEOC Complaint occurred subsequent to the effective dates of the CGL Policies. (Id.; Second EEOC Complaint.)

154.

The Second EEOC Complaint does not seek damages from Emory or any other named insured under the CGL Policies. (Second EEOC Complaint; CGL Coverage Form, p. 1 & 2 of 16.)

155.

The Second EEOC Complaint does not allege any conduct which constitutes an "event" as that term is defined under the CGL Policies. (Second EEOC Complaint; CGL Coverage Form, p. 2 of 16).

156.

The Second EEOC Complaint alleges injury that was intended or expected by Emory. (Second EEOC Complaint; CGL Coverage Form, p. 11 of 16.)

157.

The Second EEOC Complaint arose out of and in the course of Dr. Murtagh's employment with Emory. (Executive Officer and Leased Worker Exclusion.)

## *Intentional Interference with Contract Lawsuit*

### 158.

On or about December 20, 2000, Dr. Murtagh filed a lawsuit against William Cassarella, David Guidot, Gerald Staton, and other presently unknown individuals in the Superior Court of Fulton County, Georgia, Civil Action No. 2000-CV-32025 (the "Intentional Interference with Contract Lawsuit"). (Plaintiffs' Complaint, ¶ 94; Complaint for Damages ("Interference with Contract Compl."), attached as Exhibit 13 to Cochenour Aff.)

### 159.

In his Interference with Contract Complaint, Dr. Murtagh stated that he was "seeking remedy and redress for violation of the malicious and intentional wrongful interference of Plaintiff's right to contract for employment and prospective economic business advantage." (Interference with Contract Compl., ¶ 1.)

### 160.

The Interference with Contract Complaint alleged that defendants Casarella, Staton, and Guidot were agents and employees of "The Emory University Health Care System." The Complaint also alleged that defendants Casarella and Staton

were agents of Grady Hospital. (Interference with Contract Compl., ¶ 4.)

161.

The Complaint did not allege any claims against Emory and did not allege that any of the Defendants were employees of Emory University. (Interference with Contract Compl.)

162.

The Interference with Contract Complaint did not allege any "personal injury offenses" or "advertising injury offenses" that occurred within the effective dates of any of the CGL Policies. (Interference with Contract Compl.,)

163.

The Contractual Interference Complaint did not allege any "bodily injury" or "property damage" occurring within the effective dates of any of the CGL Policies. (Interference with Contract Compl.,)

164.

All the wrongful conduct alleged in the Contractual Interference Complaint occurred after February 1, 1999. (Interference with Contract Compl.,)

165.

The Complaint alleged that "since at least June 1999," Dr. Murtagh, with defendant's knowledge, cooperated with an NIH investigation of Emory's

fraudulent claims for payment and gathered information concerning Emory's wrongdoing. (<u>Interference with Contract Compl.</u>, p. 11, emphasis added.)

166.

The Complaint alleged that defendants had several surreptitious meetings during which they discussed plans to have Dr. Murtagh suspended, removed, or dismissed from his position with the pulmonology department at Grady Hospital, including a meeting on or about <u>November 22, 1999</u> at the home of Defendant Staton. (<u>Interference with Contract Compl.</u>, ¶12.)

167.

The Complaint alleged that defendants conferred in person and by mail on multiple occasions in 1999 and 2000 to plan, discuss, and implement Dr. Murtagh's removal. (<u>Interference with Contract Compl.</u>, ¶ 13.)

168.

The Complaint alleged that Dr. Murtagh was recently suspended form his duties at Emory and Grady in furtherance of a conspiracy among the defendants. (<u>Interference with Contract Compl.</u>, ¶ 17.)

169.

Count I of the Complaint, entitled "Interference with Contractual Relations" alleged that the defendants "maliciously interfered with Dr. Murtagh's right to

contract for employment," and "acted purposefully and maliciously with the intent to injure Dr. Murtagh." (Interference with Contract Compl., ¶¶ 22, 24.)

170.

Count II of the Complaint entitled "Intentional Infliction of Emotional Distress," alleged that defendants "intentionally and with malice engaged in conduct which was so insulting and alarming as to naturally humiliate, embarrass and alarm Dr. Murtagh;" that the "defendants' conduct was no less than a deliberate and conscious indifference to the consequences of their actions and/or intention to harm Dr. Murtagh." (Interference with Contract Compl., ¶¶ 27, 29.)

171.

The Interference with Contract Complaint did not allege any accidental or negligent conduct on the part of the Defendants. (Interference with Contract Compl.,)

172.

The Interference with Contract Complaint did not allege any conduct which would constitute an "event" as that term is defined under the CGL Policies. (Interference with Contract Compl.; CGL Coverage Form p. 2 of 16.)

173.

The Intentional Interference with Contract Complaint did not allege any

conduct constituting a "personal injury offense" or "advertising injury offense" as defined by the CGL Policies. (Interference with Contract Compl.; CGL Coverage Form, p. 2 of 16.)

174.

Dr. Murtagh did not allege that he was asserting any claims that would qualify as "personal injury offenses," as defined by the CGL Coverage Form, in his response to Emory's Motion for Summary Judgment in the Breach of Contract Lawsuit. (Exhibit A to Defendants' Request for the Court to Take Judicial Notice of a Pleading from One of the Underlying Actions.)

DAVID RUSSELL SMITH
Georgia Bar No. 655588
Attorney for Defendant
St. Paul Mercury Insurance Company

BOVIS, KYLE & BURCH, LLC
53 Perimeter Center East
Third Floor
Atlanta, GA   30346-2298
Phone:      770-391-9100
Facsimile:   770-668-0878

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for Defendant St. Paul Mercury hereby certifies that the size and style of the type used in the foregoing **DEFENDANT ST. PAUL MERCURY INSURANCE COMPANY'S STATEMENT OF MATERIAL FACTS TO WHICH THERE EXISTS NO GENUINE ISSUE TO BE TRIED** is Times New Roman 14 point.

DAVID RUSSELL SMITH
Georgia Bar No. 655588
Attorney for Defendant
St. Paul Mercury Insurance Company

BOVIS, KYLE & BURCH, LLC
53 Perimeter Center East
Third Floor
Atlanta, GA    30346-2298
Phone:       770-391-9100
Facsimile:   770-668-0878

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **DEFENDANT ST. PAUL MERCURY INSURANCE COMPANY'S STATEMENT OF MATERIAL FACTS TO WHICH THERE EXISTS NO GENUINE ISSUE TO BE TRIED** was served upon all counsel of records by **HAND DELIVERY** addressed as follows:

Kelly Amanda Lee, Esq.
Womble Carlyle Sandridge & Rice
3500 One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309

This 24th day of February, 2003.

DAVID RUSSELL SMITH
Georgia Bar No. 655588
Attorney for Defendant
St. Paul Mercury Insurance Company

BOVIS, KYLE & BURCH, LLC
3 Perimeter Center East
Third Floor
Atlanta, GA   30346-2298
Phone:       770-391-9100
Facsimile:   770-668-0878


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EMORY UNIVERSITY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA as subrogee of Emory University, | § § § § § § |
| Plaintiffs, | § § |
| vs. | § § |
| ST. PAUL FIRE AND CASUALTY COMPANY and ST. PAUL MERCURY INSURANCE COMPANY, | § § § § § § |
| Defendants. | § |

CIVIL ACTION FILE
NO. 1:02-CV-1181-GET

## AFFIDAVIT OF MAUREEN McDONALD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY ST. PAUL MERCURY INSURANCE COMPANY

Before the below signed officer authorized to administer oaths appeared the affiant, being of legal age and having first been duly sworn, deposes and states as follows based on her own personal knowledge that:

1.

My name is Maureen McDonald. I am competent to testify as to the matters set forth in this Affidavit and have personal knowledge of the facts set forth in herein.

23

2.

I am an Underwriting Manager with the Underwriting Department of the St. Paul Companies, including St. Paul Mercury Insurance Company ("St. Paul Mercury"), a defendant in the above-captioned action. In my capacity as an Underwriting Manager, I am responsible for maintaining accurate copies of all insurance policies issued by St. Paul Mercury to its insureds.

3.

Attached hereto as Exhibit No. 1 is a true and accurate copy of Policy No. HG07200088, effective January 1, 1996 through January 1, 1997, issued by St. Paul Mercury to "Emory University" as Named Insured.

4.

Attached hereto as Exhibit No. 2 is a true and accurate copy of Policy No. HG07200088, effective January 1, 1997 through January 1, 1998, issued by St. Paul Mercury to "Emory University" as Named Insured.

5.

Attached hereto as Exhibit No. 3 is a true and accurate copy of Policy No. HG07200110, effective January 1, 1998 through February 1, 1999, issued by St. Paul Mercury to "Emory University" as Named Insured.

6.

The above CGL Policies are kept in the course of business regularly conducted by St. Paul Mercury, and it is the regular practice of St. Paul Mercury to conduct such insurance business.

7.

Portions of the CGL Policies relevant to the above-referenced action have been tabbed for the convenience of the Court, and a Table of Contents is attached hereto.

Further affiant sayeth not.

Dated this 24 day of February, 2003.

_Maureen McDonald_
MAUREEN MCDONALD
Underwriting Manager

SWORN TO AND SUBSCRIBED
Before me this the 24th day of
February, 2003.

_Christine A. Ruiz_
Notary Public



CHRISTINE A. RUIZ
NOTARY PUBLIC - MINNESOTA
My Comm. Expires Jan. 31, 2005

- 3 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EMORY UNIVERSITY and | § | |
| NATIONAL UNION FIRE | § | |
| INSURANCE COMPANY OF | § | CIVIL ACTION FILE |
| PITTSBURGH, PA as subrogee | § | NO. 1:02-CV-1181-GET |
| of Emory University, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| ST. PAUL FIRE AND CASUALTY | § | |
| COMPANY and ST. PAUL | § | |
| MERCURY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendants. | § | |

## EXHIBITS TO AFFIDAVIT OF MAUREEN MCDONALD

**(1)** **St. Paul Mercury Insurance Company General Commercial Liability Policy No. HG0720088 (1/1/96 – 1/1/97)**

    (a)    Introduction

    (b)    Commercial General Liability Protection ("CGL Coverage Form")

    (c)    Executive Officer and Leased Worker Endorsement

    (d)    Fellow Employee Bodily Injury Endorsement – All Employees

    (e)    Bodily Injury Definition Endorsement

**(2)** **St. Paul Mercury Insurance Company General Commercial Liability Policy No. HG07200088 (1/1/97 – 1/1/98)**

    (a)    Renewal Certificate

    (b)    Commercial General Liability Protection ("CGL Coverage Form")

    (c)    Executive Officer and Leased Worker Endorse ment

    (d)    Fellow Employee Bodily Injury Endorsement – All Employees

    (e)    Bodily Injury Definition Endorsement

**(3)** **St. Paul Mercury Insurance Company General Commercial Liability Policy No. HG07200110 (1/1/98 – 2/1/99)**

    (a)    Introduction

    (b)    Policy Change Endorsement (ex tending coverage through 2/1/99)

    (c)    Commercial General Liability Protection ("CGL Coverage Form")

    (d)    Executive Officer and Leased Worker Endorsement

    (e)    Fellow Employee Bodily Injury Endorsement – All Employees

    (f)    Bodily Injury Definition Endorsement



# EXHIBIT / ATTACHMENT

_1_

(To be scanned in place of tab)

To the best of my knowledge

this is a true and certified copy

of the policy HG07200088 effective

01/01/96

Issued to EMORY UNIVERSITY

7-25-02

Signature Date



# EXHIBIT / ATTACHMENT

## A

(To be scanned in place of tab)

COPY

This policy protects against a variety of losses. There are also some restrictions. We've written this policy in plain, easy-to-understand English. We encourage you to read it carefully to determine what is and what is not covered, as well as the rights and duties of those protected.

Policy Number: HG07200088

MAJOR ACCTS. DEPT.-HO
385 WASHINGTON STREET
P.O. BOX 64345
ST. PAUL MN 55102

In return for your premium, we'll provide the protection stated in this policy.

We, us, our and ours mean **St. Paul Mercury Insurance Company.** We're a capital stock company located in St. Paul, Minnesota.

The words you, your and yours mean the insured named here, which is a/an CORPORATION

EMORY UNIVERSITY
OFFICE OF VICE PRESIDENT FOR
  FINANCE & TREASURER
ATTN: AMANDA SMITH
312 ADMINISTRATION BUILDING
ATLANTA, GA 30322

Your policy is composed of General Rules, an explanation of What To Do If You Have A Loss, one or more Coverage Summaries, and one or more Insuring Agreements explaining your coverage. It may also include one or more endorsements. Endorsements are documents that change your policy. The Policy Forms List shows all the forms included when this policy begins.

One of our authorized representatives will also countersign the policy.

This policy will begin on 01/01/96 and will continue until 01/01/97
Your former policy number: HG07200088 is automatically replaced

Your premium for the policy period shown is: $308,235.00
However, please refer to the Premiums section of the General Rules to see how final premiums are determined.

Our authorized representative is:
1003214
JOHNSON & HIGGINS INC
SUITE 3400
191 PEACHTREE STREET NE
ATLANTA, GA 30303-1762
Authorized Representative            Date

*President*

Paul D. Zuccarelli

*Secretary*

Processing Date 01/30/96   15:14   001

*40811 Ed.5-87 Printed in U.S.A.*
· Introduction
©St Paul Fire and Marine Insurance Co 1984 All Rights Reserved

This endorsement summarizes the changes to your policy. All other terms of your policy not affected by these changes remain the same.

---

**How Your Policy Is Changed**

GENERAL LIABILITY
------------------

Class Code Information:

Exposure Is Changed From 7,942,997 To 5,263,413 For Class 16824 -- 001 PREMISES.

---

**Premium Change Which Is Due Now**

| Additional premium | Returned Premium | $9,906.00 |
|---|---|---|

| If issued after the date your policy begins, these spaces must be completed and our representative must sign below. | Policy issued to EMORY UNIVERSITY | |
|---|---|---|

| Authorized representative | Endorsement takes effect 01/01/96 Processing Date: 05/31/96 11:12 | Policy Number HG07200088 006 |
|---|---|---|

This endorsement summarizes the changes to your policy. All other terms of your policy not affected by these changes remain the same.

**How Your Policy Is Changed**

The following forms have been added to your policy:

Additional Protected Persons Endorsement - for The Rigger Enterprises Group.

A REVISED - Exclusion Endorsement, adding The Carter Center.

**Premium Change Which Is Due Now**

| Additional Premium: | Return Premium: |
|---|---|

| If we issue this form after the date your policy takes effect, we must complete these spaces and our representative must sign below. | Policy issued to |
|---|---|

Emory University

Authorized representative | Agreement takes effect

01/01/96
Policy Number

HG07200088
40704 Ed. 5-84 | Endorsement

## ADDITIONAL PROTECTED PERSONS ENDORSEMENT

TheStPaul

This endorsement changes your Commercial General Liability Protection.

### How Your Coverage Is Changed

The following is added to the Who Is Protected Under This Agreement section. This change adds certain protected persons and limits their protection.

The Rigger Enterprises Group is added as an additional protected person but only as respects the installation and deinstallation of the Emory University Fine Arts Exhibit on display at the City Hall East on Ponce de Leon Avenue, Atlanta, GA during the following periods:

| | |
|---|---|
| Installation | April 15th to May 21,1996 |
| Deinstallation | mid November to early December, 1996 |

Coverage provided under this endorsement is on an additional protected person basis. This means that The Rigger Enterprises Group does not have separate limits of liability, but is sharing in your coverage limits.

### Other Terms

All other terms of your policy remain the same.

| | |
|---|---|
| If we issue this form after the date your policy takes effect, we must complete these spaces and our representative must sign below. | Policy issued to |
| Authorized representative | Emory University |
| | Agreement takes effect |
| | 01/01/96 |
| | Policy Number |
| | HG07200088 |

40502 Ed. 1-80       Endorsement       Page 1 of 1

## EXCLUSION ENDORSEMENT – REVISED

This endorsement changes your Liquor Liability Protection.

---

### How Your Coverage Is Changed

The following entity and location is excluded for coverage under this agreement.

### Excluded Entity and Location

Huston Mill House
849 Huston Mill Road
Atlanta, GA 30329

and

The Carter Center

### Other Terms

All other terms of your policy remain the same.

| If we issue this form after the date your policy takes effect, we must complete these spaces and our representative must sign below. | Policy issued to |
|---|---|
| | Emory University |
| Authorized representative | Agreement takes effect |
| | 01/01/96 |
| | Policy Number |
| | HG07200088 |
| 40502 Ed. 1-80 | Endorsement |

# POLICY FORM LIST

The **St.Paul**

Here's a list of all forms included in your
policy, on the date shown below. These forms
are listed in the same order as they appear in
your policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Introduction – St. Paul Mercury Insurance Company | 40811 | 05-87 |
| Policy Form List | 40705 | 05-84 |
| Additional Named Protected Persons Endorsement | 40502 | 01-80 |
| General Rules | 40701 | 05-84 |
| Cancellation Notification Endorsement | 40502 | 01-80 |
| Government Access To Records Endorsement | 40581 | 03-83 |
| Georgia Required Endorsement | 40518 | 07-94 |
| Ninety Day Cancellation Notice | 40502 | 01-80 |
| What To Do If You Have A Loss | 40814 | 11-91 |
| Commercial General Liability Protection Coverage Summary | 47110 | 04-91 |
| Commercial General Liability Protection | 47500 | 04-91 |
| Contract Liability Defense Expenses Endorsement | 47320 | 03-92 |
| Executive Officer And Leased Worker Endorsement | 47444 | 10-93 |
| Fellow Employee Bodily Injury Endorsement All Employees | 47167 | 04-91 |
| Pollution Exclusion Lead Example Endorsement | 47482 | 10-93 |
| Day Care Center Medical Expenses Exclusion Endorsement | 43371 | 07-85 |
| Computer Professional Services Exclusion Endorsement | 47178 | 04-91 |
| Bodilily Injury Definition Endorsement | 40502 | 01-80 |
| Additional Protected Persons Endorsement #1 | 40502 | 01-80 |
| Additional Protected Persons Endorsement #2 | 40502 | 01-80 |
| Colleges Or Schools Endt. With Student Medical Expenses Exclusion | 40502 | 01-80 |
| Leased Employee Endorsement | 40502 | 01-80 |
| Premises Exclusion Endorsement | 40502 | 01-80 |
| Watercraft Extension Endorsement | 40502 | 01-80 |
| Knowledge Of Accident Or Incident Endorsement | 40502 | 01-80 |
| Liquor Liability Protection Coverage Summary | 43885 | 09-86 |
| Liquor Liability Protection | 43611 | 11-85 |
| Exclusion Endorsement | 40502 | 01-80 |
| Association Management Liability Protection–Cls Md | 41022 | 09-81 |
| Technology Errors And Omissions Liability Protection – Claims-Made Coverage Summary | 43599 | 04-94 |
| Technology Errors And Omissions Liability Protection – Claims-Made | 43598 | 04-94 |
| Developmental Risk Exclusion Endorsement – Technology Errors And Omissions Liability | 47440 | 04-94 |
| Professional Services Exclusion Endorsement – Technology Errors And Omissions Liability | 47466 | 04-94 |
| Reporting Endorsement – Limited To Certain Claims Or Suits – Computer Services Or Software | 47579 | 09-94 |
| Limiting Endorsement | 40502 | 01-80 |

---

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** HG07200088
**Processing Date** 02/06/96  10:43  002

**Effective Date** 01/01/96

Additional Named Protected Persons Endorsement

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

This endorsement states that we will automatically cover for sixty (60) days any company, partnership or entity you acquire, or any newly acquired operating subsidiaries, when these companies, partnerships, entities and subsidiaries are greater than 50 percent owned or financially controlled by you. We must be notified within sixty (60) days of such formations.

You agreed to pay the additional permium for each new entity, if any, computed in accordance with the company's rules and rates.

OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 01/30/96  15:14  001 | |

These rules apply to the entire policy unless you're notified otherwise.

## Special Rights And Duties Of The First Named Insured

You agree that when more than one insured is named in the introduction, the first named insured has special rights and duties. These rights and duties are explained in the following General Rules:

•Premiums.
•Cancellation.
•Policy Changes.

## Your Policy Period

Insuring agreements in this policy begin at 12:01 a.m., standard time, on the effective date. If this policy replaces policies ending at noon, rather than 12:01 a.m., coverage begins at noon when the old policy ends.

Insuring agreements added to this policy after its effective date begin on the effective date of the added agreement.

Coverage ends at 12:01 a.m., standard time, on the expiration date. If all or part of this policy is canceled for any reason before that date, that coverage will end at 12:01 a.m., standard time, on the cancellation date.

## Premiums

We compute the premium you pay for this policy using information available at the time. So, all or part of your premium may be based on estimates. If estimates are used, we'll compute your actual premium when complete information is available at the end of the policy period. If it's more than you've paid, you'll owe us the difference. If it's less, we'll return the difference. But you won't pay less than any minimum annual premium agreed on. The first named insured is responsible for paying all premiums and will be the one to whom we'll pay any return premiums.

You must keep accurate records of the information we'll need to compute your premium. Your agent can explain the type of records we'll need. The first named insured agrees to send copies of these records at the end of each policy period - or any other time we request them.

## Our Right To Inspect And Audit

You agree to let us inspect your property and business operations during normal business hours while this policy is in force. We're not, however, required to make inspections. Nor will we guarantee that your property or operations are safe, or that they conform to any laws, codes, standards or regulations. This rule also applies to any organization which makes insurance inspections, surveys, reports or recommendations for us.

You also agree to let us examine and audit your financial books and records that relate to this insurance at any time up to 3 years after this policy ends.

## Policy Changes

This policy contains all the agreements between you and us concerning this insurance. The first named insured is authorized to make changes in this policy with our consent. This policy can only be changed by a written form included as part of the policy. This form must be signed by one of our authorized representatives.

We make changes in our standard insurance policy forms from time to time. These changes must conform to state law and are filed with insurance supervisory authorities for approval. While your coverage is in force we can make any change in the form of this policy that broadens or extends your coverage. If we do, and the change can be added to your policy without increasing the premium, you'll automatically receive the benefit of the extended or broadened coverage on the day the change is effective in your state.

## Assignment And Transfers

Neither you nor anyone else covered under this policy can assign or turn over your interest in it without our written consent attached to the policy.

However, there is one exception. If you are an individual named insured and you die, your rights and duties will be transferred to your legal representative; but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties concerning that property.

## Cancellation

The first named insured can cancel this policy in whole or part at any time.

To cancel, the first named insured must deliver the policy or the part to be cancelled to us or to any of our authorized agents. If this isn't possible notify us by mail and include the date coverage is to end. We'll refund the unused premium to the first named insured. less a charge for early cancellation.

If we cancel this policy, we'll mail or deliver a cancellation notice to the first named insured at least 30 days before coverage will end: 10 days if we're cancelling for nonpayment of premium. If notice is mailed, proof of mailing to the first named insured's last mailing address known to us will be considered proof you were notified. Any unused premium will be refunded to the first named insured as soon as possible. However, the cancellation will be effective whether or not we've made or offered a refund.

## Recovering Damages From A Third Party

Any person protected under this policy may be able to recover all or part of a loss from someone other than us. Because of this, each protected person must do all that's possible after a loss to preserve any right of recovery available. If we make a payment under this policy that right of recovery will belong to us.

If we recover more than we've paid, the excess will belong to the person who had the loss. But we'll deduct our recovery expenses first.

## Fraud And Misrepresentation

This policy is void if you or any other protected person hide any important information from us, mislead us, or attempt to defraud or lie to us about any matter concerning this insurance - either before or after a loss. Of course, everyone makes mistakes. Unintentional errors or omissions won't affect your rights under this policy.

## Appraisal Of Property Disputes

If your policy includes property insurance and agreement can't be reached on the amount of a property loss or the value of the property, the following procedure will be used:

1. One of us will make a written demand for an appraisal.
2. Each will select a competent and impartial appraiser and notify the other of the selection within 30 days of the demand.
3. The appraisers will select a competent and impartial umpire. If they can't agree on an umpire, either may ask that one be selected by a judge of a court having jurisdiction.
4. The appraisers will state separately the amount of the loss and the value of the property. If they don't agree, they'll submit their appraisals to the umpire. Agreement of two out of three will be binding.

You'll pay your appraiser and we'll pay ours. Other costs of the appraisal and the umpire will be shared equally by you and us.

If we submit to an appraisal, we'll still retain our right to deny the claim.

## How State Law Affects This Policy

Any part of this policy that conflicts with state law is automatically changed to conform to the law.

## Lawsuits Against Us

No one can sue us to recover under this policy unless all of its terms have been lived up to.

**If your policy includes property insurance.** Any lawsuit to recover on a property claim must begin within 2 years after the date on which the direct physical loss or damage occurred. State law gives you more time for property located in these states:
•North Dakota, North Carolina, Maryland - 3 years;
•Wyoming - 4 years; and
•Kansas, Nebraska - 5 years.

**If your policy includes liability insurance.** No one can sue us on a liability claim until the amount of the protected person's liability has been finally decided either by a trial or by a written agreement signed by the protected person, by us and by the party making this claim. Once liability has been determined by judgment or by written agreement, the party making the claim may be able to recover under this policy, up to the limits of coverage that apply. But that party can't sue us directly or join us in a suit against the protected person until liability has been so determined.

If the protected person or his or her estate goes bankrupt or becomes insolvent, we'll still be obligated under this policy.

## Provision Required By Law

"This policy is issued under and in pursuance of the laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909. (This provision applies only if this policy is issued in the St. Paul Fire and Marine Insurance Company.)

Cancellation Notification Endorsement

---

This endorsement changes your General Rules

HOW YOUR COVERAGE IS CHANGED

If we cancel this policy for any reason, we will mail or deliver a written cancellation notice to your last known address, to the attention of your Vice-President of Finance and Treasurer or General Council.

OTHER TERMS

All other terms of your policy remain the same.

---

| | | |
|---|---|---|
| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/96 |
| EMORY UNIVERSITY | **Processing Date** 01/30/96 15:14 001 | |

---

This endorsement changes your policy to comply with federal law.

---

**How Your Policy Is Changed**

**Other Terms**

This endorsement changes your policy to comply with the requirements of Section 952 of the Omnibus Reconciliation Act of 1980. Upon written request, we'll allow the Secretary of Health and Human Services and the Comptroller General access to the policy and necessary books, documents and records to verify the cost of the policy, to the extent required by law. Access will also be allowed to subcontracts between us and any related organization of ours and to its books, documents and records. Such access will be provided up to four years after the services furnished under this policy end.

All other terms of this policy remain the same.

The St.Paul

This endorsement changes your policy to comply with Georgia law.

## Cancellation

The Cancellation section of the General Rules is replaced by the following.

**How you can cancel.** To cancel this policy or any part of it, the first named insured must deliver the policy, or the part to be cancelled, stating a future date when the policy is to be cancelled, to us or to any of our authorized agents. If this isn't possible, notify us by mail and include the date coverage is to end. After receiving the written request of cancellation from the first named insured, we can waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first named insured. The first named insured will get a refund for the unused premium, less a charge for early cancellation.

However, a law, a rule of this policy, or a rule in another agreement may apply which says that the policy can't be cancelled without prior notice to someone else. If so, we'll mail or deliver at least 10 days notice of cancellation to the first named insured and the other person or organization. We'll do this as soon as possible after receiving the first named insured's request for cancellation. The notice will show the date coverage will end. That date will be:
• 10 days after the date we mail the notice; or
• the date the first named insured requested that coverage end;
whichever is later.

**How we can cancel if you don't pay your premium.** If you fail to pay any premium when due, we can cancel your policy. If we cancel for this reason, we'll mail or deliver a written cancellation notice to you and to any lienholder at least 10 days before your coverage will end.

**How we can cancel for other reasons.** If we decide to:
• cancel or nonrenew your policy;
• increase your premium by more than 15% (for a reason other than change in the risk; or

• change any of the policy's rules or provisions that would limit or restrict coverage;
we'll mail or deliver a notice telling you what we intend to do at least 45 days before the expiration date of your policy. If we mail the notice, it will be to the first named insured's last address known to us. However, if your policy has been in effect less than 60 days, or if we are cancelling or changing your policy because of nonpayment of premium, we'll send the notice at least 10 days before coverage will end.

**Mailing the notice—unused premium.** Mailing or delivery of this notice to the first named insured's last address know to us by proof of mailing will be proof you were notified of the cancellation, non-renewal or change.

**Special rule for certain residential buildings.** If you are an individual and your policy covers residential buildings the following special cancellation rules apply.

If this policy is a new policy that is in its initial policy period and has been effect less that 60 days, we can cancel for any reason. If we do, we'll mail a cancellation notice to the first named insured at least 10 days before coverage will end.

If this policy is a renewal or continuation policy or a new policy that has been in effect more than 60 days, we can only cancel for one of the following reasons:

*1. Nonpayment of premium.*

*2. Fraud and misrepresentation.* We can cancel if we discover that in obtaining this policy, you or your representative have committed fraud.

*3. Change in the risk.* We can cancel, if, after we have issued or renewed your policy, an increase occurs in a hazard which was within your control. But only if this increase in hazard would result in an increase in your premium.

*4. Breaking the rules of this policy.* We can cancel, if, after we have issued or renewed your policy, we find a violation of any of the material terms or conditions caused by any person insured under this policy.

We can cancel by giving notice to the first named insured at least:

• 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

• 45 days before the effective date of cancellation if we cancel for any other reason.

**Special rule for contractors.** If your policy includes Contractors Commercial General Liability Protection or Contractors Umbrella Excess Liability Protection, the following applies:

If we cancel this policy, we'll mail or deliver a cancellation notice to the first named insured at least:

• 10 days before coverage will end if we cancel for nonpayment of premium; or

• 90 days before coverage will end if we cancel for any other reason we explain above.

**Other Terms**

All other terms of your policy remain the same.

©St.Paul Fire and Marine Insurance Co.1994 All Rights Reserved

Ninety Day Cancellation Notice

---

This endorsement changes your Georgia Required Endorsement.

HOW YOUR COVERAGE IS CHANGED

The "How we can cancel for other reasons" section of the above endorsement is revised to read as follows:

HOW WE CANCEL FOR OTHER REASONS. If we decide to:

* cancel or nonrenew your policy;
* increase your premium by more than 15%, (for a reason other than change in the risk); or
* change any of the policy's rules or provisions that would limit or restrict coverage; we'll mail or deliver a notice telling you what we intend to do at least 90 days before the expiration date of your policy. If we mail the notice, it will be to the first named insured's last address known to us.

OTHER TERMS

All other terms of your policy remain the same.

---

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 01/30/96  15:14  001 | |

40502 Ed.1-80 Printed in U.S.A.                    Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved                    Page    1

You or other protected persons are required to perform the duties described below when a property loss that may be covered under this policy happens or an accident or incident happens that could result in liability damages covered under this policy. Failure to comply could affect coverage. The insuring agreements contained in this policy determine what is covered. As a result, you should read them carefully to understand the extent of the coverage provided.

## When This Policy Provides Property Protection

If there is a property loss that may be covered by property protection provided in this policy you must:

**1.** Notify the police if a law may have been broken.

**2.** Tell us or our agent what happened as soon as possible. Include the time and place of the event, a description of the property and the names and addresses of any witnesses.

**3.** Do what is reasonable and necessary to protect covered property from further damage. Keep a record of your expenses for consideration in your claim.

**4.** If feasible, separate the damaged property from the undamaged and make an inventory of the damaged items.

**5.** Cooperate with us in the investigation and settlement of the claim. Permit us to inspect the damaged property and any records pertaining to your loss as many times as may be required. Permit us to take samples of damaged and undamaged property for testing and analysis.

**6.** Allow us to examine you or any other insured under oath while not in the presence of any other insured. We may do this whenever reasonably required about any matter relating to this insurance or the claim. Any insured we examine must sign a copy of their answers.

**7.** Send us a signed, sworn proof of loss containing the information we need to resolve the claim. You must do this within 60 days after our request. We'll supply the forms. We'll pay within 30 days after we reach agreement with you.

## When This Policy Provides Liability Protection

If an accident or incident happens that may involve liability protection provided in this policy, you or any other protected person involved must:

**1.** Notify the police if a law may have been broken.

**2.** Tell us or our agent what happened as soon as possible. Do this even though no demand for damages has been made against you or any other protected person, but you or another protected person is aware of having done something that may later result in a demand for damages. This notice should include all of the following:
- The time and place of the accident or incident;
- The protected person involved;
- The specific nature of the accident or incident including the type of demand for damages that may result; and
- The names and addresses of any witnesses and injured people.

### Important Notice For Health Care Providers
If your policy includes one of our claims-made medical professional liability protection insuring agreements, you should also read the When This Agreement Covers Section of that agreement. We won't consider a "Patient Incident Report," "Variance Report," or any other report made for loss prevention purposes to be your report of a claim. This applies even if you send it to us or one of our agents.

**3.** Send us a copy of all written demands. Also send us a copy of all legal documents if someone starts a lawsuit.

**4.** Cooperate and assist us in securing and giving evidence, attending hearings and trials, and obtaining the attendance of witnesses.

**5.** Not assume any financial obligation or pay out any money without our consent. But this rule doesn't apply to first aid given to others at the time of an accident.

**COMMERCIAL GENERAL LIABILITY PROTECTION COVERAGE SUMMARY**

This Coverage Summary shows the limits of coverage that apply to your Commercial General Liability Protection. It also lists those endorsements, if any, that must have certain information shown for them to apply.

| Limits Of Coverage | | IMPORTANT NOTE: |
|---|---|---|
| **General total limit.** | 2,000,000. | **Retroactive Date:** |
| **Products and completed work total limit.** | 1,000,000. | The retroactive date applies only if the Commercial General Liability Protection - Claims-Made insuring agreement is a part of this policy. |
| **Personal injury each person limit.** | 1,000,000. | |
| **Advertising injury each person limit.** | 1,000,000. | However, if no date is shown above and the claims-made agreement applies, we'll consider the retroactive date to be the same as the beginning date of this policy. |
| **Each event limit.** | 1,000,000. | |
| *Premises damage limit.* | 100,000. | |
| *Medical expenses limit.* | 5,000. | |

**Named Endorsement Table**

**Important Note:** Only endorsements that must have certain information shown for them to apply are named in this table. The required information follows the name of each such endorsement. Other endorsements may apply too. If so, they're listed on the Policy Forms List.

```
Watercraft Endorsement
  Description of Watercraft
  1.  One - 13'10" Jonboat
  2.  One - 16' Jonboat
  3.  One - 40' Four oar rowing shell
  4.  One - 60' Eight oar rowing shell
  5.  One - 16' Canoes
  6.  One - 14' Jonboat
```

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 01/30/96  15:14  001 | |



# EXHIBIT / ATTACHMENT

## _____B_____

(To be scanned in place of tab)

This insuring agreement provides general liability protection for your business. There are, of course, limitations and exclusions which apply to that protection. As a result, this agreement should be read carefully to determine the extent of the coverage provided to you and other protected persons.

**Table of Contents**                                      Page

**What This Agreement Covers**                             1
  Bodily injury and property damage liability.             1
  Personal injury liability.                               1
  Advertising injury liability.                            2
  Medical expenses.                                        2
  Right and duty to defend.                                3
  Additional payments.                                     3
  Right to appeal.                                         4

**When This Agreement Covers**                             4
  Bodily injury and property damage liability.             4
  Personal injury liability.                               4
  Advertising injury liability.                            4
  Medical expenses.                                        4

**Where This Agreement Covers**                            4

**Who Is Protected Under This Agreement**                  4
  Individual.                                              4
  Partnership or joint venture.                            4
  Corporation or other organization.                       4
  Employees.                                               4
  Real estate managers.                                    5
  Operators of registered mobile equipment.               5
  Newly acquired or formed organizations.                 5
  Separation of protected persons.                         6

**Limits Of Coverage**                                     6
  General total limit.                                     6
  Products and completed work total limit.                 6
  Personal injury each person limit.                       7
  Advertising injury each person limit.                    7
  Each event limit.                                        7
  How the limits of coverage apply to an
    extension of the policy period.                        7
  How the limits of coverage apply if a total
    limit is left blank.                                   7

**Exclusions – What This Agreement Won't Cover**           7
  Advertising, broadcasting, publishing or
    telecasting business.                                  7
  Aircraft.                                                8
  Auto.                                                    8
  Breach of contract.                                      8
  Contract liability.                                      8

  Control of property.                                     9
  Damage to your products or completed
    work.                                                  9
  Deliberately breaking the law.                           10
  Employer's liability.                                    10
  False material.                                          10
  Impaired property.                                       10
  Intentional bodily injury or property
    damage.                                                11
  Liquor liability.                                        11
  Material first made known.                               11
  Medical expenses of certain persons.                     11
  Mobile equipment.                                        11
  Nuclear energy liability.                                12
  Pollution.                                               13
  Poor quality or performance.                             14
  Product recall.                                          14
  Watercraft.                                              14
  Workers' compensation.                                   15
  Wrong price description.                                 15

**Other Insurance**                                        15
  Other primary insurance.                                 15
  Excess insurance.                                        15
  Methods of sharing.                                      15

## What This Agreement Covers

**Bodily injury and property damage liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or premises damage that:

• happens while this agreement is in effect; and
• is caused by an event.

**Personal injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:

• results from your business activities, other than advertising, broadcasting, publishing or telecasting done by or for you; and
• is caused by a personal injury offense committed while this agreement is in effect.

**Advertising injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:
•results from the advertising of your products, work or completed work; and
•is caused by an advertising injury offense committed while this agreement is in effect.

**Medical expenses.** We'll pay covered medical expenses that result from bodily injury caused by an event which happens while this agreement is in effect, even if the protected person isn't legally required to do so.

*Protected person* means any person or organization who qualifies as a protected person under the Who Is Protected Under This Agreement section.

*Bodily injury* means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness or disease:
•Mental anguish, injury or illness.
•Emotional distress.
•Care, loss of services, or death.

*Property damage* means:
•physical damage to tangible property of others, including all resulting loss of use of that property; or
•loss of use of tangible property of others that isn't physically damaged.

We'll consider all loss of use of damaged tangible property to happen at the time of the physical damage which caused it. And we'll consider all loss of use of undamaged tangible property to happen at the time of the event which caused it.

*Premises damage* means property damage to premises that you rent, lease or borrow from others.

*Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Personal injury* means injury, other than bodily injury or advertising injury, caused by a personal injury offense.

*Personal injury offense* means any of the following offenses:
•False arrest, detention or imprisonment.
•Malicious prosecution.
•Wrongful entry or wrongful eviction.
•Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
•Libel or slander.
•Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
•Making known to any person or organization written or spoken material that violates an individual's right of privacy.

*Advertising injury* means injury, other than bodily injury or personal injury, caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:
•Libel or slander.
•Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
•Making known to any person or organization written or spoken material that violates an individual's right of privacy.
•Unauthorized taking or use of any advertising idea, material, slogan, style or title of others.

*Advertising* means attracting the attention of others by any means for the purpose of seeking customers or increasing sales or business.

*Broadcasting* means transmitting any audio material by radio, or transmitting or televising any audio or visual material by television, for any purpose.

*Publishing* means creating and producing any printed material for distribution or sale to others for any purpose.

However, we won't consider creating and producing any of the following printed material to be publishing:
•Correspondence written in the conduct of your business.
•Bulletins, financial or annual reports, newsletters and other printed material that describes or reports your business activities.

*Telecasting* means transmitting or televising any audio or visual material by television for any purpose.

*Medical expenses* mean the reasonable expenses incurred by any person or organization for necessary medical services received by a *person anytime during the one year following* the date of an event which causes that person to sustain bodily injury.

*Medical services* include:
•first aid received at the time of an event;
•ambulance and emergency care services;
•dental, medical, nursing, surgical, x-ray and other health care professional services;
•hospital services;
•artificial limbs and organs; and
•funeral services.

We explain what we mean by your products, your work and your completed work in the Products and completed work total limit section.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered injury or damage made or brought against any protected person. We'll do so even if any of the allegations of any such claim or suit are groundless, false or fraudulent. But we have no duty to perform other acts or services. And our duty to defend claims or suits ends when we have used up the limits of coverage that apply with the payment of judgments, settlements or medical expenses.

We'll have the right to investigate any claim or suit to the extent that we believe is proper. We'll also have the right to settle any claim or suit within the available limits of coverage.

*Claim* means a demand which seeks damages.

*Suit* means a civil proceeding which seeks damages. It includes:
•an arbitration proceeding for such damages to which the protected person must submit or submits with our consent; and
•any other alternative dispute resolution proceeding for such damages to which the protected person submits with our consent.

*Injury or damage* means bodily injury, personal injury, advertising injury or property damage or premises damage.

**Additional payments.** We'll have the duty to make only the payments shown below in connection with any claim or suit we defend. These payments are in addition to the limits of coverage. But our duty to make such payments ends when we have used up the limits of coverage that apply with the payment of judgments, settlements or medical expenses.

*Our expenses.* We'll pay all expenses we incur.

*Bail bonds.* We'll pay up to $250 of the cost of bail bonds that are required because of accidents or violations of traffic laws. But only if the accidents or violations result from the use of a vehicle to which the bodily injury liability coverage under this agreement applies. We don't have to furnish such bonds.

*Bonds to release property.* We'll pay the cost of bonds to release property that's being used to secure a legal obligation. But only for bond amounts within the limit of coverage that applies. We don't have to furnish such bonds.

*Expenses incurred by protected persons.* We'll pay all reasonable expenses that any protected person incurs at our request while helping us investigate or defend a claim or suit. But we won't pay more than $250 per day for earnings actually lost by the protected person because of time taken off from work.

*Taxed costs.* We'll pay all costs taxed against any protected person in a suit.

*Pre-judgment interest.* We'll pay the pre-judgment interest that's awarded against the protected person on that part of a judgment paid by us. But if we make a settlement offer to pay the available limit of coverage, we won't pay the pre-judgment interest that accumulates after the date of our offer.

*Post-judgment interest.* We'll pay all interest that accumulates on the full amount of that part of a judgment for which we make a payment. But only from the date of the judgment to the date we:
•pay;

•offer to pay; or
•deposit in court;
the limit of coverage that applies to the judgment.

**Right to appeal.** We'll have the right to appeal a judgment for covered injury or damage in any suit we defend.

If we appeal such a judgment, we'll pay all expenses which result directly from that appeal, including the cost of appeal bonds and post-judgment interest. Such appeal expenses are in addition to the limits of coverage. However, the results of an appeal won't change the limits of coverage that apply under this agreement.

## When This Agreement Covers

**Bodily injury and property damage liability.** We'll apply this agreement to claims or suits for covered bodily injury, property damage or premises damage whenever they're made or brought.

**Personal injury liability.** We'll apply this agreement to claims or suits for covered personal injury whenever they're made or brought.

**Advertising injury liability.** We'll apply this agreement to claims or suits for covered advertising injury whenever they're made or brought.

**Medical expenses.** We'll apply this agreement to covered medical expenses only when they're reported to us during the one year following the date of the event.

## Where This Agreement Covers

We'll defend claims and suits, and pay judgments, settlements and medical expenses, only in the coverage territory for covered injury or damage that's caused by events or offenses which happen or are committed there.

However, we'll also defend claims and suits, and pay judgments, settlements and medical expenses, in the coverage territory for covered injury or damage that's caused by events or offenses which happen or are committed in the rest of the world if they result from:
•the activities of a person whose home is in the coverage territory, but is away for a short time on your business; or
•your products made or sold by you in the coverage territory.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada. It includes international waters or airspace only during travel or transportation between any of the above places.

## Who Is Protected Under This Agreement

**Individual.** If you are named in the Introduction as an individual, you and your spouse are protected persons only for the conduct of a business of which you are the sole owner.

**Partnership or joint venture.** If you are named in the Introduction as a partnership or joint venture, you are a protected person. Your partners or co-venturers and their spouses are protected persons only for the conduct of your business.

However, no person or organization is a protected person for the conduct of any current or past partnership or joint venture that's not named in the Introduction.

**Corporation or other organization.** If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers and directors are protected persons only for their duties as your officers or directors. And your stockholders are protected persons only for their liability as your stockholders.

**Employees.** Your employees are protected persons only for work done within the scope of their employment by you.

However, no employee is a protected person for bodily injury or personal injury to:
•you;
•any fellow employee; or

•the spouse or any child, parent, brother or sister of that fellow employee if such injury results from the bodily injury or personal injury to the fellow employee.

Nor is any employee a protected person for:
•any obligation to share damages with or repay someone else who must pay damages because of bodily injury or personal injury to any fellow employee; or
•bodily injury or personal injury that results from their performance of or failure to perform health care professional services.

In addition, no employee is a protected person for property damage to property that's:
•owned, rented, leased, occupied, borrowed or used by;
•in the care, custody or control of; or
•being physically controlled for any purpose by;
you, that employee, any fellow employee, or any protected partner, co-venturer or spouse.

But we won't apply the exclusions in this Employees section to:
•bodily injury caused by the providing of or failure to provide first aid by an employee, other than an employed doctor or nurse; or
•premises damage.

Nor will we apply this Employees section to your executive officers. Instead, we'll apply the Corporation or other organization section to them.

*Health care professional services* include:
•dental, medical, mental, nursing, surgical, x-ray and other health care professional services, including food or beverages provided with those services;
•the dispensing of drugs or medical or dental supplies and appliances; and
•the handling or treatment of corpses, including autopsies, organ donations and other postmortem procedures.

**Real estate managers.** Your real estate managers are protected persons only for their management of premises you own, rent, lease or borrow. They may be persons or organizations.

But we won't apply this Real estate managers section to your employees. Instead, we'll apply the Employees section to them.

**Operators of registered mobile equipment.** All operators of registered mobile equipment are protected persons for their driving of such equipment on a public street or road with your permission.

Any person or organization legally responsible for the driving conduct of those operators is also a protected person. But only if there's no other valid and collectible insurance available to cover their liability for the operators.

However, no operator or any other person or organization is a protected person for:
•bodily injury to a fellow employee of the person driving the equipment; or
•property damage to property owned, rented, leased, occupied or controlled by you or the employer of an operator who is a protected person.

*Registered mobile equipment* means mobile equipment that's registered in your name under any motor vehicle registration law.

We explain what we mean by mobile equipment in the Mobile equipment exclusion.

**Newly acquired or formed organizations.** Any organization, other than a partnership or joint venture, that you acquire or form while this agreement is in effect is a protected person if you own more than 50% of it.

However, no newly acquired or formed organization is a protected person for:
•more than 90 days, or the remainder of the policy period, whichever is less, from the date that you acquire or form it, unless we agree that it should continue to be a protected person after the end of that period of time;
•bodily injury or property damage that happened before you acquired or formed it;
•personal injury or advertising injury that results from an offense committed before you acquired or formed it; or
•injury or damage that's covered under other similar general liability insurance.

**Separation of protected persons.** We'll apply this agreement:

•to each protected person named in the Introduction as if that protected person was the only one named there; and

•separately to each other protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section. Also, any right or duty specifically assigned to the first Named Insured remains unchanged. We explain those rights and duties in the General Rules, which is a part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay regardless of the number of:

•protected persons;

•claims made or suits brought; or

•persons or organizations making claims or bringing suits.

**General total limit.** This is the most we'll pay for the combined total of:

•all covered bodily injury, property damage and premises damage that happens in a policy year;

•all covered personal injury that's caused by all personal injury offenses committed in a policy year;

•all covered advertising injury that's caused by all advertising injury offenses committed in a policy year; and

•all covered medical expenses that result from all events which happen in a policy year.

However, this limit doesn't apply to covered bodily injury and property damage that results from your products and completed work. Instead, the Products and completed work total limit applies. We explain that limit and what we mean by your products and your completed work in the Products and completed work total limit section.

*Policy year* means the policy period shown in the Introduction when the policy period is one year or less. But when the policy period is longer than one year, it means each consecutive annual period, and the remaining period if any, that the policy is in effect, starting with the date the policy begins.

**Products and completed work total limit.** This is the most we'll pay for the combined total of all covered bodily injury and property damage that:

•results from your products and completed work; and

•happens in a policy year.

*Your products* mean any of the goods or products that are or were manufactured, sold, handled, distributed or disposed of by:

•you;

•others using your name; or

•any person or organization whose business or assets you've acquired.

Your products include:

•all containers, equipment, materials or parts provided with or for your products;

•any warranty provided with or for your products;

•any statement made, or which should have been made, about the durability, fitness, handling, maintenance, operation, performance, quality, safety or use of your products; and

•all warnings, instructions or directions provided, or which should have been provided, with or for your products.

However, we won't consider the following to be your products:

•Goods or products that are still in your physical possession or on premises you own, rent, lease or borrow.

•Real property.

•Containers that are vehicles.

•Property rented or leased to others.

•Property you haven't sold, but which you allow others to use. For example, a vending machine.

*Your completed work* means your work that is completed at the earliest of the following times, including work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete:

•When all of the work called for in your contract has been completed.

•When all of the work to be done at the work site has been completed, if your contract calls for work at more than one site.

•When that part of the work at the work site has been put to its intended use by any person or

organization, other than another contractor or subcontractor working on the same project.

However, we won't consider the following to be your completed work:
•Work that hasn't yet been completed or abandoned.
•Uninstalled equipment, abandoned or unused materials, or tools.
•Work done in connection with transporting property - other than a condition created in or on a vehicle by the loading or unloading of it.
•Premises or other real property that you own.
•Any work while on premises you own, rent, lease or borrow.

*Your work* means:
•any work that you're performing or others are performing for you; or
•any service that you're providing or others are providing for you.

Your work includes:
•all equipment, materials or parts provided with or for your work;
•any warranty provided with or for your work;
•any statement made, or which should have been made, about the durability, fitness, handling, maintenance, operation, performance, quality, safety or use of your work; and
•all warnings, instructions or directions provided, or which should have been provided, with or for your work.

We explain what we mean by loading or unloading in the Auto exclusion.

**Personal injury each person limit.** This is the most we'll pay for all covered personal injury that:
•is sustained by any one person or organization; and
•is caused by all personal injury offenses committed in a policy year.

**Advertising injury each person limit.** This is the most we'll pay for all covered advertising injury that:
•is sustained by any one person or organization; and
•is caused by all advertising injury offenses committed in a policy year.

**Each event limit.** This is the most we'll pay for all covered bodily injury, property damage, premises damage and medical expenses that result from any one event.

However, the most we'll pay for covered premises damage or covered medical expenses that result from any one event is further limited by the following:

*Premises damage limit.* This is the most we'll pay for all covered premises damage that results from any one event.

*Medical expenses limit.* This is the most we'll pay for all covered medical expenses that:
•are incurred for bodily injury sustained by any one person; and
•result from any one event.

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for three years. During the last policy year you request a three month extension. We agree. As a result, your last policy year becomes 15 months. It will be subject to the same limits of coverage that applied when the policy year was 12 months.*

**How the limits of coverage apply if a total limit is left blank.** If the amount of the General total limit or the Products and completed work total limit is left blank in the Coverage Summary, that total limit will be considered to be the same as the Each event limit or $100,000, whichever is more.

## Exclusions – What This Agreement Won't Cover

**Advertising, broadcasting, publishing or telecasting business.** We won't cover advertising injury that results from an offense committed by any protected person in the business of advertising, broadcasting, publishing or telecasting.

**Aircraft.** We won't cover bodily injury, property damage or medical expenses that result from the:

- ownership, maintenance, use or operation;
- loading or unloading; or
- entrustment to others;

of any aircraft owned, operated, rented, leased or borrowed by any protected person.

But we won't apply this exclusion to:
- liability for bodily injury or property damage assumed under any covered contract for the ownership, maintenance or use of aircraft; or
- bodily injury, property damage or medical expenses that result from the operation of specialized equipment.

We explain what we mean by entrustment to others and loading or unloading in the Auto exclusion.

We explain what we mean by specialized equipment in the Mobile equipment exclusion.

**Auto.** We won't cover bodily injury, property damage or medical expenses that result from the:

- ownership, maintenance, use or operation;
- loading or unloading; or
- entrustment to others;

of any auto owned, operated, rented, leased or borrowed by any protected person.

But we won't apply this exclusion to bodily injury, property damage or medical expenses that result from the:
- parking of an auto on any premises you own, rent, lease or borrow, or on ways next to such premises, if the auto isn't owned, rented, leased or borrowed by any protected person; or
- operation of specialized equipment.

*Auto* means any land motor vehicle, trailer or semitrailer designed for travel on public streets or roads. It includes any permanently attached machinery or equipment. But we won't consider mobile equipment to be an auto.

*Loading or unloading* means the handling of property:
- while it's being moved from the place where it's accepted for transportation;
- while it's being loaded, transported and unloaded; and

- until it's moved to the place where it's finally delivered.

However, we won't consider moving property by an unattached mechanical device to be loading or unloading.

*Unattached mechanical device* includes any forklift, conveyor or other unattached mechanical device, other than a hand truck.

*Entrustment to others* means:
- the permitting of others to use or do something; or
- the giving of something to others for safekeeping.

We explain what we mean by mobile equipment and specialized equipment in the Mobile equipment exclusion.

**Breach of contract.** We won't cover advertising injury that results from the failure of any protected person to do what is required by a contract or agreement.

But we won't apply this exclusion to the unauthorized taking or use of advertising ideas if the contract or agreement doesn't specifically prohibit such taking or use.

**Contract liability.** We won't cover the protected person's liability for injury or damage assumed under any contract or agreement.

However, we won't apply this exclusion to liability for injury or damage the protected person would have without the contract or agreement. Nor will we apply this exclusion to the protected person's liability for bodily injury or property damage assumed under a covered contract made before the bodily injury or property damage happens.

*Covered contract* means any:
- lease of premises;
- sidetrack agreement;
- elevator maintenance agreement;
- easement or license agreement;
- obligation to indemnify a municipality if the obligation is required by ordinance and isn't connected with your work for the municipality;
- contract or agreement under which you assume the tort liability of a municipality to pay damages for covered bodily injury or prop-

erty damage that is sustained by others and results from your work for the municipality; or
•other contract or agreement under which you assume the tort liability of another to pay damages for covered bodily injury or property damage that's sustained by others.

*Tort liability* means a liability that would be imposed by law without any contract or agreement.

But we won't consider the following parts of any contract or agreement to be a covered contract:

*Architect, engineer or surveyor indemnity.* That part which indemnifies any architect, engineer or surveyor for bodily injury or property damage *that results from the:*
•preparation or approval of, or failure to prepare or approve, maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or
•giving of or failure to give directions or *instructions if that giving or failure to give is* the primary cause of the bodily injury or property damage.

*Protected architect, engineer or surveyor.* That part which indemnifies any person or organization for bodily injury or property damage that results from the performance of or failure to perform architect, engineer or surveyor professional services by the protected person who is an architect, engineer or surveyor.

*Architect, engineer or surveyor professional services* include:
•the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and
•supervisory, inspection or engineering services.

*Premises damage.* That part which indemnifies any person or organization for property damage to premises you rent, lease or borrow from others.

*War.* That part which indemnifies any person or organization for bodily injury or property damage caused by war.

We explain what we mean by war in the Medical expenses of certain persons exclusion.

**Control of property.** We won't cover property damage to the following property:
•Property you own, rent, lease, occupy or borrow. But we won't apply this exclusion part to premises damage.
•Premises you sell, give away or abandon, if such property damage results from any part of those premises. But we won't apply this exclusion part to property damage to premises which are your completed work and were never occupied, rented or held for rental by you.
•Personal property in the care, custody or control of the protected person.
•That particular part of real property being worked on by or for you, if such property damage results from your work.
•That particular part of any property which must be restored, repaired or replaced because your work was incorrectly performed on it. But we won't apply this exclusion part to property damage that results from your completed work.

Furthermore, we won't apply this exclusion to liability for property damage to the above property, other than the property described below, if such liability is assumed under a sidetrack agreement:
•Property you own, rent, lease or occupy.
•Premises you sell, give away or abandon.

**Damage to your products or completed work.** We won't cover property damage to any of your products that's caused by the product itself or by any of its parts. For example:

*You manufacture air conditioners. They contain several moving parts which can break down for many reasons. Regardless of the cause, we won't protect you for any property damage to the part that fails or to the rest of the air conditioner.*

Nor will we cover property damage to your completed work that's caused by the work itself or by any of its parts. But we won't apply this exclusion part if:
•this agreement provides completed work coverage; and
•the damaged completed work, or the completed work that causes the property damage, was done for you by others. For example:

You construct a building as a general contractor. Some of the work is done by you while the rest is done for you by subcontractors. The building is accepted by the owner. If it's damaged by a fire caused by electrical wiring installed by a subcontractor, we won't apply the exclusion. However, if the wiring was installed by you, we'll apply the exclusion to property damage to your completed work done by you.

**Deliberately breaking the law.** We won't cover personal injury or advertising injury that results from:

• the protected person knowingly breaking any criminal law; or

• any person or organization breaking any criminal law with the consent or knowledge of the protected person.

**Employer's liability.** We won't cover bodily injury to an employee arising out of and in the course of his or her employment by a protected person. Nor will we cover bodily injury to the spouse, child, parent, brother or sister of that employee which results from the bodily injury to the employee.

We'll apply this exclusion whether the protected person may be held liable as an employer or in any other capacity, such as a property owner or product manufacturer. For example:

You manufacture tires. Your employee is injured while driving a company truck equipped with your tires, when one of the tires blows out resulting in an accident. He receives workers' compensation benefits. If he later sues you in your capacity as a manufacturer, alleging that his injury happened because your product was defective, we won't protect you.

We'll also apply this exclusion to any obligation of the protected person to share damages with or repay someone else who must pay damages because of bodily injury to any employee of the protected person. For example:

Your employee is injured in a printing press accident. She receives workers'

compensation benefits. Later, she sues the manufacturer of the printing press alleging that her injury happened because the press didn't have enough guarding devices on it. If the manufacturer in turn sues you alleging that your faulty maintenance of the press – not the lack of guarding devices – resulted in the employee's injury, we won't protect you.

But we won't apply this exclusion to liability for bodily injury assumed under any covered contract.

**False material.** We won't cover personal injury or advertising injury that results from making known to any person or organization false written or spoken material that:

• was made known by or for the protected person; and

• the protected person knew was false when it was made known.

**Impaired property.** We won't cover property damage to impaired property, or to property which isn't physically damaged, that results from:

• your faulty or dangerous products or completed work; or

• a delay or failure in fulfilling the terms of a contract or agreement.

But we won't apply this exclusion to the loss of use of property, other than your products or completed work, that results from sudden and accidental physical damage to your products or completed work after they've been put to their intended use. For example:

You supply an electric motor to a customer who uses it to power his conveyor. The motor's shaft breaks several days later while he's operating the conveyor. The conveyor isn't damaged, but your customer has extra costs because he's unable to use it until the motor is repaired. If he sues you to recover those costs, we won't apply the exclusion. However, if the customer discovers while hooking the motor up to the conveyor that the motor's shaft is broken, we won't protect you.

*Impaired property* means tangible property, other than your products or completed work, that can be restored to use by nothing more than:
•an adjustment, repair, replacement or removal of your products or completed work which forms a part of it; or
•your fulfilling the terms of a contract or agreement.

**Intentional bodily injury or property damage.** We won't cover bodily injury or property damage that's expected or intended by the protected person. Nor will we cover medical expenses that result from such bodily injury.

But we won't apply this exclusion to intentional bodily injury or property damage that results from the use of reasonable force to protect people or property.

**Liquor liability.** We won't cover bodily injury, property damage or medical expenses that result from any protected person:
•causing or contributing to the intoxication of any person;
•selling, serving or furnishing alcoholic beverages to any person under the legal drinking age or under the influence of alcohol; or
•violating any law or regulation applying to the sale, gift, distribution or use of alcoholic beverages.

But we'll apply this exclusion only if you're in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For example:

*You manufacture office equipment. Each year you host an awards banquet with an open bar for your sales representatives. After this year's banquet an intoxicated guest is involved in an auto accident. The guest and several others are injured. If someone sues you, alleging that your serving of liquor caused the guest's intoxication and involvement in the accident, we won't apply the Liquor liability exclusion because you're not in the business of serving liquor.*

**Material first made known.** We won't cover personal injury or advertising injury that results from making known to any person or organization written or spoken material that was first

made known before this agreement went into effect.

**Medical expenses of certain persons.** We won't cover medical expenses incurred by or for any person:
•injured while qualifying as a protected person;
•injured while performing work for any protected person or a tenant of any protected person;
•injured on that part of any premises you own, rent or lease that the injured person normally occupies;
•to whom benefits are payable, or are required to be provided, under a workers' compensation or disability benefits law, or any similar law;
•injured by your products or completed work;
•injured due to war; or
•who refuses to be examined as often as we require, within reason, by doctors we choose.

*War* includes:
•declared or undeclared war, or invasion;
•warlike action by a military force or other agents of any government, sovereign or other authority;
•civil war, insurrection, rebellion, revolution or seizure of power; or
•anything done to hinder or defend against such actions.

**Mobile equipment.** We won't cover bodily injury, property damage or medical expenses that result from the transportation of mobile equipment by an auto owned, operated, rented, leased or borrowed by any protected person.

Nor will we cover bodily injury, property damage or medical expenses that result from the use of racing mobile equipment.

*Mobile equipment* means any land vehicle that:
•is designed for use primarily off public streets or roads;
•is kept for use only on or next to premises you own, rent or lease;
•travels on crawler treads;
•is kept primarily for the ready movement of permanently attached construction equipment; or
•doesn't travel under its own power and is kept primarily for the ready movement of permanently attached specialized equipment.

Mobile equipment includes any land vehicle not described above that's kept primarily for purposes other than carrying people or cargo. But we won't consider such a vehicle to be mobile equipment if it:

• travels under its own power;

• is operated like an auto during travel on a public street or road; and

• has permanently attached specialized equipment; or

• has permanently attached equipment designed for snow removal, street cleaning, or street or road maintenance – but not construction or resurfacing.

*Construction equipment* includes any grader, scraper, roller or power crane, shovel, loader, digger or drill.

*Specialized equipment* means any:

• cherry picker or similar device used to lift workers;

• pump, generator or air compressor; or

• other equipment, such as building cleaning, geophysical exploration, lighting, spraying, welding or well-servicing equipment, that has a built-in pump, generator or air compressor.

*Racing mobile equipment* means any mobile equipment while being prepared for or used in any:

• prearranged racing, speed, demolition or stunt-ing contest or activity; or

• practice for such contest or activity.

We explain what we mean by auto, loading or unloading, and entrustment to others in the Auto exclusion.

**Nuclear energy liability.** We won't cover bodily injury or property damage for which any protected person:

• is covered by a nuclear energy liability insurance policy; or

• would have been covered by such policy if that policy's limits of coverage hadn't been used up.

Nor will we cover bodily injury or property damage that results from the hazardous properties of nuclear material and for which:

• any person or organization is required by law to maintain financial protection in accordance with the federal Atomic Energy Act, or any of its amendments; or

• any protected person is entitled, or would have been entitled had this agreement not been issued, to indemnity from the United States government, or any of its agencies, under any contract or agreement between the government, or any of its agencies, and any person or organization.

We also won't cover medical expenses that result from:

• the hazardous properties of nuclear material; and

• the operation of a nuclear facility by any person or organization.

And we won't cover bodily injury or property damage that results from the hazardous properties of nuclear material when:

• the nuclear material is located at, or at any time discharges or disperses from, any nuclear facility owned by any protected person, or operated by or for any protected person;

• the nuclear material is contained in spent nuclear fuel or nuclear waste that is at any time possessed, handled, used, processed, stored, transported or disposed by or for any protected person; or

• the bodily injury or property damage results from the furnishing by any protected person of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility. But we'll apply this exclusion part only to property damage to the nuclear facility, and any property located on the site of that facility, if the nuclear facility is in the United States of America, its territories or possessions, Puerto Rico or Canada.

*Nuclear energy liability insurance policy* means any nuclear energy liability insurance policy issued by:

• Nuclear Energy Liability Insurance Association;

• Mutual Atomic Energy Liability Underwriters;

• Nuclear Insurance Association of Canada; or

• any of their successors.

*Property damage* includes all forms of radio-active contamination of property.

*Hazardous properties* include radioactive, toxic or explosive properties.

*Nuclear material* means any of the following materials which are defined in the federal Atomic Energy Act, or any of its amendments:
•Source material.
•Special nuclear material.
•By-product material.

*Nuclear facility* means any:
•nuclear reactor;
•uranium isotopes separation device or equipment;
•special nuclear material device or equipment; or
•nuclear waste site.

Nuclear facility includes:
•the site on which it's located;
•all operations conducted on such site; and
•all premises used for such operations.

*Nuclear reactor* means any device, equipment or machine that's designed or used to:
•sustain nuclear fission in a self-supporting chain reaction; or
•contain a critical mass of fissionable material.

*Uranium isotopes separation device or equipment* means any device or equipment designed or used for:
•separating the isotopes of uranium or plutonium;
•processing or utilizing spent nuclear fuel; or
•handling, processing or packaging nuclear waste.

*Special nuclear material device or equipment* means any device or equipment used for the processing, fabricating or alloying of special nuclear material if the total amount of such material:
•is more than 25 grams of plutonium or uranium 233, or any combination of the two, or 250 grams of uranium 235; and
•is at any time in the custody of any protected person at the premises where the device or equipment is located.

*Nuclear waste site* means any structure, basin, excavation, premises or place prepared or used for the storage or disposal of nuclear waste.

*Nuclear waste* means any waste material that:

•contains by-product material; and
•results from the operation of any nuclear reactor or uranium isotopes separation device or equipment by any person or organization.

But we won't consider nuclear waste to include tailings or wastes that result from the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content.

*Spent nuclear fuel* means any solid or liquid fuel element or component that has been exposed to radiation or used in a nuclear reactor.

**Pollution.** We won't cover injury or damage or medical expenses that result from pollution at or from any:
•protected person's premises;
•waste site; or
•protected person's work site.

Nor will we cover injury or damage or medical expenses that result from pollution involving any waste pollutant.

We also won't cover any loss, cost or expense that results from:
•any request, demand or order that any protected person or others perform pollution work; or
•any claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

*Pollution* means any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant.

*Pollutant* means any solid, liquid, gaseous or thermal irritant or contaminant, including:
•smoke, vapors, soot, fumes;
•acids, alkalis, chemicals; and
•waste.

However, we won't consider heat, smoke or fumes to be a pollutant when they result from a hostile fire at or from:
•the protected person's premises; or
•the protected person's work site if the hostile fire doesn't result from pollution work being done by or for the protected person.

*Hostile fire* means a fire which becomes uncontrollable or breaks out from where it was intended to be.

*Waste* includes materials to be recycled, reconditioned or reclaimed.

*Protected person's premises* means any premises, site or location which is or was at any time owned, rented, leased, borrowed or occupied by any protected person. For example:

*You sold an office building two years ago. It contains asbestos ceiling tile which released asbestos into the air while you owned it. A former tenant now sues you for bodily injury that allegedly resulted from the release of that asbestos. We won't cover such injury.*

*Waste site* means any premises, site or location which is or was at any time used by or for any protected person or others for the handling, storage, disposal, processing or treatment of waste. For example:

*For several years waste generated by your manufacturing business was disposed of in a landfill owned by others. The landfill was closed two years ago. Nearby residents now allege that they're being injured by the waste from there. We won't cover such injury.*

*Protected person's work site* means any premises, site or location on which work is being performed by or for any protected person when:
• a pollutant is brought on or to such premises, site or location by or for the protected person in connection with such work; or
• the work being performed is pollution work. For example:

*A subcontractor working for you brings a diesel fuel storage tank to the building site for refueling of its excavation equipment. After a couple of days it is discovered that the tank has been leaking. The escaped fuel must now be cleaned up. We won't cover the cost of that clean-up.*

*Pollution work* means:
• the testing for, monitoring, cleaning up,

removing, containing, treating, detoxifying or neutralizing of any pollutant; or
• the responding to, or assessing, in any way the effects of any pollutant.

*Waste pollutant* means any pollutant which is or was at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any protected person or any person or organization for whom you may be legally responsible. For example:

*Waste generated by your business is transported to a landfill by a trucker hired by you. There is an accident which causes the waste to be spilled onto the road. One of the fire fighters who responds to the accident later alleges that fumes from the waste made her ill. We won't cover such injury.*

**Poor quality or performance.** We won't cover advertising injury that results from the failure of your products, work or completed work to conform with advertised quality or performance.

**Product recall.** We won't cover any loss, cost or expense that:
• is incurred by you or others; and
• results from the recall, removal or withdrawal of impaired property, or your products or completed work, from the market or from use by any person or organization for any reason.

Nor will we cover any loss, cost, or expense that is incurred by you or others and results from the:
• loss of use;
• adjustment, inspection, repair;
• replacement; or
• disposal;
of such property, products or completed work.

We explain what we mean by impaired property in the Impaired property exclusion.

**Watercraft.** We won't cover bodily injury, property damage or medical expenses that result from the:
• ownership, maintenance, use or operation;
• loading or unloading; or
• entrustment to others;
of any watercraft owned, operated, rented, leased or borrowed by any protected person.

But we won't apply this exclusion to liability for bodily injury or property damage assumed under any covered contract for the ownership, maintenance or use of watercraft.

Nor will we apply this exclusion to bodily injury, property damage or medical expenses that result from:
• watercraft while ashore on premises you own, rent or lease;
• watercraft you don't own that is less than 50 feet long and isn't being used to carry persons or property for a charge; or
• the operation of specialized equipment.

We explain what we mean by entrustment to others and loading or unloading in the Auto exclusion.

We explain what we mean by specialized equipment in the Mobile equipment exclusion.

**Workers' compensation.** We won't cover any obligation that the protected person has under a workers' compensation, disability benefits or unemployment compensation law, or any similar law.

**Wrong price description.** We won't cover advertising injury that results from making known to any person or organization the wrong description of the price of your products, work or completed work.

## Other Insurance

This agreement is primary insurance. If there is any other valid and collectible insurance for injury or damage covered by this agreement, the following applies:

**Other primary insurance.** When there is other primary insurance, we'll share any damages with that insurance using one of the methods of sharing described in the Methods of sharing section.

However, we'll apply this agreement as excess insurance over any part of any other insurance which provides:
• property or similar coverage for property damage to your work;
• coverage for property damage to premises you rent, lease or borrow from others; or
• coverage for bodily injury or property damage that results from the maintenance, use, operation or loading or unloading of any auto, aircraft or watercraft that's not specifically excluded by the Auto, Aircraft or Watercraft exclusions.

We explain how we'll apply this agreement as excess insurance in the Excess insurance section.

**Excess insurance.** When this agreement is excess insurance, we'll have no duty to defend any claim or suit. However, we'll defend a claim or suit for covered injury or damage if the other insurers won't. In return we'll require that the protected persons give us all of their rights against those insurers.

Also, we'll pay only the amount of damages that's in excess of:
• the total amount that all such other insurance would pay if this agreement didn't exist; and
• the total of all deductible and self-insured amounts under all such other insurance.

However, we'll share such excess damages with any other insurance that:
• isn't described in the Other primary insurance section ; and
• wasn't bought specifically to apply in excess of the limits of coverage shown in the Coverage Summary.

But we won't pay more than the limits of coverage that apply under this agreement.

**Methods of sharing.** We'll use one of the methods of sharing described below.

*Contribution by equal shares.* If all of the other insurance permits contribution by equal shares, we'll share the damages equally. But we won't pay more than the limits of coverage that apply under this agreement. If any policy reaches its limit before the entire amount of damages is paid, the remaining policies will share the balance equally until their limits have been used up or the amount of the damages is paid in full. For example:

*You are required by a court to pay damages of $1,000,000. Besides this agreement, two other policies apply to the*

judgment. The limit of this agreement is $500,000. Policy B has a $100,000 limit and Policy C's limit is $300,000.

First, $100,000 is subtracted from each policy's limit because that is the lowest limit provided by any of the three policies. The result: Policy B's limit is used up; the balance due on the judgment is $700,000; $400,000 remains of this agreement's limit; and the unused portion of Policy C's limit equals $200,000.

Next, $200,000 is subtracted from the limit on this agreement and Policy C because that amount equals the smallest amount of limit remaining on either policy after the initial $100,000 payment. The result: Policy C's limit is used up; the balance due on the judgment is now $300,000; and this agreement has $200,000 of its limit remaining.

Finally, the rest of the limit on this agreement is paid. The result: this agreement's limit is used up; the balance due on the

judgment is now $100,000, which you must pay; and the total paid under each policy is: $500,000 this agreement, $100,000 Policy B and $300,000 Policy C.

**Contribution by limits.** If any of the other insurance doesn't permit contribution by equal shares, we'll pay that portion of the damages equal to our percentage of the total of all limits that apply. But we won't pay more than the limits of coverage that apply under this agreement. For example:

You are required by a court to pay damages of $600,000. Besides this agreement, another policy applies to the judgment. The limit of this agreement is $300,000 and Policy B has a $100,000 limit. The total limit of all insurance is $400,000.

Our limit is 75% ($300,000/$400,000) of the total limit. But we won't pay 75% of the judgment because that $450,000 share is more than our limit. We'll pay only our limit, which is $300,000.

This endorsement changes your Commercial
General Liability Protection.

### How Coverage Is Changed

The following is added to the Contract liability
exclusion. This change broadens coverage.

We'll consider the protected person's liability
for bodily injury or property damage assumed
under a covered contract to include liability for
contract liability defense expenses if the liabil-
ity for such expenses is also assumed by the
protected person under the same contract. As
a result, we'll consider covered contract liabil-
ity defense expenses to be damages for bodily
injury or property damage covered under this
agreement. Such expenses are subject to the
limits of coverage.

*Contract liability defense expenses* mean the
reasonable attorney fees and necessary liti-
gation expenses incurred by or for an indemni-
tee for its defense against a civil or alternative
dispute resolution proceeding which seeks
damages for bodily injury or property damage
covered under this agreement.

*Indemnitee* means any person or organization,
other than a protected person, who is a party to
a covered contract and is held harmless or
protected under that contract by the protected
person for liability for:
- bodily injury or property damage covered
under this agreement; and
- the contract liability defense expenses
incurred in connection with such bodily injury or
property damage.

### Other Terms

All other terms of your policy remain the same.

©St.Paul Fire and Marine Insurance Co.1992 All Rights Reserved          Page 1 of 1



# EXHIBIT / ATTACHMENT

## _____C_____

(To be scanned in place of tab)

# EXECUTIVE OFFICER AND LEASED WORKER ENDORSEMENT

The St.Paul

This endorsement changes your Commercial
General Liability Protection.

## How Coverage Is Changed

There are five changes which are explained
below.

1. The following is added to the Corporation or
other organization section. This change
explains what we mean by executive officer.

*Executive officer* means any person holding
an officer position created by the charter,
constitution or by-laws, or any other similar
governing document, of:
•a corporation; or
•any other organization that isn't a partnership
or joint venture.

2. The following replaces the first paragraph of
the Employees section. This change broadens
coverage.

Your employees are protected persons only for:
•work done within the scope of their employ-
ment by you; or
•their performance of duties related to the
conduct of your business.

3. The following is added to the Employees
section. This change explains what we mean by
employee, leased worker, employee leasing
firm and leased temporary worker.

*Employee* includes a leased worker, other than
a leased temporary worker.

*Leased worker* means any person who:
•is hired from an employee leasing firm under a
contract or agreement between the hirer and
that firm; and
•is performing duties related to the conduct of
the hirer's business.

*Employee leasing firm* means any person or
organization who hires out workers to others.
It includes any:
•employment agency, contractor or service;
•labor leasing firm; or
•temporary help service.

*Leased temporary worker* means a leased
worker who is hired to:
•temporarily take the place of a permanent
employee on leave; or
•meet seasonal or short-term workload condi-
tions.

4. The following is added to the Employees
section. This change excludes coverage.

No employee is a protected person for bodily
injury or personal injury to any of your partners
or co-venturers.

Also, no employee is a protected person for
bodily injury or personal injury for which there
is any obligation to share damages with or
repay someone else who must pay damages
because of bodily injury or personal injury to:
•you;
•any of your partners or co-venturers; or
•the spouse or any child, parent, brother or
sister of a fellow employee if such injury
results from the bodily injury or personal injury
to that fellow employee.

5. The following replaces the first sentence of
the Employer's liability exclusion. This change
excludes coverage.

We won't cover bodily injury to an employee of
the protected person arising out of and in the
course of his or her:
•employment by the protected person; or
•performance of duties related to the conduct
of the protected person's business.

## Other Terms

All other terms of your policy remain the same.



# EXHIBIT / ATTACHMENT

## _____D_____

(To be scanned in place of tab)

This endorsement changes your Commercial
General Liability Protection.

---

## How Coverage Is Changed

The following is added to the Employees
section.  This change broadens coverage.

We won't apply the exclusions in this Employ-
ees section to bodily injury to any fellow
employee that results from work, other than the
performance of or failure to perform health
care professional services, done by any of your
employees.

## Other Terms

All other terms of your policy remain the same.

---

# POLLUTION EXCLUSION LEAD EXAMPLE ENDORSEMENT

This endorsement applies to your Commercial
General Liability Protection.

---

## What This Endorsement Does

The following example is added in connection
with the definition of protected person's prem--
ises in the Pollution exclusion. The addition of
this example does not change coverage. We
consider lead to be a pollutant even without this
example.

*You own an apartment building. Its wood-
work is finished with paint that contains
lead. Two of your renters sue you for
bodily injury to their children allegedly
caused by the lead in that paint. The chil-
dren supposedly consumed the lead by
eating chips of the paint from the window
sills in their apartments. We won't cover
such injury.*

## Other Terms

All other terms of your policy remain the same.

---

©St.Paul Fire and Marine Insurance Co.1993 All Rights Reserved

## DAY CARE CENTER MEDICAL EXPENSES EXCLUSION ENDORSEMENT

This endorsement changes your Commercial General Liability Protection.

---

### How Coverage Is Changed

The following is added to the Exclusions - What This Agreement Won't Cover section. This change excludes coverage.

**Day care centers.** We won't cover medical expenses of any child enrolled in a day care center.

### Other Terms

All other terms of your policy remain the same.

---

The St.Paul

This endorsement changes your Commercial
General Liability Protection.

---

| How Coverage Is Changed | Other Terms |
|---|---|
| The following is added to the Exclusions - What This Agreement Won't Cover section. This change excludes coverage. | All other terms of your policy remain the same. |

**Computer professional services.** We won't cover injury or damage that results from the performance of or failure to perform computer professional services.

*Computer professional services* include:
•data processing;
•systems analysis or design;
•programming;
•consulting; and
•software development, distribution and maintenance.

---

©St.Paul Fire and Marine Insurance Co.1991 All Rights Reserved
Page 1 of 1



# EXHIBIT / ATTACHMENT

_____ E _____

(To be scanned in place of tab)

COPY

The **St Paul**

Bodilily Injury Definition Endorsement

---

This endorsement changes your Commercial General Liability Protection.

HOW COVERAGE IS CHANGED

The following definition of Bodily Injury found in the What This Agreement Covers is deleted:

Bodily Injury means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness or disease:

*   Mental anguish, injury or illness.
*   Emotional distress.
*   Care, loss of services, or death.

and is replaced with the following:

Bodily Injury means any harm to the health of other persons, including physical harm, sickness, disease and mental anguish, injury or illness. And it includes care, loss of services or death that results from such harm.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** HG07200088       **Effective Date** 01/01/96
**Processing Date** 02/06/96   10:43   002

---

40502 Ed.1-80 Printed in U.S.A.           Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved          Page    1

The**St.Paul**

Additional Protected Persons Endorsement #1

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Who Is Protected Under This Agreement section. This change adds certain protected persons and limits their protection.

The person(s) or organization(s) shown below are protected, but only for covered bodily injury or property damage that results from your operations.

Name of Protected Person(s) or Organization(s)

1. Students in University-sponsored programs and projects or holding University-appointed positions of responsibility or students in elected positions by other students, in connection with campus activities or affairs.

2. Volunteer workers and members of duly constituted committees or other recognized bodies performing services on behalf of the insured.

3. Trustees or members of a Board of Governors.

4. Student-teachers while teaching as part of their educational requirements.

5. Fraternities and sororities located at the University.

The coverage afforded by this endorsement is limited to the acts of those listed above, only while acting within the scope of their duties as such for you. This coverage will be excess over any other valid and collectible insurance available to them.

OTHER TERMS

All other terms of your policy remain the same.

| | | |
|---|---|---|
| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/96 |
| EMORY UNIVERSITY | **Processing Date** 01/30/96   15:14   001 | |

40502 Ed.1-80 Printed in U.S.A.      _Customized Form

©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved     

Additional Protected Persons Endorsement #2

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Who Is Protected Under This Agreement section. This change adds certain protected persons and limits their protection.

The person(s) or organization(s) shown below are protected, but only for covered bodily injury or property damage that results from your operations.

PROTECTED PERSONS

Any person or organization with whom you have entered into a covered contract, and who in that contract, has mandated they be included as an additional protected person to your Commercial General Liability Protection.

A covered contract is defined on page 8 of 16 in your Insuring Agreement 36.

OTHER TERMS

All other terms of your policy remain the same.

---

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 01/30/96  15:14  001 | |

Colleges Or Schools Endt. With Student Medical Expenses Exclusion

---

This endorsement changes your Commercial General Liability Protection.

There are two changes which are explained below.

1. The following is added to the Who Is Protected Under This Agreement section. This change adds certain protected persons and limits their protection.

TRUSTEES, BOARD MEMBERS OR COMMISSIONERS. Your trustees, board members or commissioners are protected persons. But only for covered injury or damage that happens or is committed while they're acting within the scope of their duties.

STUDENT TEACHERS. Any student teacher teaching for you as part of their educational requirements is a protected person. But only for covered injury or damage that happens or is committed while they're acting within the scope of their duties.

2. The following exclusions are added to the Exclusions - What This Agreement Won't Cover section. This change excludes coverage.

INFIRMARY, CLINIC OR HOSPITAL. We won't cover injury or damage or medical expenses that result from the performance of or failure to perform health care professional services.

But we'll apply this exclusion only at any of your locations with an infirmary with treatment and lodging facilities, or a public clinic or hospital.

We'll cover claims for injury or damage or medical expenses that result when your health care professionals, while acting within the scope of their duties for you, provide or fail to provide healthcare professional services at your locations other than an infirmary with treatment and lodging facilities or a public clinic or hospital. But we won't cover any health care professional against malpractice claims.

HEALTH CARE PROFESSIONAL SERVICES include:

* Medical, dental, x-ray, nursing or cosmetic treatments. And food or beverages given with these treatments.

* The dispensing of drugs, medical or dental supplies and appliances.

* The handling or treatment of corpses, including autopsies, organ donation or other procedures.

---

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/96 |
| EMORY UNIVERSITY | **Processing Date** 02/06/96  10:43  002 | |

40502 Ed.1-80 Printed in U.S.A.     Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved     Page   1

TRANSPORTATION OF STUDENTS. We won't cover bodily injury, property damage or medical expenses that result from the:

*   ownership, maintenance, operations, or use;

*   loading or unloading; or

*   entrustment to others;

of any aircraft, auto or watercraft owned, operated, rented, leased, borrowed or hired by any protected person for the transportation of students to and from school.

HIRED includes any contract to furnish transportation of students to and from school.

STUDENT MEDICAL EXPENSES. We won't cover medical expenses of any student.


OTHER TERMS

All other terms of your policy remain the same.

©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved

Leased Employee Endorsement

---

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Employees protection under the Who Is Protected Under This Agreement section.

Employees of the named insured shall include employees leased by the named insured from The Emory Clinic under the Contract Staff Leasing Agreement effective January 1, 1993. Conversely, employees of the named insured shall not include employees leased by the named insured to The Emory Clinic under the Contract Staff Leasing Agreement effective January 1, 1993.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** HG07200088    **Effective Date** 01/01/96
**Processing Date** 02/06/96  10:43  002

40502 Ed.1-80 Printed in U.S.A.        Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved        Page    1

Premises Exclusion Endorsement

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

Your General Liability Protection is changed by adding the following exclusion to the Exclusions - Claims We Won't Cover section. The effect of this change is to reduce your coverage.

DESCRIPTION AND LOCATION OF PREMISES

1. Emory University Hospital
2. Crawford W. Long Memorial Hospital
3. Jesse Parker Williams Memorial, Inc.
4. The Carter Center, Inc.

PREMISES. We won't cover bodily injury, property damage, personal injury or advertising injury resulting from any of the following:

* ownership, maintenance or use of the described premises or of any property located on such premises;

* work on or off the described premises related to the ownership, maintenance or use of such premises; or

* products manufactured on or distributed from the described premises.

OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 02/06/96  10:43  002 | |

Watercraft Extension Endorsement

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The second paragraph of the Watercraft Exclusion is removed and replaced with the following. This change broadens coverage.

But we won't apply this exclusion to bodily injury, property damage, or medical expenses that result from:

* Liability for bodily injury or property damage assumed under any covered contract for the ownership, maintenance or use of watercraft.

* Watercraft while ashore on premises you own, rent or lease.

* Watercraft you don't own that is less than 50 feet long and isn't being used to carry persons or property for a charge.

* The operation of specialized equipment.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**                      **Policy Number** HG07200088           **Effective Date** 01/01/96
EMORY UNIVERSITY                     **Processing Date** 02/06/96   10:43   002

---

40502 Ed.1-80 Printed in U.S.A.                    Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved                    Page    1

Knowledge Of Accident Or Incident Endorsement

*This endorsement changes your Commercial General Liability Protection.*

HOW COVERAGE IS CHANGED

The following is added to What To Do If You Have A Loss — Someone Is Injured or Something Happens Which Can Result In A Liability Claim section.

3. Knowledge of an accident or incident by the agent or the protected persons or an employee of the Insured will not in itself constitute knowledge of the insured unless the Vice President of Finance and Treasurer or General Counsel has received notice of an accident or incident from the agent, other protected persons or an employee.

OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 02/06/96   10:43   002 | |

40502 Ed.1-80 Printed in U.S.A.          Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved          Page    1

# LIQUOR LIABILITY PROTECTION
## COVERAGE SUMMARY

The·St·Paul

This Coverage Summary shows the limits of coverage that apply to your Liquor Liability Protection. It also lists those endorsements, if any, that must have certain information shown for them to apply.

| Limits Of Coverage | | IMPORTANT NOTE |
|---|---|---|
| **Total limit.** | $ 1,000,000. | **Retroactive Date:** |
| **Each person limit.** | $ 1,000,000. | The retroactive date applies only if the Liquor Liability Protection – Claims-Made insuring agreement is a part of this policy. |

However, if no date is shown above and the claims-made agreement applies, we'll consider the retroactive date to be the same as the beginning date of this policy.

## Named Endorsement Table

**Important Note:** Only endorsements that must have certain information shown for them to apply are named in this table. The required information follows the name of each such endorsement. Other endorsements may apply. If so, they're listed on the Introduction.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 01/30/96  15:14  001 | |

43885 Ed.9-86 Printed in U.S.A.
©St.Paul Fire and Marine Insurance Co.1986

Coverage Summary

## LIQUOR LIABILITY PROTECTION

This insuring agreement provides liquor liability protection for your business activities. There are, of course, limitations and exclusions that apply to that protection. As a result, we recommend that you read this agreement carefully to determine the extent of the coverage provided to you and other protected persons.

| Table of Contents | Page |
|---|---|
| **What This Agreement Covers** | 1 |
| Liquor liability. | 1 |
| Right and duty to defend. | 1 |
| Additional payments. | 2 |
| **When This Agreement Covers** | 2 |
| **Where This Agreement Covers** | 2 |
| **Who Is Protected Under This Agreement** | 2 |
| Individual. | 2 |
| Partnership or joint venture. | 2 |
| Corporation or other organization. | 3 |
| Employees. | 3 |
| Newly acquired organizations. | 3 |
| Unnamed partnership or joint venture. | 3 |
| Separation of protected persons. | 3 |
| **Limits Of Coverage** | 3 |
| Total limit. | 3 |
| Each person limit. | 3 |
| How the limits of coverage apply to an extension of the policy period. | 3 |
| How the limits of coverage apply if the total limit is left blank. | 4 |
| **Exclusions – What This Agreement Won't Cover** | 4 |
| Intentional bodily injury or property damage. | 4 |
| Workers' compensation. | 4 |
| Employer's liability. | 4 |
| Loss of liquor license. | 4 |
| Product liability. | 4 |
| Other insurance. | 4 |
| **Other Insurance** | 5 |
| Methods of sharing. | 5 |

## What This Agreement Covers

**Liquor liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, loss of support, or property damage that:

- results from your selling, serving or furnishing of any alcoholic beverage;
- happens while this agreement is in effect; and
- is caused by an event.

*Protected person* means any person or organization qualifying as a protected person under the Who Is Protected Under This Agreement section.

*Damages* include pre-judgment interest awarded against the protected person on that part of any judgment paid by us.

*Bodily injury* means any physical harm, including sickness or disease, to the health of other persons. It also includes:

- mental anguish, injury or illness;
- care;
- loss of services; or
- death.

But only if they result from such harm.

*Loss of support* means the loss of income on which other persons depend for their standard of living.

*Property damage* means:

- physical damage to tangible property of others, including all resulting loss of use of that property; or
- loss of use of tangible property of others that isn't physically damaged.

*Event* means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered

injury or damage made or brought against any protected person. But we have no duty to perform other acts or services. And our duty to defend claims or suits ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

We'll have the right to investigate and settle any claim or suit if we believe that's proper.

*Claim* means a demand in which damages are alleged.

*Suit* means a civil proceeding in which damages are alleged. And it includes an arbitration proceeding for such damages to which you must submit or submit with our consent.

*Injury or damage* means bodily injury, loss of support, or property damage.

**Additional payments.** We'll have the duty to make only the payments shown below in connection with any claim or suit we defend. These payments are in addition to the Limits of Coverage. But our duty to make such payments ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

*Our expenses.* We'll pay all expenses we incur.

*Bonds to release property.* We'll pay the cost of bonds to release property that's being used to secure a legal obligation. But only for bond amounts within the limit of coverage that applies. We don't have to furnish such bonds.

*Expenses incurred by protected persons.* We'll pay all reasonable expenses that any protected person incurs at our request while helping us investigate or defend the claim or suit. But we won't pay more than $100 per day for earnings actually lost by the protected person because of time lost from work.

*Taxed costs.* We'll pay all costs for covered claims taxed against any protected person in the suit.

*Post-judgment interest.* We'll pay all interest that accumulates on the amount of a judgment for a covered claim. But only from the date of the judgment to the date we:

- pay;
- offer to pay; or
- deposit in court;

the limit of coverage that applies to the judgment.

*First aid expenses.* We'll pay the expenses incurred by any protected person for first aid to others at the time of an event that results in covered bodily injury.

## When This Agreement Covers

We'll apply this agreement to claims or suits for covered injury or damage whenever they're made or brought.

## Where This Agreement Covers

We'll defend claims or suits, or pay judgments or settlements, only in the coverage territory for covered injury or damage that happens there.

However, we'll also defend claims or suits, or pay judgments or settlements, in the coverage territory for covered injury or damage that happens in the rest of the world if such injury or damage results from your selling, serving or furnishing any alcoholic beverage in the coverage territory.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada. And it includes international waters or airspace only during travel or transportation between any of the above places.

## Who Is Protected Under This Agreement

**Individual.** If you are named in the Introduction as an individual, you and your spouse are protected persons only for the conduct of a business of which you are the sole owner.

**Partnership or joint venture.** If you are named in the Introduction as a partnership or joint venture, you are a protected person. Your partners or co-venturers and their spouses are protected persons only for the conduct of your business.

**Corporation or other organization.** If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers and directors are protected persons only for their duties as your officers or directors. And your stockholders are protected persons only for their liability as your stockholders.

**Employees.** Your employees are protected persons only for the conduct of your business within the scope of their employment by you.

However, your employees aren't protected persons for:
•Injury to you or to any fellow employee.
•Damage to property owned, rented, leased, occupied or borrowed by them, fellow employees, or any protected partner or co-venturer.

But this Employees protection section doesn't apply to your executive officers. The Corporation or other organization section applies to them.

**Newly acquired organizations.** Any organization that you acquire or form while this agreement is in effect is a protected person if you own at least 51% of it.

However, no newly acquired or formed organization is a protected person for:
•More than 90 days, or the remainder of the policy period, whichever is less, from the date that you acquire or form it.
•Injury or damage that results from an event that happened before you acquired or formed it.
•Injury or damage that's covered under any other insurance.

But this Newly acquired organizations protection section doesn't apply to a partnership or joint venture. Nor does it apply to any organization once it's named in the Introduction.

**Unnamed partnership or joint venture.** No person or organization is a protected person for the conduct of any current or past partnership or joint venture that's not named in the Introduction.

**Separation of protected persons.** This agreement applies:
•to each protected person named in the Introduction as if that protected person was the only one named there; and
•separately to each other protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section. Also, any right or duty specifically assigned to the first Named Insured remains unchanged. We explain those rights and duties in the General Rules, which is a part of your policy.

---

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay regardless of the number of:
•protected persons;
•claims made or suits brought; or
•persons or organizations making claims or bringing suits.

**Total limit.** This is the most we'll pay for all covered injury and damage that happens in a policy year.

*Policy year* means the policy period shown in the Introduction when the policy period is one year or less. But when the policy period is longer than one year, it means each consecutive annual period, and the remaining period if any, that the policy is in effect, starting with the date the policy begins.

**Each person limit.** This is the most we'll pay for all covered injury and damage that results from the selling, serving or furnishing of alcoholic beverages to any one person.

---

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for three years. During the last policy year you request a three month extension. We agree. As a result, your last policy year becomes 15 months. It will be subject to the same limits of coverage that applied when the policy year was 12 months.*

**How the limits of coverage apply if the total limit is left blank.** If the amount of the Total limit is left blank in the Coverage Summary, that Total limit will be considered to be the same as the Each person limit or $50,000, whichever is more.

## Exclusions – What This Agreement Won't Cover

**Intentional bodily injury or property damage.** We won't cover bodily injury or property damage that's expected or intended by any protected person.

But we won't apply this exclusion to intentional bodily injury or property damage that results from the use of reasonable force to protect people or property.

**Workers' compensation.** We won't cover any obligation that the protected person has under any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

**Employer's liability.** We won't cover injury to an employee arising out of and in the course of his or her employment by a protected person. Nor will we cover injury to the spouse, child, parent, brother or sister of that employee which results from the injury to the employee.

This exclusion applies whether the protected person may be held liable as an employer or in any other capacity, such as a property owner or product manufacturer.

This exclusion also applies to any obligation of the protected person to share damages with or repay someone else who must pay damages because of injury to any employee of the protected person.

**Loss of liquor license.** We won't cover injury or damage that results from your selling, serving or furnishing of any alcoholic beverage:

•while any required liquor license is suspended; or

•after any required liquor license expires, or is cancelled or revoked.

**Product liability.** We won't cover injury or damage that results from your products.

But we won't apply this exclusion to injury or damage that results from:

•any protected person causing or contributing to the intoxication of any person;

•the furnishing of alcoholic beverages to any person under the legal drinking age, or under the influence of alcohol; or

•any law or regulation concerning alcoholic beverages.

*Your products* mean goods or products that:

•you;

•others using your name; or

•others whose business or assets you've acquired;

have manufactured, sold, handled, distributed or disposed of, including containers, materials, parts or equipment provided in connection with your products. It includes warranties or statements made about the fitness, quality, durability or performance of your products.

**Other insurance.** We won't cover injury or damage that's covered by other insurance. Nor will we cover injury or damage that would be covered by other insurance but isn't because the limits of coverage under that insurance have been used up in the payment of judgments or settlements.

But we won't apply this exclusion if the other insurance is liquor liability insurance and specifically applies to covered injury or damage that results from the selling, serving or furnishing of any alcoholic beverage.

## Other Insurance

This agreement is primary insurance. If there is other valid and collectible insurance for injury and damage covered by this agreement, we'll share any damages with that other insurance using one of the methods of sharing described below.

**Methods of sharing.** We'll use one of the methods of sharing described below.

*Contribution by equal shares.* If all of the other insurance permits contribution by equal shares, we'll share the damages equally. But we won't pay more than the limits of coverage that apply under this agreement. If any policy reaches its limit before the entire amount of damages is paid, the remaining policies will share the balance equally until their limits have been used up or the amount of the damages is paid in full. For example:

*You are required by a court to pay damages of $1,000,000. Besides this agreement, two other policies apply to the judgment. The limit of this agreement is $500,000. Policy B has a $100,000 limit and Policy C's limit is $300,000.*

*First, $100,000 is subtracted from each policy's limit because that is the lowest limit provided by any of the three policies. The result: Policy B's limit is used up; the balance due on the judgment is $700,000; $400,000 remains of this agreement's limit; and the unused portion of Policy C's limit equals $200,000.*

*Next, $200,000 is subtracted from the limit on this agreement and Policy C because that amount equals the smallest amount of limit remaining on either policy after the initial $100,000 payment. The result: Policy C's limit is used up; the balance due on the judgment is now $300,000; and this agreement has $200,000 of its limit remaining.*

*Finally, the rest of the limit on this agreement is paid. The result: this agreement's limit is used up; the balance due on the judgment is now $100,000, which you must pay; and the total paid under each policy is: $500,000 this agreement, $100,000 Policy B and $300,000 Policy C.*

*Contribution by limits.* If any of the other insurance doesn't permit contribution by equal shares, we'll pay that portion of the damages equal to our percentage of the total of all limits that apply. But we won't pay more than the limits of coverage that apply under this agreement. For example:

*You are required by a court to pay damages of $600,000. Besides this agreement and Policy B has a $100,000 limit. The limit of this agreement is $300,000 and Policy B has a $100,000 limit. The total limit of all insurance is $400,000.*

*Our limit is 75% ($300,000/$400,000) of the total limit. But we won't pay 75% of the judgment because that $450,000 share is more than our limit. We'll pay only our limit, which is $300,000.*

Exclusion Endorsement

---

This endorsement changes your Liquor Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The following entity and location is excluded for coverage under this agreement.

EXCLUDED ENTITY AND LOCATION

Houston Millhouse
849 Houston Mill Road
Atlanta, GA   30329

OTHER TERMS

All other terms of your policy remain the same.

---

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 01/30/96   15:14   001 | |

# ASSOCIATION MANAGEMENT LIABILITY PROTECTION—CLAIMS MADE

The **St.Paul**

We've designed this agreement to protect against liability claims resulting from the management of your association. Of course there are limitations which are explained later in this agreement.

**Important note.** This is a claims-made coverage. Please read it carefully, especially the When A Claim Is Covered section.

## Table of Contents

| | Page |
|---|---|
| What This Agreement Covers | 1 |
| Who Is Protected Under This Agreement | 2 |
| When A Claim Is Covered | 2 |
| Limit of Coverage | 3 |
| Deductible | 3 |
| When We'll Pay | 3 |
| Exclusions–Claims We Won't Cover | 3 |
| Other Insurance | 4 |
| Authorized Representative | 4 |

## Coverage Summary

If no entries are shown here, see separate Coverage Summary.

## Limit of coverage.

| | |
|---|---|
| $1,000,000. | Each policy year |

## Deductible.

| | |
|---|---|
| $N/A | Each claim |

**Optional reporting endorsement premium.** If this agreement ends because of one of us chooses to cancel it or not to renew it, we'll agree to sell you the optional reporting endorsement explained on page 3 for the following premium.
$4,500.

## What This Agreement Covers

This agreement protects against loss and expense that occurs when a claim or suit is brought against you or any protected person for a wrongful act based on:

• an error or omission;
• negligence;
• breach of duty;
• misstatement, misleading statement; or

• publisher's liability.

All such acts or omissions will be referred to as **wrongful acts** in this agreement.

This protection applies even if a claim is groundless, fraudulent or brought solely because a person holds or held a position protected by this agreement.

*Publisher's liability* means:

• libel, slander, defamation, publicity or invasion of privacy;
• infringement of trademark, copyright, title, or slogan;
• plagiarism; or
• piracy or misappropriation of ideas

resulting from any publication, advertisement, broadcast, or telecast by or authorized by you or a protected person.

**Liability protection.** We'll pay amounts you or any other protected person is legally required to pay as a result of a claim or suit brought against you or a protected person. The claim must result from a wrongful act committed by a protected person or a person for whom they are legally responsible while acting on behalf of the Association.

**Investigation, defense and settlement.** We'll defend any suit brought against you or any protected person for covered claims, even if the suit is groundless or fraudulent.

We have the right to investigate any suit or claim, but we can't settle or compromise a suit or claim without written consent from you or the protected person involved. If consent is refused we won't have to pay more than what we would have paid if consent had been given to the proposed settlement or compromise. We can use the rights you or any protected person has in an arbitration proceeding that involves a covered claim.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 01/30/96  15:14  001 | |

We'll pay costs of defending the suit, including any expense you or protected persons incur with our consent. We won't include our salary expenses or fees of independent adjusters in defense costs. We'll pay defense costs before paying damages for covered claims.

Once the limit of coverage has been used up, we won't defend a suit or pay claims or defense costs. We can withdraw from any pending suit or proceeding by returning control of its defense to you and any other protected person involved.

You and all protected persons agree to pay us, when we ask, for any amount we pay over the limit of coverage.

## Who Is Protected Under This Agreement

**Association.** You, the Association, are protected for claims or suits brought against you because of a wrongful act committed by a protected person or a person for whom they are legally responsible.

**Directors, Trustees, or Officers.** Your directors, trustees, or officers, are protected while acting for you.

*Directors, trustees, or officers* include:

•those who currently hold the positions.
•those who held the positions when the wrongful act complained of took place.
•those who become a director, trustee, or officer after the effective date of this agreement. Their protection will begin when they assume their positions.

**Employees.** Your employees are protected, but only while they're acting within the scope of their duties for you.

**Committee members.** Members of standing committees are protected for claims resulting directly from their duties as members of such committees.

**Members.** Your members are protected while acting within the scope of the association duties assigned by a director, trustee, or officer.

**Legal representative.** We'll protect the legal representative of a protected person who is legally bankrupt or mentally incompetent. We'll also protect the estate, legal representative or heirs of a deceased protected person.

## When A Claim Is Covered

We'll cover claims first made against you or a protected person while this agreement is in effect. The claim must be based on a wrongful act that occurred while this agreement was in effect. We must also be notified of the claim while this agreement is in effect.

In addition, we'll cover claims as explained in the following three sections.

**1. Prior acts.** We'll cover claims based on wrongful acts that occurred before the effective date of this agreement, but only if all the following conditions are met:

•neither you nor the protected person involved had knowledge of the prior wrongful act on the effective date of this agreement, nor any reasonable way to foresee that a claim might be brought;
•the claim is reported to us while this agreement is in effect; and
•there is no other insurance relating to the wrongful act.

**2. Reported acts.** We'll cover claims first made against you or any protected person any time after this agreement ends, but only if all of the following conditions are met:

•the wrongful act occurred while this or any prior continuously renewed agreement was in effect;
•you or the protected person involved were first aware while this agreement was in effect that a wrongful act occurred and a claim might be made; and
•the suspected wrongful act is reported to us while this agreement is in effect. We must also be told what loss or damage may result.

**3. Optional reporting endorsement.** This agreement may end because one of us chooses to cancel it or not renew it. If this is not the result of non-payment of the premium you have the right to

buy a reporting endorsement. It extends the time to report covered claims.

The endorsement applies to any covered claim made against you or any protected person any time after this agreement ends. The claim must be based on wrongful acts that occurred while this or any previously renewed agreement was in effect.

To obtain this endorsement you must request it in writing and pay the additional premium within 30 days after this agreement ends. If we don't receive written notice and payment within this period, you may not exercise this right at a later date.

We'll sell you this endorsement for the additional premium shown in the Coverage Summary. Once you pay the premium we can't cancel the endorsement.

## Limit of Coverage

The limit of coverage shown in the Coverage Summary is the most we'll pay for all claims that are covered in any policy year, regardless of when the actual claim or payment is made. This limit applies no matter how many covered persons or organizations are involved, or how many claims are made. By policy year we mean each consecutive annual period of this agreement. The limit includes damages and all expenses incurred in the defense of any claim or proceeding, or any appeal. Defense costs include the costs of appeals and of attachment and similar bonds.

Any damages or defense costs incurred because of a series of related wrongful acts occurring over more than one policy year shall be treated as a single claim. The claim will be subject to the limit of the agreement in effect at the time of the first reported wrongful act.

A claim may be brought after this agreement ends under the "Reported acts" section on page 2 or the "Optional reporting endorsement" section on page 3. If this happens the limit of coverage isn't increased. The limit shown in the Coverage Summary will apply to the last policy year as extended by the "Reported acts" and "Optional reporting endorsement" sections.

## Deductible

The deductible is shown in the Coverage Summary. You or the protected persons involved will be responsible up to the amount of the deductible for each claim. It applies once to each claim and includes damages and defense costs. But if more than one claim arises out of a series of related wrongful acts committed by one or more protected persons, the deductible will apply only once. We'll then pay covered claims over the deductible, up to the limit of coverage.

## When We'll Pay

We'll pay a covered claim when both of the following conditions are met:

• the liability of you or the protected person has been established by final court judgment or we make a written admission of liability; and
• we are given proof of the claim within 90 days after the final judgment.

## Exclusions—Claims We Won't Cover

We won't cover any of the following kinds of losses or claims:

**Bodily injury or property damage.** We won't cover claims arising out of bodily injury, sickness or death of any person. Nor will we cover damage, loss of use or destruction of tangible property.

**Personal injury.** We won't cover personal injury claims.

*Personal injury* means any of the following:

• libel or slander;
• false arrest, detention or imprisonment;
• malicious prosecution; or
• wrongful entry or eviction, or invasion of privacy.

**Pollution.** We won't cover claims arising from pollution or contamination. Nor will we cover the cost of removing or cleaning up pollutants or contaminants.

**TECHNOLOGY ERRORS AND OMISS.  / LIABILITY PROTECTION – CLAIMS–MADE COVERAGE SUMMARY**

This Coverage Summary shows the limits of coverage, deductibles and retroactive date that apply to your Technology Errors And Omissions Liability Protection – Claims-Made. It also lists vendors of your computer or electronic products or services, if any, who are protected persons under that agreement.

| Limits Of Coverage | | Deductibles | |
|---|---|---|---|
| Each error limit. | $1,000,000. | Each error deductible. | $5,000. |
| Total limit. | $2,000,000. | Total deductible. | None |

**Important Note:** If none or zero is shown for the Total deductible, the total amount you'll be responsible for within the Each error deductible is not limited.

**Retroactive Date:** *

**Important Note:** If no date is shown above, we'll consider the retroactive date to be the same as the beginning date of your Technology Errors And Omissions Liability Protection – Claims-Made.

**Vendor of your computer or electronic products or services:**

```
*Retroactive Date
09/01/93        QuantEM
05/27/92        CEqual software
06/30/94        PerfSPECTive
```

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 02/12/96  11:44  003 | |

This insuring agreement provides errors and omissions liability protection for your computer or electronic products or services. There are, of course, limitations and exclusions that apply to that protection. As a result, this agreement should be read carefully to determine the extent of the coverage provided to you and other protected persons.

**Important note.** This is a claims-made insuring agreement which includes defense expenses in the limits of coverage. A claim or suit must be first made or brought while this agreement is in effect, or during a reporting period, if one applies, to be covered. Please read this agreement carefully, especially the What This Agreement Covers, When This Agreement Covers and Limits Of Coverage sections.

| Table of Contents | Page |
|---|---|
| **What This Agreement Covers** | 1 |
| Technology errors and omissions liability. | 1 |
| Right and duty to defend. | 2 |
| Transfer of control of defense. | 3 |
| Additional payments. | 3 |
| Right to appeal. | 3 |
| **When This Agreement Covers** | 3 |
| During this agreement or the limited reporting period. | 3 |
| When we consider a claim or suit to be first made or brought. | 3 |
| When the limited reporting period will apply. | 4 |
| How the limited reporting period applies. | 4 |
| When and how an extended reporting period can be added. | 4 |
| How the extended reporting period applies. | 4 |
| How we'll figure the additional premium for the extended reporting period. | 4 |
| **Where This Agreement Covers** | 4 |
| **Who Is Protected Under This Agreement** | 5 |
| Individual. | 5 |
| Partnership or joint venture. | 5 |
| Corporation or other organization. | 5 |
| Employees. | 5 |
| Newly acquired organizations. | 5 |
| Separation of protected persons. | 5 |
| **Limits Of Coverage** | 5 |
| Each error limit. | 5 |
| Total limit. | 5 |
| How the limits of coverage apply to an extension of the policy period. | 5 |
| How the limits of coverage apply if the total limit is left blank. | 6 |
| How the limits of coverage apply to the limited and extended reporting periods. | 6 |
| **Deductibles** | 6 |
| Each error deductible. | 6 |
| Total deductible. | 6 |
| **Exclusions — What This Agreement Won't Cover** | 6 |
| Advertising injury. | 6 |
| Bodily injury. | 6 |
| Breach of security. | 6 |
| Contract liability. | 6 |
| Cost guarantees. | 7 |
| Criminal or intentionally wrongful acts or omissions. | 7 |
| Delay in delivery. | 7 |
| Employment-related practices. | 7 |
| Intellectual property. | 7 |
| Nuclear energy liability. | 7 |
| Penalties. | 8 |
| Personal injury. | 8 |
| Pollution. | 8 |
| Property damage. | 8 |
| Violation of trade law. | 8 |
| Voluntary payments or credits. | 8 |
| **Other Insurance** | 8 |
| Other primary insurance. | 8 |
| Excess insurance. | 9 |

## What This Agreement Covers

**Technology errors and omissions liability.** We'll pay amounts any protected person is legally required to pay as damages for covered loss that:

• results from your computer or electronic products or services; and
• is caused by an error committed on or after the retroactive date and before the ending date of this agreement.

*Protected person* means any person or organization who qualifies as a protected person

under the Who Is Protected Under This Agreement section.

*Damages* means:
- compensatory damages imposed by law;
- consequential damages incurred by the protected person under a contract or agreement; and
- prejudgment interest awarded against the protected person on a judgment in connection with those compensatory or consequential damages.

However, we won't consider the contract price of your computer or electronic products or services to be damages.

*Your computer or electronic products or services* means:
- any computer-related service for others, such as consulting, data processing, programming, software development, distribution and maintenance, and systems analysis or design, performed or provided by or for you;
- any electronic equipment or computer hardware or software developed, distributed, licensed, marketed or sold by or for you; and
- any service for others, including maintenance or repair, performed or provided by or for you in connection with any electronic equipment or computer hardware or software.

*Error* means any error, omission or negligent act.

*Retroactive date* means the earliest date that an error may be committed and cause loss covered under this agreement. This date is shown in the Coverage Summary.

However, if no retroactive date is shown, we'll consider the retroactive date to be the same as the beginning date of this agreement.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered loss made or brought against any protected person. We'll do so even if any of the allegations of any such claim or suit are groundless, false or fraudulent. But we have no duty to perform other acts or services. Also, our duty to defend claims or suits ends when we have used up the limits of coverage that apply with

the payment of judgments, settlements or defense expenses.

We'll have the right to investigate any claim or suit to the extent that we believe is proper. We'll also have the right to settle any claim or suit within:
- any deductible that applies; or
- the available limit of coverage.

*Claim* means a demand which seeks damages.

*Suit* means a civil proceeding which seeks damages. It includes:
- an arbitration proceeding for such damages to which the protected person must submit or submits with our consent; and
- any other alternative dispute resolution proceeding for such damages to which the protected person submits with our consent.

*Defense expenses* means only those fees, costs and expenses that result directly from the investigation, settlement or defense of a specific claim or suit. Such fees, costs and expenses include the following:
- Attorney fees, costs and expenses.
- The cost of legal proceedings.
- The cost of bonds to release property that's being used to secure a legal obligation. But we don't have to furnish these bonds.
- Expenses incurred by a protected person with our consent.
- The costs taxed against a protected person in a suit.

However, we won't consider any of the following to be defense expenses:
- Our expenses.
- Salaries and expenses of protected persons, other than expenses incurred by a protected person with our consent.
- Postjudgment interest.
- Appeal expenses.

*Expenses incurred by a protected person with our consent* means the reasonable expenses that a protected person incurs at our request while helping us investigate or defend a claim or suit. But we won't pay more than $250 per day for earnings actually lost by the protected person because of time taken off from work. We have no duty to pay any other expenses incurred by the protected person.

©St.Paul Fire and Marine Insurance Co.1994 All Rights Reserved

*Our expenses* means:
- salaries and expenses of our employees, including employed attorneys; and
- fees and expenses of independent adjusters that we hire.

*Postjudgment interest* means the interest that accumulates on a judgment from the date of the judgment to the date it is paid.

*Appeal expenses* means the expenses which result directly from the appeal of a judgment.

**Transfer of control of defense.** Before the available limit of coverage is used up, you may take over control of the defense of any outstanding claim or suit previously reported to us if we both agree, or if a court orders you to do so.

If the available limit of coverage is used up, we'll notify you as soon as we can of all outstanding claims or suits so that you can arrange to take over control of their defense.

We agree to take whatever steps are necessary during a transfer of control of defense of an outstanding claim or suit to continue that defense and avoid a default judgment during such transfer. When we take such steps, you agree that we don't waive or give up any of our rights under this agreement. You also agree to repay the reasonable expenses we incur for such steps taken after the available limit of coverage is used up.

**Additional payments.** We'll have the duty to make only the following payments in addition to the *limits of coverage in connection with any claim* or suit we defend:

*Our expenses.* We'll pay all of our expenses that we incur.

*Our postjudgment interest.* We'll pay all interest that accumulates on the full amount of that part of a judgment for which we make a payment. But only from the date of the judgment to the date we pay, or deposit in court, the limit of coverage that applies to the judgment. We have no duty to pay any other postjudgment interest.

**Right to appeal.** We'll have the right to appeal a judgment for covered loss in any suit we defend.

If we appeal such a judgment, we'll pay all expenses which result directly from that appeal, including the cost of appeal bonds and postjudgment interest. Such appeal expenses are in addition to the limits of coverage. However, the results of an appeal won't change the limits of coverage that apply under this agreement.

## When This Agreement Covers

**During this agreement or the limited reporting period.** We'll apply this agreement to claims or suits for covered loss only when they're first made or brought:
- while this agreement is in effect; or
- during the limited reporting period, if it applies.

*Limited reporting period* means the 90 days, starting with the ending date of this agreement, during which claims or suits for covered loss caused by errors committed on or after the retroactive date and before the ending date of this agreement may be first made or brought.

**When we consider a claim or suit to be first made or brought.** We'll consider a claim or suit for covered loss to be first made or brought on the earliest of the following dates:
- The date that we or any protected person receive a written claim or a written notice of suit.
- The date that we receive a notice of an error from any protected person. However, we won't accept such a notice unless it also describes what loss may result from the error.
- The date that any protected person could reasonably foresee that a claim or suit would be made or brought.

We consider it reasonable that a protected person could foresee a claim or suit being made or brought if one of your customers has done any of the following:
- Repeatedly complained to the protected person about one or more problems with your computer or electronic products or services.
- Sent their attorney a copy of one or more of the written complaints they had sent to the protected person.

- Refused to pay all or part of your charges for those products or services.
- Advised the protected person that those products or services have failed to perform in compliance with your promises, representations and warranties.
- Demanded a refund of part or all of their payment for those products or services.
- Threatened to take legal action against you.

We'll also consider all claims or suits for covered loss caused by an error, or a series of related errors, to have been made or brought on the date that the first of those claims or suits was first made or brought.

*Series of related errors* means two or more errors, including repeated or continuous errors, that are related to the same loss.

**When the limited reporting period will apply.** The limited reporting period will apply if this agreement is canceled or not renewed for any reason. It may not be canceled once it applies.

However, the limited reporting period won't apply to claims or suits if other insurance you buy:

- applies to them; or
- would have applied to them but won't because its limits of coverage have been used up.

**How the limited reporting period applies.** The limited reporting period doesn't extend the time that this agreement is in effect. As a result, we'll consider any claim or suit first made or brought during the limited reporting period to have been made or brought on the ending date of this agreement.

**When and how an extended reporting period can be added.** If this agreement is canceled or not renewed for any reason, an extended reporting period can be added with an Extended Reporting Period Endorsement and the payment of an additional premium.

However, we won't issue the Extended Reporting Period Endorsement unless we receive a written request for it from the first named insured shown in the Introduction within 60 days after the ending date of this agreement. Nor will it take effect unless the additional

premium is paid when due. But once that premium is paid, the endorsement may not be canceled by you or us. And we'll consider the premium to be fully earned.

*Extended reporting period* means an unlimited period of time, starting with the ending date of this agreement, during which claims or suits for covered loss caused by errors committed on or after the retroactive date and before the ending date of this agreement may be first made or brought.

**How the extended reporting period applies.** The extended reporting period replaces the limited reporting period. Also, it doesn't extend the time that this agreement is in effect. As a result, we'll consider any claim or suit first made or brought during the extended reporting period to have been made or brought on the ending date of this agreement.

In addition, the extended reporting period will cause us to apply this agreement as excess insurance over certain other insurance. We explain when and how we'll do so in the Other Insurance section.

**How we'll figure the additional premium for the extended reporting period.** We'll figure the additional premium for the Extended Reporting Period Endorsement in accordance with our rules and rates. But we won't charge more than 200% of the annual premium for the last policy year of this agreement.

We explain what we mean by policy year in the Total limit section.

### Where This Agreement Covers

We'll defend claims and suits, and pay judgments, settlements and defense expenses, only in the coverage territory for covered loss caused by errors that are committed anywhere in the world.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada.

©St.Paul Fire and Marine Insurance Co.1994 All Rights Reserved

## Who Is Protected Under This Agreement

**Individual.** If you are named in the Introduction as an individual, you and your spouse are protected persons only for the conduct of a business of which you are the sole owner.

**Partnership or joint venture.** If you are named in the Introduction as a partnership or joint venture, you are a protected person. Your partners or co-venturers and their spouses are protected persons only for the conduct of your business.

However, no person or organization is a protected person for the conduct of any current or past partnership or joint venture that's not named in the Introduction.

**Corporation or other organization.** If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers and directors are protected persons only for their duties as your officers or directors. And your stockholders are protected persons only for their liability as your stockholders.

**Employees.** Your employees are protected persons only for work done within the scope of their employment by you.

But we won't apply this Employees section to your executive officers. Instead, we'll apply the Corporation or other organization section to them.

**Newly acquired organizations.** Any organization, other than a partnership or joint venture, that you acquire or form while this agreement is in effect, is a protected person if you own more than 50% of it.

However, no newly acquired or formed organization is a protected person for:
• more than 90 days, or the remainder of the time this agreement is in effect, whichever is less, from the date that you acquire or form it, unless we agree that it should continue to be a protected person after the end of that period of time; or
• loss that's covered under other similar errors and omissions liability insurance.

**Separation of protected persons.** We'll apply this agreement separately to each protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section.

Also, any right or duty specifically assigned to the first named insured remains unchanged. We explain those rights and duties in the General Rules, which is a part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay, regardless of the number of:
• protected persons;
• claims made or suits brought; or
• persons or organizations making claims or bringing suits.

**Each error limit.** This is the most we'll pay as damages and defense expenses for all covered loss that is caused by any one error or series of related errors.

**Total limit.** This is the most we'll pay as damages and defense expenses for the combined total of all claims and suits for covered loss first made or brought in a policy year.

*Policy year* means the policy period shown in the Introduction, or the period of time this agreement is in effect, whichever is less. But when that period is longer than one year, it means each consecutive annual period, and the remaining period if any, that this agreement is in effect, starting with the beginning date of this agreement.

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for one year. During that policy year you request a three month*

extension. *We agree. As a result, your last policy year becomes 15 months. It will be subject to the same limits of coverage that applied when the policy year was 12 months.*

**How the limits of coverage apply if the total limit is left blank.** If the amount of the Total limit is left blank in the Coverage Summary, that total limit will be considered to be the same as the Each error limit or $100,000, whichever is more.

**How the limits of coverage apply to the limited and extended reporting periods.** The limits of coverage that apply on the ending date of this agreement aren't renewed or increased for claims or suits first made or brought during the limited reporting period, or extended reporting period, if it applies.

## Deductibles

The deductibles shown in the Coverage Summary and the information contained in this section fix the amount of damages and defense expenses over which the limits of coverage will apply, regardless of the number of:
•protected persons;
•claims made or suits brought; or
•persons or organizations making claims or bringing suits.

**Each error deductible.** You'll be responsible for the amount of damages and defense expenses within this deductible for all covered loss that is caused by each error or series of related errors.

If we settle a claim or suit that's subject to this deductible, we'll pay the deductible as part of the settlement. You agree to repay us as soon as we notify you of the settlement.

**Total deductible.** You'll be responsible for the amount of damages and defense expenses within this deductible for all claims and suits for covered loss first made or brought in:
•a policy year; and
•the limited reporting period, or extended reporting period, if it applies.

However, if none or zero is shown for the Total deductible in the Coverage Summary, the total amount you'll be responsible for within the Each error deductible is not limited.

## Exclusions – What This Agreement Won't Cover

**Advertising injury.** We won't cover advertising injury.

*Advertising injury* means injury, other than bodily injury or personal injury, caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:
•Libel or slander.
•Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
•Making known to any person or organization written or spoken material that violates an individual's right of privacy.
•Unauthorized taking or use of any advertising idea, material, slogan, style or title of others.

We explain what we mean by:
•bodily injury in the Bodily injury exclusion; and
•personal injury in the Personal injury exclusion.

**Bodily injury.** We won't cover bodily injury.

*Bodily injury* means any harm, including sickness or disease, to the health of other persons. It includes:
•Mental anguish, injury or illness.
•Emotional distress.
•Care, loss of services, or death.

**Breach of security.** We won't cover loss that results from any failure of your computer or electronic products or services to prevent unauthorized access to or use of a computer or electronic system or program.

**Contract liability.** We won't cover loss for which the protected person is legally required to pay damages because of liability assumed under any contract or agreement.

However, we won't apply this exclusion to:

- loss for which the protected person would be legally required to pay damages without the contract or agreement; or
- consequential damages incurred by the protected person under a contract or agreement.

**Cost guarantees.** We won't cover loss that results from any:
- cost guarantee or probable cost estimate being exceeded; or
- cost overrun.

**Criminal or intentionally wrongful acts or omissions.** We won't cover loss that results from any criminal, dishonest, fraudulent or other intentionally wrongful act or omission committed by anyone with the consent or knowledge of you or any of your partners, directors or executive officers.

For example:

*Without your knowledge, one of your employees deliberately causes a product to be released with a virus. The virus results in your customer incurring a loss. We won't apply this exclusion to a claim made against you by your customer for that loss. However, we won't protect the employee.*

**Delay in delivery.** We won't cover loss that results from any:
- delay in delivery of; or
- failure to deliver;

your computer or electronic products or services.

For example:

*You promise to have a software product ready for a customer by a certain date. A delay in your development of that product makes you unable to have it ready by the date promised. As a result of not having that software, your customer loses sales. We won't cover such loss.*

**Employment-related practices.** We won't cover loss that is sustained by a person and results from any:
- refusal to employ that person;
- termination of that person's employment; or
- other employment-related act, omission, policy or practice, such as coercion, defama-

tion, demotion, discipline, discrimination, evaluation, harassment, humiliation or reassignment, directed at that person.

Nor will we cover loss sustained by the spouse or any child, parent, brother or sister of that person if such loss results from the loss sustained by that person.

We'll apply this exclusion whether the protected person may be held liable as an employer or in any other capacity.

We'll also apply this exclusion to any obligation of the protected person to share damages with or to repay someone else who must pay damages because of such loss.

**Intellectual property.** We won't cover loss that results from any actual or alleged infringement or violation of any:
- copyright;
- patent;
- trade dress;
- trade name;
- trade secret;
- trademark; or
- other intellectual property right or law.

**Nuclear energy liability.** We won't cover loss for which any protected person:
- is covered by a nuclear energy liability policy; or
- would have been covered by such policy if that policy's limits of coverage hadn't been used up.

Nor will we cover loss that results from the hazardous properties of nuclear material.

*Nuclear energy liability insurance policy* means any nuclear energy liability insurance policy issued by:
- Nuclear Energy Liability Insurance Association;
- Mutual Atomic Energy Liability Underwriters;
- Nuclear Insurance Association of Canada; or
- any of their successors.

*Hazardous properties* include radioactive, toxic or explosive properties.

*Nuclear material* means any nuclear material defined in the federal Atomic Energy Act, or any of its amendments.

**Penalties.** We won't cover any penalty you have agreed to pay your customer for any reason.

**Personal injury.** We won't cover personal injury.

*Personal injury* means injury, other than bodily injury or advertising injury, caused by a personal injury offense.

*Personal injury offense* means any of the following offenses:
•False arrest, detention or imprisonment.
•Malicious prosecution.
•Wrongful entry or wrongful eviction.
•Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
•Libel or slander.
•Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
•Making known to any person or organization written or spoken material that violates an individual's right of privacy.

**Pollution.** We won't cover loss that results from pollution.

Nor will we cover any loss, cost or expense that results from any:
•request, demand or order that any protected person or others perform pollution work; or
•claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

*Pollution* means any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant.

*Pollutant* means any solid, liquid, gaseous or thermal irritant or contaminant, including:
•smoke, vapors, soot, fumes;
•acids, alkalis, chemicals; or
•waste.

*Waste* includes materials to be recycled, reconditioned or reclaimed.

*Pollution work* means
•the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing of any pollutant; or
•the responding to, or assessing, in any way the effects of any pollutant.

**Property damage.** We won't cover property damage.

*Property damage* means:
•physical damage to tangible property of others, including all resulting loss of use of that property; or
•loss of use of tangible property of others that isn't physically damaged if such loss of use is caused by an event.

*Tangible property* does not include data.

*Event* means an accident, other than an error. It includes continuous or repeated exposure to substantially the same general harmful conditions.

**Violation of trade law.** We won't cover loss that results from any actual or alleged violation of any federal or state anti-trust, restraint of trade or unfair trade practices law.

**Voluntary payments or credits.** We won't cover any voluntary payment or credit to any of your customers. For example:

*In response to a customer's complaint, you've agreed to pay the customer $200 for each day that a software system you sold that customer was not up and running after it was delivered. We won't cover such payments.*

**Other Insurance**

This agreement is primary insurance. If there is any other valid and collectible insurance for loss covered by this agreement, the following applies:

**Other primary insurance.** When there is other primary insurance for loss covered by this agreement we'll pay that portion of the damages which:
•exceeds the deductible; and
•equals our percentage of the total of all limits of coverage that apply.
But we won't pay more than the limit of coverage that applies under this agreement. For example:

©St.Paul Fire and Marine Insurance Co.1994 All Rights Reserved

*The limit of coverage under this agreement is $100,000. Another insurance policy with a limit of $25,000 also covers loss covered by this agreement. We won't pay more than 80% ($100,000/$125,000) of the loss, less any deductible.*

However, if the extended reporting period applies, we'll apply this agreement as excess insurance over any part of any other valid and collectible insurance that:
• is available under any policy in effect during the extended reporting period; and
• provides coverage for claims or suits for covered loss first made or brought during the extended reporting period.

We'll do so whether such other insurance applies on a primary, excess, contingent or any other basis.

We explain how we'll apply this agreement as excess insurance in the Excess insurance section.

**Excess insurance.** When this agreement is excess insurance, we'll have no duty to defend any claim or suit that any other insurer has a duty to defend. However, we'll defend a claim or suit for covered loss if the other insurers won't. In return, we'll require that the protected persons give us all of their rights against those insurers.

Also, we'll pay only the amount of damages that's in excess of:
• the total amount that all such other insurance would pay if this agreement didn't exist; and
• the total of all deductible and self-insured amounts under all such other insurance.

However, we'll share such excess loss with any other insurance that:
• isn't described in the Other primary insurance section ; and
• wasn't bought specifically to apply in excess of the limits of coverage shown in the Coverage Summary.

But we won't pay more than the limit of coverage that applies under this agreement.

This endorsement changes your Technology
Errors And Omissions Liability Protection –
Claims-Made.

## How Coverage Is Changed

The following is added to the Exclusions-What
This Agreement Won't Cover section.  This
change excludes coverage.

**Developmental risk.**  We won't cover loss that
results from any error committed before or
during the pre-release phase of your computer
or electronic products or services.  For exam-
ple:

*You are in the process of developing a
software system for your customer.  As
part of a testing process, your customer is
using the software to determine if it is
compatible with the customers needs.  We
won't cover any loss that results from that
software or its testing.*

*Pre-release phase*  means the period of time
before acceptance by your customer.

## Other Terms

All other terms of your policy remain the same.

This endorsement changes your Technology
Errors And Omissions Liability Protection -
Claims-Made.

## How Coverage Is Changed

The following is added to the Exclusions – What
This Agreement Won't Cover section. This
change excludes coverage.

**Professional services.** We won't cover loss that
results from the performance of or failure to
perform professional services by or for the
protected person while acting or working as an:
•accountant;
•architect;
•health care provider;
•lawyer; or
•structural engineer.

## Other Terms

All other terms of your policy remain the same.

This endorsement changes your Computer Services And Software Errors and Omissions Liability Protection - Claims-Made.

## How Coverage Is Changed

The following is added to the When This Agreement Covers Section. This change broadens coverage.

**3. Extended reporting period for certain claims or suits for bodily injury or tangible property damage.** We'll apply this agreement to certain claims or suits for covered bodily injury or tangible property damage first made or brought on or anytime after the ending date of the limited reporting period. But we'll do so only if such claims or suits are for covered bodily injury or tangible property damage that:

• result from errors committed by you or other protected persons while this agreement, or any previous agreement which has been continuously renewed with us, was in effect;

• happened while this agreement, or any previous agreement which has been continuously renewed with us, was in effect; and

• is subject to the Computer Services and Software Liability Endorsement (43617 Ed 1-86).

This endorsement doesn't extend the time that this agreement is in effect. Also, the limits of coverage that apply on the ending date of this agreement aren't renewed or increased for claims or suits first made or brought on or after that date.

*Bodily injury* means any harm to the health of other persons, including physical harm, sickness or disease, and mental anguish, injury or illness. And it includes care, loss of services, or death, that results from such harm.

*Limited reporting period* means the 60 days, starting with the ending date of this agreement, during which claims or suits for covered bodily injury or tangible property damage may be first made or brought.

## Other Terms

All other terms of your policy remain the same.

Limiting Endorsement

This endorsement changes your Technology Errors And Omissions Liability
Protection – Claims–Made.

HOW YOUR COVERAGE IS CHANGED

This endorsement limits your coverage as described below.

Your Technology Errors And Omissions Liability Protection – Claims–Made only
applies to the CEqual Software, the QuantEM software and the PerSPECTIVE
Software.

OTHER TERMS

All other terms of your policy remain the same.

| | | |
|---|---|---|
| **Name of Insured**<br>EMORY UNIVERSITY | **Policy Number** HG07200088<br>**Processing Date** 02/12/96  11:44  003 | **Effective Date** 01/01/96 |

40502 Ed. 1–80 Printed in U.S.A.     – Customized Form

©St.Paul Fire and Marine Insurance Co. 1980 All Rights Reserved     Page   1



# EXHIBIT / ATTACHMENT

## 2

(To be scanned in place of tab)

This is a true and certified copy

of the policy effective

01 | 01 | 97

Issued to _ENORY UNIVERSITY_

_Jane E Lienemann_
Underwriter

_2-15-02_
Signature Date



# EXHIBIT / ATTACHMENT



(To be scanned in place of tab)

**RENEWAL CERTIFICATE**                                                    The **StPaul**

Please insert this Renewal Certificate with the
rest of your policy.

---

In return for your premium, your policy is
renewed to the date shown on this certificate.

We, us, our and ours mean the insurance
company named on the Introduction.

The words you, your and yours mean the
insured named here:

EMORY UNIVERSITY
ATTN: AMANDA SMITH
312 ADMINISTRATION BUILDING
ATLANTA GA 30322

**INSURED NAMES CONTINUED ON BACK**

**Important.  Please refer to your Coverage
Summaries that are attached for any changes in
your policy.   You will also receive the benefit
of any changes we've made in our standard
policy forms that broaden or extend your
coverage without increasing your premium.**

Policy Number:   HG07200088

Is Renewed From:  01/01/97

To:  01/01/98

Premium:        $378,187.00

---

Our authorized representative is:
1003214
JOHNSON & HIGGINS INC
SUITE 3400
191 PEACHTREE STREET NE
ATLANTA GA 30303-1762
Authorized Representative            Date

*President*
Paul D. Ziccarelli
*Secretary*

**Processing Date** 01/29/97   08:34   001

---

40774 Ed.9-86 Printed in U.S.A.                    Renewal Certificate

INSURED NAMES CONTINUED:
OFFICE OF VICE PRESIDENT FOR
FINANCE & TREASURER

This endorsement summarizes the changes to
your policy.  All other terms of your policy not
affected by these changes remain the same.

---

**How Your Policy Is Changed**

LIABILITY

Your policy now provides for the following coverage:

     LAW ENFORCEMENT LIABILITY PROTECTION

Form Information:

The following forms are added to your policy:

     LAW ENFORCEMENT LIABILITY PROTECTION COVERAGE SUMMARY
     Form 47335, Ed 12-92

     LAW ENFORCEMENT LIABILITY PROTECTION
     Form 47292, Ed. 12-92

     LAW ENFORCEMENT DUTIES ENDORSEMENT
     Form 40502, Ed. 01-80

     FELLOW EMPLOYEE ENDORSEMENT
     Form 40502, Ed. 01-80

     CONTRACT LIABILITY LIMITATION ENDORSEMENT
     Form 40502, Ed. 01-80

---

**Premium Change Which Is Due Now**

Additional premium　　　　$13,800.00　　　Returned Premium

---

If issued after the date your policy
begins, these spaces must be completed
and our representative must sign below.

Policy issued to
EMORY UNIVERSITY
OFFICE OF VICE PRESIDENT FOR
    FINANCE & TREASURER

Authorized representative

Endorsement takes effect　　　Policy Number
01/01/97　　　　　　　　　　　　HG07200088
Processing Date: 06/25/97　　09:17　007

This Coverage Summary shows the limits of
coverage and deductibles that apply to your
Law Enforcement Liability Protection. It also
lists those endorsements, if any, that must have
certain information shown for them to apply.

| Limits Of Coverage | | Deductibles | |
|---|---|---|---|
| Total limit. | $ 3,000,000. | Each wrongful act deductible. | $ 5,000. |
| Each wrongful act limit. | $ 1,000,000. | Total deductible. | |

**Important Note:** If a Total deductible is not
shown, the total amount you'll be responsible
for within the other deductible is not limited.

## Named Endorsement Table

**Important Note:** Only endorsements that must have certain information shown for them to apply
are named in this table. The required information follows the name of each such endorsement.
Other endorsements may apply too. If so, they're listed on the Policy Forms List.

This insuring agreement provides professional liability protection for the conduct of law enforcement duties by or for your law enforcement agency. There are, of course, limitations and exclusions which apply to that protection. As a result, this agreement should be read carefully to determine the extent of the coverage provided to you and other protected persons.

| Table of Contents | Page |
|---|---|
| **What This Agreement Covers** | 1 |
| Right and duty to defend. | 2 |
| Additional payments. | 2 |
| Right to appeal. | 3 |
| **When This Agreement Covers** | 3 |
| **Where This Agreement Covers** | 3 |
| **Who Is Protected Under This Agreement** | 3 |
| Public entity. | 3 |
| Elected or appointed officials. | 3 |
| Employees. | 3 |
| Volunteer workers. | 3 |
| Separation of protected persons. | 3 |
| **Limits Of Coverage** | 4 |
| Total limit. | 4 |
| Each wrongful act limit. | 4 |
| How the limits of coverage apply to an extension of the policy period. | 4 |
| How the limits of coverage apply if the Total limit is left blank. | 4 |
| **Deductibles** | 4 |
| Each wrongful act deductible. | 4 |
| Total deductible. | 4 |
| **Exclusions – What We Won't Cover** | 4 |
| Aircraft, auto, mobile equipment. | 4 |
| Contract liability. | 5 |
| Control of property. | 5 |
| Criminal or dishonest acts. | 5 |
| Employer's liability. | 5 |
| Employment-related practices. | 5 |
| Health care professional services. | 5 |
| Injury to volunteer workers. | 5 |
| Liquor liability. | 5 |
| Nuclear energy liability. | 6 |
| Pollution. | 6 |
| Workers' compensation. | 6 |
| **Other Insurance** | 6 |

## What This Agreement Covers

We'll pay amounts any protected person is legally required to pay as damages for covered injury or damage that:

• results from the conduct of law enforcement duties by or for your law enforcement agency;
• happens while this agreement is in effect; and
• is caused by a wrongful act.

*Protected person* means any person or organization who qualifies as a protected person under the Who Is Protected Under This Agreement Section.

*Injury or damage* means bodily injury, personal injury or property damage.

*Bodily injury* means any harm to the health of other persons. It includes care, loss of services, or death, that results from such harm.

*Harm* includes any of the following:
• Physical harm, sickness or disease.
• Mental anguish, distress, injury or illness.
• Emotional distress.
• Humiliation.

*Personal injury* means injury, other than bodily injury, caused by any of the following wrongful acts:
• False arrest, detention or imprisonment.
• Malicious prosecution.
• Wrongful entry or wrongful eviction.
• Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
• Libel or slander.
• Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.

•Making known to any person or organization written or spoken material that violates an individual's right of privacy.
•False or improper service of process.
•Violation of civil rights protected under any federal, state or local law.

*Property damage* means:
•physical damage to tangible property of others, including all resulting loss of use of that property; or
•loss of use of tangible property of others that isn't physically damaged.

We'll consider all loss of use of damaged tangible property to happen at the time of the physical damage which caused it. And we'll consider all loss of use of undamaged tangible property to happen at the time of the wrongful act which caused it.

*Law enforcement duties* mean any of the duties or obligations that must be performed or fulfilled by or for your law enforcement agency in order to enforce or carry out local, state or federal government laws or regulations. They include the following:
•Ownership, maintenance or use of a premises that you own, rent or lease in order to perform or fulfill such duties or obligations.
•Providing first aid at the time of an accident or crime.

*Your law enforcement agency* means a police or sheriff's department that:
•is considered to be part of you; or
•is your legal responsibility.

*Wrongful act* means any error, omission or negligent act.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered injury or damage made or brought against any protected person. We'll do so even if any of the allegations of any such claim or suit are groundless, false or fraudulent. But we have no duty to perform other acts or services. And our duty to defend claims or suits ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

We'll have the right to investigate any claim or suit to the extent that we believe is proper.

We'll also have the right to settle any claim or suit within the available limits of coverage.

*Claim* means a demand which seeks damages.

*Suit* means a civil proceeding which seeks damages. It includes:
•an arbitration proceeding for such damages to which the protected person must submit or submits with our consent; and
•any other alternative dispute resolution proceeding for such damages to which the protected person submits with our consent.

**Additional payments.** We'll have the duty to make only the payments shown below in connection with any claim or suit we defend. These payments are in addition to the limits of coverage. But our duty to make such payments ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

*Our expenses.* We'll pay all expenses we incur.

*Bonds to release property.* We'll pay the costs of bonds to release property that's being used to secure a legal obligation. But only for bond amounts within the limit of coverage that applies. We don't have to furnish such bonds.

*Expenses incurred by protected persons.* We'll pay all reasonable expenses that any protected person incurs at our request while helping us investigate or defend a claim or suit. But we won't pay more that $250 per day for earnings actually lost by the protected person because of time taken off from work.

*Prejudgment interest.* We'll pay the prejudgment interest that's awarded against the protected person on that part of a judgment paid by us. But if we make a settlement offer to pay the available limit of coverage, we won't pay the prejudgment interest that accumulates after the date of our offer.

*Postjudgment interest.* We'll pay all interest that accumulates on the full amount of that part of a judgment for which we make a payment. But only from the date of the judgment to the date we:
•pay;
•offer to pay; or

•deposit in court;
the limit of coverage that applies to the judgment.

**Right to appeal.** We'll have the right to appeal a judgment for covered injury or damage in any suit we defend.

If we appeal such a judgment, we'll pay all expenses which result directly from that appeal, including the cost of appeal bonds and postjudgment interest. Such appeal expenses are in addition to the limits of coverage. However, the results of an appeal won't change the limits of coverage that apply under this agreement.

## When This Agreement Covers

We'll apply this agreement to claims or suits for covered injury or damage whenever they're made or brought.

## Where This Agreement Covers

We'll defend claims and suits, and pay judgments and settlements, only in the coverage territory for covered injury or damage caused by wrongful acts that are committed there.

However, we'll also defend claims and suits, and pay judgments and settlements, in the coverage territory for covered injury or damage caused by wrongful acts that are committed in the rest of the world. But only if they result from the conduct of law enforcement duties by a person who:
•has a home in the coverage territory; and
•is away for a short time on your business.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada. It includes international waters or airspace only during travel or transportation between any of the above places.

## Who Is Protected Under This Agreement

**Public entity.** If you are a public entity named in the Introduction, you are a protected person only for the conduct of law enforcement duties by or for your law enforcement agency.

**Elected or appointed officials.** Your lawfully elected or appointed officials are protected persons only for the conduct of law enforcement duties within the scope of their duties as officials for your law enforcement agency.

**Employees.** Your employees are protected persons only for the conduct of law enforcement duties within the scope of their employment by you in your law enforcement agency.

However, no employee is a protected person for bodily injury or personal injury to:
•any fellow employee; or
•the spouse or any child, parent, brother or sister of that fellow employee if such injury results from the bodily injury or personal injury to the fellow employee.

**Volunteer workers.** Your volunteer workers are protected persons only for the conduct of law enforcement duties within the scope of their duties for your law enforcement agency.

**Separation of protected persons.** We'll apply this agreement:
•to each protected person named in the Introduction as if that protected person was the only one named there; and
•separately to each other protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section. Also, any right or duty specifically assigned to the first Named Insured remains unchanged. We explain those rights and duties in the General Rules, which is part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay regardless of the number of:
•protected persons;
•claims made or suits brought; or
•persons or organizations making claims or bringing suits.

**Total limit.** This is the most we'll pay for all covered injury or damage that:
•happens in a policy year; and
•is caused by all wrongful acts.

*Policy Year* means the policy period shown in the Introduction when the policy period is one year or less. But when the policy period is longer than one year, it means each consecutive annual period, and the remaining period if any, that the policy is in effect, starting with date the policy begins.

**Each wrongful act limit.** This is the most we'll pay for all covered injury or damage that:
•happens in a policy year; and
•is caused by any one wrongful act or series of related wrongful acts.

*Series of related wrongful acts* means two or more wrongful acts, including repeated or continuous wrongful acts, that are related to the same injury or damage.

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for three years. During the last policy year you request a three month extension. We agree. As a result, your last policy year becomes 15 months. It will be subject to the same limits of coverage that applied when the policy year was 12 months.*

**How the limits of coverage apply if the Total limit is left blank.** If the amount of the Total limit is left blank in the Coverage Summary, that total limit will be considered to the same as the each

wrongful act limit or $100,000, whichever is more.

## Deductibles

The deductibles shown in the Coverage Summary and the information contained in this section fix the amount of damages over which the limits of coverage will apply, regardless of the number of:
•protected persons;
•claims made or suits brought; or
•persons or organizations making claims or bringing suits.

**Each wrongful act deductible.** You'll be responsible for the amount of damages within this deductible for all covered injury or damage that's caused by each wrongful act or series of related wrongful acts.

We can pay the deductible to settle a claim or suit. If we do, you agree to repay us as soon as we notify you of the settlement.

**Total deductible.** This is the most you'll be responsible for within the each wrongful act deductible in a policy year, regardless of how often that deductible applies.

However, if an amount is not shown for the Total deductible in the Coverage Summary, the total amount you'll be responsible for within the each wrongful act deductible is not limited.

## Exclusions – What We Won't Cover

**Aircraft, auto, mobile equipment.** We won't cover injury or damage that results from the:
•ownership, maintenance, use or operation;
•loading or unloading; or
•entrustment to others;
of any aircraft, auto or mobile equipment owned, operated, rented, leased, hired or borrowed by any protected person.

*Auto* means any land motor vehicle, trailer or semitrailer designed for travel on public streets

or roads. It includes any permanently attached machinery or equipment.

*Mobile equipment* means any land vehicle other than an auto.

**Contract liability.** We won't cover the protected person's liability for injury or damage assumed under any contract or agreement.

However, we won't apply this exclusion to liability for injury or damage the protected person would have without the contract or agreement. Nor will we apply this exclusion to the protected person's liability for injury or damage assumed under a mutual law enforcement assistance agreement or contract made before the wrongful act which causes such injury or damage is committed.

**Control of property.** We won't cover property damage to the following property:
•Property you own, rent, lease, occupy or borrow.
•Personal property in the care, custody or control of any protected person.

**Criminal or dishonest acts.** We won't cover injury or damage that results from any criminal, dishonest or fraudulent act or omission committed:
•by the protected person; or
•with the consent or knowledge of the protected person.

**Employer's liability.** We won't cover bodily injury to an employee arising out of and in the course of his or her employment by a protected person. Nor will we cover bodily injury to the spouse, child, parent, brother or sister of that employee or worker which results from the bodily injury to the employee.

We'll apply this exclusion whether the protected person may be held liable as an employer or in any other capacity, such as a property owner.

We'll also apply this exclusion to any obligation of the protected person to share damages with or repay someone else who must pay damages because of bodily injury to any employee of the protected person.

**Employment-related practices.** We won't cover bodily injury or personal injury that results from:
•refusal to employ;
•termination of employment; or
•coercion, defamation, demotion, discipline, discrimination, evaluation, harassment, humiliation, reassignment or other employment-related acts or omissions, policies or practices.

We'll apply this exclusion whether the protected person may be held liable as an employer or in any other capacity.

We'll also apply this exclusion to any obligation of the protected person to share damages with or to repay someone else who must pay damages because of such injury.

**Health care professional services.** We won't cover injury or damage that results from the performance of or failure to perform health care professional services.

However, we won't apply this exclusion to the protected person's providing of or failure to provide first aid at the time of an accident or crime.

*Health care professional services* include:
•dental, medical, mental, nursing, surgical, x-ray and other health care professional services, including food or beverages provided with those services;
•the dispensing of drugs or medical or dental supplies and appliances; and
•the handling or treatment of corpses, including autopsies, organ donations and other postmortem procedures.

**Injury to volunteer workers.** We won't cover bodily injury or personal injury to any volunteer worker who is injured in the conduct of law enforcement duties within the scope of their duties for you.

**Liquor liability.** We won't cover injury or damage that results from any protected person:
•causing or contributing to the intoxication of any person;
•selling, serving or furnishing alcoholic beverages to any person under the legal drinking age or under the influence of alcohol; or

•violating any law or regulation applying to the sale, gift, distribution or use of alcoholic beverages.

**Nuclear energy liability.** We won't cover injury or damage that results from the hazardous properties of any nuclear material.

*Hazardous properties* include radioactive, toxic or explosive properties.

*Nuclear material* means any nuclear material defined in the Federal Atomic Energy Act, or any of its amendments.

**Pollution.** We won't cover injury or damage that results from pollution.

We also won't cover any loss, cost or expense that results from:
•any request, demand or order that any protected person or others perform pollution work; or
•any claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

*Pollution* means any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant.

*Pollutant* means any solid, liquid, gaseous or thermal irritant or contaminant, including:
•smoke, vapors, soot, fumes;
•acids, alkalis, chemicals; and
•waste.

*Waste* means materials to be recycled, reconditioned or reclaimed.

*Pollution work* means:
•the testing for, monitoring, cleaning up,

removing, containing, treating, detoxifying or neutralizing of any pollutant; or
•the responding to, or assessing, in any way the effects of any pollutant.

**Workers' compensation.** We won't cover any obligation that the protected person has under a workers' compensation, disability benefits or unemployment compensation law, or any similar law.

### Other Insurance

This agreement is primary insurance. If there is any other valid and collectible insurance for injury or damage covered by this agreement, we'll pay the portion of the damages which:
•exceed the deductible that applies; and
•equals our percentage of the total of all limits that apply.

But we won't pay more than the limits of coverage that apply under this agreement. For example:

*You are required by a court to pay damages of $100,000. The limit of coverage under this agreement is $100,000. And the deductible is $1,000. Another insurance policy with a limit of $100,000 also applies. The total limit of insurance is $200,000.*

*Our limit is 50% ($100,000/$200,000) of the total limit. But we won't pay 50% of $100,000, which is equal to $50,000. We'll pay only $49,500, which is equal to 50% of the amount of the judgment that exceeds our $1,000 deductible ($100,000 – $1,000 = $99,000).*

Law Enforcement Duties Endorsement

This endorsement changes your Law Enforcement Liability Protection.

HOW COVERAGE IS CHANGED

The following replaces the definition of Law enforcement duties under What This Agreement Covers section. This changes broadens the definition of Law enforcement duties.

Law Enforcement Duties mean any of the duties or obligations that must be performed or fulfilled by or for your law enforcement agency in order to enforce or carry out local, state or federal government laws or regulations and Emory University policies and procedures. They include the following:

* Ownership, maintenance or use of a premises that you own, rent or lease in order to perform or fulfill such duties or obligations.

* Providing first aid at the time of an accident or crime.


OTHER TERMS

All other terms of your policy remain the same.

---

| **Name of Insured** | **Policy Number** HGO7200088 | **Effective Date** 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 06/25/97  09:17  007 | |

40502 Ed 1-80 Printed in U.S.A.                                    Customized Form

Fellow Employee Endorsement

---

This endorsement changes your Law Enforcement Liability Protection.

HOW COVERAGE IS CHANGED

The following replaces the Employees section under Who Is Protected Under This Agreement. This change clarifies who is considered a fellow employee.

EMPLOYEES. Your employees are protected persons only for the conduct of law enforcement duties within the scope of their employment by you in your law enforcement agency.

However, no employee is a protected person for bodily injury or personal injury to:

* any fellow employee of the Emory University Police Department; or

* the spouse or any child, parent, brother or sister of that fellow employee if such injury results from the bodily injury or personal injury to the fellow employee.

OTHER TERMS

All other terms of your policy remain the same.

---

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 06/25/97  09:17  007 | |

Contract Liability Limitation Endorsement

This endorsement changes your Law Enforcement Liability Protection.

HOW COVERAGE IS CHANGED

The following replaces Contract liability under Exclusions – What We Won't Cover section. This change broadens coverage.

CONTRACT LIABILITY. We won't cover the protected persons liability for injury or damage assumed under any contract or agreement.

However, we won't apply this exclusion to liability for injury or damage the protected person would have without the contract or agreement. Nor will we apply this exclusion to the protected person's liability for injury or damage assumed under a mutual law enforcement assistance agreement or contract made before the wrongful act which causes such injury or damage is committed. Nor will we apply this exclusion to the protected person's liability for injury or damage assumed under contracts relating to cooperative policing efforts with DeKalb County.

OTHER TERMS

All other terms of your policy remain the same.

---

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 06/25/97   09:17   007 | |

40502 Ed.1-80 Printed in U.S.A.                    Customized Form

This endorsement summarizes the changes to
your policy.  All other terms of your policy not
affected by these changes remain the same.

_____

**How Your Policy Is Changed**


GENERAL LIABILITY
-----------------

Class Code Information:

      The Following Class Code(s) Have Been Added.
          46622 -003-PREM  PARKING - PRIVATE
          46622 -004-PREM  PARKING - PRIVATE
          46622 -005-PREM  PARKING - PRIVATE
          46622 -006-PREM  PARKING - PRIVATE


Form Information:

The endorsement named below is changed.

      COVERED PREMISES AT CRAWFORD LONG HOSPITAL ENDORSEMENT
      Form 40502, Ed. 01-80

_____

**Premium Change Which Is Due Now**

| Additional premium | $15,957.00 | Returned Premium |
|---|---|---|

_____

If issued after the date your policy
begins, these spaces must be completed
and our representative must sign below.

Policy issued to
  EMORY UNIVERSITY
  OFFICE OF VICE PRESIDENT FOR
    FINANCE & TREASURER


Authorized representative

Endorsement takes effect          Policy Number
01/01/97                            HG07200088
Processing Date: 05/27/97  07:55  004

_____

Covered Premises At Crawford Long Hospital Endorsement

R E V I S E D

This endorsement changes your Commercial General Liability Protection.

HOW COVERAGE IS CHANGED

Your Commercial General Liability Protection is changed by adding the following Crawford Long locations to your policy.  The effect of this change broadens your coverage, specifically to these locations.

DESCRIPTION AND LOCATION OF PREMISES

1.  Medical Records, 515 W. Peachtree St.
2.  Candler Building Parking, 500 Peachtree St.
3.  Byron Building, 549 Peachtree St.
4.  Candler Building A, 478 Peachtree St.
5.  Candler Building B, 490 Peachtree St.
6.  Candler Building C, 490 Peachtree St.
7.  Storage (Art Gallery), 505 W. Peachtree St.
8.  Peachtree Street Parking, 26 Linden St.
9.  Offices, 17 Prescott St.
10. Offices (Nursing School), 543 Peachtree St.
11. Research Lab, 530 W. Peachtree St.
12. Glenn Building, 25 Prescott St.
13. Out Patient Center Parking Deck and Bridge, 20 Linden Ave.
14. Prescott "A" Parking Deck, 514 Peachtree St.
15. Peachtree Linden Parking Lot, 26 Linden St.
16. CTRL "F" Lot, 530 West Peachtree St.

We'll cover bodily injury, property damage, personal injury and advertising injury on the premises described above or within 100 feet of these described premises.

All other locations at the Crawford Long Hospital "Campus" is provided coverage under the Emory University Self Insured Retention.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**           **Policy Number** HG07200088      **Effective Date** 01/01/97
EMORY UNIVERSITY                **Processing Date** 05/27/97  07:55  004

40502 Ed 1-80 Printed in U.S.A.              Customized Form

**POLICY CHANGE ENDORSEMENT**          COPY                                    The St Paul

This endorsement summarizes the changes to
your policy. All other terms of your policy not
affected by these changes remain the same.

## How Your Policy Is Changed

GENERAL LIABILITY
-----------------

Class Code Information:

    The Following Class Code(s) Have Been Added.
        46622 -002-PREM  PARKING - PRIVATE
        60010 -001-PREM  APARTMENT BUILDINGS
        61217 -001-PREM  BLDGS OR PREM-BNK OR OFF-MERC OR MFG-MNTD BY
        INSD(LESSOR'S RISK ONLY)PROFIT
        61217 -002-PREM  BLDGS OR PREM-BNK OR OFF-MERC OR MFG-MNTD BY
        INSD(LESSOR'S RISK ONLY)PROFIT
        61217 -003-PREM  BLDGS OR PREM-BNK OR OFF-MERC OR MFG-MNTD BY
        INSD(LESSOR'S RISK ONLY)PROFIT
        61217 -004-PREM  BLDGS OR PREM-BNK OR OFF-MERC OR MFG-MNTD BY
        INSD(LESSOR'S RISK ONLY)PROFIT
        67509 -002-PREM  SCHOOLS-COLLEGES, UNIVERSITIES, JUNIOR COLLEGES
        OR COLLEGE PREP-NOT PROFIT
        97003 -001-PREM  LABORATORIES - RESEARCH, DEVELOPMENT OR TESTING -
        NOT PROFIT
        97003 -001-PROD  LABORATORIES - RESEARCH, DEVELOPMENT OR TESTING -
        NOT PROFIT


Form Information:

The endorsement named below is added.

        COVERED PREMISES AT CRAWFORD LONG HOSPITAL ENDORSEMENT
        Form 40502, Ed. 01-80


**Premium Change Which Is Due Now**
Additional premium          $32,035.00      Returned Premium

| | |
|---|---|
| If issued after the date your policy begins, these spaces must be completed and our representative must sign below. | Policy issued to<br>EMORY UNIVERSITY<br>OFFICE OF VICE PRESIDENT FOR<br>    FINANCE & TREASURER |

Authorized representative                    Endorsement takes effect      Policy Number
                                             01/01/97                        HG07200088
                                             Processing Date: 03/17/97    13:00   003

Covered Premises At Crawford Long Hospital Endorsement

---

This endorsement changes your Commercial General Liability Protection.

HOW COVERAGE IS CHANGED

Your Commercial General Liability Protection is changed by adding the following Crawford Long locations to your policy. The effect of this change broadens your coverage, specifically to these locations.

DESCRIPTION AND LOCATION OF PREMISES

1. Medical Records, 515 W. Peachtree St.
2. Candler Building Parking, 500 Peachtree St.
3. Byron Building, 549 Peachtree St.
4. Candler Building A, 478 Peachtree St.
5. Candler Building B, 490 Peachtree St.
6. Candler Building C, 490 Peachtree St.
7. Storage (Art Gallery), 505 W. Peachtree St.
8. Peachtree Street Parking, 26 Linden St.
9. Offices, 17 Prescott St.
10. Offices (Nursing School), 543 Peachtree St.
11. Research Lab, 530 W. Peachtree St.
12. Glenn Building, 25 Prescott St.

We'll cover bodily injury, property damage, personal injury and advertising injury on the premises described above or within 100 feet of these described premises.

All other locations at the Crawford Long Hospital "Campus" is provided coverage under the Emory University Self Insured Retention.

OTHER TERMS

All other terms of your policy remain the same.

---

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 03/17/97 13:00 003 | |

# POLICY FORM LIST

The St. Paul

Here's a list of all forms included in your
policy, on the date shown below. These forms
are listed in the same order as they appear in
your policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Renewal Certificate | 40774 | 09-86 |
| Introduction — St. Paul Mercury Insurance Company | 40811 | 05-87 |
|    Policy Form List | 40705 | 05-84 |
|    Additional Named Protected Persons Endorsement | 40502 | 01-80 |
| General Rules | 40701 | 05-84 |
|    Government Access To Records Endorsement | 40581 | 03-83 |
|    Georgia Required Endorsement | 40518 | 03-96 |
|    Cancellation Notification Endorsement | 40502 | 01-80 |
|    Ninety Day Cancellation Notice | 40502 | 01-80 |
| What To Do If You Have A Loss | 40814 | 11-91 |
| Commercial General Liability Protection Coverage Summary | 47110 | 04-91 |
| Commercial General Liability Protection | 47500 | 04-91 |
|    Golfmobile Users Endt—Add'l Protected Persons | 43338 | 07-85 |
|    Executive Officer And Leased Worker Endorsement | 47444 | 10-93 |
|    Fellow Employee Bodily Injury Endorsement All Employees | 47167 | 04-91 |
|    Pollution Exclusion Lead Example Endorsement | 47482 | 10-93 |
|    Contract Liability Defense Expenses Endorsement | 47320 | 03-92 |
|    Day Care Center Medical Expenses Exclusion Endorsement | 43371 | 07-85 |
|    Computer Professional Services Exclusion Endorsement | 47178 | 04-91 |
|    Bodily Injury Definition Endorsement | 40502 | 01-80 |
|    Additional Protected Persons Endorsement #1 | 40502 | 01-80 |
|    Additional Protected Persons Endorsement #2 | 40502 | 01-80 |
|    Colleges Or Schools Endorsement With Student Medical Expenses Exclusion | 40502 | 01-80 |
|    Leased Employee Endorsement | 40502 | 01-80 |
|    Premises Exclusion Endorsement | 40502 | 01-80 |
|    Watercraft Extension Endorsement | 40502 | 01-80 |
|    Knowledge Of Accident Or Incident Endorsement | 40502 | 01-80 |
| Liquor Liability Protection Coverage Summary | 43885 | 09-86 |
| Liquor Liability Protection | 43611 | 11-85 |
|    Exclusion Endorsement | 40502 | 01-80 |
| Association Management Liability Protection—Cls Md | 41022 | 09-81 |
| Technology Errors And Omissions Liability Protection — Claims-Made Coverage Summary | 43599 | 04-94 |
| Technology Errors And Omissions Liability Protection — Claims-Made | 43598 | 04-94 |
|    Developmental Risk Exclusion Endorsement — Technology Errors And Omissions Liability | 47440 | 04-94 |
|    Professional Services Exclusion Endorsement — Technology Errors And Omissions Liability | 47466 | 04-94 |
|    Reporting Endorsement — Limited To Certain Claims Or Suits — Computer Services Or Software | 47579 | 09-94 |
|    Limiting Endorsement | 40502 | 01-80 |

PLEASE NOTE: This is a renewal of your policy. Some of the forms that make up your

| | | |
|---|---|---|
| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/97 |
| EMORY UNIVERSITY | **Processing Date** 02/10/97  09:33  002 | |

policy may not be attached.  Only agreements or endorsements that are new or have been changed are attached.  Please refer to your previous policy for any forms listed here that are not attached.

Additional Named Protected Persons Endorsement

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

This endorsement states that we will automatically cover for sixty (60) days any company, partnership or entity you acquire, or any newly acquired operating subsidiaries, when these companies, partnerships, entities and subsidiaries are greater than 50 percent owned or financially controlled by you. We must be notified within sixty (60) days of such formations.

You agreed to pay the additional permium for each new entity, if any, computed in accordance with the company's rules and rates.

OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/97 |
| EMORY UNIVERSITY | Processing Date 01/29/97 08:34 001 | |

40502 Ed.1-80 Printed in U.S.A.          Customized Form

This endorsement changes your policy to comply with Georgia law.

## Cancellation

The Cancellation section of the General Rules is replaced by the following.

**How you can cancel.** To cancel this policy or any part of it, the first named insured must deliver the policy, or the part to be cancelled, stating a future date when the policy is to be cancelled, to us or to any of our authorized agents. If this isn't possible, notify us by mail and include the date coverage is to end. After receiving the written request of cancellation from the first named insured, we can waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first named insured. The first named insured will get a refund for the unused premium, less a charge for early cancellation.

However, a law, a rule of this policy, or a rule in another agreement may apply which says that the policy can't be cancelled without prior notice to someone else. If so, we'll mail or deliver at least 10 days notice of cancellation to the first named insured and the other person or organization. We'll do this as soon as possible after receiving the first named insured's request for cancellation. The notice will show the date coverage will end. That date will be:

* 10 days after the date we mail the notice; or
* the date the first named insured requested that coverage end; whichever is later.

**How we can cancel if you don't pay your premium.** If you fail to pay any premium when due, we can cancel your policy. If we cancel for this reason, we'll mail or deliver a written cancellation notice to you and to any lienholder at least 10 days before your coverage will end.

**How we can cancel for other reasons.** If we decide to:

* cancel or nonrenew your policy;
* :increase your premium by more than 15% (for a reason other than change in the risk; or
* change any of the policy's rules or provisions that would limit or restrict coverage;

we'll mail or deliver a notice telling you what we intend to do at least 45 days before the expiration date of your policy. If we mail the notice, it will be to the first named insured's last address known to us. However, if your policy has been in effect less than 60 days, or if we are cancelling or changing your policy because of nonpayment of premium, we'll send the notice at least 10 days before coverage will end.

**Mailing the notice.** Mailing or delivery of this notice to the first named insured's last address know to us by proof of mailing will be proof you were notified of the cancellation, non-renewal or change.

**Unused premium** If this policy is cancelled, we'll send the first named insured any premium refund due.

If we cancel, the refund will be figured on a pro rata basis unless cancellation is for nonpayment of premium, including nonpayment of any installment of premium due under a premium installment plan. In that case, the refund may be less than pro-rata

If the first named insured cancels, the refund may also be less than pro rata.

Either way, cancellation will take effect regardless of whether or not we've offered or made a refund.

The St.Paul

Cancellation Notification Endorsement

This endorsement changes your General Rules.

HOW YOUR COVERAGE IS CHANGED

If we cancel this policy for any reason, we will mail or deliver a written cancellation notice to your last known address, to the attention of your Vice-President of Finance and Treasurer or General Council.

OTHER TERMS

All other terms of your policy remain the same.

| | | |
|---|---|---|
| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/97 |
| EMORY UNIVERSITY | **Processing Date** 01/29/97   08:34   001 | |

40502 Ed 1-90 Printed in U.S.A.                    Customized Form

Ninety Day Cancellation Notice

---

This endorsement changes your Georgia Required Endorsement.

HOW YOUR COVERAGE IS CHANGED

The How We Can Cancel For Other Reasons section of the above endorsement is revised to read as follows:

HOW WE CANCEL FOR OTHER REASONS.  If we decide to:

* cancel or nonrenew your policy;

* increase your premium by more than 15%, (for a reason other than change in the risk); or

* change any of the policy's rules or provisions that would limit or restrict coverage; we'll mail or deliver a notice telling you what we intend to do at least 90 days before the expiration date of your policy.  If we mail the notice, it will be to the first named insured's last address known to us.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**       **Policy Number** HG07200088      **Effective Date** 01/01/97
EMORY UNIVERSITY       **Processing Date** 01/29/97  08:34  001

**COMMERCIAL GENERAL LIABILITY PROTECTION
COVERAGE SUMMARY**

The **St.Paul**

This Coverage Summary shows the limits of
coverage that apply to your Commercial
General Liability Protection. It also lists those
endorsements, if any, that must have certain
information shown for them to apply.

| **Limits Of Coverage** | | **IMPORTANT NOTE:** |
|---|---|---|
| **General total limit.** | $2,000,000. | **Retroactive Date:** |
| **Products and completed work total limit.** | $1,000,000. | The retroactive date applies only if the Commercial General Liability Protection - Claims-Made insuring agreement is a part of this policy. |
| **Personal injury each person limit.** | $1,000,000. | |
| **Advertising injury each person limit.** | $1,000,000. | However, if no date is shown above and the claims-made agreement applies, we'll consider the retroactive date to be the same as the beginning date of this policy. |
| **Each event limit.** | $1,000,000. | |
| *Premises damage limit.* | $100,000. | |
| *Medical expenses limit.* | $5,000. | |

**Named Endorsement Table**

**Important Note:** Only endorsements that must have certain information shown for them to apply
are named in this table. The required information follows the name of each such endorsement.
Other endorsements may apply too. If so, they're listed on the Policy Forms List.

Watercraft Endorsement
  Description of Watercraft
  01  One - 40' Four oar rowing shells
  02  Two - 60' Eight oar rowing shells
  03  One - 16' Jonboat (Aluminum craft launch)
  04  Six - 15' Canoes
  05  Eight - 16' Canoes
  06  One - 16' Jonboat
  07  One - 1928 25' Santana 525 Sailboat
  08  One - 12' Sailboat

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 01/29/97  08:34  001 | |

**GOLFMOBILE USERS ENDORSEMENT –
ADDITIONAL PROTECTED PERSONS**

The St Paul

This endorsement changes your Commercial
General Liability Protection.

### How Coverage Is Changed

The following is added to the Who Is Protected
Under This Agreement section. This change
adds certain protected persons and limits their
protection.

**Golfmobile users.** Any person or organization
who uses or is legally responsible for the use
of golfmobiles which you or your concessio-
naires loan or rent to others is a protected
person. But only for covered injury or damage
that results from the use of the golfmobiles.

### Other Terms

All other terms of your policy remain the same.

Bodilily Injury Definition Endorsement

---

This endorsement changes your Commercial General Liability Protection.

HOW COVERAGE IS CHANGED

The following definition of Bodily Injury found in the What This Agreement Covers is deleted:

Bodily Injury means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness or disease:

* Mental anguish, injury or illness.
* Emotional distress.
* Care, loss of services, or death.

and is replaced with the following:

Bodily Injury means any harm to the health of other persons, including physical harm, sickness, disease and mental anguish, injury or illness. And it includes care, loss of services or death that results from such harm.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**                    Policy Number HG07200088          **Effective Date** 01/01/97
EMORY UNIVERSITY                       **Processing Date** 01/29/97  08:34   001

40502 Ed 1-89 Printed in U.S.A.                      Customized Form

Additional Protected Persons Endorsement #1

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Who Is Protected Under This Agreement section.
This change adds certain protected persons and limits their protection.

The person(s) or organization(s) shown below are protected, but only for
covered bodily injury or property damage that results from your operations.

Name of Protected Person(s) or Organization(s)

1. Students in University-sponsored programs and projects or holding
   University-appointed positions of responsibility or students in elected
   positions by other students, in connection with campus activities or
   affairs.

2. Volunteer workers and members of duly constituted committees or other
   recognized bodies performing services on behalf of the insured.

3. Trustees or members of a Board of Governors.

4. Student-teachers while teaching as part of their educational
   requirements.

5. Fraternities and sororities located at the University.

The coverage afforded by this endorsement is limited to the acts of those
listed above, only while acting within the scope of their duties as such for
you.  This coverage will be excess over any other valid and collectible
insurance available to them.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** HG07200088
**Processing Date** 01/29/97   08:34   001

**Effective Date** 01/01/97

Additional Protected Persons Endorsement #2

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Who Is Protected Under This Agreement section.
This change adds certain protected persons and limits their protection.

The person(s) or organization(s) shown below are protected, but only for
covered bodily injury or property damage that results from your operations.

PROTECTED PERSONS

Any person or organization with whom you have entered into a covered contract,
and who in that contract, has mandated they be included as an additional
protected person to your Commercial General Liability Protection.

A covered contract is defined on page 8 of 16 in your Insuring Agreement 36.

OTHER TERMS

All other terms of your policy remain the same.

| | | |
|---|---|---|
| **Name of Insured**<br>EMORY UNIVERSITY | **Policy Number** HG07200088<br>**Processing Date** 01/29/97  08:34  001 | **Effective Date** 01/01/97 |

Colleges Or Schools Endorsement With Student Medical Expenses Exclusion

---

This endorsement changes your Commercial General Liability Protection.

There are two changes which are explained below.

1.  The following is added to the Who Is Protected Under This Agreement
    section. This change adds certain protected persons and limits their
    protection.

TRUSTEES, BOARD MEMBERS OR COMMISSIONERS. Your trustees, board members or
commissioners are protected persons. But only for covered injury or damage
that happens or is committed while they're acting within the scope of their
duties.

STUDENT TEACHERS. Any student teacher teaching for you as part of their
educational requirements is a protected person. But only for covered injury or
damage that happens or is committed while they're acting within the scope of
their duties.

2.  The following exclusions are added to the Exclusions - What This Agreement
    Won't Cover section. This change excludes coverage.

INFIRMARY, CLINIC OR HOSPITAL. We won't cover injury or damage or medical
expenses that result from the performance of or failure to perform health care
professional services.

But we'll apply this exclusion only at any of your locations with an infirmary
with treatment and lodging facilities, or a public clinic or hospital.

We'll cover claims for injury or damage or medical expenses that result when
your health care professionals, while acting within the scope of their duties
for you, provide or fail to provide healthcare professional services at your
locations other than an infirmary with treatment and lodging facilities or a
public clinic or hospital. But we won't cover any health care professional
against malpractice claims.

HEALTH CARE PROFESSIONAL SERVICES include:

*   Medical, dental, x-ray, nursing or cosmetic treatments. And food or
    beverages given with these treatments.

*   The dispensing of drugs, medical or dental supplies and appliances.

*   The handling or treatment of corpses, including autopsies, organ
    donation or other procedures.

---

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 01/29/97  08:34  001 | |

---

40502 Ed.1-80 Printed in U.S.A.          Customized Form

TRANSPORTATION OF STUDENTS.  We won't cover bodily injury, property damage or medical expenses that result from the:

* ownership, maintenance, operations, or use;

* loading or unloading; or

* entrustment to others;

of any aircraft, auto or watercraft owned, operated, rented, leased, borrowed or hired by any protected person for the transportation of students to and from school.

HIRED includes any contract to furnish transportation of students to and from school.

STUDENT MEDICAL EXPENSES.  We won't cover medical expenses of any student.


OTHER TERMS

All other terms of your policy remain the same.

Leased Employee Endorsement

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Employees protection under the Who Is Protected Under This Agreement section.

Employees of the named insured shall include employees leased by the named insured from The Emory Clinic under the Contract Staff Leasing Agreement effective January 1, 1993. Conversely, employees of the named insured shall not include employees leased by the named insured to The Emory Clinic under the Contract Staff Leasing Agreement effective January 1, 1993.

OTHER TERMS

All other terms of your policy remain the same.

Premises Exclusion Endorsement

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

Your General Liability Protection is changed by adding the following exclusion to the Exclusions - Claims We Won't Cover section. The effect of this change is to reduce your coverage.

DESCRIPTION AND LOCATION OF PREMISES

1. Emory University Hospital
2. Crawford W. Long Memorial Hospital
3. Jesse Parker Williams Memorial, Inc.
4. The Carter Center, Inc.

PREMISES. We won't cover bodily injury, property damage, personal injury or advertising injury resulting from any of the following:

* ownership, maintenance or use of the described premises or of any property located on such premises;

* work on or off the described premises related to the ownership, maintenance or use of such premises; or

* products manufactured on or distributed from the described premises.

OTHER TERMS

All other terms of your policy remain the same.

---

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 01/29/97  08:34  001 | |

Watercraft Extension Endorsement

---

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The second paragraph of the Watercraft Exclusion is removed and replaced with the following. This change broadens coverage.

But we won't apply this exclusion to bodily injury, property damage, or medical expenses that result from:

* Liability for bodily injury or property damage assumed under any covered contract for the ownership, maintenance or use of watercraft.

* Watercraft while ashore on premises you own, rent or lease.

* Watercraft you don't own that is less than 50 feet long and isn't being used to carry persons or property for a charge.

* The operation of specialized equipment.

OTHER TERMS

All other terms of your policy remain the same.

---

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 01/29/97  08:34  001 | |

40502 Ed. 1-80 Printed in U.S.A.          Customized Form

Knowledge Of Accident Or Incident Endorsement

---

This endorsement changes your Commercial General Liability Protection.

HOW COVERAGE IS CHANGED

The following is added to What To Do If You Have A Loss - Someone Is Injured or Something Happens Which Can Result In A Liability Claim section.

3. Knowledge of an accident or incident by the agent or the protected persons or an employee of the Insured will not in itself constitute knowledge of the insured unless the Vice President of Finance and Treasurer or General Counsel has received notice of an accident or incident from the agent, other protected persons or an employee.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**　　　　**Policy Number** HG07200088　　　**Effective Date** 01/01/97
EMORY UNIVERSITY　　　　　**Processing Date** 01/29/97　08:34　001

40502 Ed.1-80 Printed in U.S.A.　　　　　Customized Form

# LIQUOR LIABILITY PROTECTION COVERAGE SUMMARY

The St Paul

This Coverage Summary shows the limits of coverage that apply to your Liquor Liability Protection. It also lists those endorsements, if any, that must have certain information shown for them to apply.

| Limits Of Coverage | | IMPORTANT NOTE |
|---|---|---|

**Retroactive Date:**

| | |
|---|---|
| Total limit. | $ 1,000,000. |
| Each person limit. | $ 1,000,000. |

**Retroactive Date:**

The retroactive date applies only if the Liquor Liability Protection - Claims-Made insuring agreement is a part of this policy.

However, if no date is shown above and the claims-made agreement applies, we'll consider the retroactive date to be the same as the beginning date of this policy.

## Named Endorsement Table

**Important Note:** Only endorsements that must have certain information shown for them to apply are named in this table. The required information follows the name of each such endorsement. Other endorsements may apply. If so, they're listed on the Introduction.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 01/29/97  08:34   001 | |

43885 Ed 9-86 Printed in U.S.A.                    Coverage Summary

Exclusion Endorsement

This endorsement changes your Liquor Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The following entity and location is excluded for coverage under this agreement.

EXCLUDED ENTITY AND LOCATION

Houston·Mill House
849 Houston Mill Road
Atlanta, GA  30329

and

The Carter Center

OTHER TERMS

All other terms of your policy remain the same.

| | | |
|---|---|---|
| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/97 |
| EMORY UNIVERSITY | **Processing Date** 01/29/97  08:34  001 | |

40502 Ed.1-80 Printed in U.S.A.              Customized Form

We've designed this agreement to protect against liability claims resulting from the management of your association. Of course there are limitations which are explained later in this agreement.

**Important note.** This is a claims-made coverage. Please read it carefully, especially the When A Claim Is Covered section.

## Table of Contents

| | Page |
|---|---|
| What This Agreement Covers | 1 |
| Who Is Protected Under This Agreement | 2 |
| When A Claim Is Covered | 2 |
| Limit of Coverage | 3 |
| Deductible | 3 |
| When We'll Pay | 3 |
| Exclusions-Claims We Won't Cover | 3 |
| Other Insurance | 4 |
| Authorized Representative | 4 |

## Coverage Summary

If no entries are shown here, see separate Coverage Summary.

**Limit of coverage.**

| | |
|---|---|
| $1,000,000. | Each policy year |

**Deductible.**

| | |
|---|---|
| $ N/A | Each claim |

**Optional reporting endorsement premium.** If this agreement ends because of one of us chooses to cancel it or not to renew it, we'll agree to sell you the optional reporting endorsement explained on page 3 for the following premium.
$ 4,500.00    .

## What This Agreement Covers

This agreement protects against loss and expense that occurs when a claim or suit is brought against you or any protected person for a wrongful act based on:

- an error or omission;
- negligence;
- breach of duty;
- misstatement, misleading statement; or

- publisher's liability.

All such acts or omissions will be referred to as wrongful acts in this agreement.

This protection applies even if a claim is groundless, fraudulent or brought solely because a person holds or held a position protected by this agreement.

*Publisher's liability* means:

- libel, slander, defamation, publicity or invasion of privacy;
- infringement of trademark, copyright, title, or slogan;
- plagiarism; or
- piracy or misappropriation of ideas

resulting from any publication, advertisement, broadcast, or telecast by or authorized by you or a protected person.

**Liability protection.** We'll pay amounts you or any other protected person is legally required to pay as a result of a claim or suit brought against you or a protected person. The claim must result from a wrongful act committed by a protected person or a person for whom they are legally responsible while acting on behalf of the Association.

**Investigation, defense and settlement.** We'll defend any suit brought against you or any protected person for covered claims, even if the suit is groundless or fraudulent.

We have the right to investigate any suit or claim, but we can't settle or compromise a suit or claim without written consent from you or the protected person involved. If consent is refused we won't have to pay more than what we would have paid if consent had been given to the proposed settlement or compromise. We can use the rights you or any protected person has in an arbitration proceeding that involves a covered claim.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 01/29/97   08:34   001 | |

41022 Ed.9-81 Printed in U.S.A.        Insuring Agreement 591        Page 1 of 4

We'll pay costs of defending the suit, including any expense you or protected persons incur with our consent. We won't include our salary expenses or fees of independent adjusters in defense costs. We'll pay defense costs before paying damages for covered claims.

Once the limit of coverage has been used up, we won't defend a suit or pay claims or defense costs. We can withdraw from any pending suit or proceeding by returning control of its defense to you and any other protected person involved.

You and all protected persons agree to pay us, when we ask, for any amount we pay over the limit of coverage.

## Who Is Protected Under This Agreement

**Association.** You, the Association, are protected for claims or suits brought against you because of a wrongful act committed by a protected person or a person for whom they are legally responsible.

**Directors, Trustees, or Officers.** Your directors, trustees, or officers, are protected while acting for you.

*Directors, trustees, or officers* include:

• those who currently hold the positions.
• those who held the positions when the wrongful act complained of took place.
• those who become a director, trustee, or officer after the effective date of this agreement. Their protection will begin when they assume their positions.

**Employees.** Your employees are protected, but only while they're acting within the scope of their duties for you.

**Committee members.** Members of standing committees are protected for claims resulting directly from their duties as members of such committees.

**Members.** Your members are protected while acting within the scope of the association duties assigned by a director, trustee, or officer.

**Legal representative.** We'll protect the legal representative of a protected person who is legally bankrupt or mentally incompetent. We'll also protect the estate, legal representative or heirs of a deceased protected person.

## When A Claim Is Covered

We'll cover claims first made against you or a protected person while this agreement is in effect. The claim must be based on a wrongful act that occurred while this agreement was in effect. We must also be notified of the claim while this agreement is in effect.

In addition, we'll cover claims as explained in the following three sections.

**1. Prior acts.** We'll cover claims based on wrongful acts that occurred before the effective date of this agreement, but only if all the following conditions are met:

• neither you nor the protected person involved had knowledge of the prior wrongful act on the effective date of this agreement, nor any reasonable way to foresee that a claim might be brought;
• the claim is reported to us while this agreement is in effect; and
• there is no other insurance relating to the wrongful act.

**2. Reported acts.** We'll cover claims first made against you or any protected person any time after this agreement ends, but only if all of the following conditions are met:

• the wrongful act occurred while this or any prior continuously renewed agreement was in effect;
• you or the protected person involved were first aware while this agreement was in effect that a wrongful act occurred and a claim might be made; and
• the suspected wrongful act is reported to us while this agreement is in effect. We must also be told what loss or damage may result.

**3. Optional reporting endorsement.** This agreement may end because one of us chooses to cancel it or not renew it. If this is not the result of non-payment of the premium you have the right to

buy a reporting endorsement. It extends the time to report covered claims.

The endorsement applies to any covered claim made against you or any protected person any time after this agreement ends. The claim must be based on wrongful acts that occurred while this or any previously renewed agreement was in effect.

To obtain this endorsement you must request it in writing and pay the additional premium within 30 days after this agreement ends. If we don't receive written notice and payment within this period, you may not exercise this right at a later date.

We'll sell you this endorsement for the additional premium shown in the Coverage Summary. Once you pay the premium we can't cancel the endorsement.

## Limit of Coverage

The limit of coverage shown in the Coverage Summary is the most we'll pay for all claims that are covered in any policy year, regardless of when the actual claim or payment is made. This limit applies no matter how many covered persons or organizations are involved, or how many claims are made. By policy year we mean each consecutive annual period of this agreement. The limit includes damages and all expenses incurred in the defense of any claim or proceeding, or any appeal. Defense costs include the costs of appeals and of attachment and similar bonds.

Any damages or defense costs incurred because of a series of related wrongful acts occurring over more than one policy year shall be treated as a single claim. The claim will be subject to the limit of the agreement in effect at the time of the first reported wrongful act.

A claim may be brought after this agreement ends under the "Reported acts" section on page 2 or the "Optional reporting endorsement" section on page 3. If this happens the limit of coverage isn't increased. The limit shown in the Coverage Summary will apply to the last policy year as extended by the "Reported acts" and "Optional reporting endorsement" sections.

## Deductible

The deductible is shown in the Coverage Summary. You or the protected persons involved will be responsible up to the amount of the deductible for each claim. It applies once to each claim and includes damages and defense costs. But if more than one claim arises out of a series of related wrongful acts committed by one or more protected persons, the deductible will apply only once. We'll then pay covered claims over the deductible, up to the limit of coverage.

## When We'll Pay

We'll pay a covered claim when both of the following conditions are met:

• the liability of you or the protected person has been established by final court judgment or we make a written admission of liability; and
• we are given proof of the claim within 90 days after the final judgment.

## Exclusions—Claims We Won't Cover

We won't cover any of the following kinds of losses or claims:

**Bodily injury or property damage.** We won't cover claims arising out of bodily injury, sickness or death of any person. Nor will we cover damage, loss of use or destruction of tangible property.

**Personal injury.** We won't cover personal injury claims.

*Personal injury* means any of the following:

• libel or slander;
• false arrest, detention or imprisonment;
• malicious prosecution; or
• wrongful entry or eviction, or invasion of privacy.

**Pollution.** We won't cover claims arising from pollution or contamination. Nor will we cover the cost of removing or cleaning up pollutants or contaminants.

**Nuclear activity.** We won't cover claims arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contaminat:~n.

**Fines or penalties.** We won't cover fines or penalties imposed by law or other matters which may be uninsurable under law.

**Dishonest acts.** We won't cover the liability of a protected person for dishonest acts which a court holds were committed deliberately. Nor will we cover claims relating to any unlawful profit or advantage. However, if a claim of dishonesty, unlawful profit or advantage isn't proven, we'll cover the expenses for defending that claim.

**Anti-trust, price-fixing, restraint of trade.** We won't cover liability arising from these acts, but we'll cover defense costs up to $150,000.

**Securities fraud.** We won't cover claims relating to the purchase or sale of securities which in any way involve fraud or misrepresentation under state or federal law.

**Handling funds.** We won't cover claims resulting from the handling, care or distribution of funds.

**Professional services.** We won't cover injury or damage caused by providing or failing to provide any professional or counseling service or advice. Nor will we cover any claim which results from the publication of any professsional or counseling information.

**Design, manufacturing, construction methods or standards.** We won't cover claims resulting from faulty methods or standards of design, manufacturing, or construction. Nor will we cover claims arising out of the use of improper materials or installation.

**Insurance for the Association.** We won't pay any amounts resulting from lack of insurance coverage or limits. Insurance includes bonds and self-insurance programs. For example:

*You insure your association headquarters office building for its construction cost of $500,000. Five years later the building is destroyed by fire. Because of inflation, the*

*cost to rebuild the building is $750,000. Your members bring suit charging the directors with negligence in not increasing the policy limit and seek to recover the shortage of $250,000. We won't pay the $250,000 but we'll cover legal costs of defending the suits.*

**Insurance for association members.** We won't cover claims resulting from the sponsorship, or failure to sponsor, endorsement or management of any insurance program or coverage for association members or employees.

**Employee benefits plans.** We won't cover claims resulting from the investment or inadequacy of assets in any pension or savings plan.

**Unlawful payment by the Association.** We won't cover claims for the recovery of any payment which a court rules were improperly made.

**Contracts.** We won't pay any amounts which you have assumed under a written or oral contract.

### Other Insurance

Other insurance may be available to pay for a claim covered under this agreement. If so, we'll pay no more than our percentage of the total amount of insurance covering the claim, less the deductible. For example:

*The limit of coverage under this agreement is $100,000. Another insurance policy with a limit of $25,000 also covers a claim covered by this agreement. We won't pay more than 80% ($100,000/$125,000) of the claim and expense.*

But as stated in the "Prior acts" section of When A Claim Is Covered, we won't pay for a claim based on a wrongful act that occurred before the effective date of this agreement if any other insurance applies to those claims.

### Authorized Representative

All persons protected under this agreement agree that you will act on their behalf to receive notices of cancellation, to pay premiums and to receive any return premium.

This Coverage Summary shows the limits of
coverage, deductibles and retroactive date that
apply to your Technology Errors And Omis-
sions Liability Protection - Claims-Made. It
also lists vendors of your computer or elec-
tronic products or services, if any, who are
protected persons under that agreement.

| Limits Of Coverage | | Deductibles | |
|---|---|---|---|
| Each error limit. | $1,000,000. | Each error deductible. | $5,000. |
| Total limit. | $2,000,000. | Total deductible. | None |

**Important Note:** If none or zero is shown for the
Total deductible, the total amount you'll be
responsible for within the Each error deductible
is not limited.

**Retroactive Date:** *

**Important Note:** If no date is shown above, we'll consider the retroactive date to be the same as the
beginning date of your Technology Errors And Omissions Liability Protection – Claims-Made.

**Vendor of your computer or electronic products or services:**

```
*Retroactive Date
09/01/93          QuantEM
05/27/92          CEqual software
06/30/94          PerfSPECTive
```

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/97 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 01/29/97   08:34   001 | |

43599 Rev.4-94 Printed in U.S.A.                    Coverage Summary

Limiting Endorsement

---

This endorsement changes your Technology Errors And Omissions Liability Protection - Claims-Made.

HOW YOUR COVERAGE IS CHANGED

This endorsement limits your coverage as described below.

Your Technology Errors And Omissions Liability Protection - Claims-Made only applies to the CEqual Software, the QuantEM software and the PerSPECTIVE Software.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**      **Policy Number** HG07200088      **Effective Date** 01/01/97
EMORY UNIVERSITY      **Processing Date** 01/29/97   08:34   001

40502 Ed. 1-80 Printed in U.S.A.      Customized Form

COPY

The **St Paul**

This policy protects against a variety of losses. There are also some restrictions. We've written this policy in plain, easy-to-understand English. We encourage you to read it carefully to determine what is and what is not covered, as well as the rights and duties of those protected.

Policy Number: HG07200088

MAJOR ACCTS. DEPT.-HO
385 WASHINGTON STREET
P.O. BOX 64345
ST. PAUL MN 55102

In return for your premium, we'll provide the protection stated in this policy.

We, us, our and ours mean **St. Paul Mercury Insurance Company.** We're a capital stock company located in St. Paul, Minnesota.

The words you, your and yours mean the insured named here, which is a/an CORPORATION

EMORY UNIVERSITY
OFFICE OF VICE PRESIDENT FOR
  FINANCE & TREASURER
ATTN: AMANDA SMITH
312 ADMINISTRATION BUILDING
ATLANTA, GA 30322

Your policy is composed of General Rules, an explanation of What To Do If You Have A Loss, one or more Coverage Summaries, and one or more Insuring Agreements explaining your coverage. It may also include one or more endorsements. Endorsements are documents that change your policy. The Policy Forms List shows all the forms included when this policy begins.

One of our authorized representatives will also countersign the policy.

This policy will begin on      01/01/96
and will continue until       01/01/97
Your former policy number: HG07200088
is automatically replaced

Your premium for the policy period shown is: $308,235.00
However, please refer to the Premiums section of the General Rules to see how final premiums are determined.

Our authorized representative is:
1003214
JOHNSON & HIGGINS INC
SUITE 3400
191 PEACHTREE STREET NE
ATLANTA, GA 30303-1762
Authorized Representative          Date

*President*

*Paul D. Zuccarelli*

*Secretary*

**Processing Date** 01/30/96  15:14  001

This endorsement summarizes the changes to
your policy.  All other terms of your policy not
affected by these changes remain the same.

---

**How Your Policy Is Changed**

GENERAL LIABILITY
-----------------

Class Code Information:

    Exposure Is Changed From 7,942,997 To 5,263,413 For Class 16824 -- 001
    PREMISES.

---

| **Premium Change Which Is Due Now**<br>Additional premium | Returned Premium | $9,906.00 |
| --- | --- | --- |
| If issued after the date your policy<br>begins, these spaces must be completed<br>and our representative must sign below. | Policy issued to<br>EMORY UNIVERSITY | |
| Authorized representative | Endorsement takes effect<br>01/01/96<br>Processing Date: 05/31/96 | Policy Number<br>HG07200088<br>11:12  006 |

This endorsement summarizes the changes to your policy. All other terms of your policy not affected by these changes remain the same.

## How Your Policy Is Changed

The following forms have been added to your policy:

Additional Protected Persons Endorsement - for The Rigger Enterprises Group.

A REVISED - Exclusion Endorsement, adding The Carter Center.

## Premium Change Which Is Due Now

Additional Premium:                          Return Premium:

If we issue this form after the date your    Policy issued to
policy takes effect, we must complete
these spaces and our representative
must sign below.
                                             Emory University
Authorized representative                    Agreement takes effect

                                             01/01/96
                                             Policy Number

                                             HG07200088
40704 Ed 5-84                                Endorsement

# ADDITIONAL PROTECTED PERSONS ENDORSEMENT

This endorsement changes your Commercial General Liability Protection.

## How Your Coverage Is Changed

The following is added to the Who Is Protected Under This Agreement section. This change adds certain protected persons and limits their protection.

The Rigger Enterprises Group is added as an additional protected person but only as respects the installation and deinstallation of the Emory University Fine Arts Exhibit on display at the City Hall East on Ponce de Leon Avenue, Atlanta, GA during the following periods:

| | |
|---|---|
| Installation | April 15th to May 21,1996 |
| Deinstallation | mid November to early December, 1996 |

Coverage provided under this endorsement is on an additional protected person basis. This means that The Rigger Enterprises Group does not have separate limits of liability, but is sharing in your coverage limits.

## Other Terms

All other terms of your policy remain the same

| | |
|---|---|
| If we issue this form after the date your policy takes effect, we must complete these spaces and our representative must sign below | Policy issued to |
| | Emory University |
| Authorized representative | Agreement takes effect |
| | 01/01/96 |
| | Policy Number |
| | HG07200088 |

# EXCLUSION ENDORSEMENT - REVISED

This endorsement changes your Liquor Liability Protection.

## How Your Coverage Is Changed

The following entity and location is excluded for coverage under this agreement.

## Excluded Entity and Location

Huston Mill House
849 Huston Mill Road
Atlanta, GA 30329

and

The Carter Center

## Other Terms

All other terms of your policy remain the same.

| | |
|---|---|
| If we issue this form after the date your policy takes effect, we must complete these spaces and our representative must sign below. | Policy issued to |
| | Emory University |
| Authorized representative | Agreement takes effect |
| | 01/01/96 |
| | Policy Number |
| | HG07200088 |
| 40502 Ed. 1-80 | Endorsement |

**POLICY FORM LIST**                                                    The **St Paul**

Here's a list of all forms included in your
policy, on the date shown below. These forms
are listed in the same order as they appear in
your policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Introduction - St. Paul Mercury Insurance Company | 40811 | 05-87 |
| Policy Form List | 40705 | 05-84 |
| Additional Named Protected Persons Endorsement | 40502 | 01-80 |
| General Rules | 40701 | 05-84 |
| Cancellation Notification Endorsement | 40502 | 01-80 |
| Government Access To Records Endorsement | 40581 | 03-83 |
| Georgia Required Endorsement | 40518 | 07-94 |
| Ninety Day Cancellation Notice | 40502 | 01-80 |
| What To Do If You Have A Loss | 40814 | 11-91 |
| Commercial General Liability Protection Coverage Summary | 47110 | 04-91 |
| Commercial General Liability Protection | 47500 | 04-91 |
| Contract Liability Defense Expenses Endorsement | 47320 | 03-92 |
| Executive Officer And Leased Worker Endorsement | 47444 | 10-93 |
| Fellow Employee Bodily Injury Endorsement All Employees | 47167 | 04-91 |
| Pollution Exclusion Lead Example Endorsement | 47482 | 10-93 |
| Day Care Center Medical Expenses Exclusion Endorsement | 43371 | 07-85 |
| Computer Professional Services Exclusion Endorsement | 47178 | 04-91 |
| Bodily Injury Definition Endorsement | 40502 | 01-80 |
| Additional Protected Persons Endorsement #1 | 40502 | 01-80 |
| Additional Protected Persons Endorsement #2 | 40502 | 01-80 |
| Colleges Or Schools Endt. With Student Medical Expenses Exclusion | 40502 | 01-80 |
| Leased Employee Endorsement | 40502 | 01-80 |
| Premises Exclusion Endorsement | 40502 | 01-80 |
| Watercraft Extension Endorsement | 40502 | 01-80 |
| Knowledge Of Accident Or Incident Endorsement | 40502 | 01-80 |
| Liquor Liability Protection Coverage Summary | 43885 | 09-86 |
| Liquor Liability Protection | 43611 | 11-85 |
| Exclusion Endorsement | 40502 | 01-80 |
| Association Management Liability Protection-Cls Md | 41022 | 09-81 |
| Technology Errors And Omissions Liability Protection - Claims-Made Coverage Summary | 43599 | 04-94 |
| Technology Errors And Omissions Liability Protection - Claims-Made | 43598 | 04-94 |
| Developmental Risk Exclusion Endorsement - Technology Errors And Omissions Liability | 47440 | 04-94 |
| Professional Services Exclusion Endorsement - Technology Errors And Omissions Liability | 47466 | 04-94 |
| Reporting Endorsement - Limited To Certain Claims Or Suits - Computer Services Or Software | 47579 | 09-94 |
| Limiting Endorsement | 40502 | 01-80 |

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 02/06/96   10:43   002 | |

40705 Ed 5-84 Printed in U.S.A.                    Form List

Additional Named Protected Persons Endorsement

---

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

This endorsement states that we will automatically cover for sixty (60) days any company, partnership or entity you acquire, or any newly acquired operating subsidiaries, when these companies, partnerships, entities and subsidiaries are greater than 50 percent owned or financially controlled by you. We must be notified within sixty (60) days of such formations.

You agreed to pay the additional permium for each new entity, if any, computed in accordance with the company's rules and rates.


OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**          **Policy Number** HG07200088          **Effective Date** 01/01/96
EMORY UNIVERSITY               **Processing Date** 01/30/96   15:14   001

These rules apply to the entire policy unless you're notified otherwise.

## Special Rights And Duties Of The First Named Insured

You agree that when more than one insured is named in the introduction, the first named insured has special rights and duties. These rights and duties are explained in the following General Rules:

•Premiums.
•Cancellation.
•Policy Changes.

## Your Policy Period

Insuring agreements in this policy begin at 12:01 a.m., standard time, on the effective date. If this policy replaces policies ending at noon, rather than 12:01 a.m., coverage begins at noon when the old policy ends.

Insuring agreements added to this policy after its effective date begin on the effective date of the added agreement.

Coverage ends at 12:01 a.m., standard time. on the expiration date. If all or part of this policy is cancelled for any reason before that date, that coverage will end at 12:01 a.m., standard time, on the cancellation date.

## Premiums

We compute the premium you pay for this policy using information available at the time. So, all or part of your premium may be based on estimates. If estimates are used, we'll compute your actual premium when complete information is available at the end of the policy period. If it's more than you've paid, you'll owe us the difference. If it's less, we'll return the difference. But you won't pay less than any minimum annual premium agreed on. The first named insured is responsible for paying all premiums and will be the one to whom we'll pay any return premiums.

You must keep accurate records of the information we'll need to compute your premium. Your agent can explain the type of records we'll need. The first named insured agrees to send copies of these records at the end of each policy period - or any other time we request them.

## Our Right To Inspect And Audit

You agree to let us inspect your property and business operations during normal business hours while this policy is in force. We're not, however, required to make inspections. Nor will we guarantee that your property or operations are safe, or that they conform to any laws, codes, standards or regulations. This rule also applies to any organization which makes insurance inspections, surveys, reports or recommendations for us.

You also agree to let us examine and audit your financial books and records that relate to this insurance at any time up to 3 years after this policy ends.

## Policy Changes

This policy contains all the agreements between you and us concerning this insurance. The first named insured is authorized to make changes in this policy with our consent. This policy can only be changed by a written form included as part of the policy. This form must be signed by one of our authorized representatives.

We make changes in our standard insurance policy forms from time to time. These changes must conform to state law and are filed with insurance supervisory authorities for approval. While your coverage is in force we can make any change in the form of this policy that broadens or extends your coverage. If we do, and the change can be added to your policy without increasing the premium, you'll automatically receive the benefit of the extended or broadened coverage on the day the change is effective in your state.

## Assignment And Transfers

Neither you nor anyone else covered under this policy can assign or turn over your interest in it without our written consent attached to the policy.

However, there is one exception. If you are an individual named insured and you die, your rights and duties will be transferred to your legal representative; but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties concerning that property.

## Cancellation

The first named insured can cancel this policy in whole or part at any time.

To cancel, the first named insured must deliver the policy or the part to be cancelled to us or to any of our authorized agents. If this isn't possible notify us by mail and include the date coverage is to end. We'll refund the unused premium to the first named insured, less a charge for early cancellation.

If we cancel this policy, we'll mail or deliver a cancellation notice to the first named insured at least 30 days before coverage will end: 10 days if we're cancelling for nonpayment of premium. If notice is mailed, proof of mailing to the first named insured's last mailing address known to us will be considered proof you were notified. Any unused premium will be refunded to the first named insured as soon as possible. However, the cancellation will be effective whether or not we've made or offered a refund.

## Recovering Damages From A Third Party

Any person protected under this policy may be able to recover all or part of a loss from someone other than us. Because of this, each protected person must do all that's possible after a loss to preserve any right of recovery available. If we make a payment under this policy that right of recovery will belong to us.

If we recover more than we've paid, the excess will belong to the person who had the loss. But we'll deduct our recovery expenses first.

## Fraud And Misrepresentation

This policy is void if you or any other protected person hide any important information from us, mislead us, or attempt to defraud or lie to us about any matter concerning this insurance - either before or after a loss. Of course, everyone makes mistakes. Unintentional errors or omissions won't affect your rights under this policy.

## Appraisal Of Property Disputes

If your policy includes property insurance and agreement can't be reached on the amount of a property loss or the value of the property, the following procedure will be used:

**1.** One of us will make a written demand for an appraisal.
**2.** Each will select a competent and impartial appraiser and notify the other of the selection within 30 days of the demand.
**3.** The appraisers will select a competent and impartial umpire. If they can't agree on an umpire, either may ask that one be selected by a judge of a court having jurisdiction.
**4.** The appraisers will state separately the amount of the loss and the value of the property. If they don't agree, they'll submit their appraisals to the umpire. Agreement of two out of three will be binding.

You'll pay your appraiser and we'll pay ours. Other costs of the appraisal and the umpire will be shared equally by you and us.

If we submit to an appraisal, we'll still retain our right to deny the claim.

## How State Law Affects This Policy

Any part of this policy that conflicts with state law is automatically changed to conform to the law.

## Lawsuits Against Us

No one can sue us to recover under this policy unless all of its terms have been lived up to.

**If your policy includes property insurance.** Any lawsuit to recover on a property claim must begin within 2 years after the date on which the direct physical loss or damage occurred. State law gives you more time for property located in these states:
•North Dakota, North Carolina, Maryland - 3 years;
•Wyoming - 4 years; and
•Kansas, Nebraska - 5 years.

**If your policy includes liability insurance.** No one can sue us on a liability claim until the amount of the protected person's liability has been finally decided either by a trial or by a written agreement signed by the protected person, by us and by the party making this claim. Once liability has been determined by judgment or by written agreement, the party making the claim may be able to recover under this policy, up to the limits of coverage that apply. But that party can't sue us directly or join us in a suit against the protected person until liability has been so determined.

If the protected person or his or her estate goes bankrupt or becomes insolvent, we'll still be obligated under this policy.

## Provision Required By Law

"This policy is issued under and in pursuance of the laws of the State of Minnesota, relating to Guaranty Surplus and Special Reserve Funds." Chapter 437, General Laws of 1909. (This provision applies only if this policy is issued in the St. Paul Fire and Marine Insurance Company.)

Cancellation Notification Endorsement

This endorsement changes your General Rules

HOW YOUR COVERAGE IS CHANGED

If we cancel this policy for any reason, we will mail or deliver a written cancellation notice to your last known address, to the attention of your Vice-President of Finance and Treasurer or General Council.

OTHER TERMS

All other terms of your policy remain the same.

**Name of Insured**      **Policy Number** HG07200088      **Effective Date** 01/01/96
EMORY UNIVERSITY         **Processing Date** 01/30/96   15:14   001

This endorsement changes your policy to
comply with federal law.

## How Your Policy Is Changed

This endorsement changes your policy to
comply with the requirements of Section 952 of
the Omnibus Reconciliation Act of 1980. Upon
written request, we'll allow the Secretary of
Health and Human Services and the Comptroller
General access to the policy and necessary
books, documents and records to verify the
cost of the policy, to the extent required by law.
Access will also be allowed to subcontracts
between us and any related organization of ours
and to its books, documents and records. Such
access will be provided up to four years after
the services furnished under this policy end.

## Other Terms

All other terms of this policy remain the same.

This endorsement changes your policy to comply with Georgia law.

## Cancellation

The Cancellation section of the General Rules is replaced by the following.

**How you can cancel.** To cancel this policy or any part of it, the first named insured must deliver the policy, or the part to be cancelled, stating a future date when the policy is to be cancelled, to us or to any of our authorized agents. If this isn't possible, notify us by mail and include the date coverage is to end. After receiving the written request of cancellation from the first named insured, we can waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first named insured. The first named insured will get a refund for the unused premium, less a charge for early cancellation.

However, a law, a rule of this policy, or a rule in another agreement may apply which says that the policy can't be cancelled without prior notice to someone else. If so, we'll mail or deliver at least 10 days notice of cancellation to the first named insured and the other person or organization. We'll do this as soon as possible after receiving the first named insured's request for cancellation. The notice will show the date coverage will end. That date will be:
• 10 days after the date we mail the notice; or
• the date the first named insured requested that coverage end;
whichever is later.

**How we can cancel if you don't pay your premium.** If you fail to pay any premium when due, we can cancel your policy. If we cancel for this reason, we'll mail or deliver a written cancellation notice to you and to any lienholder at least 10 days before your coverage will end.

**How we can cancel for other reasons.** If we decide to:
• cancel or nonrenew your policy;
• increase your premium by more than 15% (for a reason other than change in the risk; or

• change any of the policy's rules or provisions that would limit or restrict coverage;
we'll mail or deliver a notice telling you what we intend to do at least 45 days before the expiration date of your policy. If we mail the notice, it will be to the first named insured's last address known to us. However, if your policy has been in effect less than 60 days, or if we are cancelling or changing your policy because of nonpayment of premium, we'll send the notice at least 10 days before coverage will end.

**Mailing the notice—unused premium.** Mailing or delivery of this notice to the first named insured's last address know to us by proof of mailing will be proof you were notified of the cancellation, non-renewal or change.

**Special rule for certain residential buildings.** If you are an individual and your policy covers residential buildings the following special cancellation rules apply.

If this policy is a new policy that is in its initial policy period and has been in effect less that 60 days, we can cancel for any reason. If we do, we'll mail a cancellation notice to the first named insured at least 10 days before coverage will end.

If this policy is a renewal or continuation policy or a new policy that has been in effect more than 60 days, we can only cancel for one of the following reasons:

1. *Nonpayment of premium.*

2. *Fraud and misrepresentation.* We can cancel if we discover that in obtaining this policy, you or your representative have committed fraud.

3. *Change in the risk.* We can cancel, if, after we have issued or renewed your policy, an increase occurs in a hazard which was within your control. But only if this increase in hazard would result in an increase in your premium.

TheStPaul

**4. *Breaking the rules of this policy.*** We can cancel, if, after we have issued or renewed your policy, we find a violation of any of the material terms or conditions caused by any person insured under this policy.

We can cancel by giving notice to the first named insured at least:

•10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

•45 days before the effective date of cancellation if we cancel for any other reason.

**Special rule for contractors.** If your policy includes Contractors Commercial General Liability Protection or Contractors Umbrella Excess Liability Protection, the following applies:

If we cancel this policy, we'll mail or deliver a cancellation notice to the first named insured at least:

•10 days before coverage will end if we cancel for nonpayment of premium; or

•90 days before coverage will end if we cancel for any other reason we explain above.

**Other Terms**

All other terms of your policy remain the same.

Ninety Day Cancellation Notice

---

This endorsement changes your Georgia Required Endorsement.

HOW YOUR COVERAGE IS CHANGED

The "How we can cancel for other reasons" section of the above endorsement is revised to read as follows:

HOW WE CANCEL FOR OTHER REASONS.   If we decide to:

* cancel or nonrenew your policy;
* increase your premium by more than 15%, (for a reason other than change in the risk); or
* change any of the policy's rules or provisions that would limit or restrict coverage; we'll mail or deliver a notice telling you what we intend to do at least 90 days before the expiration date of your policy.  If we mail the notice, it will be to the first named insured's last address known to us.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**                **Policy Number** HG07200088        **Effective Date** 01/01/96
EMORY UNIVERSITY                   **Processing Date** 01/30/96   15:14   001

40502 Ed.1-80 Printed in U.S.A.              Customized Form

You or other protected persons are required to perform the duties described below when a property loss that may be covered under this policy happens or an accident or incident happens that could result in liability damages covered under this policy. Failure to comply

could affect coverage. The insuring agreements contained in this policy determine what is covered. As a result, you should read them carefully to understand the extent of the coverage provided.

## When This Policy Provides Property Protection

If there is a property loss that may be covered by property protection provided in this policy you must:

1. Notify the police if a law may have been broken..

2. Tell us or our agent what happened as soon as possible. Include the time and place of the event, a description of the property and the names and addresses of any witnesses.

3. Do what is reasonable and necessary to protect covered property from further damage. Keep a record of your expenses for consideration in your claim.

4. If feasible, separate the damaged property from the undamaged and make an inventory of the damaged items.

5. Cooperate with us in the investigation and settlement of the claim. Permit us to inspect the damaged property and any records pertaining to your loss as many times as may be required. Permit us to take samples of damaged and undamaged property for testing and analysis.

6. Allow us to examine you or any other insured under oath while not in the presence of any other insured. We may do this whenever reasonably required about any matter relating to this insurance or the claim. Any insured we examine must sign a copy of their answers.

7. Send us a signed, sworn proof of loss containing the information we need to resolve the claim. You must do this within 60 days after our request. We'll supply the forms. We'll pay within 30 days after we reach agreement with you.

## When This Policy Provides Liability Protection

If an accident or incident happens that may involve liability protection provided in this policy, you or any other protected person involved must:

1. Notify the police if a law may have been broken.

2. Tell us or our agent what happened as soon as possible. Do this even though no demand for damages has been made against you or any other protected person, but you or another protected person is aware of having done something that may later result in a demand for damages. This notice should include all of the following:
•The time and place of the accident or incident;
•The protected person involved;
•The specific nature of the accident or incident including the type of demand for damages that may result; and
•The names and addresses of any witnesses and injured people.

*Important Notice For Health Care Providers*
If your policy includes one of our claims-made medical professional liability protection insuring agreements, you should also read the When This Agreement Covers Section of that agreement. We won't consider a "Patient Incident Report," "Variance Report," or any other report made for loss prevention purposes to be your report of a claim. This applies even if you send it to us or one of our agents.

3. Send us a copy of all written demands. Also send us a copy of all legal documents if someone starts a lawsuit.

4. Cooperate and assist us in securing and giving evidence, attending hearings and trials, and obtaining the attendance of witnesses.

5. Not assume any financial obligation or pay out any money without our consent. But this rule doesn't apply to first aid given to others at the time of an accident.

**COMMERCIAL GENERAL LIABILITY PROTECTION**
**COVERAGE SUMMARY**

The St. Paul

This Coverage Summary shows the limits of coverage that apply to your Commercial General Liability Protection. It also lists those endorsements, if any, that must have certain information shown for them to apply.

| Limits Of Coverage | | IMPORTANT NOTE: |
|---|---|---|
| **General total limit.** | 2,000,000. | **Retroactive Date:** |
| **Products and completed work total limit.** | 1,000,000. | The retroactive date applies only if the Commercial General Liability Protection - Claims-Made insuring agreement is a part of this policy. |
| **Personal injury each person limit.** | 1,000,000. | |
| **Advertising injury each person limit.** | 1,000,000. | However, if no date is shown above and the claims-made agreement applies, we'll consider the retroactive date to be the same as the |
| **Each event limit.** | 1,000,000. | beginning date of this policy. |
| *Premises damage limit.* | 100,000. | |
| *Medical expenses limit.* | 5,000. | |

**Named Endorsement Table**

Important Note: Only endorsements that must have certain information shown for them to apply are named in this table. The required information follows the name of each such endorsement. Other endorsements may apply too. If so, they're listed on the Policy Forms List.

```
Watercraft Endorsement
  Description of Watercraft
  1.  One - 13'10" Jonboat
  2.  One - 16' Jonboat
  3.  One - 40' Four oar rowing shell
  4.  One - 60' Eight oar rowing shell
  5.  One - 16' Canoes
  6.  One - 14' Jonboat
```

---

| | | |
|---|---|---|
| **Name of Insured**<br>EMORY UNIVERSITY | **Policy Number** HG07200088<br>**Processing Date** 01/30/96   15:14   001 | **Effective Date** 01/01/96 |



# EXHIBIT / ATTACHMENT



(To be scanned in place of tab)

This insuring agreement provides general liability protection for your business. There are, of course, limitations and exclusions which apply to that protection. As a result, this agreement should be read carefully to determine the extent of the coverage provided to you and other protected persons.

| Table of Contents | Page |
|---|---|
| **What This Agreement Covers** | 1 |
| Bodily injury and property damage liability. | 1 |
| Personal injury liability. | 1 |
| Advertising injury liability. | 2 |
| Medical expenses. | 2 |
| Right and duty to defend. | 3 |
| Additional payments. | 3 |
| Right to appeal. | 4 |
| **When This Agreement Covers** | 4 |
| Bodily injury and property damage liability. | 4 |
| Personal injury liability. | 4 |
| Advertising injury liability. | 4 |
| Medical expenses. | 4 |
| **Where This Agreement Covers** | 4 |
| **Who Is Protected Under This Agreement** | 4 |
| Individual. | 4 |
| Partnership or joint venture. | 4 |
| Corporation or other organization. | 4 |
| Employees. | 4 |
| Real estate managers. | 5 |
| Operators of registered mobile equipment. | 5 |
| Newly acquired or formed organizations. | 5 |
| Separation of protected persons. | 6 |
| **Limits Of Coverage** | 6 |
| General total limit. | 6 |
| Products and completed work total limit. | 6 |
| Personal injury each person limit. | 7 |
| Advertising injury each person limit. | 7 |
| Each event limit. | 7 |
| How the limits of coverage apply to an extension of the policy period. | 7 |
| How the limits of coverage apply if a total limit is left blank. | 7 |
| **Exclusions – What This Agreement Won't Cover** | 7 |
| Advertising, broadcasting, publishing or telecasting business. | 7 |
| Aircraft. | 8 |
| Auto. | 8 |
| Breach of contract. | 8 |
| Contract liability. | 8 |
| Control of property. | 9 |
| Damage to your products or completed work. | 9 |
| Deliberately breaking the law. | 10 |
| Employer's liability. | 10 |
| False material. | 10 |
| Impaired property. | 10 |
| Intentional bodily injury or property damage. | 11 |
| Liquor liability. | 11 |
| Material first made known. | 11 |
| Medical expenses of certain persons. | 11 |
| Mobile equipment. | 11 |
| Nuclear energy liability. | 12 |
| Pollution. | 13 |
| Poor quality or performance. | 14 |
| Product recall. | 14 |
| Watercraft. | 14 |
| Workers' compensation. | 15 |
| Wrong price description. | 15 |
| **Other Insurance** | 15 |
| Other primary insurance. | 15 |
| Excess insurance. | 15 |
| Methods of sharing. | 15 |

## What This Agreement Covers

**Bodily injury and property damage liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or premises damage that:

- happens while this agreement is in effect; and
- is caused by an event.

**Personal injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:

- results from your business activities, other than advertising, broadcasting, publishing or telecasting done by or for you; and
- is caused by a personal injury offense committed while this agreement is in effect.

**Advertising injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:
•results from the advertising of your products, work or completed work; and
•is caused by an advertising injury offense committed while this agreement is in effect.

**Medical expenses.** We'll pay covered medical expenses that result from bodily injury caused by an event which happens while this agreement is in effect, even if the protected person isn't legally required to do so.

*Protected person* means any person or organization who qualifies as a protected person under the Who Is Protected Under This Agreement section.

*Bodily injury* means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness or disease:
•Mental anguish, injury or illness.
•Emotional distress.
•Care, loss of services, or death.

*Property damage* means:
•physical damage to tangible property of others, including all resulting loss of use of that property; or
•loss of use of tangible property of others that isn't physically damaged.

We'll consider all loss of use of damaged tangible property to happen at the time of the physical damage which caused it. And we'll consider all loss of use of undamaged tangible property to happen at the time of the event which caused it.

*Premises damage* means property damage to premises that you rent, lease or borrow from others.

*Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Personal injury* means injury, other than bodily injury or advertising injury, caused by a personal injury offense.

*Personal injury offense* means any of the following offenses:
•False arrest, detention or imprisonment.
•Malicious prosecution.
•Wrongful entry or wrongful eviction.
•Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
•Libel or slander.
•Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
•Making known to any person or organization written or spoken material that violates an individual's right of privacy.

*Advertising injury* means injury, other than bodily injury or personal injury, caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:
•Libel or slander.
•Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
•Making known to any person or organization written or spoken material that violates an individual's right of privacy.
•Unauthorized taking or use of any advertising idea, material, slogan, style or title of others.

*Advertising* means attracting the attention of others by any means for the purpose of seeking customers or increasing sales or business.

*Broadcasting* means transmitting any audio material by radio, or transmitting or televising any audio or visual material by television, for any purpose.

*Publishing* means creating and producing any printed material for distribution or sale to others for any purpose.

However, we won't consider creating and producing any of the following printed material to be publishing:
•Correspondence written in the conduct of your business.
•Bulletins, financial or annual reports, newsletters and other printed material that describes or reports your business activities.

*Telecasting* means transmitting or televising any audio or visual material by television for any purpose.

*Medical expenses* mean the reasonable expenses incurred by any person or organization for necessary medical services received by a person anytime during the one year following the date of an event which causes that person to sustain bodily injury.

*Medical services* include:
- first aid received at the time of an event;
- ambulance and emergency care services;
- dental; medical, nursing, surgical, x-ray and other health care professional services;
- hospital services;
- artificial limbs and organs; and
- funeral services.

We explain what we mean by your products, your work and your completed work in the Products and completed work total limit section.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered injury or damage made or brought against any protected person. We'll do so even if any of the allegations of any such claim or suit are groundless, false or fraudulent. But we have no duty to perform other acts or services. And our duty to defend claims or suits ends when we have used up the limits of coverage that apply with the payment of judgments, settlements or medical expenses.

We'll have the right to investigate any claim or suit to the extent that we believe is proper. We'll also have the right to settle any claim or suit within the available limits of coverage.

*Claim* means a demand which seeks damages.

*Suit* means a civil proceeding which seeks damages. It includes:
- an arbitration proceeding for such damages to which the protected person must submit or submits with our consent; and
- any other alternative dispute resolution proceeding for such damages to which the protected person submits with our consent.

*Injury or damage* means bodily injury, personal injury, advertising injury or property damage or premises damage.

**Additional payments.** We'll have the duty to make only the payments shown below in connection with any claim or suit we defend. These payments are in addition to the limits of coverage. But our duty to make such payments ends when we have used up the limits of coverage that apply with the payment of judgments, settlements or medical expenses.

*Our expenses.* We'll pay all expenses we incur.

*Bail bonds.* We'll pay up to $250 of the cost of bail bonds that are required because of accidents or violations of traffic laws. But only if the accidents or violations result from the use of a vehicle to which the bodily injury liability coverage under this agreement applies. We don't have to furnish such bonds.

*Bonds to release property.* We'll pay the cost of bonds to release property that's being used to secure a legal obligation. But only for bond amounts within the limit of coverage that applies. We don't have to furnish such bonds.

*Expenses incurred by protected persons.* We'll pay all reasonable expenses that any protected person incurs at our request while helping us investigate or defend a claim or suit. But we won't pay more than $250 per day for earnings actually lost by the protected person because of time taken off from work.

*Taxed costs.* We'll pay all costs taxed against any protected person in a suit.

*Pre-judgment interest.* We'll pay the pre-judgment interest that's awarded against the protected person on that part of a judgment paid by us. But if we make a settlement offer to pay the available limit of coverage, we won't pay the pre-judgment interest that accumulates after the date of our offer.

*Post-judgment interest.* We'll pay all interest that accumulates on the full amount of that part of a judgment for which we make a payment. But only from the date of the judgment to the date we:
- pay;

•offer to pay; or
•deposit in court;
the limit of coverage that applies to the judgment.

**Right to appeal.** We'll have the right to appeal a judgment for covered injury or damage in any suit we defend.

If we appeal such a judgment, we'll pay all expenses which result directly from that appeal, including the cost of appeal bonds and post-judgment interest. Such appeal expenses are in addition to the limits of coverage. However, the results of an appeal won't change the limits of coverage that apply under this agreement.

## When This Agreement Covers

**Bodily injury and property damage liability.** We'll apply this agreement to claims or suits for covered bodily injury, property damage or premises damage whenever they're made or brought.

**Personal injury liability.** We'll apply this agreement to claims or suits for covered personal injury whenever they're made or brought.

**Advertising injury liability.** We'll apply this agreement to claims or suits for covered advertising injury whenever they're made or brought.

**Medical expenses.** We'll apply this agreement to covered medical expenses only when they're reported to us during the one year following the date of the event.

## Where This Agreement Covers

We'll defend claims and suits, and pay judgments, settlements and medical expenses, only in the coverage territory for covered injury or damage that's caused by events or offenses which happen or are committed there.

However, we'll also defend claims and suits, and pay judgments, settlements and medical expenses, in the coverage territory for covered

injury or damage that's caused by events or offenses which happen or are committed in the rest of the world if they result from:
•the activities of a person whose home is in the coverage territory, but is away for a short time on your business; or
•your products made or sold by you in the coverage territory.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada. It includes international waters or airspace only during travel or transportation between any of the above places.

## Who Is Protected Under This Agreement

**Individual.** If you are named in the Introduction as an individual, you and your spouse are protected persons only for the conduct of a business of which you are the sole owner.

**Partnership or joint venture.** If you are named in the Introduction as a partnership or joint venture, you are a protected person. Your partners or co-venturers and their spouses are protected persons only for the conduct of your business.

However, no person or organization is a protected person for the conduct of any current or past partnership or joint venture that's not named in the Introduction.

**Corporation or other organization.** If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers and directors are protected persons only for their duties as your officers or directors. And your stockholders are protected persons only for their liability as your stockholders.

**Employees.** Your employees are protected persons only for work done within the scope of their employment by you.

However, no employee is a protected person for bodily injury or personal injury to:
•you;
•any fellow employee; or

•the spouse or any child, parent, brother or sister of that fellow employee if such injury results from the bodily injury or personal injury to the fellow employee.

Nor is any employee a protected person for:
•any obligation to share damages with or repay someone else who must pay damages because of bodily injury or personal injury to any fellow employee; or
•bodily injury or personal injury that results from their performance of or failure to perform health care professional services.

In addition, no employee is a protected person for property damage to property that's:
•owned, rented, leased, occupied, borrowed or used by;
•in the care, custody or control of; or
•being physically controlled for any purpose by;
you, that employee, any fellow employee, or any protected partner, co-venturer or spouse.

But we won't apply the exclusions in this Employees section to:
•bodily injury caused by the providing of or failure to provide first aid by an employee, other than an employed doctor or nurse; or
•premises damage.

Nor will we apply this Employees section to your executive officers. Instead, we'll apply the Corporation or other organization section to them.

*Health care professional services* include:
•dental, medical, mental, nursing, surgical, x-ray and other health care professional services, including food or beverages provided with those services;
•the dispensing of drugs or medical or dental supplies and appliances; and
•the handling or treatment of corpses, including autopsies, organ donations and other postmortem procedures.

**Real estate managers.** Your real estate managers are protected persons only for their management of premises you own, rent, lease or borrow. They may be persons or organizations.

But we won't apply this Real estate managers section to your employees. Instead, we'll apply the Employees section to them.

**Operators of registered mobile equipment.** All operators of registered mobile equipment are protected persons for their driving of such equipment on a public street or road with your permission.

Any person or organization legally responsible for the driving conduct of those operators is also a protected person. But only if there's no other valid and collectible insurance available to cover their liability for the operators.

However, no operator or any other person or organization is a protected person for:
•bodily injury to a fellow employee of the person driving the equipment; or
•property damage to property owned, rented, leased, occupied or controlled by you or the employer of an operator who is a protected person.

*Registered mobile equipment* means mobile equipment that's registered in your name under any motor vehicle registration law.

We explain what we mean by mobile equipment in the Mobile equipment exclusion.

**Newly acquired or formed organizations.** Any organization, other than a partnership or joint venture, that you acquire or form while this agreement is in effect is a protected person if you own more than 50% of it.

However, no newly acquired or formed organization is a protected person for:
•more than 90 days, or the remainder of the policy period, whichever is less, from the date that you acquire or form it, unless we agree that it should continue to be a protected person after the end of that period of time;
•bodily injury or property damage that happened before you acquired or formed it;
•personal injury or advertising injury that results from an offense committed before you acquired or formed it; or
•injury or damage that's covered under other similar general liability insurance.

**The St Paul**

**Separation of protected persons.** We'll apply this agreement:

•to each protected person named in the Introduction as if that protected person was the only one named there; and

•separately to each other protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section. Also, any right or duty specifically assigned to the first Named Insured remains unchanged. We explain those rights and duties in the General Rules, which is a part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay regardless of the number of:

•protected persons;

•claims made or suits brought; or

•persons or organizations making claims or bringing suits.

**General total limit.** This is the most we'll pay for the combined total of:

•all covered bodily injury, property damage and premises damage that happens in a policy year;

•all covered personal injury that's caused by all personal injury offenses committed in a policy year;

•all covered advertising injury that's caused by all advertising injury offenses committed in a policy year; and

•all covered medical expenses that result from all events which happen in a policy year.

However, this limit doesn't apply to covered bodily injury and property damage that results from your products and completed work. Instead, the Products and completed work total limit applies. We explain that limit and what we mean by your products and your completed work in the Products and completed work total limit section.

*Policy year* means the policy period shown in the Introduction when the policy period is one year or less. But when the policy period is longer than one year, it means each consecutive

annual period, and the remaining period if any, that the policy is in effect, starting with the date the policy begins.

**Products and completed work total limit.** This is the most we'll pay for the combined total of all covered bodily injury and property damage that:

•results from your products and completed work; and

•happens in a policy year.

*Your products* mean any of the goods or products that are or were manufactured, sold, handled, distributed or disposed of by:

•you;

•others using your name; or

•any person or organization whose business or assets you've acquired.

Your products include:

•all containers, equipment, materials or parts provided with or for your products;

•any warranty provided with or for your products;

•any statement made, or which should have been made, about the durability, fitness, handling, maintenance, operation, performance, quality, safety or use of your products; and

•all warnings, instructions or directions provided, or which should have been provided, with or for your products.

However, we won't consider the following to be your products:

•Goods or products that are still in your physical possession or on premises you own, rent, lease or borrow.

•Real property.

•Containers that are vehicles.

•Property rented or leased to others.

•Property you haven't sold, but which you allow others to use. For example, a vending machine.

*Your completed work* means your work that is completed at the earliest of the following times, including work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete:

•When all of the work called for in your contract has been completed.

•When all of the work to be done at the work site has been completed, if your contract calls for work at more than one site.

•When that part of the work at the work site has been put to its intended use by any person or

organization, other than another contractor or subcontractor working on the same project.

However, we won't consider the following to be your completed work:

•Work that hasn't yet been completed or abandoned.

•Uninstalled equipment, abandoned or unused materials, or tools.

•Work done in connection with transporting property - other than a condition created in or on a vehicle by the loading or unloading of it.

•Premises or other real property that you own.

•Any work while on premises you own, rent, lease or borrow.

*Your work* means:

•any work that you're performing or others are performing for you; or

•any service that you're providing or others are providing for you.

Your work includes:

•all equipment, materials or parts provided with or for your work;

•any warranty provided with or for your work;

•any statement made, or which should have been made, about the durability, fitness, handling, maintenance, operation, performance, quality, safety or use of your work; and

•all warnings, instructions or directions provided, or which should have been provided, with or for your work.

We explain what we mean by loading or unloading in the Auto exclusion.

**Personal injury each person limit.** This is the most we'll pay for all covered personal injury that:

•is sustained by any one person or organization; and

•is caused by all personal injury offenses committed in a policy year.

**Advertising injury each person limit.** This is the most we'll pay for all covered advertising injury that:

•is sustained by any one person or organization; and

•is caused by all advertising injury offenses committed in a policy year.

**Each event limit.** This is the most we'll pay for all covered bodily injury, property damage, premises damage and medical expenses that result from any one event.

However, the most we'll pay for covered premises damage or covered medical expenses that result from any one event is further limited by the following:

*Premises damage limit.* This is the most we'll pay for all covered premises damage that results from any one event.

*Medical expenses limit.* This is the most we'll pay for all covered medical expenses that:

•are incurred for bodily injury sustained by any one person; and

•result from any one event.

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for three years. During the last policy year you request a three month extension. We agree. As a result, your last policy year becomes 15 months. It will be subject to the same limits of coverage that applied when the policy year was 12 months.*

**How the limits of coverage apply if a total limit is left blank.** If the amount of the General total limit or the Products and completed work total limit is left blank in the Coverage Summary, that total limit will be considered to be the same as the Each event limit or $100,000, whichever is more.

**Exclusions - What This Agreement Won't Cover**

**Advertising, broadcasting, publishing or telecasting business.** We won't cover advertising injury that results from an offense committed by any protected person in the business of advertising, broadcasting, publishing or telecasting.

**Aircraft.** We won't cover bodily injury, property damage or medical expenses that result from the:

• ownership, maintenance, use or operation;
• loading or unloading; or
• entrustment to others;

of any aircraft owned, operated, rented, leased or borrowed by any protected person.

But we won't apply this exclusion to:
• liability for bodily injury or property damage assumed under any covered contract for the ownership, maintenance or use of aircraft; or
• bodily injury, property damage or medical expenses that result from the operation of specialized equipment.

We explain what we mean by entrustment to others and loading or unloading in the Auto exclusion.

We explain what we mean by specialized equipment in the Mobile equipment exclusion.

**Auto.** We won't cover bodily injury, property damage or medical expenses that result from the:

• ownership, maintenance, use or operation;
• loading or unloading; or
• entrustment to others;

of any auto owned, operated, rented, leased or borrowed by any protected person.

But we won't apply this exclusion to bodily injury, property damage or medical expenses that result from the:
• parking of an auto on any premises you own, rent, lease or borrow, or on ways next to such premises, if the auto isn't owned, rented, leased or borrowed by any protected person; or
• operation of specialized equipment.

*Auto* means any land motor vehicle, trailer or semitrailer designed for travel on public streets or roads. It includes any permanently attached machinery or equipment. But we won't consider mobile equipment to be an auto.

*Loading or unloading* means the handling of property:
• while it's being moved from the place where it's accepted for transportation;
• while it's being loaded, transported and unloaded; and

• until it's moved to the place where it's finally delivered.

However, we won't consider moving property by an unattached mechanical device to be loading or unloading.

*Unattached mechanical device* includes any forklift, conveyor or other unattached mechanical device, other than a hand truck.

*Entrustment to others* means:
• the permitting of others to use or do something; or
• the giving of something to others for safekeeping.

We explain what we mean by mobile equipment and specialized equipment in the Mobile equipment exclusion.

**Breach of contract.** We won't cover advertising injury that results from the failure of any protected person to do what is required by a contract or agreement.

But we won't apply this exclusion to the unauthorized taking or use of advertising ideas if the contract or agreement doesn't specifically prohibit such taking or use.

**Contract liability.** We won't cover the protected person's liability for injury or damage assumed under any contract or agreement.

However, we won't apply this exclusion to liability for injury or damage the protected person would have without the contract or agreement. Nor will we apply this exclusion to the protected person's liability for bodily injury or property damage assumed under a covered contract made before the bodily injury or property damage happens.

*Covered contract* means any:
• lease of premises;
• sidetrack agreement;
• elevator maintenance agreement;
• easement or license agreement;
• obligation to indemnify a municipality if the obligation is required by ordinance and isn't connected with your work for the municipality;
• contract or agreement under which you assume the tort liability of a municipality to pay damages for covered bodily injury or prop-

erty damage that is sustained by others and results from your work for the municipality; or
•other contract or agreement under which you assume the tort liability of another to pay damages for covered bodily injury or property damage that's sustained by others.

*Tort liability* means a liability that would be imposed by law without any contract or agreement.

But we won't consider the following parts of any contract or agreement to be a covered contract:

*Architect, engineer or surveyor indemnity.* That part which indemnifies any architect, engineer or surveyor for bodily injury or property damage that results from the:
•preparation or approval of, or failure to prepare or approve, maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or
•giving of or failure to give directions or instructions if that giving or failure to give is the primary cause of the bodily injury or property damage.

*Protected architect, engineer or surveyor.* That part which indemnifies any person or organization for bodily injury or property damage that results from the performance of or failure to perform architect, engineer or surveyor professional services by the protected person who is an architect, engineer or surveyor.

*Architect, engineer or surveyor professional services* include:
•the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and
•supervisory, inspection or engineering services.

*Premises damage.* That part which indemnifies any person or organization for property damage to premises you rent, lease or borrow from others.

*War.* That part which indemnifies any person or organization for bodily injury or property damage caused by war.

We explain what we mean by war in the Medical expenses of certain persons exclusion.

**Control of property.** We won't cover property damage to the following property:
•Property you own, rent, lease, occupy or borrow. But we won't apply this exclusion part to premises damage.
•Premises you sell, give away or abandon, if such property damage results from any part of those premises. But we won't apply this exclusion part to property damage to premises which are your completed work and were never occupied, rented or held for rental by you.
•Personal property in the care, custody or control of the protected person.
•That particular part of real property being worked on by or for you, if such property damage results from your work.
•That particular part of any property which must be restored, repaired or replaced because your work was incorrectly performed on it. But we won't apply this exclusion part to property damage that results from your completed work.

Furthermore, we won't apply this exclusion to liability for property damage to the above property, other than the property described below, if such liability is assumed under a sidetrack agreement:
•Property you own, rent, lease or occupy.
•Premises you sell, give away or abandon.

**Damage to your products or completed work.** We won't cover property damage to any of your products that's caused by the product itself or by any of its parts. For example:

*You manufacture air conditioners. They contain several moving parts which can break down for many reasons. Regardless of the cause, we won't protect you for any property damage to the part that fails or to the rest of the air conditioner.*

Nor will we cover property damage to your completed work that's caused by the work itself or by any of its parts. But we won't apply this exclusion part if:
•this agreement provides completed work coverage; and
•the damaged completed work, or the completed work that causes the property damage, was done for you by others.
For example:

*You construct a building as a general contractor. Some of the work is done by you while the rest is done for you by subcontractors. The built ng is accepted by the owner. If it's damaged by a fire caused by electrical wiring installed by a subcontractor, we won't apply the exclusion. However, if the wiring was installed by you, we'll apply the exclusion to property damage to your completed work done by you.*

**Deliberately breaking the law.** We won't cover personal injury or advertising injury that results from:
•the protected person knowingly breaking any criminal law; or
•any person or organization breaking any criminal law with the consent or knowledge of the protected person.

**Employer's liability.** We won't cover bodily injury to an employee arising out of and in the course of his or her employment by a protected person. Nor will we cover bodily injury to the spouse, child, parent, brother or sister of that employee which results from the bodily injury to the employee.

We'll apply this exclusion whether the protected person may be held liable as an employer or in any other capacity, such as a property owner or product manufacturer. For example:

*You manufacture tires. Your employee is injured while driving a company truck equipped with your tires, when one of the tires blows out resulting in an accident. He receives workers' compensation benefits. If he later sues you in your capacity as a manufacturer, alleging that his injury happened because your product was defective, we won't protect you.*

We'll also apply this exclusion to any obligation of the protected person to share damages with or repay someone else who must pay damages because of bodily injury to any employee of the protected person. For example:

*Your employee is injured in a printing press accident. She receives workers'*

*compensation benefits. Later, she sues the manufacturer of the printing press alleging that her injury happened because the press didn't have enough guarding devices on it. If the manufacturer in turn sues you alleging that your faulty maintenance of the press – not the lack of guarding devices – resulted in the employee's injury, we won't protect you.*

But we won't apply this exclusion to liability for bodily injury assumed under any covered contract.

**False material.** We won't cover personal injury or advert sing injury that results from making known to any pers or organization false written or spoken mat al that:
•was made known y or for the protected person; and
•the protected person knew was false when it was made known.

**Impaired property.** We won't cover property damage to impaired property, or to property which isn't physically damaged, that results from:
•your faulty or dangerous products or completed work; or
•a delay or failure in fulfilling the terms of a contract or agreement.

But we won't apply this exclusion to the loss of use of property, other than your products or completed work, that results from sudden and accidental physical damage to your products or completed work after they've been put to their intended use. For example:

*You supply an electric motor to a customer who uses it to power his conveyor. The motor's shaft breaks several days later while he's operating the conveyor. The conveyor isn't damaged, but your customer has extra costs because he's unable to use it until the motor is repaired. If he sues you to recover those costs, we won't apply the exclusion. However, if the customer discovers while hooking the motor up to the conveyor that the motor's shaft is broken, we won't protect you.*

*Impaired property* means tangible property, other than your products or completed work, that can be restored to use by nothing more than:

• an adjustment, repair, replacement or removal of your products or completed work which forms a part of it; or

• your fulfilling the terms of a contract or agreement.

**Intentional bodily injury or property damage.** We won't cover bodily injury or property damage that's expected or intended by the protected person. Nor will we cover medical expenses that result from such bodily injury.

But we won't apply this exclusion to intentional bodily injury or property damage that results from the use of reasonable force to protect people or property.

**Liquor liability.** We won't cover bodily injury, property damage or medical expenses that result from any protected person:

• causing or contributing to the intoxication of any person;

• selling, serving or furnishing alcoholic beverages to any person under the legal drinking age or under the influence of alcohol; or

• violating any law or regulation applying to the sale, gift, distribution or use of alcoholic beverages.

But we'll apply this exclusion only if you're in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For example:

*You manufacture office equipment. Each year you host an awards banquet with an open bar for your sales representatives. After this year's banquet an intoxicated guest is involved in an auto accident. The guest and several others are injured. If someone sues you, alleging that your serving of liquor caused the guest's intoxication and involvement in the accident, we won't apply the Liquor liability exclusion because you're not in the business of serving liquor.*

**Material first made known.** We won't cover personal injury or advertising injury that results from making known to any person or organization written or spoken material that was first

made known before this agreement went into effect.

**Medical expenses of certain persons.** We won't cover medical expenses incurred by or for any person:

• injured while qualifying as a protected person;
• injured while performing work for any protected person or a tenant of any protected person;

• injured on that part of any premises you own, rent or lease that the injured person normally occupies;

• to whom benefits are payable, or are required to be provided, under a workers' compensation or disability benefits law, or any similar law;
• injured by your products or completed work;
• injured due to war; or

• who refuses to be examined as often as we require, within reason, by doctors we choose.

*War* includes:
• declared or undeclared war, or invasion;
• warlike action by a military force or other agents of any government, sovereign or other authority;

• civil war, insurrection, rebellion, revolution or seizure of power; or

• anything done to hinder or defend against such actions.

**Mobile equipment.** We won't cover bodily injury, property damage or medical expenses that result from the transportation of mobile equipment by an auto owned, operated, rented, leased or borrowed by any protected person.

Nor will we cover bodily injury, property damage or medical expenses that result from the use of racing mobile equipment.

*Mobile equipment* means any land vehicle that:

• is designed for use primarily off public streets or roads;

• is kept for use only on or next to premises you own, rent or lease;

• travels on crawler treads;

• is kept primarily for the ready movement of permanently attached construction equipment; or

• doesn't travel under its own power and is kept primarily for the ready movement of permanently attached specialized equipment.

Mobile equipment includes any land vehicle not described above that's kept primarily for purposes other than carrying people or cargo. But we won't consider such a vehicle to be mobile equipment if it:

•travels under its own power;
•is operated like an auto during travel on a public street or road; and
•has permanently attached specialized equipment; or
•has permanently attached equipment designed for snow removal, street cleaning, or street or road maintenance - but not construction or resurfacing.

*Construction equipment* includes any grader, scraper, roller or power crane, shovel, loader, digger or drill.

*Specialized equipment* means any:
•cherry picker or similar device used to lift workers;
•pump, generator or air compressor; or
•other equipment, such as building cleaning, geophysical exploration, lighting, spraying, welding or well-servicing equipment, that has a built-in pump, generator or air compressor.

*Racing mobile equipment* means any mobile equipment while being prepared for or used in any:
•prearranged racing, speed, demolition or stunting contest or activity; or
•practice for such contest or activity.

We explain what we mean by auto, loading or unloading, and entrustment to others in the Auto exclusion.

**Nuclear energy liability.** We won't cover bodily injury or property damage for which any protected person:
•is covered by a nuclear energy liability insurance policy; or
•would have been covered by such policy if that policy's limits of coverage hadn't been used up.

Nor will we cover bodily injury or property damage that results from the hazardous properties of nuclear material and for which:
•any person or organization is required by law to maintain financial protection in accordance with the federal Atomic Energy Act, or any of its amendments; or

•any protected person is entitled, or would have been entitled had this agreement not been issued, to indemnity from the United States government, or any of its agencies, under any contract or agreement between the government, or any of its agencies, and any person or organization.

We also won't cover medical expenses that result from:
•the hazardous properties of nuclear material; and
•the operation of a nuclear facility by any person or organization.

And we won't cover bodily injury or property damage that results from the hazardous properties of nuclear material when:
•the nuclear material is located at, or at any time discharges or disperses from, any nuclear facility owned by any protected person, or operated by or for any protected person;
•the nuclear material is contained in spent nuclear fuel or nuclear waste that is at any time possessed, handled, used, processed, stored, transported or disposed by or for any protected person; or
•the bodily injury or property damage results from the furnishing by any protected person of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility. But we'll apply this exclusion part only to property damage to the nuclear facility, and any property located on the site of that facility, if the nuclear facility is in the United States of America, its territories or possessions, Puerto Rico or Canada.

*Nuclear energy liability insurance policy* means any nuclear energy liability insurance policy issued by:
•Nuclear Energy Liability Insurance Association;
•Mutual Atomic Energy Liability Underwriters;
•Nuclear Insurance Association of Canada; or
•any of their successors.

*Property damage* includes all forms of radioactive contamination of property.

*Hazardous properties* include radioactive, toxic or explosive properties.

*Nuclear material* means any of the following materials which are defined in the federal Atomic Energy Act, or any of its amendments:
• Source material.
• Special nuclear material.
• By-product material.

*Nuclear facility* means any:
• nuclear reactor;
• uranium isotopes separation device or equipment;
• special nuclear material device or equipment; or
• nuclear waste site.

Nuclear facility includes:
• the site on which it's located;
• all operations conducted on such site; and
• all premises used for such operations.

*Nuclear reactor* means any device, equipment or machine that's designed or used to:
• sustain nuclear fission in a self-supporting chain reaction; or
• contain a critical mass of fissionable material.

*Uranium isotopes separation device or equipment* means any device or equipment designed or used for:
• separating the isotopes of uranium or plutonium;
• processing or utilizing spent nuclear fuel; or
• handling, processing or packaging nuclear waste.

*Special nuclear material device or equipment* means any device or equipment used for the processing, fabricating or alloying of special nuclear material if the total amount of such material:
• is more than 25 grams of plutonium or uranium 233, or any combination of the two, or 250 grams of uranium 235; and
• is at any time in the custody of any protected person at the premises where the device or equipment is located.

*Nuclear waste site* means any structure, basin, excavation, premises or place prepared or used for the storage or disposal of nuclear waste.

*Nuclear waste* means any waste material that:

• contains by-product material; and
• results from the operation of any nuclear reactor or uranium isotopes separation device or equipment by any person or organization.

But we won't consider nuclear waste to include tailings or wastes that result from the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content.

*Spent nuclear fuel* means any solid or liquid fuel element or component that has been exposed to radiation or used in a nuclear reactor.

**Pollution.** We won't cover injury or damage or medical expenses that result from pollution at or from any:
• protected person's premises;
• waste site; or
• protected person's work site.

Nor will we cover injury or damage or medical expenses that result from pollution involving any waste pollutant.

We also won't cover any loss, cost or expense that results from:
• any request, demand or order that any protected person or others perform pollution work; or
• any claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

*Pollution* means any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant.

*Pollutant* means any solid, liquid, gaseous or thermal irritant or contaminant, including:
• smoke, vapors, soot, fumes;
• acids, alkalis, chemicals; and
• waste.

However, we won't consider heat, smoke or fumes to be a pollutant when they result from a hostile fire at or from:
• the protected person's premises; or
• the protected person's work site if the hostile fire doesn't result from pollution work being done by or for the protected person.

**Hostile fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

**Waste** includes materials to be recycled, reconditioned or reclaimed.

**Protected person's premises** means any premises, site or location which is or was at any time owned, rented, leased, borrowed or occupied by any protected person. For example:

*You sold an office building two years ago. It contains asbestos ceiling tile which released asbestos into the air while you owned it. A former tenant now sues you for bodily injury that allegedly resulted from the release of that asbestos. We won't cover such injury.*

**Waste site** means any premises, site or location which is or was at any time used by or for any protected person or others for the handling, storage, disposal, processing or treatment of waste. For example:

*For several years waste generated by your manufacturing business was disposed of in a landfill owned by others. The landfill was closed two years ago. Nearby residents now allege that they're being injured by the waste from there. We won't cover such injury.*

**Protected person's work site** means any premises, site or location on which work is being performed by or for any protected person when:

•a pollutant is brought on or to such premises, site or location by or for the protected person in connection with such work; or
•the work being performed is pollution work. For example:

*A subcontractor working for you brings a diesel fuel storage tank to the building site for refueling of its excavation equipment. After a couple of days it is discovered that the tank has been leaking. The escaped fuel must now be cleaned up. We won't cover the cost of that clean-up.*

**Pollution work** means:
•the testing for, monitoring, cleaning up,

removing, containing, treating, detoxifying or neutralizing of any pollutant; or
•the responding to, or assessing, in any way the effects of any pollutant.

**Waste pollutant** means any pollutant which is or was at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any protected person or any person or organization for whom you may be legally responsible. For example:

*Waste generated by your business is transported to a landfill by a trucker hired by you. There is an accident which causes the waste to be spilled onto the road. One of the fire fighters who responds to the accident later alleges that fumes from the waste made her ill. We won't cover such injury.*

**Poor quality or performance.** We won't cover advertising injury that results from the failure of your products, work or completed work to conform with advertised quality or performance.

**Product recall.** We won't cover any loss, cost or expense that:
•is incurred by you or others; and
•results from the recall, removal or withdrawal of impaired property, or your products or completed work, from the market or from use by any person or organization for any reason.

Nor will we cover any loss, cost, or expense that is incurred by you or others and results from the:
•loss of use;
•adjustment, inspection, repair;
•replacement; or
•disposal;
of such property, products or completed work.

We explain what we mean by impaired property in the Impaired property exclusion.

**Watercraft.** We won't cover bodily injury, property damage or medical expenses that result from the:
•ownership, maintenance, use or operation;
•loading or unloading; or
•entrustment to others;
of any watercraft owned, operated, rented, leased or borrowed by any protected person.

But we won't apply this exclusion to liability for bodily injury or property damage assumed under any covered contract for the ownership, maintenance or use of watercraft.

Nor will we apply this exclusion to bodily injury, property damage or medical expenses that result from:
•watercraft while ashore on premises you own, rent or lease;
•watercraft you don't own that is less than 50 feet long and isn't being used to carry persons or property for a charge; or
•the operation of specialized equipment.

We explain what we mean by entrustment to others and loading or unloading in the Auto exclusion.

We explain what we mean by specialized equipment in the Mobile equipment exclusion.

**Workers' compensation.** We won't cover any obligation that the protected person has under a workers' compensation, disability benefits or unemployment compensation law, or any similar law.

**Wrong price description.** We won't cover advertising injury that results from making known to any person or organization the wrong description of the price of your products, work or completed work.

## Other Insurance

This agreement is primary insurance. If there is any other valid and collectible insurance for injury or damage covered by this agreement, the following applies:

**Other primary insurance.** When there is other primary insurance, we'll share any damages with that insurance using one of the methods of sharing described in the Methods of sharing section.

However, we'll apply this agreement as excess insurance over any part of any other insurance which provides:
•property or similar coverage for property damage to your work;

•coverage for property damage to premises you rent, lease or borrow from others; or
•coverage for bodily injury or property damage that results from the maintenance, use, operation or loading or unloading of any auto, aircraft or watercraft that's not specifically excluded by the Auto, Aircraft or Watercraft exclusions.

We explain how we'll apply this agreement as excess insurance in the Excess insurance section.

**Excess insurance.** When this agreement is excess insurance, we'll have no duty to defend any claim or suit. However, we'll defend a claim or suit for covered injury or damage if the other insurers won't. In return we'll require that the protected persons give us all of their rights against those insurers.

Also, we'll pay only the amount of damages that's in excess of:
•the total amount that all such other insurance would pay if this agreement didn't exist; and
•the total of all deductible and self-insured amounts under all such other insurance.

However, we'll share such excess damages with any other insurance that:
•isn't described in the Other primary insurance section ; and
•wasn't bought specifically to apply in excess of the limits of coverage shown in the Coverage Summary.

But we won't pay more than the limits of coverage that apply under this agreement.

**Methods of sharing.** We'll use one of the methods of sharing described below.

*Contribution by equal shares.* If all of the other insurance permits contribution by equal shares, we'll share the damages equally. But we won't pay more than the limits of coverage that apply under this agreement. If any policy reaches its limit before the entire amount of damages is paid, the remaining policies will share the balance equally until their limits have been used up or the amount of the damages is paid in full. For example:

*You are required by a court to pay damages of $1,000,000. Besides this agreement, two other policies apply to the*

judgment. The limit of this agreement is $500,000. Policy B has a $100,000 limit and Policy C's limit is $300,000.

First, $100,000 is subtracted from each policy's limit because that is the lowest limit provided by any of the three policies. The result: Policy B's limit is used up; the balance due on the judgment is $700,000; $400,000 remains of this agreement's limit; and the unused portion of Policy C's limit equals $200,000.

Next, $200,000 is subtracted from the limit on this agreement and Policy C because that amount equals the smallest amount of limit remaining on either policy after the initial $100,000 payment. The result: Policy C's limit is used up; the balance due on the judgment is now $300,000; and this agreement has $200,000 of its limit remaining.

Finally, the rest of the limit on this agreement is paid. The result: this agreement's limit is used up; the balance due on the

judgment is now $100,000, which you must pay; and the total paid under each policy is: $500,000 this agreement, $100,000 Policy B and $300,000 Policy C.

**Contribution by limits.** If any of the other insurance doesn't permit contribution by equal shares, we'll pay that portion of the damages equal to our percentage of the total of all limits that apply. But we won't pay more than the limits of coverage that apply under this agreement. For example:

You are required by a court to pay damages of $600,000. Besides this agreement, another policy applies to the judgment. The limit of this agreement is $300,000 and Policy B has a $100,000 limit. The total limit of all insurance is $400,000.

Our limit is 75% ($300,000/$400,000) of the total limit. But we won't pay 75% of the judgment because that $450,000 share is more than our limit. We'll pay only our limit, which is $300,000.

This endorsement changes your Commercial
General Liability Protection.

## How Coverage Is Changed

The following is added to the Contract liability
exclusion. This change broadens coverage.

We'll consider the protected person's liability
for bodily injury or property damage assumed
under a covered contract to include liability for
contract liability defense expenses if the liabil-
ity for such expenses is also assumed by the
protected person under the same contract. As
a result, we'll consider covered contract liabil-
ity defense expenses to be damages for bodily
injury or property damage covered under this
agreement. Such expenses are subject to the
limits of coverage.

*Contract liability defense expenses* mean the
reasonable attorney fees and necessary liti-
gation expenses incurred by or for an indemni-
tee for its defense against a civil or alternative
dispute resolution proceeding which seeks
damages for bodily injury or property damage
covered under this agreement.

*Indemnitee* means any person or organization,
other than a protected person, who is a party to
a covered contract and is held harmless or
protected under that contract by the protected
person for liability for:
•bodily injury or property damage covered
under this agreement; and
•the contract liability defense expenses
incurred in connection with such bodily injury or
property damage.

## Other Terms

All other terms of your policy remain the same.



# EXHIBIT / ATTACHMENT

## C

(To be scanned in place of tab)

This endorsement changes your Commercial
General Liability Protection.

## How Coverage Is Changed

There are five changes which are explained
below.

1. The following is added to the Corporation or
other organization section. This change
explains what we mean by executive officer.

*Executive officer* means any person holding
an officer position created by the charter,
constitution or by-laws, or any other similar
governing document, of:
•a corporation; or
•any other organization that isn't a partnership
or joint venture.

2. The following replaces the first paragraph of
the Employees section. This change broadens
coverage.

Your employees are protected persons only for:
•work done within the scope of their employ-
ment by you; or
•their performance of duties related to the
conduct of your business.

3. The following is added to the Employees
section. This change explains what we mean by
employee, leased worker, employee leasing
firm and leased temporary worker.

*Employee* includes a leased worker, other than
a leased temporary worker.

*Leased worker* means any person who:
•is hired from an employee leasing firm under a
contract or agreement between the hirer and
that firm; and
•is performing duties related to the conduct of
the hirer's business.

*Employee leasing firm* means any person or
organization who hires out workers to others.
It includes any:
•employment agency, contractor or service;
•labor leasing firm; or
•temporary help service.

*Leased temporary worker* means a leased
worker who is hired to:
•temporarily take the place of a permanent
employee on leave; or
•meet seasonal or short-term workload condi-
tions.

4. The following is added to the Employees
section. This change excludes coverage.

No employee is a protected person for bodily
injury or personal injury to any of your partners
or co-venturers.

Also, no employee is a protected person for
bodily injury or personal injury for which there
is any obligation to share damages with or
repay someone else who must pay damages
because of bodily injury or personal injury to:
•you;
•any of your partners or co-venturers; or
•the spouse or any child, parent, brother or
sister of a fellow employee if such injury
results from the bodily injury or personal injury
to that fellow employee.

5. The following replaces the first sentence of
the Employer's liability exclusion. This change
excludes coverage.

We won't cover bodily injury to an employee of
the protected person arising out of and in the
course of his or her:
•employment by the protected person; or
•performance of duties related to the conduct
of the protected person's business.

## Other Terms

All other terms of your policy remain the same.



# EXHIBIT / ATTACHMENT

D

(To be scanned in place of tab)

This endorsement changes your Commercial
General Liability Protection.

---

## How Coverage Is Changed

The following is added to the Employees
section.  This change broadens coverage.

We won't apply the exclusions in this Employ-
ees section to bodily injury to any fellow
employee that results from work, other than the
performance of or failure to perform health
care professional services, done by any of your
employees.

## Other Terms

All other terms of your policy remain the same.

**POLLUTION EXCLUSION LEAD EX∫ ⫮ ENDORSEMENT** ⫯

This endorsement applies to your Commercial
General Liability Protection.

---

### What This Endorsement Does

The following example is added in connection
with the definition of protected person's prem-
ises in the Pollution exclusion. The addition of
this example does not change coverage. We
consider lead to be a pollutant even without this
example.

*You own an apartment building. Its wood-
work is finished with paint that contains
lead. Two of your renters sue you for
bodily injury to their children allegedly
caused by the lead in that paint. The chil-
dren supposedly consumed the lead by
eating chips of the paint from the window
sills in their apartments. We won't cover
such injury.*

### Other Terms

All other terms of your policy remain the same.

# DAY CARE CENTER MEDICAL EXPENSES EXCLUSION ENDORSEMENT

The St.Paul

This endorsement changes your Commercial General Liability Protection.

## How Coverage Is Changed

The following is added to the Exclusions - What This Agreement Won't Cover section.  This change excludes coverage.

**Day care centers.**  We won't cover medical expenses of any child enrolled in a day care center. .

## Other Terms

All other terms of your policy remain the same.

This endorsement changes your Commercial
General Liability Protection.

---

## How Coverage Is Changed

The following is added to the Exclusions - What
This Agreement Won't Cover section.  This
change excludes coverage.

**Computer professional services.**  We won't cover
injury or damage that results from the perform-
ance of or failure to perform computer profes-
sional services.

*Computer professional services*  include:
- data processing;
- systems analysis or design;
- programming;
- consulting; and
- software development, distribution and main-
tenance.

## Other Terms

All other terms of your policy remain the same.

---



# EXHIBIT / ATTACHMENT



(To be scanned in place of tab)

Bodilily Injury Definition Endorsement

---

This endorsement changes your Commercial General Liability Protection.

*HOW COVERAGE IS CHANGED*

The following definition of Bodily Injury found in the What This Agreement Covers is deleted:

> Bodily Injury means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness or disease:
>
> * Mental anguish, injury or illness.
> * Emotional distress.
> * Care, loss of services, or death.

and is replaced with the following:

> Bodily Injury means any harm to the health of other persons, including physical harm, sickness, disease and mental anguish, injury or illness. And it includes care, loss of services or death that results from such harm.

OTHER TERMS

All other terms of your policy remain the same.

---

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 02/06/96  10:43  002 | |

40502 Ed.1-80 Printed in U.S.A.            Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved            Page    1

Additional Protected Persons Endorsement #1

---

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Who Is Protected Under This Agreement section. This change adds certain protected persons and limits their protection.

The person(s) or organization(s) shown below are protected, but only for covered bodily injury or property damage that results from your operations.

Name of Protected Person(s) or Organization(s)

1. Students in University-sponsored programs and projects or holding University-appointed positions of responsibility or students in elected positions by other students, in connection with campus activities or affairs.

2. Volunteer workers and members of duly constituted committees or other recognized bodies performing services on behalf of the insured.

3. Trustees or members of a Board of Governors.

4. Student-teachers while teaching as part of their educational requirements.

5. Fraternities and sororities located at the University.

The coverage afforded by this endorsement is limited to the acts of those listed above, only while acting within the scope of their duties as such for you. This coverage will be excess over any other valid and collectible insurance available to them.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** HG07200088
**Processing Date** 01/30/96   15:14   001

**Effective Date** 01/01/96

---

40502 Ed.1-80 Printed in U.S.A.
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved

Customized Form

Page   1

Additional Protected Persons Endorsement #2

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Who Is Protected Under This Agreement section.
This change adds certain protected persons and limits their protection.

The person(s) or organization(s) *shown below* are protected, but only for
covered bodily injury or property damage that results from your operations.

PROTECTED PERSONS

Any person or organization *with whom you have entered into a covered contract*,
and who in that contract, has mandated they be included as an additional
protected person to your Commercial General Liability Protection.

A covered contract is defined on page 8 of 16 in your Insuring Agreement 36.

OTHER TERMS

All other terms of your policy remain the same.

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** HG07200088
**Processing Date** 01/30/96  15:14  001

**Effective Date** 01/01/96

40502 Ed.1-30 Printed in U.S.A.
©St. Paul Fire and Marine Insurance Co 1980 All Rights Reserved

Customized Form

Page   1

Colleges Or Schools Endt. With Student Medical Expenses Exclusion

This endorsement changes your Commercial General Liability Protection.

There are two changes which are explained below.

1.  The following is added to the Who Is Protected Under This Agreement
    section. This change adds certain protected persons and limits their
    protection.

TRUSTEES, BOARD MEMBERS OR COMMISSIONERS. Your trustees, board members or
commissioners are protected persons. But only for covered injury or damage
that happens or is committed while they're acting within the scope of their
duties.

STUDENT TEACHERS. Any student teacher teaching for you as part of their
educational requirements is a protected person. But only for covered injury or
damage that happens or is committed while they're acting within the scope of
their duties.

2.  The following exclusions are added to the Exclusions - What This Agreement
    Won't Cover section. This change excludes coverage.

INFIRMARY, CLINIC OR HOSPITAL. We won't cover injury or damage or medical
expenses that result from the performance of or failure to perform health care
professional services.

But we'll apply this exclusion only at any of your locations with an infirmary
with treatment and lodging facilities, or a public clinic or hospital.

We'll cover claims for injury or damage or medical expenses that result when
your health care professionals, while acting within the scope of their duties
for you, provide or fail to provide healthcare professional services at your
locations other than an infirmary with treatment and lodging facilities or a
public clinic or hospital. But we won't cover any health care professional
against malpractice claims.

HEALTH CARE PROFESSIONAL SERVICES include:

*   Medical, dental, x-ray, nursing or cosmetic treatments. And food or
    beverages given with these treatments.

*   The dispensing of drugs, medical or dental supplies and appliances.

*   The handling or treatment of corpses, including autopsies, organ
    donation or other procedures.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 02/06/96   10:43   002 | |

40502 Ed.1-80 Printed in U.S.A.            Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved            Page    1

TRANSPORTATION OF STUDENTS. We won't cover bodily injury, property damage or medical expenses that result from the:

* ownership, maintenance, operations, or use;

* loading or unloading; or

* entrustment to others;

of any aircraft, auto or watercraft owned, operated, rented, leased, borrowed or hired by any protected person for the transportation of students to and from school.

HIRED includes any contract to furnish transportation of students to and from school.

STUDENT MEDICAL EXPENSES. We won't cover medical expenses of any student.


OTHER TERMS

All other terms of your policy remain the same.

Leased Employee Endorsement

---

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Employees protection under the Who Is Protected Under This Agreement section.

Employees of the named insured shall include employees leased by the named insured from The Emory Clinic under the Contract Staff Leasing Agreement effective January 1, 1993. Conversely, employees of the named insured shall not include employees leased by the named insured to The Emory Clinic under the Contract Staff Leasing Agreement effective January 1, 1993.

OTHER TERMS

All other terms of your policy remain the same.

---

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 02/06/96  10:43  002 | |

Premises Exclusion Endorsement

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

Your General Liability Protection is changed by adding the following exclusion to the Exclusions - Claims We Won't Cover section. The effect of this change is to reduce your coverage.

DESCRIPTION AND LOCATION OF PREMISES

1. Emory University Hospital
2. Crawford W. Long Memorial Hospital
3. Jesse Parker Williams Memorial, Inc.
4. The Carter Center, Inc.

PREMISES. We won't cover bodily injury, property damage, personal injury or advertising injury resulting from any of the following:

* ownership, maintenance or use of the described premises or of any property located on such premises;

* work on or off the described premises related to the ownership, maintenance or use of such premises; or

* products manufactured on or distributed from the described premises.

OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 02/06/96 10:43 002 | |

Watercraft Extension Endorsement

---

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The second paragraph of the Watercraft Exclusion is removed and replaced with
the following. This change broadens coverage.

But we won't apply this exclusion to bodily injury, property damage, or medical
expenses that result from:

* Liability for bodily injury or property damage assumed under any covered
  contract for the ownership, maintenance or use of watercraft.

* Watercraft while ashore on premises you own, rent or lease.

* Watercraft you don't own that is less than 50 feet long and isn't being
  used to carry persons or property for a charge.

* The operation of specialized equipment.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**   **Policy Number** HG07200088      **Effective Date** 01/01/96
EMORY UNIVERSITY        **Processing Date** 02/06/96  10:43  002

---

40502 Ed. 1-80 Printed in U.S.A.              Customized Form

Knowledge Of Accident Or Incident Endorsement

---

This endorsement changes your Commercial General Liability Protection.

HOW COVERAGE IS CHANGED

The following is added to What To Do If You Have A Loss – Someone Is Injured or Something Happens Which Can Result In A Liability Claim section.

3. Knowledge of an accident or incident by the agent or the protected persons or an employee of the Insured will not in itself constitute knowledge of the insured unless the Vice President of Finance and Treasurer or General Counsel has received notice of an accident or incident from the agent, other protected persons or an employee.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** HG07200088
**Processing Date** 02/06/96   10:43   002

**Effective Date** 01/01/96

---

# LIQUOR LIABILITY PROTECTION COVERAGE SUMMARY

The St.Paul

This Coverage Summary shows the limits of coverage that apply to your Liquor Liability Protection. It also lists those endorsements, if any, that must have certain information shown for them to apply.

| Limits Of Coverage | | IMPORTANT NOTE |
|---|---|---|
| | | |

**Total limit.** $ 1,000,000.

**Retroactive Date:**

**Each person limit.** $ 1,000,000.

The retroactive date applies only if the Liquor Liability Protection - Claims-Made insuring agreement is a part of this policy.

However, if no date is shown above and the claims-made agreement applies, we'll consider the retroactive date to be the same as the beginning date of this policy.

## Named Endorsement Table

**Important Note:** Only endorsements that must have certain information shown for them to apply are named in this table. The required information follows the name of each such endorsement. Other endorsements may apply. If so, they're listed on the Introduction.

**Name of Insured**     Policy Number HG07200088     **Effective Date** 01/01/96
EMORY UNIVERSITY     Processing Date 01/30/96   15:14   001

43885 Ed.9-86 Printed in U.S.A.     Coverage Summary

This insuring agreement provides liquor liability protection for your business activities. There are, of course, limitations and exclusions that apply to that protection. As a result, we recommend that you read this agreement carefully to determine the extent of the coverage provided to you and other protected persons.

| Table of Contents | Page |
|---|---|
| **What This Agreement Covers** | 1 |
| Liquor liability. | 1 |
| Right and duty to defend. | 1 |
| Additional payments. | 2 |
| **When This Agreement Covers** | 2 |
| **Where This Agreement Covers** | 2 |
| **Who Is Protected Under This Agreement** | 2 |
| Individual. | 2 |
| Partnership or joint venture. | 2 |
| Corporation or other organization. | 3 |
| Employees. | 3 |
| Newly acquired organizations. | 3 |
| Unnamed partnership or joint venture. | 3 |
| Separation of protected persons. | 3 |
| **Limits Of Coverage** | 3 |
| Total limit. | 3 |
| Each person limit. | 3 |
| How the limits of coverage apply to an extension of the policy period. | 3 |
| How the limits of coverage apply if the total limit is left blank. | 4 |
| **Exclusions – What This Agreement Won't Cover** | 4 |
| Intentional bodily injury or property damage. | 4 |
| Workers' compensation. | 4 |
| Employer's liability. | 4 |
| Loss of liquor license. | 4 |
| Product liability. | 4 |
| Other insurance. | 4 |
| **Other Insurance** | 5 |
| Methods of sharing. | 5 |

## What This Agreement Covers

**Liquor liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, loss of support, or property damage that:
- results from your selling, serving or furnishing of any alcoholic beverage;
- happens while this agreement is in effect; and
- is caused by an event.

*Protected person* means any person or organization qualifying as a protected person under the Who Is Protected Under This Agreement section.

*Damages* include pre-judgment interest awarded against the protected person on that part of any judgment paid by us.

*Bodily injury* means any physical harm, including sickness or disease, to the health of other persons. It also includes:
- mental anguish, injury or illness;
- care;
- loss of services; or
- death.

But only if they result from such harm.

*Loss of support* means the loss of income on which other persons depend for their standard of living.

*Property damage* means:
- physical damage to tangible property of others, including all resulting loss of use of that property; or
- loss of use of tangible property of others that isn't physically damaged.

*Event* means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered

injury or damage made or brought against any protected person. But we have no duty to perform other acts or services. And our duty to defend claims or suits ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

We'll have the right to investigate and settle any claim or suit if we believe that's proper.

*Claim* means a demand in which damages are alleged.

*Suit* means a civil proceeding in which damages are alleged. And it includes an arbitration proceeding for such damages to which you must submit or submit with our consent.

*Injury or damage* means bodily injury, loss of support, or property damage.

**Additional payments.** We'll have the duty to make only the payments shown below in connection with any claim or suit we defend. These payments are in addition to the Limits of Coverage. But our duty to make such payments ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

*Our expenses.* We'll pay all expenses we incur.

*Bonds to release property.* We'll pay the cost of bonds to release property that's being used to secure a legal obligation. But only for bond amounts within the limit of coverage that applies. We don't have to furnish such bonds.

*Expenses incurred by protected persons.* We'll pay all reasonable expenses that any protected person incurs at our request while helping us investigate or defend the claim or suit. But we won't pay more than $100 per day for earnings actually lost by the protected person because of time lost from work.

*Taxed costs.* We'll pay all costs for covered claims taxed against any protected person in the suit.

*Post-judgment interest.* We'll pay all interest that accumulates on the amount of a judgment for a covered claim. But only from the date of the judgment to the date we:

- pay;
- offer to pay; or
- deposit in court;

the limit of coverage that applies to the judgment.

*First aid expenses.* We'll pay the expenses incurred by any protected person for first aid to others at the time of an event that results in covered bodily injury.

## When This Agreement Covers

We'll apply this agreement to claims or suits for covered injury or damage whenever they're made or brought.

## Where This Agreement Covers

We'll defend claims or suits, or pay judgments or settlements, only in the coverage territory for covered injury or damage that happens there.

However, we'll also defend claims or suits, or pay judgments or settlements, in the coverage territory for covered injury or damage that happens in the rest of the world if such injury or damage results from your selling, serving or furnishing any alcoholic beverage in the coverage territory.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada. And it includes international waters or airspace only during travel or transportation between any of the above places.

## Who Is Protected Under This Agreement

**Individual.** If you are named in the Introduction as an individual, you and your spouse are protected persons only for the conduct of a business of which you are the sole owner.

**Partnership or joint venture.** If you are named in the Introduction as a partnership or joint venture, you are a protected person. Your partners or co-venturers and their spouses are protected persons only for the conduct of your business.

**Corporation or other organization.** If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers and directors are protected persons only for their duties as your officers or directors. And your stockholders are protected persons only for their liability as your stockholders.

**Employees.** Your employees are protected persons only for the conduct of your business within the scope of their employment by you.

However, your employees aren't protected persons for:
•Injury to you or to any fellow employee.
•Damage to property owned, rented, leased, occupied or borrowed by them, fellow employees, or any protected partner or co-venturer.

But this Employees protection section doesn't apply to your executive officers. The Corporation or other organization section applies to them.

**Newly acquired organizations.** Any organization that you acquire or form while this agreement is in effect is a protected person if you own at least 51% of it.

However, no newly acquired or formed organization is a protected person for:
•More than 90 days, or the remainder of the policy period, whichever is less, from the date that you acquire or form it.
•Injury or damage that results from an event that happened before you acquired or formed it.
•Injury or damage that's covered under any other insurance.

But this Newly acquired organizations protection section doesn't apply to a partnership or joint venture. Nor does it apply to any organization once it's named in the Introduction.

**Unnamed partnership or joint venture.** No person or organization is a protected person for the conduct of any current or past partnership or joint venture that's not named in the Introduction.

**Separation of protected persons.** This agreement applies:
•to each protected person named in the Introduction as if that protected person was the only one named there; and
•separately to each other protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section. Also, any right or duty specifically assigned to the first Named Insured remains unchanged. We explain those rights and duties in the General Rules, which is a part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay regardless of the number of:
•protected persons;
•claims made or suits brought; or
•persons or organizations making claims or bringing suits.

**Total limit.** This is the most we'll pay for all covered injury and damage that happens in a policy year.

*Policy year* means the policy period shown in the Introduction when the policy period is one year or less. But when the policy period is longer than one year, it means each consecutive annual period, and the remaining period if any, that the policy is in effect, starting with the date the policy begins.

**Each person limit.** This is the most we'll pay for all covered injury and damage that results from the selling, serving or furnishing of alcoholic beverages to any one person.

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for three years. During the last policy year you request a three month extension. We agree. As a result, your last policy year becomes 15 months. It will be subject to the same limits of coverage that applied when the policy year was 12 months.*

**How the limits of coverage apply if the total limit is left blank.** If the amount of the Total limit is left blank in the Coverage Summary, that Total limit will be considered to be the same as the Each person limit or $50,000, whichever is more.

## Exclusions – What This Agreement Won't Cover

**Intentional bodily injury or property damage.** We won't cover bodily injury or property damage that's expected or intended by any protected person.

But we won't apply this exclusion to *intentional bodily injury or property damage that results from the use of reasonable force to protect people or property.*

**Workers' compensation.** We won't cover any obligation that the protected person has under any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

**Employer's liability.** We won't cover injury to an employee arising out of and in the course of his or her employment by a protected person. Nor will we cover injury to the spouse, child, parent, brother or sister of that employee which results from the injury to the employee.

This exclusion applies whether the protected person may be held liable as an employer or in any other capacity, such as a property owner or product manufacturer.

This exclusion also applies to any obligation of the protected person to share damages with or repay someone else who must pay damages because of injury to any employee of the protected person.

**Loss of liquor license.** We won't cover injury or damage that results from your selling, serving or furnishing of any alcoholic beverage:
•while any required liquor license is suspended; or
•after any required liquor license expires, or is cancelled or revoked.

**Product liability.** We won't cover injury or damage that results from your products.

But we won't apply this exclusion to injury or damage that results from:
•any protected person causing or contributing to the intoxication of any person;
•the furnishing of alcoholic beverages to any person *under the legal drinking age, or under the* influence of alcohol; or
•any law or regulation concerning alcoholic beverages.

*Your products* mean goods or products that:
•you;
•others using your name; or
•others whose business or assets you've acquired;
have manufactured, sold, handled, distributed or disposed of, including containers, materials, parts or equipment provided in connection with your products. It includes warranties or statements made about the fitness, quality, durability or performance of your products.

**Other insurance.** We won't cover injury or damage that's covered by other insurance. Nor will we cover injury or damage that would be covered by other insurance but isn't because the limits of coverage under that insurance have been used up in the payment of judgments or settlements.

But we won't apply this exclusion if the other insurance is liquor liability insurance and specifically applies to covered injury or damage that results from the selling, serving or furnishing of any alcoholic beverage.

## Other Insurance

This agreement is primary insurance. If there is other valid and collectible insurance for injury and damage covered by this agreement, we'll share any damages with that other insurance using one of the methods of sharing described below.

**Methods of sharing.** We'll use one of the methods of sharing described below.

*Contribution by equal shares.* If all of the other insurance permits contribution by equal shares, we'll share the damages equally. But we won't pay more than the limits of coverage that apply under this agreement. If any policy reaches its limit before the entire amount of damages is paid, the remaining policies will share the balance equally until their limits have been used up or the amount of the damages is paid in full. For example:

*You are required by a court to pay damages of $1,000,000. Besides this agreement, two other policies apply to the judgment. The limit of this agreement is $500,000. Policy B has a $100,000 limit and Policy C's limit is $300,000.*

*First, $100,000 is subtracted from each policy's limit because that is the lowest limit provided by any of the three policies. The result: Policy B's limit is used up; the balance due on the judgment is $700,000; $400,000 remains of this agreement's limit; and the unused portion of Policy C's limit equals $200,000.*

*Next, $200,000 is subtracted from the limit on this agreement and Policy C because that amount equals the smallest amount of limit remaining on either policy after the initial $100,000 payment. The result: Policy C's limit is used up; the balance due on the judgment is now $300,000; and this agreement has $200,000 of its limit remaining.*

*Finally, the rest of the limit on this agreement is paid. The result: this agreement's limit is used up; the balance due on the judgment is now $100,000, which you must pay; and the total paid under each policy is: $500,000 this agreement, $100,000 Policy B and $300,000 Policy C.*

*Contribution by limits.* If any of the other insurance doesn't permit contribution by equal shares, we'll pay that portion of the damages equal to our percentage of the total of all limits that apply. But we won't pay more than the limits of coverage that apply under this agreement. For example:

*You are required by a court to pay damages of $600,000. Besides this agreement, another policy applies to the judgment. The limit of this agreement is $300,000 and Policy B has a $100,000 limit. The total limit of all insurance is $400,000.*

*Our limit is 75% ($300,000/$400,000) of the total limit. But we won't pay 75% of the judgment because that $450,000 share is more than our limit. We'll pay only our limit, which is $300,000.*

Exclusion Endorsement

---

This endorsement changes your Liquor Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The following entity and location is excluded for coverage under this agreement.

EXCLUDED ENTITY AND LOCATION

Houston Millhouse
849 Houston Mill Road
Atlanta, GA  30329

OTHER TERMS

All other terms of your policy remain the same.

---

| | | |
|---|---|---|
| **Name of Insured**<br>EMORY UNIVERSITY | **Policy Number** HG07200088<br>**Processing Date** 01/30/96  15:14  001 | **Effective Date** 01/01/96 |

40502 Ed.1-80 Printed in U.S.A.                    Customized Form

# ASSOCIATION MANAGEMENT LIAB...Y PROTECTION–CLAIMS MADE

The **St.Paul**

We've designed this agreement to protect against liability claims resulting from the management of your association. Of course there are limitations which are explained later in this agreement.

**Important note.** This is a claims-made coverage. Please read it carefully, especially the When A Claim Is Covered section.

| Table of Contents | Page |
|---|---|
| What This Agreement Covers | 1 |
| Who Is Protected Under This Agreement | 2 |
| When A Claim Is Covered | 2 |
| Limit of Coverage | 3 |
| Deductible | 3 |
| When We'll Pay | 3 |
| Exclusions-Claims We Won't Cover | 3 |
| Other Insurance | 4 |
| Authorized Representative | 4 |

## Coverage Summary

If no entries are shown here, see separate Coverage Summary.

## Limit of coverage.

| | |
|---|---|
| $ 1,000,000. | Each policy year |

## Deductible.

| | |
|---|---|
| $ N/A | Each claim |

**Optional reporting endorsement premium.** If this agreement ends because of one of us chooses to cancel it or not to renew it, we'll agree to sell you the optional reporting endorsement explained on page 3 for the following premium. $ 4,500.

## What This Agreement Covers

This agreement protects against loss and expense that occurs when a claim or suit is brought against you or any protected person for a wrongful act based on:

- an error or omission;
- negligence;
- breach of duty;
- misstatement, misleading statement; or
- publisher's liability.

All such acts or omissions will be referred to as wrongful acts in this agreement.

This protection applies even if a claim is groundless, fraudulent or brought solely because a person holds or held a position protected by this agreement.

*Publisher's liability* means:

- libel, slander, defamation, publicity or invasion of privacy;
- infringement of trademark, copyright, title, or slogan;
- plagiarism; or
- piracy or misappropriation of ideas

resulting from any publication, advertisement, broadcast, or telecast by or authorized by you or a protected person.

**Liability protection.** We'll pay amounts you or any other protected person is legally required to pay as a result of a claim or suit brought against you or a protected person. The claim must result from a wrongful act committed by a protected person or a person for whom they are legally responsible while acting on behalf of the Association.

**Investigation, defense and settlement.** We'll defend any suit brought against you or any protected person for covered claims, even if the suit is groundless or fraudulent.

We have the right to investigate any suit or claim, but we can't settle or compromise a suit or claim without written consent from you or the protected person involved. If consent is refused we won't have to pay more than what we would have paid if consent had been given to the proposed settlement or compromise. We can use the rights you or any protected person has in an arbitration proceeding that involves a covered claim.

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 01/30/96  15:14  001 | |

We'll pay costs of defending the suit, including any expense you or protected persons incur with our consent. We won't include our salary expenses or fees of independent adjusters in defense costs. We'll pay defense costs before paying damages for covered claims.

Once the limit of coverage has been used up, we won't defend a suit or pay claims or defense costs. We can withdraw from any pending suit or proceeding by returning control of its defense to you and any other protected person involved.

You and all protected persons agree to pay us, when we ask, for any amount we pay over the limit of coverage.

## Who Is Protected Under This Agreement

**Association.** You, the Association, are protected for claims or suits brought against you because of a wrongful act committed by a protected person or a person for whom they are legally responsible.

**Directors, Trustees, or Officers.** Your directors, trustees, or officers, are protected while acting for you.

*Directors, trustees, or officers* include:

•those who currently hold the positions.
•those who held the positions when the wrongful act complained of took place.
•those who become a director, trustee, or officer after the effective date of this agreement. Their protection will begin when they assume their positions.

**Employees.** Your employees are protected, but only while they're acting within the scope of their duties for you.

**Committee members.** Members of standing committees are protected for claims resulting directly from their duties as members of such committees.

**Members.** Your members are protected while acting within the scope of the association duties assigned by a director, trustee, or officer.

**Legal representative.** We'll protect the legal representative of a protected person who is legally bankrupt or mentally incompetent. We'll also protect the estate, legal representative or heirs of a deceased protected person.

## When A Claim Is Covered

We'll cover claims first made against you or a protected person while this agreement is in effect. The claim must be based on a wrongful act that occurred while this agreement was in effect. We must also be notified of the claim while this agreement is in effect.

In addition, we'll cover claims as explained in the following three sections.

**1. Prior acts.** We'll cover claims based on wrongful acts that occurred before the effective date of this agreement, but only if all the following conditions are met:

•neither you nor the protected person involved had knowledge of the prior wrongful act on the effective date of this agreement, nor any reasonable way to foresee that a claim might be brought;
•the claim is reported to us while this agreement is in effect; and
•there is no other insurance relating to the wrongful act.

**2. Reported acts.** We'll cover claims first made against you or any protected person any time after this agreement ends, but only if all of the following conditions are met:

•the wrongful act occurred while this or any prior continuously renewed agreement was in effect;
•you or the protected person involved were first aware while this agreement was in effect that a wrongful act occurred and a claim might be made; and
•the suspected wrongful act is reported to us while this agreement is in effect. We must also be told what loss or damage may result.

**3. Optional reporting endorsement.** This agreement may end because one of us chooses to cancel it or not renew it. If this is not the result of non-payment of the premium you have the right to

buy a reporting endorsement. It extends the time to report covered claims.

The endorsement applies to any covered claim made against you or any protected person any time after this agreement ends. The claim must be based on wrongful acts that occurred while this or any previously renewed agreement was in effect.

To obtain this endorsement you must request it in writing and pay the additional premium within 30 days after this agreement ends. If we don't receive written notice and payment within this period, you may not exercise this right at a later date.

We'll sell you this endorsement for the additional premium shown in the Coverage Summary. Once you pay the premium we can't cancel the endorsement.

## Limit of Coverage

The limit of coverage shown in the Coverage Summary is the most we'll pay for all claims that are covered in any policy year, regardless of when the actual claim or payment is made. This limit applies no matter how many covered persons or organizations are involved, or how many claims are made. By policy year we mean each consecutive annual period of this agreement. The limit includes damages and all expenses incurred in the defense of any claim or proceeding, or any appeal. Defense costs include the costs of appeals and of attachment and similar bonds.

Any damages or defense costs incurred because of a series of related wrongful acts occurring over more than one policy year shall be treated as a single claim. The claim will be subject to the limit of the agreement in effect at the time of the first reported wrongful act.

A claim may be brought after this agreement ends under the "Reported acts" section on page 2 or the "Optional reporting endorsement" section on page 3. If this happens the limit of coverage isn't increased. The limit shown in the Coverage Summary will apply to the last policy year as extended by the "Reported acts" and "Optional reporting endorsement" sections.

## Deductible

The deductible is shown in the Coverage Summary. You or the protected persons involved will be responsible up to the amount of the deductible for each claim. It applies once to each claim and includes damages and defense costs. But if more than one claim arises out of a series of related wrongful acts committed by one or more protected persons, the deductible will apply only once. We'll then pay covered claims over the deductible, up to the limit of coverage.

## When We'll Pay

We'll pay a covered claim when both of the following conditions are met:

•the liability of you or the protected person has been established by final court judgment or we make a written admission of liability; and
•we are given proof of the claim within 90 days after the final judgment.

## Exclusions—Claims We Won't Cover

We won't cover any of the following kinds of losses or claims:

**Bodily injury or property damage.** We won't cover claims arising out of bodily injury, sickness or death of any person. Nor will we cover damage, loss of use or destruction of tangible property.

**Personal injury.** We won't cover personal injury claims.

Personal injury means any of the following:

•libel or slander;
•false arrest, detention or imprisonment;
•malicious prosecution; or
•wrongful entry or eviction, or invasion of privacy.

**Pollution.** We won't cover claims arising from pollution or contamination. Nor will we cover the cost of removing or cleaning up pollutants or contaminants.

This Coverage Summary shows the limits of coverage, deductibles and retroactive date that apply to your Technology Errors And Omissions Liability Protection – Claims-Made. It also lists vendors of your computer or electronic products or services, if any, who are protected persons under that agreement.

| Limits Of Coverage | | Deductibles | |
|---|---|---|---|
| Each error limit. | $1,000,000. | Each error deductible. | $5,000. |
| Total limit. | $2,000,000. | Total deductible. | None |

**Important Note:** If none or zero is shown for the Total deductible, the total amount you'll be responsible for within the Each error deductible is not limited.

**Retroactive Date:** *

**Important Note:** If no date is shown above, we'll consider the retroactive date to be the same as the beginning date of your Technology Errors And Omissions Liability Protection – Claims-Made.

**Vendor of your computer or electronic products or services:**

| *Retroactive Date | |
|---|---|
| 09/01/93 | QuantEM |
| 05/27/92 | CEqual software |
| 06/30/94 | PerfSPECTive |

| Name of Insured | Policy Number HG07200088 | Effective Date 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 02/12/96  11:44  003 | |

# TECHNOLOGY ERRORS AND OMISSIONS LIABILITY PROTECTION — CLAIMS-MADE

The St Paul

This insuring agreement provides errors and omissions liability protection for your computer or electronic products or services. There are, of course, limitations and exclusions that apply to that protection. As a result, this agreement should be read carefully to determine the extent of the coverage provided to you and other protected persons.

**Important note.** This is a claims-made insuring agreement which includes defense expenses in the limits of coverage. A claim or suit must be first made or brought while this agreement is in effect, or during a reporting period, if one applies, to be covered. Please read this agreement carefully, especially the What This Agreement Covers, When This Agreement Covers and Limits Of Coverage sections.

| Table of Contents | Page |
| --- | --- |
| **What This Agreement Covers** | 1 |
| Technology errors and omissions liability. | 1 |
| Right and duty to defend. | 2 |
| Transfer of control of defense. | 3 |
| Additional payments. | 3 |
| Right to appeal. | 3 |
| **When This Agreement Covers** | 3 |
| During this agreement or the limited reporting period. | 3 |
| When we consider a claim or suit to be first made or brought. | 3 |
| When the limited reporting period will apply. | 4 |
| How the limited reporting period applies. | 4 |
| When and how an extended reporting period can be added. | 4 |
| How the extended reporting period applies. | 4 |
| How we'll figure the additional premium for the extended reporting period. | 4 |
| **Where This Agreement Covers** | 4 |
| **Who Is Protected Under This Agreement** | 5 |
| Individual. | 5 |
| Partnership or joint venture. | 5 |
| Corporation or other organization. | 5 |
| Employees. | 5 |
| Newly acquired organizations. | 5 |
| Separation of protected persons. | 5 |
| **Limits Of Coverage** | 5 |
| Each error limit. | 5 |
| Total limit. | 5 |
| How the limits of coverage apply to an extension of the policy period. | 5 |
| How the limits of coverage apply if the total limit is left blank. | 6 |
| How the limits of coverage apply to the limited and extended reporting periods. | 6 |
| **Deductibles** | 6 |
| Each error deductible. | 6 |
| Total deductible. | 6 |
| **Exclusions — What This Agreement Won't Cover** | 6 |
| Advertising injury. | 6 |
| Bodily injury. | 6 |
| Breach of security. | 6 |
| Contract liability. | 6 |
| Cost guarantees. | 7 |
| Criminal or intentionally wrongful acts or omissions. | 7 |
| Delay in delivery. | 7 |
| Employment-related practices. | 7 |
| Intellectual property. | 7 |
| Nuclear energy liability. | 7 |
| Penalties. | 8 |
| Personal injury. | 8 |
| Pollution. | 8 |
| Property damage. | 8 |
| Violation of trade law. | 8 |
| Voluntary payments or credits. | 8 |
| **Other Insurance** | 8 |
| Other primary insurance. | 8 |
| Excess insurance. | 9 |

## What This Agreement Covers

**Technology errors and omissions liability.** We'll pay amounts any protected person is legally required to pay as damages for covered loss that:

- results from your computer or electronic products or services; and
- is caused by an error committed on or after the retroactive date and before the ending date of this agreement.

*Protected person* means any person or organization who qualifies as a protected person

under the Who Is Protected Under This Agreement section.

*Damages* means:
•compensatory damages imposed by law;
•consequential damages incurred by the protected person under a contract or agreement; and
•prejudgment interest awarded against the protected person on a judgment in connection with those compensatory or consequential damages.

However, we won't consider the contract price of your computer or electronic products or services to be damages.

*Your computer or electronic products or services* means:
•any computer-related service for others, such as consulting, data processing, programming, software development, distribution and maintenance, and systems analysis or design, performed or provided by or for you;
•any electronic equipment or computer hardware or software developed, distributed, licensed, marketed or sold by or for you; and
•any service for others, including maintenance or repair, performed or provided by or for you in connection with any electronic equipment or computer hardware or software.

*Error* means any error, omission or negligent act.

*Retroactive date* means the earliest date that an error may be committed and cause loss covered under this agreement. This date is shown in the Coverage Summary.

However, if no retroactive date is shown, we'll consider the retroactive date to be the same as the beginning date of this agreement.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered loss made or brought against any protected person. We'll do so even if any of the allegations of any such claim or suit are groundless, false or fraudulent. But we have no duty to perform other acts or services. Also, our duty to defend claims or suits ends when we have used up the limits of coverage that apply with

the payment of judgments, settlements or defense expenses.

We'll have the right to investigate any claim or suit to the extent that we believe is proper. We'll also have the right to settle any claim or suit within:
•any deductible that applies; or
•the available limit of coverage.

*Claim* means a demand which seeks damages.

*Suit* means a civil proceeding which seeks damages. It includes:
•an arbitration proceeding for such damages to which the protected person must submit or submits with our consent; and
•any other alternative dispute resolution proceeding for such damages to which the protected person submits with our consent.

*Defense expenses* means only those fees, costs and expenses that result directly from the investigation, settlement or defense of a specific claim or suit. Such fees, costs and expenses include the following:
•Attorney fees, costs and expenses.
•The cost of legal proceedings.
•The cost of bonds to release property that's being used to secure a legal obligation. But we don't have to furnish these bonds.
•Expenses incurred by a protected person with our consent.
•The costs taxed against a protected person in a suit.

However, we won't consider any of the following to be defense expenses:
•Our expenses.
•Salaries and expenses of protected persons, other than expenses incurred by a protected person with our consent.
•Postjudgment interest.
•Appeal expenses.

*Expenses incurred by a protected person with our consent* means the reasonable expenses that a protected person incurs at our request while helping us investigate or defend a claim or suit. But we won't pay more than $250 per day for earnings actually lost by the protected person because of time taken off from work. We have no duty to pay any other expenses incurred by the protected person.

*Our expenses* means:
- salaries and expenses of our employees, including employed attorneys; and
- fees and expenses of independent adjusters that we hire.

*Postjudgment interest* means the interest that accumulates on a judgment from the date of the judgment to the date it is paid.

*Appeal expenses* means the expenses which result directly from the appeal of a judgment.

**Transfer of control of defense.** Before the available limit of coverage is used up, you may take over control of the defense of any outstanding claim or suit previously reported to us if we both agree, or if a court orders you to do so.

If the available limit of coverage is used up, we'll notify you as soon as we can of all outstanding claims or suits so that you can arrange to take over control of their defense.

We agree to take whatever steps are necessary during a transfer of control of defense of an outstanding claim or suit to continue that defense and avoid a default judgment during such transfer. When we take such steps, you agree that we don't waive or give up any of our rights under this agreement. You also agree to repay the reasonable expenses we incur for such steps taken after the available limit of coverage is used up.

**Additional payments.** We'll have the duty to make only the following payments in addition to the limits of coverage in connection with any claim or suit we defend:

*Our expenses.* We'll pay all of our expenses that we incur.

*Our postjudgment interest.* We'll pay all interest that accumulates on the full amount of that part of a judgment for which we make a payment. But only from the date of the judgment to the date we pay, or deposit in court, the limit of coverage that applies to the judgment. We have no duty to pay any other postjudgment interest.

**Right to appeal.** We'll have the right to appeal a judgment for covered loss in any suit we defend.

If we appeal such a judgment, we'll pay all expenses which result directly from that appeal, including the cost of appeal bonds and postjudgment interest. Such appeal expenses are in addition to the limits of coverage. However, the results of an appeal won't change the limits of coverage that apply under this agreement.

## When This Agreement Covers

**During this agreement or the limited reporting period.** We'll apply this agreement to claims or suits for covered loss only when they're first made or brought:
- while this agreement is in effect; or
- during the limited reporting period, if it applies.

*Limited reporting period* means the 90 days, starting with the ending date of this agreement, during which claims or suits for covered loss caused by errors committed on or after the retroactive date and before the ending date of this agreement may be first made or brought.

**When we consider a claim or suit to be first made or brought.** We'll consider a claim or suit for covered loss to be first made or brought on the earliest of the following dates:
- The date that we or any protected person receive a written claim or a written notice of suit.
- The date that we receive a notice of an error from any protected person. However, we won't accept such a notice unless it also describes what loss may result from the error.
- The date that any protected person could reasonably foresee that a claim or suit would be made or brought.

We consider it reasonable that a protected person could foresee a claim or suit being made or brought if one of your customers has done any of the following:
- Repeatedly complained to the protected person about one or more problems with your computer or electronic products or services.
- Sent their attorney a copy of one or more of the written complaints they had sent to the protected person.

•Refused to pay all or part of your charges for those products or services.
•Advised the protected person that those products or services have failed to perform in compliance with your promises, representations and warranties.
•Demanded a refund of part or all of their payment for those products or services.
•Threatened to take legal action against you.

We'll also consider all claims or suits for covered loss caused by an error, or a series of related errors, to have been made or brought on the date that the first of those claims or suits was first made or brought.

*Series of related errors* means two or more errors, including repeated or continuous errors, that are related to the same loss.

**When the limited reporting period will apply.** The limited reporting period will apply if this agreement is canceled or not renewed for any reason. It may not be canceled once it applies.

However, the limited reporting period won't apply to claims or suits if other insurance you buy:

•applies to them; or
•would have applied to them but won't because its limits of coverage have been used up.

**How the limited reporting period applies.** The limited reporting period doesn't extend the time that this agreement is in effect. As a result, we'll consider any claim or suit first made or brought during the limited reporting period to have been made or brought on the ending date of this agreement.

**When and how an extended reporting period can be added.** If this agreement is canceled or not renewed for any reason, an extended reporting period can be added with an Extended Reporting Period Endorsement and the payment of an additional premium.

However, we won't issue the Extended Reporting Period Endorsement unless we receive a written request for it from the first named insured shown in the Introduction within 60 days after the ending date of this agreement. Nor will it take effect unless the additional

premium is paid when due. But once that premium is paid, the endorsement may not be canceled by you or us. And we'll consider the premium to be fully earned.

*Extended reporting period* means an unlimited period of time, starting with the ending date of this agreement, during which claims or suits for covered loss caused by errors committed on or after the retroactive date and before the ending date of this agreement may be first made or brought.

**How the extended reporting period applies.** The extended reporting period replaces the limited reporting period. Also, it doesn't extend the time that this agreement is in effect. As a result, we'll consider any claim or suit first made or brought during the extended reporting period to have been made or brought on the ending date of this agreement.

In addition, the extended reporting period will cause us to apply this agreement as excess insurance over certain other insurance. We explain when and how we'll do so in the Other Insurance section.

**How we'll figure the additional premium for the extended reporting period.** We'll figure the additional premium for the Extended Reporting Period Endorsement in accordance with our rules and rates. But we won't charge more than 200% of the annual premium for the last policy year of this agreement.

We explain what we mean by policy year in the Total limit section.

### Where This Agreement Covers

We'll defend claims and suits, and pay judgments, settlements and defense expenses, only in the coverage territory for covered loss caused by errors that are committed anywhere in the world.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada.

## Who Is Protected Under This Agreement

**Individual.** If you are named in the Introduction as an individual, you and your spouse are protected persons only for the conduct of a business of which you are the sole owner. ·

**Partnership or joint venture.** If you are named in the Introduction as a partnership or joint venture, you are a protected person. Your partners or co-venturers and their spouses are protected persons only for the conduct of your business.

However, no person or organization is a protected person for the conduct of any current or past partnership or joint venture that's not named in the Introduction.

**Corporation or other organization.** If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers and directors are protected persons only for their duties as your officers or directors. And your stockholders are protected persons only for their liability as your stockholders.

**Employees.** Your employees are protected persons only for work done within the scope of their employment by you.

But we won't apply this Employees section to your executive officers. Instead, we'll apply the Corporation or other organization section to them.

**Newly acquired organizations.** Any organization, other than a partnership or joint venture, that you acquire or form while this agreement is in effect, is a protected person if you own more than 50% of it.

However, no newly acquired or formed organization is a protected person for:
•more than 90 days, or the remainder of the time this agreement is in effect, whichever is less, from the date that you acquire or form it, unless we agree that it should continue to be a protected person after the end of that period of time; or
•loss that's covered under other similar errors and omissions liability insurance.

**Separation of protected persons.** We'll apply this agreement separately to each protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section.

Also, any right or duty specifically assigned to the first named insured remains unchanged. We explain those rights and duties in the General Rules, which is a part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay, regardless of the number of:
•protected persons;
•claims made or suits brought; or
•persons or organizations making claims or bringing suits.

**Each error limit.** This is the most we'll pay as damages and defense expenses for all covered loss that is caused by any one error or series of related errors.

**Total limit.** This is the most we'll pay as damages and defense expenses for the combined total of all claims and suits for covered loss first made or brought in a policy year.

*Policy year* means the policy period shown in the Introduction, or the period of time this agreement is in effect, whichever is less. But when that period is longer than one year, it means each consecutive annual period, and the remaining period if any, that this agreement is in effect, starting with the beginning date of this agreement.

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for one year. During that policy year you request a three month*

*extension. We agree. As a result, your
last policy year becomes 15 months. It
will be subject to the same limits of
coverage that applied when the policy year
was 12 months.*

**How the limits of coverage apply if the total limit is
left blank.** If the amount of the Total limit is
left blank in the Coverage Summary, that total
limit will be considered to be the same as the
Each error limit or $100,000, whichever is more.

**How the limits of coverage apply to the limited
and extended reporting periods.** The limits of
coverage that apply on the ending date of this
agreement aren't renewed or increased for
claims or suits first made or brought during the
limited reporting period, or extended reporting
period, if it applies.

## Deductibles

The deductibles shown in the Coverage
Summary and the information contained in this
section fix the amount of damages and defense
expenses over which the limits of coverage will
apply, regardless of the number of:
• protected persons;
• claims made or suits brought; or
• persons or organizations making claims or
bringing suits.

**Each error deductible.** You'll be responsible for
the amount of damages and defense expenses
within this deductible for all covered loss that
is caused by each error or series of related
errors.

If we settle a claim or suit that's subject to this
deductible, we'll pay the deductible as part of
the settlement. You agree to repay us as soon
as we notify you of the settlement.

**Total deductible.** You'll be responsible for the
amount of damages and defense expenses
within this deductible for all claims and suits
for covered loss first made or brought in:
• a policy year; and
• the limited reporting period, or extended
reporting period, if it applies.

However, if none or zero is shown for the Total
deductible in the Coverage Summary, the total
amount you'll be responsible for within the Each
error deductible is not limited.

## Exclusions – What This Agreement Won't Cover

**Advertising injury.** We won't cover advertising
injury.

*Advertising injury* means injury, other than
bodily injury or personal injury, caused by an
advertising injury offense.

*Advertising injury offense* means any of the
following offenses:
• Libel or slander.
• Making known to any person or organization
written or spoken material that belittles the
products, work or completed work of others.
• Making known to any person or organization
written or spoken material that violates an indi-
vidual's right of privacy.
• Unauthorized taking or use of any advertising
idea, material, slogan, style or title of others.

We explain what we mean by:
• bodily injury in the Bodily injury exclusion; and
• personal injury in the Personal injury exclu-
sion.

**Bodily injury.** We won't cover bodily injury.

*Bodily injury* means any harm, including sick-
ness or disease, to the health of other persons.
It includes:
• Mental anguish, injury or illness.
• Emotional distress.
• Care, loss of services, or death.

**Breach of security.** We won't cover loss that
results from any failure of your computer or
electronic products or services to prevent unau-
thorized access to or use of a computer or elec-
tronic system or program.

**Contract liability.** We won't cover loss for which
the protected person is legally required to pay
damages because of liability assumed under
any contract or agreement.

However, we won't apply this exclusion to:

•loss for which the protected person would be legally required to pay damages without the contract or agreement; or
•consequential damages incurred by the protected person under a contract or agreement.

**Cost guarantees.** We won't cover loss that results from any:
•cost guarantee or probable cost estimate being exceeded; or
•cost overrun.

**Criminal or intentionally wrongful acts or omissions.** We won't cover loss that results from any criminal, dishonest, fraudulent or other intentionally wrongful act or omission committed by anyone with the consent or knowledge of you or any of your partners, directors or executive officers.

For example:

*Without your knowledge, one of your employees deliberately causes a product to be released with a virus. The virus results in your customer incurring a loss. We won't apply this exclusion to a claim made against you by your customer for that loss. However, we won't protect the employee.*

**Delay in delivery.** We won't cover loss that results from any:
•delay in delivery of; or
•failure to deliver;
your computer or electronic products or services.

For example:

*You promise to have a software product ready for a customer by a certain date. A delay in your development of that product makes you unable to have it ready by the date promised. As a result of not having that software, your customer loses sales. We won't cover such loss.*

**Employment-related practices.** We won't cover loss that is sustained by a person and results from any:
•refusal to employ that person;
•termination of that person's employment; or
•other employment-related act, omission, policy or practice, such as coercion, defama-

tion, demotion, discipline, discrimination, evaluation, harassment, humiliation or reassignment, directed at that person.

Nor will we cover loss sustained by the spouse or any child, parent, brother or sister of that person if such loss results from the loss sustained by that person.

We'll apply this exclusion whether the protected person may be held liable as an employer or in any other capacity.

We'll also apply this exclusion to any obligation of the protected person to share damages with or to repay someone else who must pay damages because of such loss.

**Intellectual property.** We won't cover loss that results from any actual or alleged infringement or violation of any:
•copyright;
•patent;
•trade dress;
•trade name;
•trade secret;
•trademark; or
•other intellectual property right or law.

**Nuclear energy liability.** We won't cover loss for which any protected person:
•is covered by a nuclear energy liability policy; or
•would have been covered by such policy if that policy's limits of coverage hadn't been used up.

Nor will we cover loss that results from the hazardous properties of nuclear material.

*Nuclear energy liability insurance policy* means any nuclear energy liability insurance policy issued by:
•Nuclear Energy Liability Insurance Association;
•Mutual Atomic Energy Liability Underwriters;
•Nuclear Insurance Association of Canada; or
•any of their successors.

*Hazardous properties* include radioactive, toxic or explosive properties.

*Nuclear material* means any nuclear material defined in the federal Atomic Energy Act, or any of its amendments.

**The St.Paul**

**Penalties.** We won't cover any penalty you have agreed to pay your customer for any reason.

**Personal injury.** We won't cover personal injury.

*Personal injury* means injury, other than bodily injury or advertising injury, caused by a personal injury offense.

*Personal injury offense* means any of the following offenses:
•False arrest, detention or imprisonment.
•Malicious prosecution.
•Wrongful entry or wrongful eviction.
•Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
•Libel or slander.
•Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
•Making known to any person or organization written or spoken material that violates an individual's right of privacy.

**Pollution.** We won't cover loss that results from pollution.

Nor will we cover any loss, cost or expense that results from any:
•request, demand or order that any protected person or others perform pollution work; or
•claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

*Pollution* means any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant.

*Pollutant* means any solid, liquid, gaseous or thermal irritant or contaminant, including:
•smoke, vapors, soot, fumes;
•acids, alkalis, chemicals; or
•waste.

*Waste* includes materials to be recycled, reconditioned or reclaimed.

*Pollution work* means
•the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing of any pollutant; or
•the responding to, or assessing, in any way the effects of any pollutant.

**Property damage.** We won't cover property damage.

*Property damage* means:
•physical damage to tangible property of others, including all resulting loss of use of that property; or
•loss of use of tangible property of others that isn't physically damaged if such loss of use is caused by an event.

*Tangible property* does not include data.

*Event* means an accident, other than an error. It includes continuous or repeated exposure to substantially the same general harmful conditions.

**Violation of trade law.** We won't cover loss that results from any actual or alleged violation of any federal or state anti-trust, restraint of trade or unfair trade practices law.

**Voluntary payments or credits.** We won't cover any voluntary payment or credit to any of your customers. For example:

*In response to a customer's complaint, you've agreed to pay the customer $200 for each day that a software system you sold that customer was not up and running after it was delivered. We won't cover such payments.*

### Other Insurance

This agreement is primary insurance. If there is any other valid and collectible insurance for loss covered by this agreement, the following applies:

**Other primary insurance.** When there is other primary insurance for loss covered by this agreement we'll pay that portion of the damages which:
•exceeds the deductible; and
•equals our percentage of the total of all limits of coverage that apply.
But we won't pay more than the limit of coverage that applies under this agreement. For example:

The limit of coverage under this agreement is $100,000. Another insurance policy with a limit of $25,000 also covers loss covered by this agreement. We won't pay more than 80% ($100,000/$125,000) of the loss, less any deductible.

However, if the extended reporting period applies, we'll apply this agreement as excess insurance over any part of any other valid and collectible insurance that:
•is available under any policy in effect during the extended reporting period; and
•provides coverage for claims or suits for covered loss first made or brought during the extended reporting period.

We'll do so whether such other insurance applies on a primary, excess, contingent or any other basis.

We explain how we'll apply this agreement as excess insurance in the Excess insurance section.

**Excess insurance.** When this agreement is excess insurance, we'll have no duty to defend any claim or suit that any other insurer has a duty to defend. However, we'll defend a claim or suit for covered loss if the other insurers won't. In return, we'll require that the protected persons give us all of their rights against those insurers.

Also, we'll pay only the amount of damages that's in excess of:
•the total amount that all such other insurance would pay if this agreement didn't exist; and
•the total of all deductible and self-insured amounts under all such other insurance.

However, we'll share such excess loss with any other insurance that:
•isn't described in the Other primary insurance section; and
•wasn't bought specifically to apply in excess of the limits of coverage shown in the Coverage Summary.

But we won't pay more than the limit of coverage that applies under this agreement.

# DEVELOPMENTAL RISK EXCLUSION ORSEMENT — TECHNOLOGY ERRORS AND OMISSIONS LIABILITY

This endorsement changes your Technology Errors And Omissions Liability Protection – Claims-Made.

## How Coverage Is Changed

The following is added to the Exclusions-What This Agreement Won't Cover section. This change excludes coverage.

**Developmental risk.** We won't cover loss that results from any error committed before or during the pre-release phase of your computer or electronic products or services. For example:

*You are in the process of developing a software system for your customer. As part of a testing process, your customer is using the software to determine if it is compatible with the customers needs. We won't cover any loss that results from that software or its testing.*

*Pre-release phase* means the period of time before acceptance by your customer.

## Other Terms

All other terms of your policy remain the same.

This endorsement changes your Technology
Errors And Omissions Liability Protection –
Claims-Made.

---

### How Coverage Is Changed

The following is added to the Exclusions – What
This Agreement Won't Cover section. This
change excludes coverage.

**Professional services.** We won't cover loss that
results from the performance of or failure to
perform professional services by or for the
protected person while acting or working as an:
- accountant;
- architect;
- health care provider;
- lawyer; or
- structural engineer.

### Other Terms

All other terms of your policy remain the same.

This endorsement changes your Computer Services And Software Errors and Omissions Liability Protection - Claims-Made.

---

## How Coverage Is Changed

The following is added to the When This Agreement Covers Section. This change broadens coverage.

**3. Extended reporting period for certain claims or suits for bodily injury or tangible property damage.** We'll apply this agreement to certain claims or suits for covered bodily injury or tangible property damage first made or brought on or anytime after the ending date of the limited reporting period. But we'll do so only if such claims or suits are for covered bodily injury or tangible property damage that:
- result from errors committed by you or other protected persons while this agreement, or any previous agreement which has been continuously renewed with us, was in effect;
- happened while this agreement, or any previous agreement which has been continuously renewed with us, was in effect; and
- is subject to the Computer Services and Software Liability Endorsement (43617 Ed 1-86).

This endorsement doesn't extend the time that this agreement is in effect. Also, the limits of coverage that apply on the ending date of this agreement aren't renewed or increased for claims or suits first made or brought on or after that date.

*Bodily injury* means any harm to the health of other persons, including physical harm, sickness or disease, and mental anguish, injury or illness. And it includes care, loss of services, or death, that results from such harm.

*Limited reporting period* means the 60 days, starting with the ending date of this agreement, during which claims or suits for covered bodily injury or tangible property damage may be first made or brought.

## Other Terms

All other terms of your policy remain the same.

---

**Limiting Endorsement**

---

This endorsement changes your Technology Errors And Omissions Liability Protection - Claims-Made.

HOW YOUR COVERAGE IS CHANGED

This endorsement limits your coverage as described below.

Your Technology Errors And Omissions Liability Protection - Claims-Made only applies to the CEqual Software, the QuantEM software and the PerSPECTIVE Software.

OTHER TERMS

All other terms of your policy remain the same.

---

| **Name of Insured** | **Policy Number** HG07200088 | **Effective Date** 01/01/96 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 02/12/96  11:44  003 | |



# EXHIBIT / ATTACHMENT

## 3

(To be scanned in place of tab)

This is a true and certified copy

of the policy effective

01|01|98

Issued to _EMORY UNIVERSITY_

_Jane E Lienemann_
Underwriter

_2-15-02_
Signature Date



# EXHIBIT / ATTACHMENT

## A

(To be scanned in place of tab)

# INTRODUCTION

This policy protects against a variety of losses. There are also some restrictions. We've written this policy in plain, easy-to-understand English. We encourage you to read it carefully to determine what is and what is not covered, as well as the rights and duties of those protected.

Policy Number: HG07200110

MAJOR ACCOUNTS DEPT
385 WASHINGTON STREET ~ 2X
P.O. BOX 64345
ST. PAUL MN 55102

In return for your premium, we'll provide the protection stated in this policy.

We, us, our and ours mean **St. Paul Mercury Insurance Company.** We're a capital stock company located in St. Paul, Minnesota.

The words you, your and yours mean the insured named here, which is a/an
EMORY UNIVERSITY
OFFICE OF VICE PRESIDENT FOR FINANCE
& TREASURER
ATTN: AMANDA SMITH
312 ADMINSTRATION BUILDING
ATLANTA GA 30322

Your policy is composed of General Rules, an explanation of What To Do If You Have A Loss, one or more Coverage Summaries, and one or more Insuring Agreements explaining your coverage. It may also include one or more endorsements. Endorsements are documents that change your policy. The Policy Forms List shows all the forms included when this policy begins.

One of our authorized representatives will also countersign the policy.

This policy will begin on    01/01/98
and will continue until    01/01/99
Your former policy number: HG07200088
is automatically replaced

Your premium for the policy period shown is: $282,000.00
However, please refer to the Premiums section of the General Rules to see how final premiums are determined.

Our authorized representative is:

*President.*

Authorized Representative      Date

*Secretary*

Processing Date 04/10/98   10:01   002



# EXHIBIT / ATTACHMENT

## B

(To be scanned in place of tab)

## POLICY CHANGE ENDORSEMENT

This endorsement summarizes the changes to your policy. All other terms of your policy not affected by these changes remain the same.

---

### How Your Policy Is Changed

Your policy has been extended to 02-01-99.

---

**Premium Change Which is Due Now**

Additional premium: $25,153.00                                    Returned Premium: $0.00

---

If issued after the date your policy begins, these spaces must be completed and our representative must sign below.

Policy issued to

Emory University

|  |  |
|---|---|
| 01-01-99 | HG07200110 |
| Endorsement takes effect | Policy Number |

Authorized representative

---

This endorsement summarizes the changes to
your policy. All other terms of your policy not
affected by these changes remain the same.

---

**How Your Policy Is Changed**

GENERAL LIABILITY
--------------------

Class Code Information:

    The Following Class Code(s) Have Been Added.
        47051 -001-PREM  REAL ESTATE DEVELOPMENT PROPERTY
        61218 -001-PREM  BLDGS OR PREM-BNK OR OFF-MERC OR MFG-(LESSOR'S
        RISK ONLY)-NOT PROFIT
        61218 -002-PREM  BLDGS OR PREM-BNK OR OFF-MERC OR MFG-(LESSOR'S
        RISK ONLY)-NOT PROFIT
        61225 -001-PREM  BLDGS OR PREM-OFFICE-PREM OCCUPIED BY EMPLOYEE OF
        INSD - NOT PROFIT
        61225 -002-PREM  BLDGS OR PREM-OFFICE-PREM OCCUPIED BY EMPLOYEE OF
        INSD - NOT PROFIT
        68607 -001-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -002-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -003-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -004-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -005-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -006-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -007-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -008-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -009-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -010-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -011-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -012-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -013-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -014-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
        68607 -015-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT

---

**Premium Change Which Is Due Now**

| Additional premium | $2,881.00 | Returned Premium |
|---|---|---|

| If issued after the date your policy begins, these spaces must be completed and our representative must sign below. | Policy Issued to<br>EMORY UNIVERSITY<br>OFFICE OF VICE PRESIDENT FOR<br>FINANCE & TREASURER |
|---|---|
| Authorized representative | Endorsement takes effect    **Policy Number**<br>01/01/99    HG07200110<br>Processing Date: 03/15/99  07:47  002 |

©St.Paul Fire and Marine Insurance Co.1984 All Rights Reserved      

POLICY CHANGE ENDORSEMENT

The St Paul

This endorsement summarizes the changes to
your policy.  All other terms of your policy not
affected by these changes remain the same.

---

## How Your Policy Is Changed

GENERAL LIABILITY
------------------

Class Code Information:

    The Following Class Code(s) Have Been Added.

      47051 -001-PREM  REAL ESTATE DEVELOPMENT PROPERTY
      61218 -001-PREM  BLDGS OR PREM-BNK OR OFF-MERC OR MFG-(LESSOR'S
      RISK ONLY)-NOT PROFIT
      61218 -002-PREM  BLDGS OR PREM-BNK OR OFF-MERC OR MFG-(LESSOR'S
      RISK ONLY)-NOT PROFIT
      61225 -001-PREM  BLDGS OR PREM-OFFICE-PREM OCCUPIED BY EMPLOYEE OF
      INSD - NOT PROFIT
      61225 -002-PREM  BLDGS OR PREM-OFFICE-PREM OCCUPIED BY EMPLOYEE OF
      INSD - NOT PROFIT
      68607 -001-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -002-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -003-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -004-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -005-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -006-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -007-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -008-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -009-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -010-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -011-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -013-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -014-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT
      68607 -015-PREM  VACANT BUILDINGS - NOT FACTORIES - NOT PROFIT

---

**Premium Change Which Is Due Now**

Additional premium    $5,735.00    Returned Premium

---

If issued after the date your policy
begins, these spaces must be completed
and our representative must sign below.

Policy issued to
EMORY UNIVERSITY
OFFICE OF VICE PRESIDENT FOR
    FINANCE & TREASURER

Authorized representative

| Endorsement takes effect | Policy Number |
|---|---|
| 10/28/98 | EG07200110 |
| Processing Date: 03/15/99  07:47  010 | |

---

**POLICY CHANGE ENDORSEMENT**                                        The**StPaul**

This endorsement summarizes the changes to
your policy. All other terms of your policy not
affected by these changes remain the same.

---

**How Your Policy Is Changed**

GENERAL LIABILITY
_____

Class Code Information:

   The Following Class Code(s) Have Been Added.
      44433 -001-PREM  HEALTH CARE FAC - HOMES FOR THE PHYSICALLY
      HANDICAPPED OR ORPHANED-PROFIT

---

**Premium Change Which Is Due Now**
Additional premium              $104.00      Returned Premium

If issued after the date your policy          Policy issued to
begins, these spaces must be completed        EMORY UNIVERSITY
and our representative must sign below.        OFFICE OF VICE PRESIDENT FOR
                                                  FINANCE & TREASURER

Authorized representative          Endorsement takes effect     Policy Number
                                   10/12/98                     HG07200110
                                   Processing Date: 11/23/98  14:50  009

---

40704 Ed.5-84 Printed in U.S.A.                      Endorsement
St.Paul Fire and Marine Insurance Co.1984 All Rights Reserved                    Page    1

**POLICY CHANGE ENDORSEMENT**                                    The**StPaul**

This endorsement summarizes the changes to
your policy. All other terms of your policy not
affected by these changes remain the same.

---

**How Your Policy Is Changed**

TECHNOLOGY ERRORS & OMISSIONS LIABILITY
----------------------------------------------

Your Technology Errors & Omissions Liability Coverage Summary has been
deleted.

The following forms have been removed from your policy:

| FORM NAME | FORM NUMBER | EDITION |
|---|---|---|
| TECHNOLOGY ERRORS AND OMISSIONS LIABILITY PROTECTION - CLAIMS-MADE COVERAGE SUMMARY | 43599 | 04-94 |
| TECHNOLOGY ERRORS AND OMISSIONS LIABILITY PROTECTION - CLAIMS-MADE | 43598 | 04-98 |
| DEVELOPMENTAL RISK EXCLUSION ENDORSEMENT - TECHNOLOGY ERRORS AND OMISSIONS LIABILITY | 47440 | 01-96 |
| PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT - TECHNOLOGY ERRORS AND OMISSIONS LIABILITY | 47466 | 04-96 |
| REPORTING ENDORSEMENT - LIMITED TO CERTAIN CLAIMS OR SUITS - COMPUTER SERVICES AND SOFTWARE | 47579 | 09-94 |

OTHER TERMS

All other terms of your policy remain the same.

---

**Premium Change Which Is Due Now**
Additional premium                    Returned Premium        $3,690.00

---

If issued after the date your policy          Policy issued to
begins, these spaces must be completed        EMORY UNIVERSITY
and our representative must sign below.

Authorized representative          Endorsement takes effect      **Policy Number**
                                   05/01/98                      HG07200110
                                   Processing Date: 08/17/98     09:50  006

---

**POLICY CHANGE ENDORSEMENT**

The **St Paul**

This endorsement summarizes the changes to
your policy. All other terms of your policy not
affected by these changes remain the same.

## How Your Policy Is Changed

YOUR COMMERCIAL GENERAL LIABILITY COVERAGE HAS BEEN CHANGED:
    SOFTWARE PRODUCTS COVERAGE ENDORSEMENT HAS BEEN ADDED.

**Premium Change Which Is Due Now**
Additional premium        $10,166.00          Returned Premium

If issued after the date your policy          Policy issued to
begins, these spaces must be completed        EMORY UNIVERSITY
and our representative must sign below.

Authorized representative                     Endorsement takes effect      Policy Number
                                              05/01/98                      HG07200110
                                              Processing Date: 08/17/98   09:50   006

40704 Ed.5-84 Printed in U.S.A.                      Endorsement
●St.Paul Fire and Marine Insurance Co.1984 All Rights Reserved                Page    1

# SOFTWARE PRODUCTS COVERAGE ENDORSEMENT

This endorsement changes your Commercial General Liability Protection.

## How Your Coverage Is Changed

Your Commercial General Liability Protection is changed by adding products coverage for the software listed below. The effect of this change broadens your coverage

The following softwares are covered:

CEqual
QuantEM
PerSPECTIVE
Inspect
Prospect
Exspect
PERFLEX

## What This Endorsement Covers

**Bodily injury and property damage liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury and property damage that results from the development and distribution of the software listed above and that:

- happens while this agreement is in effect; and
- is caused by an event.

## Limits of Coverage

| | |
|---|---|
| **Products and completed work total limit.** | $5,000,000 |
| **Each event limit.** | $5,000,000 |

**Products and completed work total limit.** This is the most we'll pay for all covered bodily injury and property damage which:

- results from your software products and completed works; and
- happens in a policy year.

*Your software products* means the softwares listed on this endorsement

| Name of Insured | Policy Number | Effective Date |
|---|---|---|
| EMORY UNIVERSITY | HG07200110 | 05/01/98 |

40502 Ed. 01-80 Printed in U.S.A.
©St. Paul Fire and Marine Insurance Co. 1980 All Rights Reserved

**Each event limit.** This is the most we'll pay for all covered bodily injury and property damage that results from any one event.

**Deductible**

**Each event deductible.**                           $     10,000

**Total deductible.**                                $

**Important Note:** If a Total deductible is not shown, the total amount you'll be responsible for within the other deductible is not limited.

**Other Terms.** All other terms of your policy remain the same.

| Name of Insured | Policy Number | Effective Date |
|---|---|---|
| EMORY UNIVERSITY | HG07200110 | 05/01/98 |

40502 Ed. 01-80 Printed in U.S.A.                                    Page 1 of 1
©St. Pa ul Fire and Marine Insurance Co. 1980 All Rights Reserved

**POLICY CHANGE ENDORSEMENT**                                    **⊇≈St.Paul**

This endorsement summarizes the changes to
your policy. All other terms of your policy not
affected by these changes remain the same.

---

**How Your Policy Is Changed**

TECHNOLOGY ERRORS & OMISSIONS LIABILITY
_____

Your Technology Errors & Omissions Liability Coverage Summary has been
amended to include additional software products as per attached.

OTHER TERMS

All other terms of your policy remain the same.

---

**Premium Change Which Is Due Now**
Additional premium        $7,340.                    Returned Premium

---

If issued after the date your policy          Policy issued to
begins, these spaces must be completed        EMORY UNIVERSITY
and our representative must sign below.

Authorized representative            Endorsement takes effect      Policy Number
                                     01/01/98                      HG07200110
                                     Processing Date: 05/01/98   13:50   004

---

TECHNOLOGY ERRORS AND OMISSIONS LIABILITY
PROTECTION – CLAIMS-MADE
COVERAGE SUMMARY

The St.Paul

This Coverage Summary shows the limits of
coverage, deductibles and retroactive date that
apply to your Technology Errors And Omis-
sions Liability Protection – Claims-Made. It
also lists vendors of your computer or elec-
tronic products or services, if any, who are
protected persons under that agreement.

| Limits Of Coverage | | Deductibles | |
|---|---|---|---|
| Each error limit. | $1,000,000. | Each error deductible. | $5,000. |
| Total limit. | $2,000,000. | Total deductible. | None |

**Important Note:** If none or zero is shown for the
Total deductible, the total amount you'll be
responsible for within the Each error deductible
is not limited.

Retroactive Date:

**Important Note:** If no date is shown above, we'll consider the retroactive date to be the same as the
beginning date of your Technology Errors And Omissions Liability Protection – Claims-Made.

Vendor of your computer or electronic products or services:

*Retroactive Date

| | |
|---|---|
| 09/01/93 | QuantEM |
| 05/27/92 | CEqual software |
| 06/30/94 | PerfSPECTive |
| 03/01/96 | Inspect |
| 03/01/96 | Prospect |
| 09/16/97 | Exspect |
| Development | PERFEX |

REVISED

| Name of Insured | Policy Number HG07200110 | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 05/06/98   10:45   005 | |

43599 Rev.4-94 Printed in U.S.A.
©St.Paul Fire and Marine Insurance Co.1994 All Rights Reserved

Coverage Summary

Page 1 of 2

**POLICY FORM LIST**

The **St.Paul**

Here's a list of all forms included in your policy, on the date shown below. These forms are listed in the same order as they appear in your policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Introduction - St. Paul Mercury Insurance Company | 40811 | 05-87 |
| Policy Form List | 40705 | 05-84 |
| Additional Named Protected Persons Endorsement | 40502 | 01-80 |
| General Rules | 40701 | 09-96 |
| Government Access To Records Endorsement | 40581 | 03-83 |
| Georgia Required Endorsement | 40518 | 03-96 |
| Cancellation Notification Endorsement | 40502 | 01-80 |
| Ninety Day Cancellation Notice | 40502 | 01-80 |
| What To Do If You Have A Loss | 40814 | 11-91 |
| Commercial General Liability Protection Coverage Summary | 47110 | 04-91 |
| Commercial General Liability Protection | 47500 | 04-91 |
| Golfmobile Users Endt-Add'l Protected Persons | 43338 | 07-85 |
| Executive Officer And Leased Worker Endorsement | 47444 | 10-93 |
| Fellow Employee Bodily Injury Endorsement - All Employees | 47167 | 01-96 |
| Pollution Exclusion Lead Example Endorsement | 47482 | 10-93 |
| Contract Liability Defense Expenses Endorsement | 47320 | 03-92 |
| Computer Professional Services Exclusion Endorsement | 47178 | 04-91 |
| Bodily Injury Definition Endorsement | 40502 | 01-80 |
| Additional Protected Persons Endorsement #1 | 40502 | 01-80 |
| Additional Protected Persons Endorsement #2 | 40502 | 01-80 |
| Colleges Or Schools Endorsement With Student Medical Expenses Exclusion | 40502 | 01-80 |
| Leased Employee Endorsement | 40502 | 01-80 |
| Premises Exclusion Endorsement | 40502 | 01-80 |
| Watercraft Extension Endorsement | 40502 | 01-80 |
| Knowledge Of Accident Or Incident Endorsement | 40502 | 01-80 |
| Covered Premises At Crawford Long Hospital Endorsement | 40502 | 01-80 |
| Liquor Liability Protection Coverage Summary | 43885 | 09-86 |
| Liquor Liability Protection | 43611 | 11-85 |
| Exclusion Endorsement | 40502 | 01-80 |
| Technology Errors And Omissions Liability Protection - Claims-Made Coverage Summary | 43599 | 04-94 |
| Technology Errors And Omissions Liability Protection - Claims-Made | 43598 | 04-94 |
| Developmental Risk Exclusion Endorsement - Technology ErrorsAnd Omissions Liability | 47440 | 01-96 |
| Professional Services Exclusion Endorsement - Technology Errors And Omissions Liability | 47466 | 04-94 |
| Reporting Endorsement - Limited To Certain Claims Or Suits - Computer Services Or Software | 47579 | 09-94 |
| Law Enforcement Liability Protection Coverage Summary | 47335 | 12-92 |
| Law Enforcement Liability Protection | 47292 | 12-92 |
| Law Enforcement Duties Endorsement | 40502 | 01-80 |
| Fellow Employee Endorsement | 40502 | 01-80 |
| Contract Liability Limitation Endorsement | 40502 | 01-80 |
| Limiting Endorsement | 40502 | 01-80 |

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** EG07200110
**Processing Date** 04/10/98  10:01  002

**Effective Date** 01/01/98

Additional Named Protected Persons Endorsement

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

This endorsement states that we will automatically cover for sixty (60) days any company, partnership or entity you acquire, or any newly acquired operating subsidiaries, when these companies, partnerships, entities and subsidiaries are greater than 50 percent owned or financially controlled by you. We must be notified within sixty (60) days of such formations.

You agreed to pay the additional permium for each new entity, if any, computed in accordance with the company's rules and rates.

OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured | Policy Number HG07200110 | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 04/09/98 15:31 001 | |

40502 Ed.1-80 Printed in U.S.A.  Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved  Page 1

These rules apply to the entire policy unless you're notified otherwise.

## Special Rights And Duties Of The First Named Insured

You agree that when more than one insured is named in the introduction, the first named insured has special rights and duties. These rights and duties are explained in the following General Rules:

- Premiums.
- Cancellation.
- Policy Changes.

## Your Policy Period

Insuring agreements in this policy begin at 12:01 a.m., standard time, on the effective date. If this policy replaces policies ending at noon, rather than 12:01 a.m., coverage begins at noon when the old policy ends.

Insuring agreements or endorsements added to this policy after its effective date begin on the effective date of the added agreement.

Coverage ends at 12:01 a.m., standard time, on the expiration date. If all or part of this policy is cancelled for any reason before that date, that coverage will end at 12:01 a.m., standard time, on the cancellation date.

## Premiums

We compute the premium you pay for this policy using information available at the time. So, all or part of your premium may be based on estimates. If estimates are used, we'll compute your actual premium when complete information is available at the end of the policy period. If it's more than you've paid, you'll owe us the difference. If it's less, we'll return the difference.

In any event, you won't pay less than any minimum annual premium agreed on.

The first named insured is responsible for paying all premiums and will be the one to whom we'll pay any return premiums.

In some instances, such as when coverage under your policy is changed, there may be a difference in your premium. If this happens, either you will owe us additional premium or we will owe you a refund. If the difference in premium that you owe us is $15 or less, we'll waive this amount. If the difference in premium we owe you is $15 or less, we won't refund this amount unless you request that we refund it. We'll apply this waiver of premium practice separately each time your policy is endorsed.

You must keep accurate records of the information we'll need to compute your premium. Your agent can explain the type of records we'll need. The first named insured agrees to send copies of these records at the end of each policy period - or any other time we request them.

## Our Right To Inspect And Audit

You agree to let us inspect your property and business operations during normal business hours while this policy is in force. We're not, however, required to make inspections. Nor will we guarantee that your property or operations are safe, or that they conform to any laws, codes, standards or regulations. This rule also applies to any organization which makes insurance inspections, surveys, reports or recommendations for us. You also agree to let us examine and audit your financial books and records that relate to this insurance at any time up to 3 years after this policy ends

## Policy Changes

This policy contains all the agreements between you and us concerning this insurance. The first named insured is

authorized to make changes in this policy with our consent. This policy can only be changed by a written form included as part of the policy. This form must be signed by one of our authorized representatives.

We make changes in our standard insurance policy forms from time to time. These changes must conform to state law and are filed with insurance supervisory authorities for approval. While your coverage is in force we can make any change in the form of this policy that broadens or extends your coverage. If we do, and the change can be added to your policy without increasing the premium, you'll automatically receive the benefit of the extended or broadened coverage on the day the change is effective in your state.

## Assignment And Transfers

Neither you nor anyone else covered under this policy can assign or turn over your interest in it without our written consent attached to the policy.

However, there is one exception. If you are an individual named insured and you die, your rights and duties will be transferred to your legal representative; but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties concerning that property.

## Cancellation

The first named insured can cancel this policy in whole or part at any time.

To cancel, the first named insured must deliver the policy or the part to be cancelled to us or to any of our authorized agents. If this isn't possible notify us by mail and include the date coverage is to end. We'll refund the unused premium to the first named insured, less a charge for early cancellation.

If we cancel this policy, we'll mail or deliver a cancellation notice to the first named insured at least 30 days before coverage will end: 10 days if we're cancelling for nonpayment of premium. If

notice is mailed, proof of mailing to the first named insured's last mailing address known to us will be considered proof you were notified. Any unused premium will be refunded to the first named insured as soon as possible. However, the cancellation will be effective whether or not we've made or offered a refund.

## Recovering Damages From A Third Party

Any person protected under this policy may be able to recover all or part of a loss from someone other than us. Because of this, each protected person must do all that's possible after a loss to preserve any right of recovery available. If we make a payment under this policy that right of recovery will belong to us. If we recover more than we've paid, the excess will belong to the person who had the loss. But we'll deduct our recovery expenses first.

## Fraud And Misrepresentation

This policy is void if you or any other protected person hide any important information from us, mislead us, or attempt to defraud or lie to us about any matter concerning this insurance – either before or after a loss. Of course, everyone makes mistakes. Unintentional errors or omissions won't affect your rights under this policy

## Appraisal Of Property Disputes

If your policy includes property insurance and agreement can't be reached on the amount of a property loss or the value of the property, the following procedure will be used:

1. One of us will make a written demand for an appraisal.

2. Each will select a competent and impartial appraiser and notify the other of the selection within 30 days of the demand.

3. The appraisers will select a competent and impartial umpire. If they can't agree on an umpire, either may ask that one be selected by a judge of a court having jurisdiction.

4. The appraisers will state separately the amount of the loss and the value of the property. If they don't agree, they'll submit their appraisals to the umpire. Agreement of two out of three will be binding.

You'll pay your appraiser and we'll pay ours. Other costs of the appraisal and the umpire will be shared equally by you and us.

If we submit to an appraisal, we'll still retain our right to deny the claim.

## How State Law Affects This Policy

Any part of this policy that conflicts with state law is automatically changed to conform to the law.

## Lawsuits Against Us

No one can sue us to recover under this policy unless all of its terms have been lived up to.

**If your policy includes property insurance.** Any lawsuit to recover on a property claim must begin within 2 years after the date on which the direct physical loss or damage occurred. State law gives you more time for property located in these states:

* North Dakota, North Carolina, Maryland - 3 years

* Wyoming - 4 years; and

* Kansas, Nebraska - 5 years

**If your policy includes liability insurance.** No one can sue us to recover on a liability claim until the amount of the protected person's liability has been finally decided either by a trial or by a written agreement signed by the protected person, by us and by the party making this claim. Once liability has been determined by judgment or by written agreement, the party making the claim may be able to recover under this policy, up to the limits of coverage that apply. But that party can't sue us directly or join us in a suit against the protected person until liability has been so determined.

If the protected person or his or her estate goes bankrupt or becomes insolvent, we'll still be obligated under this policy.

## GOVERNMENT ACCESS TO RECORDS ENDORSEMENT

This endorsement changes your policy to comply with federal law.

### How Your Policy Is Changed

This endorsement changes your policy to comply with the requirements of Section 952 of the Omnibus Reconciliation Act of 1980. Upon written request, we'll allow the Secretary of Health and Human Services and the Comptroller General access to the policy and necessary books, documents and records to verify the cost of the policy, to the extent required by law. Access will also be allowed to subcontracts between us and any related organization of ours and to its books, documents and records. Such access will be provided up to four years after the services furnished under this policy end.

### Other Terms

All other terms of this policy remain the same.

This endorsement changes your policy to comply with Georgia law.

### Cancellation

The Cancellation section of the General Rules is replaced by the following.

**How you can cancel.** To cancel this policy or any part of it, the first named insured must deliver the policy, or the part to be cancelled, stating a future date when the policy is to be cancelled, to us or to any of our authorized agents. If this isn't possible, notify us by mail and include the date coverage is to end. After receiving the written request of cancellation from the first named insured, we can waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first named insured. The first named insured will get a refund for the unused premium, less a charge for early cancellation.

However, a law, a rule of this policy, or a rule in another agreement may apply which says that the policy can't be cancelled without prior notice to someone else. If so, we'll mail or deliver at least 10 days notice of cancellation to the first named insured and the other person or organization. We'll do this as soon as possible after receiving the first named insured's request for cancellation. The notice will show the date coverage will end. That date will be:

- 10 days after the date we mail the notice; or
- the date the first named insured requested that coverage end;
  whichever is later.

**How we can cancel if you don't pay your premium.** If you fail to pay any premium when due, we can cancel your policy. If we cancel for this reason, we'll mail or deliver a written cancellation notice to you and to any lienholder at least 10 days before your coverage will end.

**How we can cancel for other reasons.** If we decide to:

- cancel or nonrenew your policy;
- increase your premium by more than 15% (for a reason other than change in the risk; or
- change any of the policy's rules or provisions that would limit or restrict coverage;

we'll mail or deliver a notice telling you what we intend to do at least 45 days before the expiration date of your policy. If we mail the notice, it will be to the first named insured's last address known to us. However, if your policy has been in effect less than 60 days, or if we are cancelling or changing your policy because of nonpayment of premium, we'll send the notice at least 10 days before coverage will end.

**Mailing the notice.** Mailing or delivery of this notice to the first named insured's last address know to us by proof of mailing will be proof you were notified of the cancellation, non-renewal or change.

**Unused premium** If this policy is cancelled, we'll send the first named insured any premium refund due.

If we cancel, the refund will be figured on a pro rata basis unless cancellation is for nonpayment of premium, including nonpayment of any installment of premium due under a premium installment plan. In that case, the refund may be less than pro-rata

If the first named insured cancels, the refund may also be less than pro rata.

Either way, cancellation will take effect regardless of whether or not we've offered or made a refund.

**Special rule for certain residential buildings.** If you are an individual and your policy covers residential buildings the following special cancellation rules apply.

If this policy is a new policy that is in its initial policy period and has been effect less that 60 days, we can cancel for any reason. If we do, we'll mail a cancellation notice to the first named insured at least 10 days before coverage will end.

If this policy is a renewal or continuation policy or a new policy that has been in effect more than 60 days, we can only cancel for one of the following reasons:

*1. Nonpayment of premium.*

*2. Fraud and misrepresentation.* We can cancel if we discover that in obtaining this policy, you or your representative have committed fraud.

*3. Change in the risk.* We can cancel, if, after we have issued or renewed your policy, an increase occurs in a hazard which was within your control. But only if this increase in hazard would result in an increase in your premium.

*4. Breaking the rules of this policy.* We can cancel, if, after we have issued or renewed your policy, we find a violation of any of the material terms or conditions caused by any person insured under this policy.

We can cancel by giving notice to the first named insured at least:

- 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
- 45 days before the effective date of cancellation if we cancel for any other reason.

**Professional Liability Protection – Punitive Damages Exclusion**

- If your policy includes professional liability protection; and
- that professional liability insuring agreement contains a specific exclusion for "Punitive damages;"

that exclusion is deleted from your agreement.

**Other Terms**

All other terms of your policy remain the same.

©St.Paul Fire and Marine Insurance Co.1996 All Rights Reserved

COPY

The **St.Paul**

Cancellation Notification Endorsement

---

This endorsement changes your General Rules.

HOW YOUR COVERAGE IS CHANGED

If we cancel this policy for any reason, we will mail or deliver a written cancellation notice to your last known address, to the attention of your Vice-President of Finance and Treasurer or General Council.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**          **Policy Number** HG07200110          **Effective Date** 01/01/98
EMORY UNIVERSITY                        **Processing Date** 04/09/98  15:31  001

---

40502 Ed.1-80 Printed in U.S.A.                    Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved                Page    1

The St.Paul

Ninety Day Cancellation Notice

This endorsement changes your Georgia Required Endorsement.

## HOW YOUR COVERAGE IS CHANGED

The How We Can Cancel For Other Reasons section of the above endorsement is revised to read as follows:

HOW WE CANCEL FOR OTHER REASONS. If we decide to:

* cancel or nonrenew your policy;

* increase your premium by more than 15%, (for a reason other than change in the risk); or

* change any of the policy's rules or provisions that would limit or restrict coverage; we'll mail or deliver a notice telling you what we intend to do at least 90 days before the expiration date of your policy. If we mail the notice, it will be to the first named insured's last address known to us.

## OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured | Policy Number EG07200110 | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 04/09/98 15:31 001 | |

40502 Ed.1-80 Printed in U.S.A.　　　Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved

You or other protected persons are required to perform the duties described below when a property loss that may be covered under this policy happens or an accident or incident happens that could result in liability damages covered under this policy. Failure to comply could affect coverage. The insuring agreements contained in this policy determine what is covered. As a result, you should read them carefully to understand the extent of the coverage provided.

## When This Policy Provides Property Protection

If there is a property loss that may be covered by property protection provided in this policy you must:

**1.** Notify the police if a law may have been broken.

**2.** Tell us or our agent what happened as soon as possible. Include the time and place of the event, a description of the property and the names and addresses of any witnesses.

**3.** Do what is reasonable and necessary to protect covered property from further damage. Keep a record of your expenses for consideration in your claim.

**4.** If feasible, separate the damaged property from the undamaged and make an inventory of the damaged items.

**5.** Cooperate with us in the investigation and settlement of the claim. Permit us to inspect the damaged property and any records pertaining to your loss as many times as may be required. Permit us to take samples of damaged and undamaged property for testing and analysis.

**6.** Allow us to examine you or any other insured under oath while not in the presence of any other insured. We may do this whenever reasonably required about any matter relating to this insurance or the claim. Any insured we examine must sign a copy of their answers.

**7.** Send us a signed, sworn proof of loss containing the information we need to resolve the claim. You must do this within 60 days after our request. We'll supply the forms. We'll pay within 30 days after we reach agreement with you.

## When This Policy Provides Liability Protection

If an accident or incident happens that may involve liability protection provided in this policy, you or any other protected person involved must:

**1.** Notify the police if a law may have been broken.

**2.** Tell us or our agent what happened as soon as possible. Do this even though no demand for damages has been made against you or any other protected person, but you or another protected person is aware of having done something that may later result in a demand for damages. This notice should include all of the following:
- The time and place of the accident or incident;
- The protected person involved;
- The specific nature of the accident or incident including the type of demand for damages that may result; and
- The names and addresses of any witnesses and injured people.

### Important Notice For Health Care Providers
If your policy includes one of our claims-made medical professional liability protection insuring agreements, you should also read the When This Agreement Covers Section of that agreement. We won't consider a "Patient Incident Report," "Variance Report," or any other report made for loss prevention purposes to be your report of a claim. This applies even if you send it to us or one of our agents.

**3.** Send us a copy of all written demands. Also send us a copy of all legal documents if someone starts a lawsuit.

**4.** Cooperate and assist us in securing and giving evidence, attending hearings and trials, and obtaining the attendance of witnesses.

**5.** Not assume any financial obligation or pay out any money without our consent. But this rule doesn't apply to first aid given to others at the time of an accident.

©St.Paul Fire and Marine Insurance Co.1991 All Rights Reserved      Page 1 of 1

**COMMERCIAL GENERAL LIABILITY PROTECTION
COVERAGE SUMMARY**

The St.Paul

This Coverage Summary shows the limits of
coverage that apply to your Commercial
General Liability Protection. It also lists those
endorsements, if any, that must have certain
information shown for them to apply.

| Limits Of Coverage | | IMPORTANT NOTE: |
|---|---|---|
| General total limit. | $2,000,000. | **Retroactive Date:** |
| Products and completed work total limit. | $1,000,000. | The retroactive date applies only if the Commercial General Liability Protection – |
| Personal injury each person limit. | $1,000,000. | Claims-Made insuring agreement is a part of this policy. |
| Advertising injury each person limit. | $1,000,000. | However, if no date is shown above and the claims-made agreement applies, we'll consider the retroactive date to be the same as the beginning date of this policy. |
| Each event limit. | $1,000,000. | |
| *Premises damage limit.* | $100,000. | |
| *Medical expenses limit.* | $5,000. | |

**Named Endorsement Table**

**Important Note:** Only endorsements that must have certain information shown for them to apply
are named in this table. The required information follows the name of each such endorsement.
Other endorsements may apply too. If so, they're listed on the Policy Forms List.

```
Watercraft Endorsement
  Description of Watercraft
  01  One - 40' Four oar rowing shells
  02  Two - 60' Eight oar rowing shells
  03  One - 16' Jonboat (Aluminum craft launch)
  04  Six - 15' Canoes
  05  Eight - 16' Canoes
  06  One - 16' Jonboat
  07  One - 1928 25' Santana 525 Sailboat
  08  One - 12' Sailboat
```

| **Name of Insured**<br>EMORY UNIVERSITY | **Policy Number** HG07200110    **Effective Date** 01/01/98<br>**Processing Date** 04/09/98   15:31   001 |
|---|---|



# EXHIBIT / ATTACHMENT



(To be scanned in place of tab)

# COMMERCIAL GENERAL LIABILITY PROTECTION

This insuring agreement provides general liability protection for your business. There are, of course, limitations and exclusions which apply to that protection. As a result, this agreement should be read carefully to determine the extent of the coverage provided to you and other protected persons.

| Table of Contents | Page |
|---|---|
| **What This Agreement Covers** | 1 |
| Bodily injury and property damage liability. | 1 |
| Personal injury liability. | 1 |
| Advertising injury liability. | 2 |
| Medical expenses. | 2 |
| Right and duty to defend. | 3 |
| Additional payments. | 3 |
| Right to appeal. | 4 |
| **When This Agreement Covers** | 4 |
| Bodily injury and property damage liability. | 4 |
| Personal injury liability. | 4 |
| Advertising injury liability. | 4 |
| Medical expenses. | 4 |
| **Where This Agreement Covers** | 4 |
| **Who Is Protected Under This Agreement** | 4 |
| Individual. | 4 |
| Partnership or joint venture. | 4 |
| Corporation or other organization. | 4 |
| Employees. | 4 |
| Real estate managers. | 5 |
| Operators of registered mobile equipment. | 5 |
| Newly acquired or formed organizations. | 5 |
| Separation of protected persons. | 6 |
| **Limits Of Coverage** | 6 |
| General total limit. | 6 |
| Products and completed work total limit. | 6 |
| Personal injury each person limit. | 7 |
| Advertising injury each person limit. | 7 |
| Each event limit. | 7 |
| How the limits of coverage apply to an extension of the policy period. | 7 |
| How the limits of coverage apply if a total limit is left blank. | 7 |
| **Exclusions — What This Agreement Won't Cover** | 7 |
| Advertising, broadcasting, publishing or telecasting business. | 7 |
| Aircraft. | 8 |
| Auto. | 8 |
| Breach of contract. | 8 |
| Contract liability. | 8 |
| Control of property. | 9 |
| Damage to your products or completed work. | 9 |
| Deliberately breaking the law. | 10 |
| Employer's liability. | 10 |
| False material. | 10 |
| Impaired property. | 10 |
| Intentional bodily injury or property damage. | 11 |
| Liquor liability. | 11 |
| Material first made known. | 11 |
| Medical expenses of certain persons. | 11 |
| Mobile equipment. | 11 |
| Nuclear energy liability. | 12 |
| Pollution. | 13 |
| Poor quality or performance. | 14 |
| Product recall. | 14 |
| Watercraft. | 14 |
| Workers' compensation. | 15 |
| Wrong price description. | 15 |
| **Other Insurance** | 15 |
| Other primary insurance. | 15 |
| Excess insurance. | 15 |
| Methods of sharing. | 15 |

## What This Agreement Covers

**Bodily injury and property damage liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or premises damage that:

• happens while this agreement is in effect; and
• is caused by an event.

**Personal injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:

• results from your business activities, other than advertising, broadcasting, publishing or telecasting done by or for you; and
• is caused by a personal injury offense committed while this agreement is in effect.

**Advertising injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that: results from the advertising of your products, work or completed work; and
• is caused by an advertising injury offense committed while this agreement is in effect.

**Medical expenses.** We'll pay covered medical expenses that result from bodily injury caused by an event which happens while this agreement is in effect, even if the protected person isn't legally required to do so.

*Protected person* means any person or organization who qualifies as a protected person under the Who Is Protected Under This Agreement section.

*Bodily injury* means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness or disease:
• Mental anguish, injury or illness.
• Emotional distress.
• Care, loss of services, or death.

*Property damage* means:
• physical damage to tangible property of others, including all resulting loss of use of that property; or
• loss of use of tangible property of others that isn't physically damaged.

We'll consider all loss of use of damaged tangible property to happen at the time of the physical damage which caused it. And we'll consider all loss of use of undamaged tangible property to happen at the time of the event which caused it.

*Premises damage* means property damage to premises that you rent, lease or borrow from others.

*Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Personal injury* means injury, other than bodily injury or advertising injury, caused by a personal injury offense.

*Personal injury offense* means any of the following offenses:
• False arrest, detention or imprisonment.
• Malicious prosecution.
• Wrongful entry or wrongful eviction.
• Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
• Libel or slander.
• Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
• Making known to any person or organization written or spoken material that violates an individual's right of privacy.

*Advertising injury* means injury, other than bodily injury or personal injury, caused by an advertising injury offense.

*Advertising injury offense* means any of the following offenses:
• Libel or slander.
• Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
• Making known to any person or organization written or spoken material that violates an individual's right of privacy.
• Unauthorized taking or use of any advertising idea, material, slogan, style or title of others.

*Advertising* means attracting the attention of others by any means for the purpose of seeking customers or increasing sales or business.

*Broadcasting* means transmitting any audio material by radio, or transmitting or televising any audio or visual material by television, for any purpose.

*Publishing* means creating and producing any printed material for distribution or sale to others for any purpose.

However, we won't consider creating and producing any of the following printed material to be publishing:
• Correspondence written in the conduct of your business.
• Bulletins, financial or annual reports, newsletters and other printed material that describes or reports your business activities.

*Telecasting* means transmitting or televising any audio or visual material by television for any purpose.

*Medical expenses* mean the reasonable expenses incurred by any person or organization for necessary medical services received by a person anytime during the one year following the date of an event which causes that person to sustain bodily injury.

*Medical services* include:
• first aid received at the time of an event;
• ambulance and emergency care services;
• dental, medical, nursing, surgical, x-ray and other health care professional services;
• hospital services;
• artificial limbs and organs; and
• funeral services.

We explain what we mean by your products, your work and your completed work in the Products and completed work total limit section.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered injury or damage made or brought against any protected person. We'll do so even if any of the allegations of any such claim or suit are groundless, false or fraudulent. But we have no duty to perform other acts or services. And our duty to defend claims or suits ends when we have used up the limits of coverage that apply with the payment of judgments, settlements or medical expenses.

We'll have the right to investigate any claim or suit to the extent that we believe is proper. We'll also have the right to settle any claim or suit within the available limits of coverage.

*Claim* means a demand which seeks damages.

*Suit* means a civil proceeding which seeks damages. It includes:
• an arbitration proceeding for such damages to which the protected person must submit or submits with our consent; and
• any other alternative dispute resolution proceeding for such damages to which the protected person submits with our consent.

*Injury or damage* means bodily injury, personal injury, advertising injury or property damage or premises damage.

**Additional payments.** We'll have the duty to make only the payments shown below in connection with any claim or suit we defend. These payments are in addition to the limits of coverage. But our duty to make such payments ends when we have used up the limits of coverage that apply with the payment of judgments, settlements or medical expenses.

*Our expenses.* We'll pay all expenses we incur.

*Bail bonds.* We'll pay up to $250 of the cost of bail bonds that are required because of accidents or violations of traffic laws. But only if the accidents or violations result from the use of a vehicle to which the bodily injury liability coverage under this agreement applies. We don't have to furnish such bonds.

*Bonds to release property.* We'll pay the cost of bonds to release property that's being used to secure a legal obligation. But only for bond amounts within the limit of coverage that applies. We don't have to furnish such bonds.

*Expenses incurred by protected persons.* We'll pay all reasonable expenses that any protected person incurs at our request while helping us investigate or defend a claim or suit. But we won't pay more than $250 per day for earnings actually lost by the protected person because of time taken off from work.

*Taxed costs.* We'll pay all costs taxed against any protected person in a suit.

*Pre-judgment interest.* We'll pay the pre-judgment interest that's awarded against the protected person on that part of a judgment paid by us. But if we make a settlement offer to pay the available limit of coverage, we won't pay the pre-judgment interest that accumulates after the date of our offer.

*Post-judgment interest.* We'll pay all interest that accumulates on the full amount of that part of a judgment for which we make a payment. But only from the date of the judgment to the date we:
• pay;

---

•offer to pay; or
•deposit in court;
the limit of coverage that applies to the judgment.

**Right to appeal.** We'll have the right to appeal a judgment for covered injury or damage in any suit we defend.

If we appeal such a judgment, we'll pay all expenses which result directly from that appeal, including the cost of appeal bonds and post-judgment interest. Such appeal expenses are in addition to the limits of coverage. However, the results of an appeal won't change the limits of coverage that apply under this agreement.

## When This Agreement Covers

**Bodily injury and property damage liability.** We'll apply this agreement to claims or suits for covered bodily injury, property damage or premises damage whenever they're made or brought.

**Personal injury liability.** We'll apply this agreement to claims or suits for covered personal injury whenever they're made or brought.

**Advertising injury liability.** We'll apply this agreement to claims or suits for covered advertising injury whenever they're made or brought.

**Medical expenses.** We'll apply this agreement to covered medical expenses only when they're reported to us during the one year following the date of the event.

## Where This Agreement Covers

We'll defend claims and suits, and pay judgments, settlements and medical expenses, only in the coverage territory for covered injury or damage that's caused by events or offenses which happen or are committed there.

However, we'll also defend claims and suits, and pay judgments, settlements and medical expenses, in the coverage territory for covered injury or damage that's caused by events or offenses which happen or are committed in the rest of the world if they result from:
•the activities of a person whose home is in the coverage territory, but is away for a short time on your business; or
•your products made or sold by you in the coverage territory.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada. It includes international waters or airspace only during travel or transportation between any of the above places.

## Who Is Protected Under This Agreement

**Individual.** If you are named in the Introduction as an individual, you and your spouse are protected persons only for the conduct of a business of which you are the sole owner.

**Partnership or joint venture.** If you are named in the Introduction as a partnership or joint venture, you are a protected person. Your partners or co-venturers and their spouses are protected persons only for the conduct of your business.

However, no person or organization is a protected person for the conduct of any current or past partnership or joint venture that's not named in the Introduction.

**Corporation or other organization.** If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers and directors are protected persons only for their duties as your officers or directors. And your stockholders are protected persons only for their liability as your stockholders.

**Employees.** Your employees are protected persons only for work done within the scope of their employment by you.

However, no employee is a protected person for bodily injury or personal injury to:
•you;
•any fellow employee; or

The St.Paul

•the spouse or any child, parent, brother or sister of that fellow employee if such injury results from the bodily injury or personal injury to the fellow employee.

Nor is any employee a protected person for:
•any obligation to share damages with or repay someone else who must pay damages because of bodily injury or personal injury to any fellow employee; or
•bodily injury or personal injury that results from their performance of or failure to perform health care professional services.

In addition, no employee is a protected person for property damage to property that's:
•owned, rented, leased, occupied, borrowed or used by;
•in the care, custody or control of; or
•being physically controlled for any purpose by;
you, that employee, any fellow employee, or any protected partner, co-venturer or spouse.

But we won't apply the exclusions in this Employees section to:
•bodily injury caused by the providing of or failure to provide first aid by an employee, other than an employed doctor or nurse; or
•premises damage.

Nor will we apply this Employees section to your executive officers. Instead, we'll apply the Corporation or other organization section to them.

*Health care professional services* include:
•dental, medical, mental, nursing, surgical, x-ray and other health care professional services, including food or beverages provided with those services;
•the dispensing of drugs or medical or dental supplies and appliances; and
•the handling or treatment of corpses, including autopsies, organ donations and other postmortem procedures.

**Real estate managers.** Your real estate managers are protected persons only for their management of premises you own, rent, lease or borrow. They may be persons or organizations.

But we won't apply this Real estate managers section to your employees. Instead, we'll apply the Employees section to them.

**Operators of registered mobile equipment.** All operators of registered mobile equipment are protected persons for their driving of such equipment on a public street or road with your permission.

Any person or organization legally responsible for the driving conduct of those operators is also a protected person. But only if there's no other valid and collectible insurance available to cover their liability for the operators.

However, no operator or any other person or organization is a protected person for:
•bodily injury to a fellow employee of the person driving the equipment; or
•property damage to property owned, rented, leased, occupied or controlled by you or the employer of an operator who is a protected person.

*Registered mobile equipment* means mobile equipment that's registered in your name under any motor vehicle registration law.

We explain what we mean by mobile equipment in the Mobile equipment exclusion.

**Newly acquired or formed organizations.** Any organization, other than a partnership or joint venture, that you acquire or form while this agreement is in effect is a protected person if you own more than 50% of it.

However, no newly acquired or formed organization is a protected person for:
•more than 90 days, or the remainder of the policy period, whichever is less, from the date that you acquire or form it, unless we agree that it should continue to be a protected person after the end of that period of time;
•bodily injury or property damage that happened before you acquired or formed it;
•personal injury or advertising injury that results from an offense committed before you acquired or formed it; or
•injury or damage that's covered under other similar general liability insurance.

47500 Ed.4-91 Printed in U.S.A.
©St.Paul Fire and Marine Insurance Co.1991

Insuring Agreement 36
Liability Coverage

Page 5 of 16

**Separation of protected persons.** We'll apply this agreement:
*to each protected person named in the Introduction as if that protected person was the only one named there; and
*separately to each other protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section. Also, any right or duty specifically assigned to the first Named Insured remains unchanged. We explain those rights and duties in the General Rules, which is a part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay regardless of the number of:
*protected persons;
*claims made or suits brought; or
*persons or organizations making claims or bringing suits.

**General total limit.** This is the most we'll pay for the combined total of:
*all covered bodily injury, property damage and premises damage that happens in a policy year;
*all covered personal injury that's caused by all personal injury offenses committed in a policy year;
*all covered advertising injury that's caused by all advertising injury offenses committed in a policy year; and
*all covered medical expenses that result from all events which happen in a policy year.

However, this limit doesn't apply to covered bodily injury and property damage that results from your products and completed work. Instead, the Products and completed work total limit applies. We explain that limit and what we mean by your products and your completed work in the Products and completed work total limit section.

*Policy year* means the policy period shown in the Introduction when the policy period is one year or less. But when the policy period is longer than one year, it means each consecutive

annual period, and the remaining period if any, that the policy is in effect, starting with the date the policy begins.

**Products and completed work total limit.** This is the most we'll pay for the combined total of all covered bodily injury and property damage that:
*results from your products and completed work; and
*happens in a policy year.

*Your products* mean any of the goods or products that are or were manufactured, sold, handled, distributed or disposed of by:
*you;
*others using your name; or
*any person or organization whose business or assets you've acquired.

Your products include:
*all containers, equipment, materials or parts provided with or for your products;
*any warranty provided with or for your products;
*any statement made, or which should have been made, about the durability, fitness, handling, maintenance, operation, performance, quality, safety or use of your products; and
*all warnings, instructions or directions provided, or which should have been provided, with or for your products.

However, we won't consider the following to be your products:
*Goods or products that are still in your physical possession or on premises you own, rent, lease or borrow.
*Real property.
*Containers that are vehicles.
*Property rented or leased to others.
*Property you haven't sold, but which you allow others to use. For example, a vending machine.

*Your completed work* means your work that is completed at the earliest of the following times, including work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete:
*When all of the work called for in your contract has been completed.
*When all of the work to be done at the work site has been completed, if your contract calls for work at more than one site.
*When that part of the work at the work site has been put to its intended use by any person or

organization, other than another contractor or subcontractor working on the same project.

However, we won't consider the following to be your completed work:
* Work that hasn't yet been completed or abandoned.
* Uninstalled equipment, abandoned or unused materials, or tools.
* Work done in connection with transporting property - other than a condition created in or on a vehicle by the loading or unloading of it.
* Premises or other real property that you own.
* Any work while on premises you own, rent, lease or borrow.

*Your work* means:
* any work that you're performing or others are performing for you; or
* any service that you're providing or others are providing for you.

Your work includes:
* all equipment, materials or parts provided with or for your work;
* any warranty provided with or for your work;
* any statement made, or which should have been made, about the durability, fitness, handling, maintenance, operation, performance, quality, safety or use of your work; and
* all warnings, instructions or directions provided, or which should have been provided, with or for your work.

We explain what we mean by loading or unloading in the Auto exclusion.

**Personal injury each person limit.** This is the most we'll pay for all covered personal injury that:
* is sustained by any one person or organization; and
* is caused by all personal injury offenses committed in a policy year.

**Advertising injury each person limit.** This is the most we'll pay for all covered advertising injury that:
* is sustained by any one person or organization; and
* is caused by all advertising injury offenses committed in a policy year.

**Each event limit.** This is the most we'll pay for all covered bodily injury, property damage, premises damage and medical expenses that result from any one event.

However, the most we'll pay for covered premises damage or covered medical expenses that result from any one event is further limited by the following:

*Premises damage limit.* This is the most we'll pay for all covered premises damage that results from any one event.

*Medical expenses limit.* This is the most we'll pay for all covered medical expenses that:
* are incurred for bodily injury sustained by any one person; and
* result from any one event.

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for three years. During the last policy year you request a three month extension. We agree. As a result, your last policy year becomes 15 months. It will be subject to the same limits of coverage that applied when the policy year was 12 months.*

**How the limits of coverage apply if a total limit is left blank.** If the amount of the General total limit or the Products and completed work total limit is left blank in the Coverage Summary, that total limit will be considered to be the same as the Each event limit or $100,000, whichever is more.

**Exclusions – What This Agreement Won't Cover**

**Advertising, broadcasting, publishing or telecasting business.** We won't cover advertising injury that results from an offense committed by any protected person in the business of advertising, broadcasting, publishing or telecasting.

**Aircraft.** We won't cover bodily injury, property damage or medical expenses that result from the:
- ownership, maintenance, use or operation;
- loading or unloading; or
- entrustment to others;

of any aircraft owned, operated, rented, leased or borrowed by any protected person.

But we won't apply this exclusion to:
- liability for bodily injury or property damage assumed under any covered contract for the ownership, maintenance or use of aircraft; or
- bodily injury, property damage or medical expenses that result from the operation of specialized equipment.

We explain what we mean by entrustment to others and loading or unloading in the Auto exclusion.

We explain what we mean by specialized equipment in the Mobile equipment exclusion.

**Auto.** We won't cover bodily injury, property damage or medical expenses that result from the:
- ownership, maintenance, use or operation;
- loading or unloading; or
- entrustment to others;

of any auto owned, operated, rented, leased or borrowed by any protected person.

But we won't apply this exclusion to bodily injury, property damage or medical expenses that result from the:
- parking of an auto on any premises you own, rent, lease or borrow, or on ways next to such premises, if the auto isn't owned, rented, leased or borrowed by any protected person; or
- operation of specialized equipment.

*Auto* means any land motor vehicle, trailer or semitrailer designed for travel on public streets or roads. It includes any permanently attached machinery or equipment. But we won't consider mobile equipment to be an auto.

*Loading or unloading* means the handling of property:
- while it's being moved from the place where it's accepted for transportation;
- while it's being loaded, transported and unloaded; and

- until it's moved to the place where it's finally delivered.

However, we won't consider moving property by an unattached mechanical device to be loading or unloading.

*Unattached mechanical device* includes any forklift, conveyor or other unattached mechanical device, other than a hand truck.

*Entrustment to others* means:
- the permitting of others to use or do something; or
- the giving of something to others for safekeeping.

We explain what we mean by mobile equipment and specialized equipment in the Mobile equipment exclusion.

**Breach of contract.** We won't cover advertising injury that results from the failure of any protected person to do what is required by a contract or agreement.

But we won't apply this exclusion to the unauthorized taking or use of advertising ideas if the contract or agreement doesn't specifically prohibit such taking or use.

**Contract liability.** We won't cover the protected person's liability for injury or damage assumed under any contract or agreement.

However, we won't apply this exclusion to liability for injury or damage the protected person would have without the contract or agreement. Nor will we apply this exclusion to the protected person's liability for bodily injury or property damage assumed under a covered contract made before the bodily injury or property damage happens.

*Covered contract* means any:
- lease of premises;
- sidetrack agreement;
- elevator maintenance agreement;
- easement or license agreement;
- obligation to indemnify a municipality if the obligation is required by ordinance and isn't connected with your work for the municipality;
- contract or agreement under which you assume the tort liability of a municipality to pay damages for covered bodily injury or prop-

erty damage that is sustained by others and results from your work for the municipality; or

• other contract or agreement under which you assume the tort liability of another to pay damages for covered bodily injury or property damage that's sustained by others.

*Tort liability* means a liability that would be imposed by law without any contract or agreement.

But we won't consider the following parts of any contract or agreement to be a covered contract:

*Architect, engineer or surveyor indemnity.* That part which indemnifies any architect, engineer or surveyor for bodily injury or property damage that results from the:

• preparation or approval of, or failure to prepare or approve, maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

• giving of or failure to give directions or instructions if that giving or failure to give is the primary cause of the bodily injury or property damage.

*Protected architect, engineer or surveyor.* That part which indemnifies any person or organization for bodily injury or property damage that results from the performance of or failure to perform architect, engineer or surveyor professional services by the protected person who is an architect, engineer or surveyor.

*Architect, engineer or surveyor professional services* include:

• the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

• supervisory, inspection or engineering services.

*Premises damage.* That part which indemnifies any person or organization for property damage to premises you rent, lease or borrow from others.

*War.* That part which indemnifies any person or organization for bodily injury or property damage caused by war.

We explain what we mean by war in the Medical expenses of certain persons exclusion.

**Control of property.** We won't cover property damage to the following property:

• Property you own, rent, lease, occupy or borrow. But we won't apply this exclusion part to premises damage.

• Premises you sell, give away or abandon, if such property damage results from any part of those premises. But we won't apply this exclusion part to property damage to premises which are your completed work and were never occupied, rented or held for rental by you.

• Personal property in the care, custody or control of the protected person.

• That particular part of real property being worked on by or for you, if such property damage results from your work.

• That particular part of any property which must be restored, repaired or replaced because your work was incorrectly performed on it. But we won't apply this exclusion part to property damage that results from your completed work.

Furthermore, we won't apply this exclusion to liability for property damage to the above property, other than the property described below, if such liability is assumed under a sidetrack agreement:

• Property you own, rent, lease or occupy.

• Premises you sell, give away or abandon.

**Damage to your products or completed work.** We won't cover property damage to any of your products that's caused by the product itself or by any of its parts. For example:

*You manufacture air conditioners. They contain several moving parts which can break down for many reasons. Regardless of the cause, we won't protect you for any property damage to the part that fails or to the rest of the air conditioner.*

Nor will we cover property damage to your completed work that's caused by the work itself or by any of its parts. But we won't apply this exclusion part if:

• this agreement provides completed work coverage; and

• the damaged completed work, or the completed work that causes the property damage, was done for you by others.

For example:

You construct a building as a general contractor. Some of the work is done by you while the rest is done for you by subcontractors. The building is accepted by the owner. If it's damaged by a fire caused by electrical wiring installed by a subcontractor, we won't apply the exclusion. However, if the wiring was installed by you, we'll apply the exclusion to property damage to your completed work done by you.

**Deliberately breaking the law.** We won't cover personal injury or advertising injury that results from:

•the protected person knowingly breaking any criminal law; or

•any person or organization breaking any criminal law with the consent or knowledge of the protected person.

**Employer's liability.** We won't cover bodily injury to an employee arising out of and in the course of his or her employment by a protected person. Nor will we cover bodily injury to the spouse, child, parent, brother or sister of that employee which results from the bodily injury to the employee.

We'll apply this exclusion whether the protected person may be held liable as an employer or in any other capacity, such as a property owner or product manufacturer. For example:

*You manufacture tires. Your employee is injured while driving a company truck equipped with your tires, when one of the tires blows out resulting in an accident. He receives workers' compensation benefits. If he later sues you in your capacity as a manufacturer, alleging that his injury happened because your product was defective, we won't protect you.*

We'll also apply this exclusion to any obligation of the protected person to share damages with or repay someone else who must pay damages because of bodily injury to any employee of the protected person. For example:

*Your employee is injured in a printing press accident. She receives workers'*
compensation benefits. Later, she sues the manufacturer of the printing press alleging that her injury happened because the press didn't have enough guarding devices on it. If the manufacturer in turn sues you alleging that your faulty maintenance of the press — not the lack of guarding devices — resulted in the employee's injury, we won't protect you.

But we won't apply this exclusion to liability for bodily injury assumed under any covered contract.

**False material.** We won't cover personal injury or advertising injury that results from making known to any person or organization false written or spoken material that:

•was made known by or for the protected person; and

•the protected person knew was false when it was made known.

**Impaired property.** We won't cover property damage to impaired property, or to property which isn't physically damaged, that results from:

•your faulty or dangerous products or completed work; or

•a delay or failure in fulfilling the terms of a contract or agreement.

But we won't apply this exclusion to the loss of use of property, other than your products or completed work, that results from sudden and accidental physical damage to your products or completed work after they've been put to their intended use. For example:

*You supply an electric motor to a customer who uses it to power his conveyor. The motor's shaft breaks several days later while he's operating the conveyor. The conveyor isn't damaged, but your customer has extra costs because he's unable to use it until the motor is repaired. If he sues you to recover those costs, we won't apply the exclusion. However, if the customer discovers while hooking the motor up to the conveyor that the motor's shaft is broken, we won't protect you.*

*Impaired property* means tangible property, other than your products or completed work, that can be restored to use by nothing more than:
- an adjustment, repair, replacement or removal of your products or completed work which forms a part of it; or
- your fulfilling the terms of a contract or agreement.

**Intentional bodily injury or property damage.** We won't cover bodily injury or property damage that's expected or intended by the protected person. Nor will we cover medical expenses that result from such bodily injury.

But we won't apply this exclusion to intentional bodily injury or property damage that results from the use of reasonable force to protect people or property.

**Liquor liability.** We won't cover bodily injury, property damage or medical expenses that result from any protected person:
- causing or contributing to the intoxication of any person;
- selling, serving or furnishing alcoholic beverages to any person under the legal drinking age or under the influence of alcohol; or
- violating any law or regulation applying to the sale, gift, distribution or use of alcoholic beverages.

But we'll apply this exclusion only if you're in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For example:

*You manufacture office equipment. Each year you host an awards banquet with an open bar for your sales representatives. After this year's banquet an intoxicated guest is involved in an auto accident. The guest and several others are injured. If someone sues you, alleging that your serving of liquor caused the guest's intoxication and involvement in the accident, we won't apply the Liquor liability exclusion because you're not in the business of serving liquor.*

**Material first made known.** We won't cover personal injury or advertising injury that results from making known to any person or organization written or spoken material that was first made known before this agreement went into effect.

**Medical expenses of certain persons.** We won't cover medical expenses incurred by or for any person:
- injured while qualifying as a protected person;
- injured while performing work for any protected person or a tenant of any protected person;
- injured on that part of any premises you own, rent or lease that the injured person normally occupies;
- to whom benefits are payable, or are required to be provided, under a workers' compensation or disability benefits law, or any similar law;
- injured by your products or completed work;
- injured due to war; or
- who refuses to be examined as often as we require, within reason, by doctors we choose.

*War* includes:
- declared or undeclared war, or invasion;
- warlike action by a military force or other agents of any government, sovereign or other authority;
- civil war, insurrection, rebellion, revolution or seizure of power; or
- anything done to hinder or defend against such actions.

**Mobile equipment.** We won't cover bodily injury, property damage or medical expenses that result from the transportation of mobile equipment by an auto owned, operated, rented, leased or borrowed by any protected person.

Nor will we cover bodily injury, property damage or medical expenses that result from the use of racing mobile equipment.

*Mobile equipment* means any land vehicle that:
- is designed for use primarily off public streets or roads;
- is kept for use only on or next to premises you own, rent or lease;
- travels on crawler treads;
- is kept primarily for the ready movement of permanently attached construction equipment; or
- doesn't travel under its own power and is kept primarily for the ready movement of permanently attached specialized equipment.

Mobile equipment includes any land vehicle not described above that's kept primarily for purposes other than carrying people or cargo. But we won't consider such a vehicle to be ... mobile equipment if it:
- travels under its own power;
- is operated like an auto during travel on a public street or road; and
- has permanently attached specialized equipment; or
- has permanently attached equipment designed for snow removal, street cleaning, or street or road maintenance – but not construction or resurfacing.

*Construction equipment* includes any grader, scraper, roller or power crane, shovel, loader, digger or drill.

*Specialized equipment* means any:
- cherry picker or similar device used to lift workers;
- pump, generator or air compressor; or
- other equipment, such as building cleaning, geophysical exploration, lighting, spraying, welding or well-servicing equipment, that has a built-in pump, generator or air compressor.

*Racing mobile equipment* means any mobile equipment while being prepared for or used in any:
- prearranged racing, speed, demolition or stunting contest or activity; or
- practice for such contest or activity.

We explain what we mean by auto, loading or unloading, and entrustment to others in the Auto exclusion.

**Nuclear energy liability.** We won't cover bodily injury or property damage for which any protected person:
- is covered by a nuclear energy liability insurance policy; or
- would have been covered by such policy if that policy's limits of coverage hadn't been used up.

Nor will we cover bodily injury or property damage that results from the hazardous properties of nuclear material and for which:
- any person or organization is required by law to maintain financial protection in accordance with the federal Atomic Energy Act, or any of its amendments; or

- any protected person is entitled, or would have been entitled had this agreement not been issued, to indemnity from the United States government, or any of its agencies, under any contract or agreement between the government, or any of its agencies, and any person or organization.

We also won't cover medical expenses that result from:
- the hazardous properties of nuclear material; and
- the operation of a nuclear facility by any person or organization.

And we won't cover bodily injury or property damage that results from the hazardous properties of nuclear material when:
- the nuclear material is located at, or at any time discharges or disperses from, any nuclear facility owned by any protected person, or operated by or for any protected person;
- the nuclear material is contained in spent nuclear fuel or nuclear waste that is at any time possessed, handled, used, processed, stored, transported or disposed by or for any protected person; or
- the bodily injury or property damage results from the furnishing by any protected person of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility. But we'll apply this exclusion part only to property damage to the nuclear facility, and any property located on the site of that facility, if the nuclear facility is in the United States of America, its territories or possessions, Puerto Rico or Canada.

*Nuclear energy liability insurance policy* means any nuclear energy liability insurance policy issued by:
- Nuclear Energy Liability Insurance Association;
- Mutual Atomic Energy Liability Underwriters;
- Nuclear Insurance Association of Canada; or
- any of their successors.

*Property damage* includes all forms of radioactive contamination of property.

*Hazardous properties* include radioactive, toxic or explosive properties.

*Nuclear material* means any of the following materials which are defined in the federal Atomic Energy Act, or any of its amendments:
•Source material.
•Special nuclear material.
•By-product material.

*Nuclear facility* means any:
•nuclear reactor;
•uranium isotopes separation device or equipment;
•special nuclear material device or equipment; or
•nuclear waste site.

Nuclear facility includes:
•the site on which it's located;
•all operations conducted on such site; and
•all premises used for such operations.

*Nuclear reactor* means any device, equipment or machine that's designed or used to:
•sustain nuclear fission in a self-supporting chain reaction; or
•contain a critical mass of fissionable material.

*Uranium isotopes separation device or equipment* means any device or equipment designed or used for:
•separating the isotopes of uranium or plutonium;
•processing or utilizing spent nuclear fuel; or
•handling, processing or packaging nuclear waste.

*Special nuclear material device or equipment* means any device or equipment used for the processing, fabricating or alloying of special nuclear material if the total amount of such material:
•is more than 25 grams of plutonium or uranium 233, or any combination of the two, or 250 grams of uranium 235; and
•is at any time in the custody of any protected person at the premises where the device or equipment is located.

*Nuclear waste site* means any structure, basin, excavation, premises or place prepared or used for the storage or disposal of nuclear waste.

*Nuclear waste* means any waste material that:

•contains by-product material; and
•results from the operation of any nuclear reactor or uranium isotopes separation device or equipment by any person or organization.

But we won't consider nuclear waste to include tailings or wastes that result from the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content.

*Spent nuclear fuel* means any solid or liquid fuel element or component that has been exposed to radiation or used in a nuclear reactor.

**Pollution.** We won't cover injury or damage or medical expenses that result from pollution at or from any:
•protected person's premises;
•waste site; or
•protected person's work site.

Nor will we cover injury or damage or medical expenses that result from pollution involving any waste pollutant.

We also won't cover any loss, cost or expense that results from:
•any request, demand or order that any protected person or others perform pollution work; or
•any claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

*Pollution* means any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant.

*Pollutant* means any solid, liquid, gaseous or thermal irritant or contaminant, including:
•smoke, vapors, soot, fumes;
•acids, alkalis, chemicals; and
•waste.

However, we won't consider heat, smoke or fumes to be a pollutant when they result from a hostile fire at or from:
•the protected person's premises; or
•the protected person's work site if the hostile fire doesn't result from pollution work being done by or for the protected person.

*Hostile fire* means a fire which becomes uncontrollable or breaks out from where it was intended to be.

*Waste* includes materials to be recycled, reconditioned or reclaimed.

*Protected person's premises* means any premises, site or location which is or was at any time owned, rented, leased, borrowed or occupied by any protected person. For example:

*You sold an office building two years ago. It contains asbestos ceiling tile which released asbestos into the air while you owned it. A former tenant now sues you for bodily injury that allegedly resulted from the release of that asbestos. We won't cover such injury.*

*Waste site* means any premises, site or location which is or was at any time used by or for any protected person or others for the handling, storage, disposal, processing or treatment of waste. For example:

*For several years waste generated by your manufacturing business was disposed of in a landfill owned by others. The landfill was closed two years ago. Nearby residents now allege that they're being injured by the waste from there. We won't cover such injury.*

*Protected person's work site* means any premises, site or location on which work is being performed by or for any protected person when:
•a pollutant is brought on or to such premises, site or location by or for the protected person in connection with such work; or
•the work being performed is pollution work. For example:

*A subcontractor working for you brings a diesel fuel storage tank to the building site for refueling of its excavation equipment. After a couple of days it is discovered that the tank has been leaking. The escaped fuel must now be cleaned up. We won't cover the cost of that clean-up.*

*Pollution work* means:
•the testing for, monitoring, cleaning up,

removing, containing, treating, detoxifying or neutralizing of any pollutant; or
•the responding to, or assessing, in any way the effects of any pollutant.

*Waste pollutant* means any pollutant which is or was at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any protected person or any person or organization for whom you may be legally responsible. For example:

*Waste generated by your business is transported to a landfill by a trucker hired by you. There is an accident which causes the waste to be spilled onto the road. One of the fire fighters who responds to the accident later alleges that fumes from the waste made her ill. We won't cover such injury.*

**Poor quality or performance.** We won't cover advertising injury that results from the failure of your products, work or completed work to conform with advertised quality or performance.

**Product recall.** We won't cover any loss, cost or expense that:
•is incurred by you or others; and
•results from the recall, removal or withdrawal of impaired property, or your products or completed work, from the market or from use by any person or organization for any reason.

Nor will we cover any loss, cost, or expense that is incurred by you or others and results from the:
•loss of use;
•adjustment, inspection, repair;
•replacement; or
•disposal;
of such property, products or completed work.

We explain what we mean by impaired property in the Impaired property exclusion.

**Watercraft.** We won't cover bodily injury, property damage or medical expenses that result from the:
•ownership, maintenance, use or operation;
•loading or unloading; or
•entrustment to others;
of any watercraft owned, operated, rented, leased or borrowed by any protected person.

But we won't apply this exclusion to liability for bodily injury or property damage assumed under any covered contract for the ownership, maintenance or use of watercraft.

Nor will we apply this exclusion to bodily injury, property damage or medical expenses that result from:
- watercraft while ashore on premises you own, rent or lease;
- watercraft you don't own that is less than 50 feet long and isn't being used to carry persons or property for a charge; or
- the operation of specialized equipment.

We explain what we mean by entrustment to others and loading or unloading in the Auto exclusion.

We explain what we mean by specialized equipment in the Mobile equipment exclusion.

**Workers' compensation.** We won't cover any obligation that the protected person has under a workers' compensation, disability benefits or unemployment compensation law, or any similar law.

**Wrong price description.** We won't cover advertising injury that results from making known to any person or organization the wrong description of the price of your products, work or completed work.

## Other Insurance

This agreement is primary insurance. If there is any other valid and collectible insurance for injury or damage covered by this agreement, the following applies:

**Other primary insurance.** When there is other primary insurance, we'll share any damages with that insurance using one of the methods of sharing described in the Methods of sharing section.

However, we'll apply this agreement as excess insurance over any part of any other insurance which provides:
- property or similar coverage for property damage to your work;

- coverage for property damage to premises you rent, lease or borrow from others; or
- coverage for bodily injury or property damage that results from the maintenance, use, operation or loading or unloading of any auto, aircraft or watercraft that's not specifically excluded by the Auto, Aircraft or Watercraft exclusions.

We explain how we'll apply this agreement as excess insurance in the Excess insurance section.

**Excess insurance.** When this agreement is excess insurance, we'll have no duty to defend any claim or suit. However, we'll defend a claim or suit for covered injury or damage if the other insurers won't. In return we'll require that the protected persons give us all of their rights against those insurers.

Also, we'll pay only the amount of damages that's in excess of:
- the total amount that all such other insurance would pay if this agreement didn't exist; and
- the total of all deductible and self-insured amounts under all such other insurance.

However, we'll share such excess damages with any other insurance that:
- isn't described in the Other primary insurance section; and
- wasn't bought specifically to apply in excess of the limits of coverage shown in the Coverage Summary.

But we won't pay more than the limits of coverage that apply under this agreement.

**Methods of sharing.** We'll use one of the methods of sharing described below.

*Contribution by equal shares.* If all of the other insurance permits contribution by equal shares, we'll share the damages equally. But we won't pay more than the limits of coverage that apply under this agreement. If any policy reaches its limit before the entire amount of damages is paid, the remaining policies will share the balance equally until their limits have been used up or the amount of the damages is paid in full. For example:

*You are required by a court to pay damages of $1,000,000. Besides this agreement, two other policies apply to the*

judgment. The limit of this agreement is $500,000. Policy B has a $100,000 limit and Policy C's limit is $300,000.

First. $100,000 is subtracted from each policy's limit because that is the lowest limit provided by any of the three policies. The result: Policy B's limit is used up; the balance due on the judgment is $700,000; $400,000 remains of this agreement's limit; and the unused portion of Policy C's limit equals $200,000.

Next, $200,000 is subtracted from the limit on this agreement and Policy C because that amount equals the smallest amount of limit remaining on either policy after the initial $100,000 payment. The result: Policy C's limit is used up; the balance due on the judgment is now $300,000; and this agreement has $200,000 of its limit remaining.

Finally, the rest of the limit on this agreement is paid. The result; this agreement's limit is used up; the balance due on the judgment is now $100,000, which you must pay; and the total paid under each policy is: $500,000 this agreement, $100,000 Policy B and $300,000 Policy C.

**Contribution by limits.** If any of the other insurance doesn't permit contribution by equal shares, we'll pay that portion of the damages equal to our percentage of the total of all limits that apply. But we won't pay more than the limits of coverage that apply under this agreement. For example:

You are required by a court to pay damages of $600,000. Besides this agreement, another policy applies to the judgment. The limit of this agreement is $300,000 and Policy B has a $100,000 limit. The total limit of all insurance is $400,000.

Our limit is 75% ($300,000/$400,000) of the total limit. But we won't pay 75% of the judgment because that $450,000 share is more than our limit. We'll pay only our limit, which is $300,000.

This endorsement changes your Commercial
General Liability Protection.

---

### How Coverage Is Changed

The following is added to the Who Is Protected
Under This Agreement section. This change
adds certain protected persons and limits their
protection.

**Golfmobile users.** Any person or organization
who uses or is legally responsible for the use
of golfmobiles which you or your concessio-
naires loan or rent to others is a protected
person. But only for covered injury or damage
that results from the use of the golfmobiles.

### Other Terms

All other terms of your policy remain the same.

---



# EXHIBIT / ATTACHMENT



(To be scanned in place of tab)

This endorsement changes your Commercial
General Liability Protection.

## How Coverage Is Changed

There are five changes which are explained
below.

**1.** The following is added to the Corporation or
other organization section. This change
explains what we mean by executive officer.

*Executive officer* means any person holding
an officer position created by the charter,
constitution or by-laws, or any other similar
governing document, of:
•a corporation; or
•any other organization that isn't a partnership
or joint venture.

**2.** The following replaces the first paragraph of
the Employees section. This change broadens
coverage.

Your employees are protected persons only for:
•work done within the scope of their employ-
ment by you; or
•their performance of duties related to the
conduct of your business.

**3.** The following is added to the Employees
section. This change explains what we mean by
employee, leased worker, employee leasing
firm and leased temporary worker.

*Employee* includes a leased worker, other than
a leased temporary worker.

*Leased worker* means any person who:
•is hired from an employee leasing firm under a
contract or agreement between the hirer and
that firm; and
•is performing duties related to the conduct of
the hirer's business.

*Employee leasing firm* means any person or
organization who hires out workers to others.
It includes any:
•employment agency, contractor or service;
•labor leasing firm; or
•temporary help service.

*Leased temporary worker* means a leased
worker who is hired to:
•temporarily take the place of a permanent
employee on leave; or
•meet seasonal or short-term workload condi-
tions.

**4.** The following is added to the Employees
section. This change excludes coverage.

No employee is a protected person for bodily
injury or personal injury to any of your partners
or co-venturers.

Also, no employee is a protected person for
bodily injury or personal injury for which there
is any obligation to share damages with or
repay someone else who must pay damages
because of bodily injury or personal injury to:
•you;
•any of your partners or co-venturers; or
•the spouse or any child, parent, brother or
sister of a fellow employee if such injury
results from the bodily injury or personal injury
to that fellow employee.

**5.** The following replaces the first sentence of
the Employer's liability exclusion. This change
excludes coverage.

We won't cover bodily injury to an employee of
the protected person arising out of and in the
course of his or her:
•employment by the protected person; or
•performance of duties related to the conduct
of the protected person's business.

## Other Terms

All other terms of your policy remain the same.

©St.Paul Fire and Marine Insurance Co.1993 All Rights Reserved          Page 1 of 1



# EXHIBIT / ATTACHMENT



(To be scanned in place of tab)

This endorsement changes your Commercial
General Liability Protection.

## How Coverage Is Changed

The following is added to the Employees
and volunteer workers section. This change
broadens coverage.

We won't apply the exclusions in this
Employees and volunteer workers section to
bodily injury to any fellow employee that
results from work, other than the
performance of or failure to perform health
care professional services, done by any of
your employees.

## Other Terms

All other terms of your policy remain the
same.

**POLLUTION EXCLUSION LEAD EXAMPLE ENDORSEMENT**

This endorsement applies to your Commercial
General Liability Protection.

---

**What This Endorsement Does**

The following example is added in connection
with the definition of protected person's prem-
ises in the Pollution exclusion. The addition of
this example does not change coverage. We
consider lead to be a pollutant even without this
example.

*You own an apartment building. Its wood-
work is finished with paint that contains
lead. Two of your renters sue you for
bodily injury to their children allegedly
caused by the lead in that paint. The chil-
dren supposedly consumed the lead by
eating chips of the paint from the window
sills in their apartments. We won't cover
such injury.*

**Other Terms**

All other terms of your policy remain the same.

---

47482 Ed.10-93 Printed in U.S.A.              Endorsement
©St.Paul Fire and Marine Insurance Co.1993 All Rights Reserved                    Page 1 of 1

This endorsement changes your Commercial General Liability Protection.

---

## How Coverage Is Changed

The following is added to the Contract liability exclusion. This change broadens coverage.

We'll consider the protected person's liability for bodily injury or property damage assumed under a covered contract to include liability for contract liability defense expenses if the liability for such expenses is also assumed by the protected person under the same contract. As a result, we'll consider covered contract liability defense expenses to be damages for bodily injury or property damage covered under this agreement. Such expenses are subject to the limits of coverage.

*Contract liability defense expenses* mean the reasonable attorney fees and necessary litigation expenses incurred by or for an indemnitee for its defense against a civil or alternative dispute resolution proceeding which seeks damages for bodily injury or property damage covered under this agreement.

*Indemnitee* means any person or organization, other than a protected person, who is a party to a covered contract and is held harmless or protected under that contract by the protected person for liability for:
- bodily injury or property damage covered under this agreement; and
- the contract liability defense expenses incurred in connection with such bodily injury or property damage.

## Other Terms

All other terms of your policy remain the same.

---

©St.Paul Fire and Marine Insurance Co.1992 All Rights Reserved

This endorsement changes your Commercial
General Liability Protection.

---

**How Coverage Is Changed**

**Other Terms**

The following is added to the *Exclusions – What
This Agreement Won't Cover* section. This
change excludes coverage.

All other terms of your policy remain the same.

**Computer professional services.** We won't cover
injury or damage that results from the perform-
ance of or failure to perform computer profes-
sional services.

*Computer professional services* include:
•data processing;
•systems analysis or design;
•programming;
•consulting; and
•software development, distribution and main-
tenance.

---



# EXHIBIT / ATTACHMENT

F

(To be scanned in place of tab)

Bodilily Injury Definition Endorsement

This endorsement changes your Commercial General Liability Protection.

HOW COVERAGE IS CHANGED

The following definition of Bodily Injury found in the What This Agreement Covers is deleted:

Bodily Injury means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness or disease:

* Mental anguish, injury or illness.
* Emotional distress.
* Care, loss of services, or death.

and is replaced with the following:

Bodily Injury means any harm to the health of other persons, including physical harm, sickness, disease and mental anguish, injury or illness. And it includes care, loss of services or death that results from such harm.

OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured EMORY UNIVERSITY | Policy Number HG07200110 | Effective Date 01/01/98 |
|---|---|---|
| | Processing Date 04/09/98  15:31  001 | |

40502 Ed.1-80 Printed in U.S.A.                    Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved.                    Page    1

Additional Protected Persons Endorsement #1

---

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Who Is Protected Under This Agreement section. This change adds certain protected persons and limits their protection.

The person(s) or organization(s) shown below are protected, but only for covered bodily injury or property damage that results from your operations.

Name of Protected Person(s) or Organization(s)

1. Students in University-sponsored programs and projects or holding University-appointed positions of responsibility or students in elected positions by other students, in connection with campus activities or affairs.

2. Volunteer workers and members of duly constituted committees or other recognized bodies performing services on behalf of the insured.

3. Trustees or members of a Board of Governors.

4. Student-teachers while teaching as part of their educational requirements.

5. Fraternities and sororities located at the University.

The coverage afforded by this endorsement is limited to the acts of those listed above, only while acting within the scope of their duties as such for you. This coverage will be excess over any other valid and collectible insurance available to them.

OTHER TERMS

All other terms of your policy remain the same.

---

| Name of Insured | Policy Number HG07200110 | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 04/09/98  15:31  001 | |

Additional Protected Persons Endorsement #2

This endorsement changes your policy.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Who Is Protected Under This Agreement section.
This change adds certain protected persons and limits their protection.

The person(s) or organization(s) shown below are protected, but only for
covered bodily injury or property damage that results from your operations.

PROTECTED PERSONS

Any person or organization with whom you have entered into a covered contract,
and who in that contract, has mandated they be included as an additional
protected person to your Commercial General Liability Protection.

A covered contract is defined on page 8 of 16 in your Insuring Agreement 36.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**                  **Policy Number** HG07200110        **Effective Date** 01/01/98
EMORY UNIVERSITY                      **Processing Date** 04/09/98  15:31   001

---

40502 Ed.1-80 Printed in U.S.A.                · Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved                Page    1

Leased Employee Endorsement

---

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The following is added to the Employees protection under the Who Is Protected Under This Agreement section.

Employees of the named insured shall include employees leased by the named insured from The Emory Clinic under the Contract Staff Leasing Agreement effective January 1, 1993. Conversely, employees of the named insured shall not include employees leased by the named insured to The Emory Clinic under the Contract Staff Leasing Agreement effective January 1, 1993.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** HG07200110    **Effective Date** 01/01/98
**Processing Date** 04/09/98   15:31   001

40502 Ed.1-80 Printed in U.S.A.       Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved          Page   1

Premises Exclusion Endorsement

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

Your General Liability Protection is changed by adding the following exclusion to the Exclusions - Claims We Won't Cover section. The effect of this change is to reduce your coverage.

DESCRIPTION AND LOCATION OF PREMISES

1. Emory University Hospital
2. Crawford W. Long Memorial Hospital
3. Jesse Parker Williams Memorial, Inc.
4. The Carter Center, Inc.

PREMISES. We won't cover bodily injury, property damage, personal injury or advertising injury resulting from any of the following:

* ownership, maintenance or use of the described premises or of any property located on such premises;

* work on or off the described premises related to the ownership, maintenance or use of such premises; or

* products manufactured on or distributed from the described premises.


OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured | Policy Number HG07200110 | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 04/09/98   15:31   001 | |

40502 Ed.1-80 Printed in U.S.A.      Customized Form

©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved     Page   1

Watercraft Extension Endorsement

This endorsement changes your Commercial General Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The second paragraph of the Watercraft Exclusion is removed and replaced with the following. This change broadens coverage.

But we won't apply this exclusion to bodily injury, property damage, or medical expenses that result from:

* Liability for bodily injury or property damage assumed under any covered contract for the ownership, maintenance or use of watercraft.

* Watercraft while ashore on premises you own, rent or lease.

* Watercraft you don't own that is less than 50 feet long and isn't being used to carry persons or property for a charge.

* The operation of specialized equipment.

OTHER TERMS

All other terms of your policy remain the same.

**Name of Insured**                **Policy Number** HG07200110        **Effective Date** 01/01/98
EMORY UNIVERSITY                   **Processing Date** 04/09/98  15:31  001

40502 Ed.1-80 Printed in U.S.A.              Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved                Page    1

Knowledge OF Accident Or Incident Endorsement

This endorsement changes your Commercial General Liability Protection.

HOW COVERAGE IS CHANGED

The following is added to What To Do IF You Have A Loss - Someone Is Injured or Something Happens Which Can Result In A Liability Claim section.

3. Knowledge of an accident or incident by the agent or the protected persons or an employee of the Insured will not in itself constitute knowledge of the insured unless the Vice President of Finance and Treasurer or General Counsel has received notice of an accident or incident from the agent, other protected persons or an employee.

OTHER TERMS

All other terms of your policy remain the same.

| **Name of Insured** | **Policy Number** HG07200110 | **Effective Date** 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | **Processing Date** 04/09/98  15:31  001 | |

The **St.Paul**

Covered Premises At Crawford Long Hospital Endorsement

This endorsement changes your Commercial General Liability Protection.

HOW COVERAGE IS CHANGED

Your Commercial General Liability Protection is changed by adding the following Crawford Long locations to your policy. The effect of this change broadens your coverage, specifically to these locations.

DESCRIPTION AND LOCATION OF PREMISES

1. Medical Records, 515 W. Peachtree St.
2. Candler Building Parking, 500 Peachtree St.
3. Byron Building, 549 Peachtree St.
4. Candler Building A, 478 Peachtree St.
5. Candler Building B, 490 Peachtree St.
6. Candler Building C, 490 Peachtree St.
7. Storage (Art Gallery), 505 W. Peachtree St.
8. Peachtree- Linden Parking Lot, 26 Linden Avenue/ 560 Peachtree St.
9. Offices, 17 Prescott St.
10. Offices (Nursing School), 543 Peachtree St.
11. Research Lab, 530 W. Peachtree St.
12. Glenn Building, 25 Prescott St.
13. Out Patient Center Parking Deck and Bridge, 20 Linden Ave.
14. Prescott "A" Parking Deck, 514 Peachtree St.
15. West Peachtree "E" Lot, 515 West Peachtree St.
16. CTRL "F" Lot, 530 West Peachtree St.

We'll cover bodily injury, property damage, personal injury and advertising injury on the premises described above or within 100 feet of these described premises.

All other locations at the Crawford Long Hospital "Campus" is provided coverage under the Emory University Self Insured Retention.

OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured | Policy Number HG07200110 | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 04/09/98 15:31 001 | |

40502 Ed.1-80 Printed in U.S.A.     Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved

# LIQUOR LIABILITY PROTECTION
## COVERAGE SUMMARY

The **St.Paul**

This Coverage Summary shows the limits of
coverage that apply to your Liquor Liability
Protection. It also lists those endorsements, if
any, that must have certain information shown
for them to apply.

| Limits Of Coverage | | IMPORTANT NOTE |
|---|---|---|
| **Total limit.** | $ 1,000,000. | **Retroactive Date:** |
| **Each person limit.** | $ 1,000,000. | The retroactive date applies only if the Liquor Liability Protection – Claims-Made insuring agreement is a part of this policy. |
| | | However, if no date is shown above and the claims-made agreement applies, we'll consider the retroactive date to be the same as the beginning date of this policy. |

## Named Endorsement Table

**Important Note:** Only endorsements that must have certain information shown for them to apply are
named in this table. The required information follows the name of each such endorsement. Other
endorsements may apply. If so, they're listed on the Introduction.

| Name of Insured | Policy Number HG0720011Ō | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 04/09/98   15:31   001 | |

43885 Ed.9-86 Printed in U.S.A.
©St.Paul Fire and Marine Insurance Co.1986

Coverage Summary

This insuring agreement provides liquor liability protection for your business activities. There are, of course, limitations and exclusions that apply to that protection. As a result, we recommend that you read this agreement carefully to determine the extent of the coverage provided to you and other protected persons.

## Table of Contents

| | Page |
|---|---|
| **What This Agreement Covers** | |
| Liquor liability. | 1 |
| Right and duty to defend. | 1 |
| Additional payments. | 2 |
| **When This Agreement Covers** | 2 |
| **Where This Agreement Covers** | 2 |
| **Who Is Protected Under This Agreement** | 2 |
| Individual. | 2 |
| Partnership or joint venture. | 2 |
| Corporation or other organization. | 3 |
| Employees. | 3 |
| Newly acquired organizations. | 3 |
| Unnamed partnership or joint venture. | 3 |
| Separation of protected persons. | 3 |
| **Limits Of Coverage** | 3 |
| Total limit. | 3 |
| Each person limit. | 3 |
| How the limits of coverage apply to an extension of the policy period. | 3 |
| How the limits of coverage apply if the total limit is left blank. | 4 |
| **Exclusions – What This Agreement Won't Cover** | 4 |
| Intentional bodily injury or property damage. | 4 |
| Workers' compensation. | 4 |
| Employer's liability. | 4 |
| Loss of liquor license. | 4 |
| Product liability. | 4 |
| Other insurance. | 4 |
| **Other Insurance** | 5 |
| Methods of sharing. | 5 |

## What This Agreement Covers

**Liquor liability.** We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, loss of support, or property damage that:
• results from your selling, serving or furnishing of any alcoholic beverage;
• happens while this agreement is in effect; and
• is caused by an event.

*Protected person* means any person or organization qualifying as a protected person under the Who Is Protected Under This Agreement section.

*Damages* include pre-judgment interest awarded against the protected person on that part of any judgment paid by us.

*Bodily injury* means any physical harm, including sickness or disease, to the health of other persons. It also includes:
• mental anguish, injury or illness;
• care;
• loss of services; or
• death.
But only if they result from such harm.

*Loss of support* means the loss of income on which other persons depend for their standard of living.

*Property damage* means:
• physical damage to tangible property of others, including all resulting loss of use of that property; or
• loss of use of tangible property of others that isn't physically damaged.

*Event* means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered

injury or damage made or brought against any protected person. But we have no duty to perform other acts or services. And our duty to defend claims or suits ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

We'll have the right to investigate and settle any claim or suit if we believe that's proper.

*Claim* means a demand in which damages are alleged.

*Suit* means a civil proceeding in which damages are alleged. And it includes an arbitration proceeding for such damages to which you must submit or submit with our consent.

*Injury or damage* means bodily injury, loss of support, or property damage.

**Additional payments.** We'll have the duty to make only the payments shown below in connection with any claim or suit we defend. These payments are in addition to the Limits of Coverage. But our duty to make such payments ends when we've used up the limits of coverage that apply with the payment of judgments or settlements.

*Our expenses.* We'll pay all expenses we incur.

*Bonds to release property.* We'll pay the cost of bonds to release property that's being used to secure a legal obligation. But only for bond amounts within the limit of coverage that applies. We don't have to furnish such bonds.

*Expenses incurred by protected persons.* We'll pay all reasonable expenses that any protected person incurs at our request while helping us investigate or defend the claim or suit. But we won't pay more than $100 per day for earnings actually lost by the protected person because of time lost from work.

*Taxed costs.* We'll pay all costs for covered claims taxed against any protected person in the suit.

*Post-judgment interest.* We'll pay all interest that accumulates on the amount of a judgment for a covered claim. But only from the date of the judgment to the date we:

- pay;
- offer to pay; or
- deposit in court;

the limit of coverage that applies to the judgment.

*First aid expenses.* We'll pay the expenses incurred by any protected person for first aid to others at the time of an event that results in covered bodily injury.

## When This Agreement Covers

We'll apply this agreement to claims or suits for covered injury or damage whenever they're made or brought.

## Where This Agreement Covers

We'll defend claims or suits, or pay judgments or settlements, only in the coverage territory for covered injury or damage that happens there.

However, we'll also defend claims or suits, or pay judgments or settlements, in the coverage territory for covered injury or damage that happens in the rest of the world if such injury or damage results from your selling, serving or furnishing any alcoholic beverage in the coverage territory.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada. And it includes international waters or airspace only during travel or transportation between any of the above places.

## Who Is Protected Under This Agreement

**Individual.** If you are named in the Introduction as an individual, you and your spouse are protected persons only for the conduct of a business of which you are the sole owner.

**Partnership or joint venture.** If you are named in the Introduction as a partnership or joint venture, you are a protected person. Your partners or co-venturers and their spouses are protected persons only for the conduct of your business.

**Corporation or other organization.** If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers and directors are protected persons only for their duties as your officers or directors. And your stockholders are protected persons only for their liability as your stockholders.

**Employees.** Your employees are protected persons only for the conduct of your business within the scope of their employment by you.

However, your employees aren't protected persons for:
•Injury to you or to any fellow employee.
•Damage to property owned, rented, leased, occupied or borrowed by them, fellow employees, or any protected partner or co-venturer.

But this Employees protection section doesn't apply to your executive officers. The Corporation or other organization section applies to them.

**Newly acquired organizations.** Any organization that you acquire or form while this agreement is in effect is a protected person if you own at least 51% of it.

However, no newly acquired or formed organization is a protected person for:
•More than 90 days, or the remainder of the policy period, whichever is less, from the date that you acquire or form it.
•Injury or damage that results from an event that happened before you acquired or formed it.
•Injury or damage that's covered under any other insurance.

But this Newly acquired organizations protection section doesn't apply to a partnership or joint venture. Nor does it apply to any organization once it's named in the Introduction.

**Unnamed partnership or joint venture.** No person or organization is a protected person for the conduct of any current or past partnership or joint venture that's not named in the Introduction.

**Separation of protected persons.** This agreement applies:
•to each protected person named in the Introduction as if that protected person was the only one named there; and
•separately to each other protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section. Also, any right or duty specifically assigned to the first Named Insured remains unchanged. We explain those rights and duties in the General Rules, which is a part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay regardless of the number of:
•protected persons;
•claims made or suits brought; or
•persons or organizations making claims or bringing suits.

**Total limit.** This is the most we'll pay for all covered injury and damage that happens in a policy year.

*Policy year* means the policy period shown in the Introduction when the policy period is one year or less. But when the policy period is longer than one year, it means each consecutive annual period, and the remaining period if any, that the policy is in effect, starting with the date the policy begins.

**Each person limit.** This is the most we'll pay for all covered injury and damage that results from the selling, serving or furnishing of alcoholic beverages to any one person.

---

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for three years. During the last policy year you request a three month extension. We agree. As a result, your last policy year becomes 15 months. It will be subject to the same limits of coverage that applied when the policy year was 12 months.*

**How the limits of coverage apply if the total limit is left blank.** If the amount of the Total limit is left blank in the Coverage Summary, that Total limit will be considered to be the same as the Each person limit or $50,000, whichever is more.

## Exclusions – What This Agreement Won't Cover

**Intentional bodily injury or property damage.** We won't cover bodily injury or property damage that's expected or intended by any protected person.

But we won't apply this exclusion to intentional bodily injury or property damage that results from the use of reasonable force to protect people or property.

**Workers' compensation.** We won't cover any obligation that the protected person has under any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

**Employer's liability.** We won't cover injury to an employee arising out of and in the course of his or her employment by a protected person. Nor will we cover injury to the spouse, child, parent, brother or sister of that employee which results from the injury to the employee.

This exclusion applies whether the protected person may be held liable as an employer or in any other capacity, such as a property owner or product manufacturer.

This exclusion also applies to any obligation of the protected person to share damages with or repay someone else who must pay damages because of injury to any employee of the protected person.

**Loss of liquor license.** We won't cover injury or damage that results from your selling, serving or furnishing of any alcoholic beverage:
•while any required liquor license is suspended; or
•after any required liquor license expires, or is cancelled or revoked.

**Product liability.** We won't cover injury or damage that results from your products.

But we won't apply this exclusion to injury or damage that results from:
•any protected person causing or contributing to the intoxication of any person;
•the furnishing of alcoholic beverages to any person under the legal drinking age, or under the influence of alcohol; or
•any law or regulation concerning alcoholic beverages.

*Your products* mean goods or products that:
•you;
•others using your name; or
•others whose business or assets you've acquired;
have manufactured, sold, handled, distributed or disposed of, including containers, materials, parts or equipment provided in connection with your products. It includes warranties or statements made about the fitness, quality, durability or performance of your products.

**Other insurance.** We won't cover injury or damage that's covered by other insurance. Nor will we cover injury or damage that would be covered by other insurance but isn't because the limits of coverage under that insurance have been used up in the payment of judgments or settlements.

But we won't apply this exclusion if the other insurance is liquor liability insurance and specifically applies to covered injury or damage that results from the selling, serving or furnishing of any alcoholic beverage.

## Other Insurance

This agreement is primary insurance. If there is other valid and collectible insurance for injury and damage covered by this agreement, we'll share any damages with that other insurance using one of the methods of sharing described below.

**Methods of sharing.** We'll use one of the methods of sharing described below.

*Contribution by equal shares.* If all of the other insurance permits contribution by equal shares, we'll share the damages equally. But we won't pay more than the limits of coverage that apply under this agreement. If any policy reaches its limit before the entire amount of damages is paid, the remaining policies will share the balance equally until their limits have been used up or the amount of the damages is paid in full. For example:

*You are required by a court to pay damages of $1,000,000. Besides this agreement, two other policies apply to the judgment. The limit of this agreement is $500,000. Policy B has a $100,000 limit and Policy C's limit is $300,000.*

*First, $100,000 is subtracted from each policy's limit because that is the lowest limit provided by any of the three policies. The result: Policy B's limit is used up; the balance due on the judgment is $700,000; $400,000 remains of this agreement's limit; and the unused portion of Policy C's limit equals $200,000.*

*Next, $200,000 is subtracted from the limit on this agreement and Policy C because that amount equals the smallest amount of limit remaining on either policy after the initial $100,000 payment. The result: Policy C's limit is used up; the balance due on the judgment is now $300,000; and this agreement has $200,000 of its limit remaining.*

*Finally, the rest of the limit on this agreement is paid. The result: this agreement's limit is used up; the balance due on the judgment is now $100,000, which you must pay; and the total paid under each policy is: $500,000 this agreement, $100,000 Policy B and $300,000 Policy C.*

*Contribution by limits.* If any of the other insurance doesn't permit contribution by equal shares, we'll pay that portion of the damages equal to our percentage of the total of all limits that apply. But we won't pay more than the limits of coverage that apply under this agreement. For example:

*You are required by a court to pay damages of $600,000. Besides this agreement, another policy applies to the judgment. The limit of this agreement is $300,000 and Policy B has a $100,000 limit. The total limit of all insurance is $400,000.*

*Our limit is 75% ($300,000/$400,000) of the total limit. But we won't pay 75% of the judgment because that $450,000 share is more than our limit. We'll pay only our limit, which is $300,000.*

Exclusion Endorsement

---

This endorsement changes your Liquor Liability Protection.

HOW YOUR COVERAGE IS CHANGED

The following entity and location is excluded for coverage under this agreement.

EXCLUDED ENTITY AND LOCATION

Houston Mill House
849 Houston Mill Road
Atlanta, GA  30329

and

The Carter Center

OTHER TERMS

All other terms of your policy remain the same.

| Name of Insured | Policy Number HG07200110 | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 04/09/98  15:31  001 | |

40502 Ed.1-80 Printed In U.S.A.          –  ·   Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved                    Page    1

# TECHNOLOGY ERRORS AND OMISSIONS LIABILITY PROTECTION – CLAIMS-MADE COVERAGE SUMMARY

This Coverage Summary shows the limits of coverage, deductibles and retroactive date that apply to your Technology Errors And Omissions Liability Protection - Claims-Made. It also lists vendors of your computer or electronic products or services, if any, who are protected persons under that agreement.

| Limits Of Coverage | | Deductibles | |
|---|---|---|---|
| Each error limit. | $1,000,000. | Each error deductible. | $5,000. |
| Total limit. | $2,000,000. | Total deductible. | None |

**Important Note:** If none or zero is shown for the Total deductible, the total amount you'll be responsible for within the Each error deductible is not limited.

**Retroactive Date: ***

**Important Note:** If no date is shown above, we'll consider the retroactive date to be the same as the beginning date of your Technology Errors And Omissions Liability Protection - Claims-Made.

Vendor of your computer or electronic products or services:

*Retroactive Date
| | |
|---|---|
| 09/01/93 | QuantEM |
| 05/27/92 | CEqual software |
| 06/30/94 | PerfSPECTive |

| Name of Insured | Policy Number HG07200110 | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 04/09/98 15:31 001 | |

# TECHNOLOGY ERRORS AND OMISSIONS LIABILITY PROTECTION – CLAIMS-MADE COVERAGE SUMMARY

This Coverage Summary shows the limits of coverage, deductibles and retroactive date that apply to your Technology Errors And Omissions Liability Protection – Claims-Made. It also lists vendors of your computer or electronic products or services, if any, who are protected persons under that agreement.

| Limits Of Coverage | | Deductibles | |
|---|---|---|---|
| Each error limit. | $1,000,000. | Each error deductible. | $5,000. |
| Total limit. | $2,000,000. | Total deductible. | None |

**Important Note:** If none or zero is shown for the Total deductible, the total amount you'll be responsible for within the Each error deductible is not limited.

**Retroactive Date:** *

**Important Note:** If no date is shown above, we'll consider the retroactive date to be the same as the beginning date of your Technology Errors And Omissions Liability Protection – Claims-Made.

**Vendor of your computer or electronic products or services:**

*Retroactive Date

| | |
|---|---|
| 09/01/93 | QuantEM |
| 05/27/92 | CEqual software |
| 06/30/94 | PerfSPECTive |

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** RG07200110  **Effective Date** 01/01/98
Processing Date 04/09/98  15:31  001

This insuring agreement provides errors and omissions liability protection for your computer or electronic products or services. There are, of course, limitations and exclusions that apply to that protection. As a result, this agreement should be read carefully to determine the extent of the coverage provided to you and other protected persons.

*Important note.* This is a claims–made insuring agreement which includes defense expenses in the limits of coverage. A claim or suit must be first made or brought while this agreement is in effect, or during a reporting period, if one applies, to be covered. Please read this agreement carefully, especially the What This Agreement Covers; When This Agreement Covers and Limits Of Coverage sections.

| Table of Contents | Page |
|---|---|
| **What This Agreement Covers** | 1 |
| Technology errors and omissions liability. | 1 |
| Right and duty to defend. | 2 |
| Transfer of control of defense. | 3 |
| Additional payments. | 3 |
| Right to appeal. | 3 |
| **When This Agreement Covers** | 3 |
| During this agreement or the limited reporting period. | 3 |
| When we consider a claim or suit to be first made or brought. | 3 |
| When the limited reporting period will apply. | 4 |
| How the limited reporting period applies. | 4 |
| When and how an extended reporting period can be added. | 4 |
| How the extended reporting period applies. | 4 |
| How we'll figure the additional premium for the extended reporting period. | 4 |
| **Where This Agreement Covers** | 4 |
| **Who Is Protected Under This Agreement** | 5 |
| Individual. | 5 |
| Partnership or joint venture. | 5 |
| Corporation or other organization. | 5 |
| Employees. | 5 |
| Newly acquired organizations. | 5 |
| Separation of protected persons. | 5 |
| **Limits Of Coverage** | 5 |
| Each error limit. | 5 |
| Total limit. | 5 |
| How the limits of coverage apply to an extension of the policy period. | 5 |
| How the limits of coverage apply if the total limit is left blank. | 6 |
| How the limits of coverage apply to the limited and extended reporting periods. | 6 |

| | Page |
|---|---|
| **Deductibles** | 6 |
| Each error deductible. | 6 |
| Total deductible. | 6 |
| **Exclusions – What This Agreement Won't Cover** | 6 |
| Advertising injury. | 6 |
| Bodily injury. | 6 |
| Breach of security. | 6 |
| Contract liability. | 6 |
| Cost guarantees. | 7 |
| Criminal or intentionally wrongful acts or omissions. | 7 |
| Delay in delivery. | 7 |
| Employment-related practices. | 7 |
| Intellectual property. | 7 |
| Nuclear energy liability. | 7 |
| Penalties. | 8 |
| Personal injury. | 8 |
| Pollution. | 8 |
| Property damage. | 8 |
| Violation of trade law. | 8 |
| Voluntary payments or credits. | 8 |
| **Other Insurance** | 8 |
| Other primary insurance. | 8 |
| Excess insurance. | 9 |

## What This Agreement Covers

*Technology errors and omissions liability.* We'll pay amounts any protected person is legally required to pay as damages for covered loss that:

• results from your computer or electronic products or services; and
• is caused by an error committed on or after the retroactive date and before the ending date of this agreement.

*Protected person* means any person or organization who qualifies as a protected person

under the Who Is Protected Under This Agreement section.

*Damages* means:
- compensatory damages imposed by law;
- consequential damages incurred by the protected person under a contract or agreement; and
- prejudgment interest awarded against the protected person on a judgment in connection with those compensatory or consequential damages.

However, we won't consider the contract price of your computer or electronic products or services to be damages.

*Your computer or electronic products or services* means:
- any computer-related service for others, such as consulting, data processing, programming, software development, distribution and maintenance, and systems analysis or design, performed or provided by or for you;
- any electronic equipment or computer hardware or software developed, distributed, licensed, marketed or sold by or for you; and
- any service for others, including maintenance or repair, performed or provided by or for you in connection with any electronic equipment or computer hardware or software.

*Error* means any error, omission or negligent act.

*Retroactive date* means the earliest date that an error may be committed and cause loss covered under this agreement. This date is shown in the Coverage Summary.

However, if no retroactive date is shown, we'll consider the retroactive date to be the same as the beginning date of this agreement.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered loss made or brought against any protected person. We'll do so even if any of the allegations of any such claim or suit are groundless, false or fraudulent. But we have no duty to perform other acts or services. Also, our duty to defend claims or suits ends when we have used up the limits of coverage that apply with

the payment of judgments, settlements or defense expenses.

We'll have the right to investigate any claim or suit to the extent that we believe is proper. We'll also have the right to settle any claim or suit within:
- any deductible that applies; or
- the available limit of coverage.

*Claim* means a demand which seeks damages.

*Suit* means a civil proceeding which seeks damages. It includes:
- an arbitration proceeding for such damages to which the protected person must submit or submits with our consent; and
- any other alternative dispute resolution proceeding for such damages to which the protected person submits with our consent.

*Defense expenses* means only those fees, costs and expenses that result directly from the investigation, settlement or defense of a specific claim or suit. Such fees, costs and expenses include the following:
- Attorney fees, costs and expenses.
- The cost of legal proceedings.
- The cost of bonds to release property that's being used to secure a legal obligation. But we don't have to furnish these bonds.
- Expenses incurred by a protected person with our consent.
- The costs taxed against a protected person in a suit.

However, we won't consider any of the following to be defense expenses:
- Our expenses.
- Salaries and expenses of protected persons, other than expenses incurred by a protected person with our consent.
- Postjudgment interest.
- Appeal expenses.

*Expenses incurred by a protected person with our consent* means the reasonable expenses that a protected person incurs at our request while helping us investigate or defend a claim or suit. But we won't pay more than $250 per day for earnings actually lost by the protected person because of time taken off from work. We have no duty to pay any other expenses incurred by the protected person.

©St.Paul Fire and Marine Insurance Co.1994 All Rights Reserved

*Our expenses* means:
- salaries and expenses of our employees, including employed attorneys; and
- fees and expenses of independent adjusters that we hire.

*Postjudgment interest* means the interest that accumulates on a judgment from the date of the judgment to the date it is paid.

*Appeal expenses* means the expenses which result directly from the appeal of a judgment.

**Transfer of control of defense.** Before the available limit of coverage is used up, you may take over control of the defense of any outstanding claim or suit previously reported to us if we both agree, or if a court orders you to do so.

If the available limit of coverage is used up, we'll notify you as soon as we can of all outstanding claims or suits so that you can arrange to take over control of their defense.

We agree to take whatever steps are necessary during a transfer of control of defense of an outstanding claim or suit to continue that defense and avoid a default judgment during such transfer. When we take such steps, you agree that we don't waive or give up any of our rights under this agreement. You also agree to repay the reasonable expenses we incur for such steps taken after the available limit of coverage is used up.

**Additional payments.** We'll have the duty to make only the following payments in addition to the limits of coverage in connection with any claim or suit we defend:

*Our expenses.* We'll pay all of our expenses that we incur.

*Our postjudgment interest.* We'll pay all interest that accumulates on the full amount of that part of a judgment for which we make a payment. But only from the date of the judgment to the date we pay, or deposit in court, the limit of coverage that applies to the judgment. We have no duty to pay any other postjudgment interest.

**Right to appeal.** We'll have the right to appeal a judgment for covered loss in any suit we defend.

If we appeal such a judgment, we'll pay all expenses which result directly from that appeal, including the cost of appeal bonds and postjudgment interest. Such appeal expenses are in addition to the limits of coverage. However, the results of an appeal won't change the limits of coverage that apply under this agreement.

## When This Agreement Covers

**During this agreement or the limited reporting period.** We'll apply this agreement to claims or suits for covered loss only when they're first made or brought:
- while this agreement is in effect; or
- during the limited reporting period, if it applies.

*Limited reporting period* means the 90 days, starting with the ending date of this agreement, during which claims or suits for covered loss caused by errors committed on or after the retroactive date and before the ending date of this agreement may be first made or brought.

**When we consider a claim or suit to be first made or brought.** We'll consider a claim or suit for covered loss to be first made or brought on the earliest of the following dates:
- The date that we or any protected person receive a written claim or a written notice of suit.
- The date that we receive a notice of an error from any protected person. However, we won't accept such a notice unless it also describes what loss may result from the error.
- The date that any protected person could reasonably foresee that a claim or suit would be made or brought.

We consider it reasonable that a protected person could foresee a claim or suit being made or brought if one of your customers has done any of the following:
- Repeatedly complained to the protected person about one or more problems with your computer or electronic products or services.
- Sent their attorney a copy of one or more of the written complaints they had sent to the protected person.

The St.Paul logo appears at top left.

•Refused to pay all or part of your charges for those products or services.
•Advised the protected person that those products or services have failed to perform in compliance with your promises, representations and warranties.
•Demanded a refund of part or all of their payment for those products or services.
•Threatened to take legal action against you.

We'll also consider all claims or suits for covered loss caused by an error, or a series of related errors, to have been made or brought on the date that the first of those claims or suits was first made or brought.

*Series of related errors* means two or more errors, including repeated or continuous errors, that are related to the same loss.

**When the limited reporting period will apply.** The limited reporting period will apply if this agreement is canceled or not renewed for any reason. It may not be canceled once it applies.

However, the limited reporting period won't apply to claims or suits if other insurance you buy:
•applies to them; or
•would have applied to them but won't because its limits of coverage have been used up.

**How the limited reporting period applies.** The limited reporting period doesn't extend the time that this agreement is in effect. As a result, we'll consider any claim or suit first made or brought during the limited reporting period to have been made or brought on the ending date of this agreement.

**When and how an extended reporting period can be added.** If this agreement is canceled or not renewed for any reason, an extended reporting period can be added with an Extended Reporting Period Endorsement and the payment of an additional premium.

However, we won't issue the Extended Reporting Period Endorsement unless we receive a written request for it from the first named insured shown in the Introduction within 60 days after the ending date of this agreement. Nor will it take effect unless the additional

premium is paid when due. But once that premium is paid, the endorsement may not be canceled by you or us. And we'll consider the premium to be fully earned.

*Extended reporting period* means an unlimited period of time, starting with the ending date of this agreement, during which claims or suits for covered loss caused by errors committed on or after the retroactive date and before the ending date of this agreement may be first made or brought.

**How the extended reporting period applies.** The extended reporting period replaces the limited reporting period. Also, it doesn't extend the time that this agreement is in effect. As a result, we'll consider any claim or suit first made or brought during the extended reporting period to have been made or brought on the ending date of this agreement.

In addition, the extended reporting period will cause us to apply this agreement as excess insurance over certain other insurance. We explain when and how we'll do so in the Other Insurance section.

**How we'll figure the additional premium for the extended reporting period.** We'll figure the additional premium for the Extended Reporting Period Endorsement in accordance with our rules and rates. But we won't charge more than 200% of the annual premium for the last policy year of this agreement.

We explain what we mean by policy year in the Total limit section.

## Where This Agreement Covers

We'll defend claims and suits, and pay judgments, settlements and defense expenses, only in the coverage territory for covered loss caused by errors that are committed anywhere in the world.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada.

## Who Is Protected Under This Agreement

**Individual.** If you are named in the Introduction as an individual, you and your spouse are protected persons only for the conduct of a business of which you are the sole owner.

**Partnership or joint venture.** If you are named in the Introduction as a partnership or joint venture, you are a protected person. Your part-ners or co-venturers and their spouses are protected persons only for the conduct of your business.

However, no person or organization is a protected person for the conduct of any current or past partnership or joint venture that's not named in the Introduction.

**Corporation or other organization.** If you are named in the Introduction as a corporation or other organization, you are a protected person. Your executive officers and directors are protected persons only for their duties as your officers or directors. And your stockholders are protected persons only for their liability as your stockholders.

**Employees.** Your employees are protected persons only for work done within the scope of their employment by you.

But we won't apply this Employees section to your executive officers. Instead, we'll apply the Corporation or other organization section to them.

**Newly acquired organizations.** Any organization, other than a partnership or joint venture, that you acquire or form while this agreement is in effect, is a protected person if you own more than 50% of it.

However, no newly acquired or formed organ-ization is a protected person for:
•more than 90 days, or the remainder of the time this agreement is in effect, whichever is less, from the date that you acquire or form it, unless we agree that it should continue to be a protected person after the end of that period of time; or
•loss that's covered under other similar errors and omissions liability insurance.

**Separation of protected persons.** We'll apply this agreement separately to each protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section.

Also, any right or duty specifically assigned to the first named insured remains unchanged. We explain those rights and duties in the General Rules, which is a part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay, regardless of the number of:
•protected persons;
•claims made or suits brought; or
•persons or organizations making claims or bringing suits.

**Each error limit.** This is the most we'll pay as damages and defense expenses for all covered loss that is caused by any one error or series of related errors.

**Total limit.** This is the most we'll pay as damages and defense expenses for the combined total of all claims and suits for covered loss first made or brought in a policy year.

*Policy year* means the policy period shown in the Introduction, or the period of time this agreement is in effect, whichever is less. But when that period is longer than one year, it means each consecutive annual period, and the remaining period if any, that this agreement is in effect, starting with the beginning date of this agreement.

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for one year. During that policy year you request a three month*

extension. We agree. As a result, your
last policy year becomes 15 months. It
will be subject to the same limits of
coverage that applied when the policy year
was 12 months.

**How the limits of coverage apply If the total limit is
left blank.** If the amount of the Total limit is
left blank in the Coverage Summary, that total
limit will be considered to be the same as the
Each error limit or $100,000, whichever is more.

**How the limits of coverage apply to the limited
and extended reporting periods.** The limits of
coverage that apply on the ending date of this
agreement aren't renewed or increased for
claims or suits first made or brought during the
limited reporting period, or extended reporting
period, if it applies.

## Deductibles

The deductibles shown in the Coverage
Summary and the information contained in this
section fix the amount of damages and defense
expenses over which the limits of coverage will
apply, regardless of the number of:
•protected persons;
•claims made or suits brought; or
•persons or organizations making claims or
bringing suits.

**Each error deductible.** You'll be responsible for
the amount of damages and defense expenses
within this deductible for all covered loss that
is caused by each error or series of related
errors.

If we settle a claim or suit that's subject to this
deductible, we'll pay the deductible as part of
the settlement. You agree to repay us as soon
as we notify you of the settlement.

**Total deductible.** You'll be responsible for the
amount of damages and defense expenses
within this deductible for all claims and suits
for covered loss first made or brought in:
•a policy year; and
•the limited reporting period, or extended
reporting period, if it applies.

However, if none or zero is shown for the Total
deductible in the Coverage Summary, the total
amount you'll be responsible for within the Each
error deductible is not limited..

## Exclusions – What This Agreement Won't Cover

**Advertising injury.** We won't cover advertising
injury.

*Advertising injury* means injury, other than
bodily injury or personal injury, caused by an
advertising injury offense.

*Advertising injury offense* means any of the
following offenses:
•Libel or slander.
•Making known to any person or organization
written or spoken material that belittles the
products, work or completed work of others.
•Making known to any person or organization
written or spoken material that violates an indi-
vidual's right of privacy.
•Unauthorized taking or use of any advertising
idea, material, slogan, style or title of others.

We explain what we mean by:
•bodily injury in the Bodily injury exclusion; and
•personal injury in the Personal injury exclu-
sion.

**Bodily injury.** We won't cover bodily injury.

*Bodily injury* means any harm, including sick-
ness or disease, to the health of other persons.
It includes:
•Mental anguish, injury or illness.
•Emotional distress.
•Care, loss of services, or death.

**Breach of security.** We won't cover loss that
results from any failure of your computer or
electronic products or services to prevent unau-
thorized access to or use of a computer or elec-
tronic system or program.

**Contract liability.** We won't cover loss for which
the protected person is legally required to pay
damages because of liability assumed under
any contract or agreement.

However, we won't apply this exclusion to:

•loss for which the protected person would be legally required to pay damages without the contract or agreement; or
•consequential damages incurred by the protected person under a contract or agreement.

**Cost guarantees.** We won't cover loss that results from any:
•cost guarantee or probable cost estimate being exceeded; or
•cost overrun.

**Criminal or intentionally wrongful acts or omissions.** We won't cover loss that results from any criminal, dishonest, fraudulent or other intentionally wrongful act or omission committed by anyone with the consent or knowledge of you or any of your partners, directors or executive officers.

For example:

*Without your knowledge, one of your employees deliberately causes a product to be released with a virus. The virus results in your customer incurring a loss. We won't apply this exclusion to a claim made against you by your customer for that loss. However, we won't protect the employee.*

**Delay in delivery.** We won't cover loss that results from any:
•delay in delivery of; or
•failure to deliver;
your computer or electronic products or services.

For example:

*You promise to have a software product ready for a customer by a certain date. A delay in your development of that product makes you unable to have it ready by the date promised. As a result of not having that software, your customer loses sales. We won't cover such loss.*

**Employment-related practices.** We won't cover loss that is sustained by a person and results from any:
•refusal to employ that person;
•termination of that person's employment; or
•other employment-related act, omission, policy or practice, such as coercion, defama-

tion, demotion, discipline, discrimination, evaluation, harassment, humiliation or reassignment, directed at that person.

Nor will we cover loss sustained by the spouse or any child, parent, brother or sister of that person if such loss results from the loss sustained by that person.

We'll apply this exclusion whether the protected person may be held liable as an employer or in any other capacity.

We'll also apply this exclusion to any obligation of the protected person to share damages with or to repay someone else who must pay damages because of such loss.

**Intellectual property.** We won't cover loss that results from any actual or alleged infringement or violation of any:
•copyright;
•patent;
•trade dress;
•trade name;
•trade secret;
•trademark; or
•other intellectual property right or law.

**Nuclear energy liability.** We won't cover loss for which any protected person:
•is covered by a nuclear energy liability policy; or
•would have been covered by such policy if that policy's limits of coverage hadn't been used up.

Nor will we cover loss that results from the hazardous properties of nuclear material.

*Nuclear energy liability insurance policy* means any nuclear energy liability insurance policy issued by:
•Nuclear Energy Liability Insurance Association;
•Mutual Atomic Energy Liability Underwriters;
•Nuclear Insurance Association of Canada; or
•any of their successors.

*Hazardous properties* include radioactive, toxic or explosive properties.

*Nuclear material* means any nuclear material defined in the federal Atomic Energy Act, or any of its amendments.

**Penalties.** We won't cover any penalty you have agreed to pay your customer for any reason.

**Personal injury.** We won't cover personal injury.

*Personal injury* means injury, other than bodily injury or advertising injury, caused by a personal injury offense.

*Personal injury offense* means any of the following offenses:
•False arrest, detention or imprisonment.
•Malicious prosecution.
•Wrongful entry or wrongful eviction.
•Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
•Libel or slander.
•Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.
•Making known to any person or organization written or spoken material that violates an individual's right of privacy.

**Pollution.** We won't cover loss that results from pollution.

Nor will we cover any loss, cost or expense that results from any:
•request, demand or order that any protected person or others perform pollution work; or
•claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

*Pollution* means any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant.

*Pollutant* means any solid, liquid, gaseous or thermal irritant or contaminant, including:
•smoke, vapors, soot, fumes;
•acids, alkalis, chemicals; or
•waste.

*Waste* includes materials to be recycled, reconditioned or reclaimed.

*Pollution work* means
•the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing of any pollutant; or
•the responding to, or assessing, in any way the effects of any pollutant.

**Property damage.** We won't cover property damage.

*Property damage* means:
•physical damage to tangible property of others, including all resulting loss of use of that property; or
•loss of use of tangible property of others that isn't physically damaged if such loss of use is caused by an event.

*Tangible property* does not include data.

*Event* means an accident, other than an error. It includes continuous or repeated exposure to substantially the same general harmful conditions.

**Violation of trade law.** We won't cover loss that results from any actual or alleged violation of any federal or state anti-trust, restraint of trade or unfair trade practices law.

**Voluntary payments or credits.** We won't cover any voluntary payment or credit to any of your customers. For example:

*In response to a customer's complaint, you've agreed to pay the customer $200 for each day that a software system you sold that customer was not up and running after it was delivered. We won't cover such payments.*

**Other Insurance**

This agreement is primary insurance. If there is any other valid and collectible insurance for loss covered by this agreement, the following applies:

**Other primary insurance.** When there is other primary insurance for loss covered by this agreement we'll pay that portion of the damages which:
•exceeds the deductible; and
•equals our percentage of the total of all limits of coverage that apply.
But we won't pay more than the limit of coverage that applies under this agreement. For example:

*The limit of coverage under this agreement is $100,000. Another insurance policy with a limit of $25,000 also covers loss covered by this agreement. We won't pay more than 80% ($100,000/$125,000) of the loss, less any deductible.*

However, if the extended reporting period applies, we'll apply this agreement as excess insurance over any part of any other valid and collectible insurance that:
•is available under any policy in effect during the extended reporting period; and
•provides coverage for claims or suits for covered loss first made or brought during the extended reporting period.

We'll do so whether such other insurance applies on a primary, excess, contingent or any other basis.

We explain how we'll apply this agreement as excess insurance in the Excess insurance section.

**Excess insurance.** When this agreement is excess insurance, we'll have no duty to defend any claim or suit that any other insurer has a duty to defend. However, we'll defend a claim or suit for covered loss if the other insurers won't. In return, we'll require that the protected persons give us all of their rights against those insurers.

Also, we'll pay only the amount of damages that's in excess of:
•the total amount that all such other insurance would pay if this agreement didn't exist; and
•the total of all deductible and self-insured amounts under all such other insurance.

However, we'll share such excess loss with any other insurance that:
•isn't described in the Other primary insurance section ; and
•wasn't bought specifically to apply in excess of the limits of coverage shown in the Coverage Summary.

But we won't pay more than the limit of coverage that applies under this agreement.

*This endorsement changes your Technology Errors And Omissions Liability Protection - Claims-Made.*

## How Coverage Is Changed

The following is added to the Exclusions–What This Agreement Won't Cover section. This change excludes coverage.

**Developmental risk.** We won't cover loss that results from any error committed before or during the pre-release phase of your computer or electronic products or services.

However, following the pre-release phase, we will cover loss from released software that results from errors committed anytime during the policy period.

For example:

*You are in the process of developing a software system for your customer. As part of a testing process before acceptance, your customer is using the software to determine if it is compatible with the customers needs. We won't cover any loss that results from that software or its testing.*

*Pre-release phase* means:

- the period of time before acceptance by your customer; or
- the period of time before acceptance of portions of your product, where by agreements, your customer agrees to periodically accept portions of your product.

## Other Terms

All other terms of your policy remain the same.

©St.Paul Fire and Marine Insurance Co.1996 All Rights Reserved

## PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT – TECHNOLOGY ERRORS AND OMISSIONS LIABILITY

This endorsement changes your Technology Errors And Omissions Liability Protection – Claims-Made.

### How Coverage Is Changed

The following is added to the Exclusions – What This Agreement Won't Cover section. This change excludes coverage.

**Professional services.** We won't cover loss that results from the performance of or failure to perform professional services by or for the protected person while acting or working as an:
- accountant;
- architect;
- health care provider;
- lawyer; or
- structural engineer.

### Other Terms

All other terms of your policy remain the same.

This endorsement changes your Computer Services And Software Errors and Omissions Liability Protection – Claims Made.

## How Coverage Is Changed

The following is added to the When This Agreement Covers Section. This change broadens coverage.

**3. Extended reporting period for certain claims or suits for bodily injury or tangible property damage.** We'll apply this agreement to certain claims or suits for covered bodily injury or tangible property damage first made or brought on or anytime after the ending date of the limited reporting period. But we'll do so only if such claims or suits are for covered bodily injury or tangible property damage that:
•result from errors committed by you or other protected persons while this agreement, or any previous agreement which has been continuously renewed with us, was in effect;
•happened while this agreement, or any previous agreement which has been continuously renewed with us, was in effect; and
•is subject to the Computer Services and Software Liability Endorsement (43617 Ed 1-86).

This endorsement doesn't extend the time that this agreement is in effect. Also, the limits of coverage that apply on the ending date of this agreement aren't renewed or increased for claims or suits first made or brought on or after that date.

*Bodily injury* means any harm to the health of other persons, including physical harm, sickness or disease, and mental anguish, injury or illness. And it includes care, loss of services, or death, that results from such harm.

*Limited reporting period* means the 60 days, starting with the ending date of this agreement, during which claims or suits for covered bodily injury or tangible property damage may be first made or brought.

## Other Terms

All other terms of your policy remain the same.

This Coverage Summary shows the limits of
coverage and deductibles that apply to your
Law Enforcement Liability Protection. It also
lists those endorsements, if any, that must have
certain information shown for them to apply.

| Limits Of Coverage | | Deductibles | |
|---|---|---|---|
| Total limit. | $ 3,000,000. | Each wrongful act deductible. | $ 5,000. |
| Each wrongful act limit. | $ 1,000,000. | Total deductible. | |

**Important Note:** If a Total deductible is not
shown, the total amount you'll be responsible
for within the other deductible is not limited.

**Named Endorsement Table**

**Important Note:** Only endorsements that must have certain information shown for them to apply
are named in this table. The required information follows the name of each such endorsement.
Other endorsements may apply too. If so, they're listed on the Policy Forms List.

| Name of Insured | Policy Number HG07200110 | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 04/09/98  15:31  001 | |

47335 Ed.12-92 Printed in U.S.A.               Coverage Summary
©St.Paul Fire and Marine Insurance Co.1992 All Rights Reserved               Page 1 of 2

This insuring agreement provides professional liability protection for the conduct of law enforcement duties by or for your law enforcement agency. There are, of course, limitations and exclusions which apply to that protection. As a result, this agreement should be read carefully to determine the extent of the coverage provided to you and other protected persons.

| Table of Contents | Page |
|---|---|
| **What This Agreement Covers** | 1 |
| Right and duty to defend. | 2 |
| Additional payments. | 2 |
| Right to appeal. | 3 |
| **When This Agreement Covers** | 3 |
| **Where This Agreement Covers** | 3 |
| **Who Is Protected Under This Agreement** | 3 |
| Public entity. | 3 |
| Elected or appointed officials. | 3 |
| Employees. | 3 |
| Volunteer workers. | 3 |
| Separation of protected persons. | 3 |
| **Limits Of Coverage** | 4 |
| Total limit. | 4 |
| Each wrongful act limit. | 4 |
| How the limits of coverage apply to an extension of the policy period. | 4 |
| How the limits of coverage apply if the Total limit is left blank. | 4 |
| **Deductibles** | 4 |
| Each wrongful act deductible. | 4 |
| Total deductible. | 4 |
| **Exclusions – What We Won't Cover** | 4 |
| Aircraft, auto, mobile equipment. | 4 |
| Contract liability. | 5 |
| Control of property. | 5 |
| Criminal or dishonest acts. | 5 |
| Employer's liability. | 5 |
| Employment-related practices. | 5 |
| Health care professional services. | 5 |
| Injury to volunteer workers. | 5 |
| Liquor liability. | 5 |
| Nuclear energy liability. | 6 |
| Pollution. | 6 |
| Workers' compensation. | 6 |
| **Other Insurance** | 6 |

## What This Agreement Covers

We'll pay amounts any protected person is legally required to pay as damages for covered injury or damage that:

*results from the conduct of law enforcement duties by or for your law enforcement agency;
*happens while this agreement is in effect; and
*is caused by a wrongful act.

*Protected person* means any person or organization who qualifies as a protected person under the Who Is Protected Under This Agreement Section.

*Injury or damage* means bodily injury, personal injury or property damage.

*Bodily injury* means any harm to the health of other persons. It includes care, loss of services, or death, that results from such harm.

*Harm* includes any of the following:
*Physical harm, sickness or disease.
*Mental anguish, distress, injury or illness.
*Emotional distress.
*Humiliation.

*Personal injury* means injury, other than bodily injury, caused by any of the following wrongful acts:
*False arrest, detention or imprisonment.
*Malicious prosecution.
*Wrongful entry or wrongful eviction.
*Invasion of the right of private occupancy of a room, dwelling or premises that a person occupies.
*Libel or slander.
*Making known to any person or organization written or spoken material that belittles the products, work or completed work of others.

©St.Paul Fire and Marine Insurance Co.1992 All Rights Reserved

- Making known to any person or organization written or spoken material that violates an individual's right of privacy.
- False or improper service of process.
- Violation of civil rights protected under any federal, state or local law.

*Property damage* means:
- physical damage to tangible property of others, including all resulting loss of use of that property; or
- loss of use of tangible property of others that isn't physically damaged.

We'll consider all loss of use of damaged tangible property to happen at the time of the physical damage which caused it. And we'll consider all loss of use of undamaged tangible property to happen at the time of the wrongful act which caused it.

*Law enforcement duties* mean any of the duties or obligations that must be performed or fulfilled by or for your law enforcement agency in order to enforce or carry out local, state or federal government laws or regulations. They include the following:
- Ownership, maintenance or use of a premises that you own, rent or lease in order to perform or fulfill such duties or obligations.
- Providing first aid at the time of an accident or crime.

*Your law enforcement agency* means a police or sheriff's department that:
- is considered to be part of you; or
- is your legal responsibility.

*Wrongful act* means any error, omission or negligent act.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered injury or damage made or brought against any protected person. We'll do so even if any of the allegations of any such claim or suit are groundless, false or fraudulent. But we have no duty to perform other acts or services. And our duty to defend claims or suits ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

We'll have the right to investigate any claim or suit to the extent that we believe is proper.

We'll also have the right to settle any claim or suit within the available limits of coverage.

*Claim* means a demand which seeks damages.

*Suit* means a civil proceeding which seeks damages. It includes:
- an arbitration proceeding for such damages to which the protected person must submit or submits with our consent; and
- any other alternative dispute resolution proceeding for such damages to which the protected person submits with our consent.

**Additional payments.** We'll have the duty to make only the payments shown below in connection with any claim or suit we defend. These payments are in addition to the limits of coverage. But our duty to make such payments ends when we have used up the limits of coverage that apply with the payment of judgments or settlements.

*Our expenses.* We'll pay all expenses we incur.

*Bonds to release property.* We'll pay the costs of bonds to release property that's being used to secure a legal obligation. But only for bond amounts within the limit of coverage that applies. We don't have to furnish such bonds.

*Expenses incurred by protected persons.* We'll pay all reasonable expenses that any protected person incurs at our request while helping us investigate or defend a claim or suit. But we won't pay more that $250 per day for earnings actually lost by the protected person because of time taken off from work.

*Prejudgment interest.* We'll pay the prejudgment interest that's awarded against the protected person on that part of a judgment paid by us. But if we make a settlement offer to pay the available limit of coverage, we won't pay the prejudgment interest that accumulates after the date of our offer.

*Postjudgment interest.* We'll pay all interest that accumulates on the full amount of that part of a judgment for which we make a payment. But only from the date of the judgment to the date we:
- pay;
- offer to pay; or

St.Paul Fire and Marine Insurance Co.1992 All Rights Reserved

- deposit in court;

the limit of coverage that applies to the judgment.

**Right to appeal.** We'll have the right to appeal a judgment for covered injury or damage in any suit we defend.

If we appeal such a judgment, we'll pay all expenses which result directly from that appeal, including the cost of appeal bonds and postjudgment interest. Such appeal expenses are in addition to the limits of coverage. However, the results of an appeal won't change the limits of coverage that apply under this agreement.

## When This Agreement Covers

We'll apply this agreement to claims or suits for covered injury or damage whenever they're made or brought.

## Where This Agreement Covers

We'll defend claims and suits, and pay judgments and settlements, only in the coverage territory for covered injury or damage caused by wrongful acts that are committed there.

However, we'll also defend claims and suits, and pay judgments and settlements, in the coverage territory for covered injury or damage caused by wrongful acts that are committed in the rest of the world. But only if they result from the conduct of law enforcement duties by a person who:
- has a home in the coverage territory; and
- is away for a short time on your business.

*Coverage territory* means the United States of America, its territories and possessions, Puerto Rico and Canada. It includes international waters or airspace only during travel or transportation between any of the above places.

## Who Is Protected Under This Agreement

**Public entity.** If you are a public entity named in the Introduction, you are a protected person only for the conduct of law enforcement duties by or for your law enforcement agency.

**Elected or appointed officials.** Your lawfully elected or appointed officials are protected persons only for the conduct of law enforcement duties within the scope of their duties as officials for your law enforcement agency.

**Employees.** Your employees are protected persons only for the conduct of law enforcement duties within the scope of their employment by you in your law enforcement agency.

However, no employee is a protected person for bodily injury or personal injury to:
- any fellow employee; or
- the spouse or any child, parent, brother or sister of that fellow employee if such injury results from the bodily injury or personal injury to the fellow employee.

**Volunteer workers.** Your volunteer workers are protected persons only for the conduct of law enforcement duties within the scope of their duties for your law enforcement agency.

**Separation of protected persons.** We'll apply this agreement:
- to each protected person named in the Introduction as if that protected person was the only one named there; and
- separately to each other protected person.

However, the limits of coverage shown in the Coverage Summary are shared by all protected persons. We explain how in the Limits Of Coverage section. Also, any right or duty specifically assigned to the first Named Insured remains unchanged. We explain those rights and duties in the General Rules, which is part of your policy.

## Limits Of Coverage

The limits shown in the Coverage Summary and the information contained in this section fix the most we'll pay regardless of the number of:
- protected persons;
- claims made or suits brought; or
- persons or organizations making claims or bringing suits.

**Total limit.** This is the most we'll pay for all covered injury or damage that:
- happens in a policy year; and
- is caused by all wrongful acts.

*Policy Year* means the policy period shown in the Introduction when the policy period is one year or less. But when the policy period is longer than one year, it means each consecutive annual period, and the remaining period if any, that the policy is in effect, starting with date the policy begins.

**Each wrongful act limit.** This is the most we'll pay for all covered injury or damage that:
- *happens in a policy year;* and
- is caused by any one wrongful act or series of related wrongful acts.

*Series of related wrongful acts* means two or more wrongful acts, including repeated or continuous wrongful acts, that are related to the same injury or damage.

**How the limits of coverage apply to an extension of the policy period.** If the original policy period shown in the Introduction is extended for less than 12 months, each extended period will be considered to be part of the last policy year. For example:

*Your policy period is for three years. During the last policy year you request a three month extension. We agree. As a result, your last policy year becomes 15 months. It will be subject to the same limits of coverage that applied when the policy year was 12 months.*

**How the limits of coverage apply if the Total limit is left blank.** If the amount of the Total limit is left blank in the Coverage Summary, that total limit will be considered to the same as the each

wrongful act limit or $100,000, whichever is more.

## Deductibles

The deductibles shown in the Coverage Summary and the information contained in this section fix the amount of damages over which the limits of coverage will apply, regardless of the number of:
- protected persons;
- claims made or suits brought; or
- persons or organizations making claims or bringing suits.

**Each wrongful act deductible.** You'll be responsible for the amount of damages within this deductible for all covered injury or damage that's caused by each wrongful act or series of related wrongful acts.

We can pay the deductible to settle a claim or suit. If we do, you agree to repay us as soon as we notify you of the settlement.

**Total deductible.** This is the most you'll be responsible for within the each wrongful act deductible in a policy year, regardless of how often that deductible applies.

However, if an amount is not shown for the Total deductible in the Coverage Summary, the total amount you'll be responsible for within the each wrongful act deductible is not limited.

## Exclusions – What We Won't Cover

**Aircraft, auto, mobile equipment.** We won't cover injury or damage that results from the:
- ownership, maintenance, use or operation;
- loading or unloading; or
- entrustment to others;
of any aircraft, auto or mobile equipment owned, operated, rented, leased, hired or borrowed by any protected person.

*Auto* means any land motor vehicle, trailer or semitrailer designed for travel on public streets

or roads. It includes any permanently attached machinery or equipment.

*Mobile equipment* means any land vehicle other than an auto.

**Contract liability.** We won't cover the protected person's liability for injury or damage assumed under any contract or agreement.

However, we won't apply this exclusion to liability for injury or damage the protected person would have without the contract or agreement. Nor will we apply this exclusion to the protected person's liability for injury or damage assumed under a mutual law enforcement assistance agreement or contract made before the wrongful act which causes such injury or damage is committed.

**Control of property.** We won't cover property damage to the following property:
•Property you own, rent, lease, occupy or borrow.
•Personal property in the care, custody or control of any protected person.

**Criminal or dishonest acts.** We won't cover injury or damage that results from any criminal, dishonest or fraudulent act or omission committed:
•by the protected person; or
•with the consent or knowledge of the protected person.

**Employer's liability.** We won't cover bodily injury to an employee arising out of and in the course of his or her employment by a protected person. Nor will we cover bodily injury to the spouse, child, parent, brother or sister of that employee or worker which results from the bodily injury to the employee.

We'll apply this exclusion whether the protected person may be held liable as an employer or in any other capacity, such as a property owner.

We'll also apply this exclusion to any obligation of the protected person to share damages with or repay someone else who must pay damages because of bodily injury to any employee of the protected person.

**Employment-related practices.** We won't cover bodily injury or personal injury that results from:
•refusal to employ;
•termination of employment; or
•coercion, defamation, demotion, discipline, discrimination, evaluation, harassment, humiliation, reassignment or other employment-related acts or omissions, policies or practices.

We'll apply this exclusion whether the protected person may be held liable as an employer or in any other capacity.

We'll also apply this exclusion to any obligation of the protected person to share damages with or to repay someone else who must pay damages because of such injury.

**Health care professional services.** We won't cover injury or damage that results from the performance of or failure to perform health care professional services.

However, we won't apply this exclusion to the protected person's providing of or failure to provide first aid at the time of an accident or crime.

*Health care professional services* include:
•dental, medical, mental, nursing, surgical, x-ray and other health care professional services, including food or beverages provided with those services;
•the dispensing of drugs or medical or dental supplies and appliances; and
•the handling or treatment of corpses, including autopsies, organ donations and other postmortem procedures.

**Injury to volunteer workers.** We won't cover bodily injury or personal injury to any volunteer worker who is injured in the conduct of law enforcement duties within the scope of their duties for you.

**Liquor liability.** We won't cover injury or damage that results from any protected person:
•causing or contributing to the intoxication of any person;
•selling, serving or furnishing alcoholic beverages to any person under the legal drinking age or under the influence of alcohol; or

•violating any law or regulation applying to the sale, gift, distribution or use of alcoholic beverages.

**Nuclear energy liability.** We won't cover injury or damage that results from the hazardous properties of any nuclear material.

*Hazardous properties* include radioactive, toxic or explosive properties.

*Nuclear material* means any nuclear material defined in the Federal Atomic Energy Act, or any of its amendments.

**Pollution.** We won't cover injury or damage that results from pollution.

We also won't cover any loss, cost or expense that results from:
•any request, demand or order that any protected person or others perform pollution work; or
•any claim or suit by or for any governmental authority for damages that result from the performance of pollution work.

*Pollution* means any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant.

*Pollutant* means any solid, liquid, gaseous or thermal irritant or contaminant, including:
•smoke, vapors, soot, fumes;
•acids, alkalis, chemicals; and
•waste.

*Waste* means materials to be recycled, reconditioned or reclaimed.

*Pollution work* means:
•the testing for, monitoring, cleaning up,

removing, containing, treating, detoxifying or neutralizing of any pollutant; or
•the responding to, or assessing, in any way the effects of any pollutant.

**Workers' compensation.** We won't cover any obligation that the protected person has under a workers' compensation, disability benefits or unemployment compensation law, or any similar law.

### Other insurance

This agreement is primary insurance. If there is any other valid and collectible insurance for injury or damage covered by this agreement, we'll pay the portion of the damages which:
•exceed the deductible that applies; and
•equals our percentage of the total of all limits that apply.

But we won't pay more than the limits of coverage that apply under this agreement. For example:

*You are required by a court to pay damages of $100,000. The limit of coverage under this agreement is $100,000. And the deductible is $1,000. Another insurance policy with a limit of $100,000 also applies. The total limit of insurance is $200,000.*

*Our limit is 50% ($100,000/$200,000) of the total limit. But we won't pay 50% of $100,000, which is equal to $50,000. We'll pay only $49,500, which is equal to 50% of the amount of the judgment that exceeds our $1,000 deductible ($100,000 − $1,000 = $99,000).*

Law Enforcement Duties Endorsement

This endorsement changes your Law Enforcement Liability Protection.

HOW COVERAGE IS CHANGED

The following replaces the definition of Law enforcement duties under What This Agreement Covers section. This changes broadens the definition of Law enforcement duties.

Law Enforcement Duties mean any of the duties or obligations that must be performed or fulfilled by or for your law enforcement agency in order to enforce or carry out local, state or federal government laws or regulations and Emory University policies and procedures. They include the following:

*   Ownership, maintenance or use of a premises that you own, rent or lease in order to perform or fulfill such duties or obligations.

*   Providing first aid at the time of an accident or crime.

OTHER TERMS

All other terms of your policy remain the same.

| | | |
|---|---|---|
| **Name of Insured**<br>EMORY UNIVERSITY | **Policy Number** HG07200110<br>**Processing Date** 04/09/98  15:31  001 | **Effective Date** 01/01/98 |

Fellow Employee Endorsement

This endorsement changes your Law Enforcement Liability Protection.

HOW COVERAGE IS CHANGED

The following replaces the Employees section under Who Is Protected Under This Agreement. This change clarifies who is considered a fellow employee.

EMPLOYEES.   Your employees are protected persons only for the conduct of law enforcement duties within the scope of their employment by you in your law enforcement agency.

However, no employee is a protected person for bodily injury or personal injury to:

*   any fellow employee of the Emory University Police Department; or

*   the spouse or any child, parent, brother or sister of that fellow employee if such injury results from the bodily injury or personal injury to the fellow employee.

OTHER TERMS

All other terms of your policy remain the same.

| | |
|---|---|
| **Name of Insured**<br>EMORY UNIVERSITY | **Policy Number** BG07200110      **Effective Date** 01/01/98<br>**Processing Date** 04/09/98   15:31   001 |

Contract Liability Limitation Endorsement

---

This endorsement changes your Law Enforcement Liability Protection.

HOW COVERAGE IS CHANGED

The following replaces Contract liability under Exclusions – What We Won't Cover section. This change broadens coverage.

CONTRACT LIABILITY. We won't cover the protected persons liability for injury or damage assumed under any contract or agreement.

However, we won't apply this exclusion to liability for injury or damage the protected person would have without the contract or agreement. Nor will we apply this exclusion to the protected person's liability for injury or damage assumed under a mutual law enforcement assistance agreement or contract made before the wrongful act which causes such injury or damage is committed. Nor will we apply this exclusion to the protected person's liability for injury or damage assumed under contracts relating to cooperative policing efforts with DeKalb County.

OTHER TERMS

All other terms of your policy remain the same.

---

**Name of Insured**
EMORY UNIVERSITY

**Policy Number** HG07200110
**Processing Date** 04/09/98  15:31  001

**Effective Date** 01/01/98

---

40502 Ed.1-80 Printed in U.S.A.                    Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved                    Page    1

Limiting Endorsement

---

This endorsement changes your Technology Errors And Omissions Liability Protection - Claims-Made.

HOW YOUR COVERAGE IS CHANGED

This endorsement limits your coverage as described below.

Your Technology Errors And Omissions Liability Protection - Claims-Made only applies to the CEqual Software, the QuantEM software and the PerSPECTIVE Software.

OTHER TERMS

All other terms of your policy remain the same.

---

| Name of Insured | Policy Number HG07200110 | Effective Date 01/01/98 |
|---|---|---|
| EMORY UNIVERSITY | Processing Date 04/09/98  15:31  001 | |

40502 Ed.1-80 Printed in U.S.A.          Customized Form
©St.Paul Fire and Marine Insurance Co.1980 All Rights Reserved          Page    1