N O T I C E
- - - - - -

To: Nisbet Stovall Kendrick III, Esq.
    Womble Carlyle Sandridge & Rice
    One Atlantic Center, Suite 3500
    1201 West Peachtree Street, N.E.
    Atlanta, GA  30309


February 26, 2003


UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Emory University, et al,

               plaintiff                    CIVIL ACTION

        v.                                  NO. 1:2-cv-1181-GET

St. Paul Fire and Casualty Company, et al,

               defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
--------------------------------------------

On 2/21/03, Emory University, et al,

filed a motion for  summary judgment in this Court, case document

number 43.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

ι |ι)

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To: Kelly Amanda Lee, Esq.
    Womble Carlyle Sandridge & Rice
    One Atlantic Center, Suite 3500
    1201 West Peachtree Street, N.E.
    Atlanta, GA  30309


February 26, 2003


UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Emory University, et al,

                    plaintiff              CIVIL ACTION

            v.                             NO. 1:2-cv-1181-GET

St. Paul Fire and Casualty Company, et al,

                    defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
--------------------------------------------

        On 2/21/03, Emory University, et al,

filed a motion for  summary judgment in this Court, case document

number 43.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-

sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk<br>
United States District Court<br>
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To: Michael F. Hanson, Esq.
    Womble Carlyle Sandridge & Rice
    One Atlantic Center, Suite 3500
    1201 West Peachtree Street, N.E.
    Atlanta, GA 30309


February 26, 2003


UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Emory University, et al,

                plaintiff                    CIVIL ACTION

        v.                                   NO. 1:2-cv-1181-GET

St. Paul Fire and Casualty Company, et al,

                defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
--------------------------------------------

On 2/21/03, Emory University, et al,

filed a motion for summary judgment in this Court, case document
number 43.

        Pursuant to this Court's order dated April 14, 1987, opposing coun-
sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

> Luther D. Thomas, Clerk
> United States District Court
> Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To:  David Russell Smith, Esq.
     Bovis Kyle & Burch
     Suite 300
     53 Perimeter Center East
     Atlanta, GA  30346-2298


February 26, 2003


UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Emory University, et al,

           plaintiff                 CIVIL ACTION

      v.                           NO. 1:2-cv-1181-GET

St. Paul Fire and Casualty Company, et al,

           defendant


NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION
---------------------------------------------

On 2/21/03, Emory University, et al,

filed a motion for  summary judgment in this Court, case document
number 43.

Pursuant to this Court's order dated April 14, 1987, opposing coun-
sel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

# ORIGINAL

FILED IN CLERK'S OFFICE

FEB 2 1 2003

*[illegible clerk stamp]*, Clerk
By: *[signature]* Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| EMORY UNIVERSITY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. as subrogee of Emory University, | ) ) ) ) ) | CIVIL ACTION FILE NO. 1:02-CV-1181-GET |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ST. PAUL FIRE AND CASUALTY COMPANY and ST. PAUL MERCURY INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

---

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' DUTY TO DEFEND THE UNDERLYING RICO/WHISTLEBLOWER ACTION

**COME NOW**, Emory University ("Emory") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") (collectively "Plaintiffs"), Plaintiffs in the above-styled action, and pursuant to Fed. R. Civ. P. 56 and Northern District of Georgia Local Rule 56.1, hereby move this Court for Summary Judgment against Defendants St. Paul Fire and Casualty Company ("St. Paul Fire") and St. Paul Mercury Insurance Company ("St. Paul Mercury")

(collectively "St. Paul" or "Defendants") and show the Court there are no material facts in dispute and Plaintiffs are entitled to judgment as a matter of law.

1.

As there exist no genuine issue of material fact that St. Paul Mercury's Commercial General Liability Protection Policy Numbers HG 0720088, HG 0720088-renewed and 07200110, with a combined policy period of January 1, 1996 to February 1, 1999 (the "CGL Policies"), pursuant to the Personal Injury Liability and Property Damage Liability provisions of said Policies, obligated St. Paul Mercury to defend Emory and its doctors in the lawsuit entitled <u>James J. Murtagh, Jr. v. Fulton-DeKalb Hospital Authority, Emory University, William J. Casarella, David Guidot, Gerald Staton and Other Presently Unknown Individuals</u> in the United States District Court for the Northern District of Georgia, Atlanta Division, Civil Action File No. 1:99-CV-3157 (the "Underlying RICO/Whistleblower Action"), Emory has complied with its obligations under the CGL Policies and St. Paul Mercury has denied its defense obligations, Plaintiffs are entitled to summary judgment against St. Paul Mercury which breached its defense obligations under the CGL Policies.

2.

As there exist no genuine issue of material fact that St. Paul Fire's

Professional Liability Protection Policy Number EM 07200141, with a policy

period of January 1, 1998 to February 1, 1999 (the "PLP Policy"), pursuant to the

Professional Liability provisions of said Policy, obligated St. Paul Fire to defend

Emory and its doctors in the Underlying RICO/Whistleblower Action, Emory has

complied with its obligations under the PLP Policy and St. Paul Fire has denied its

defense obligations. Plaintiffs are entitled to summary judgment against St. Paul

Fire which breached its defense obligations under the PLP Policy.

3.

As there exist no genuine issue of material fact that St. Paul Fire's Health

Care Facility Umbrella Excess Liability Protection/Health Care Facility

Professional and General Liability Protection – Claims Made Excess Retention

Policy Number 566XM1775, with a policy period of January 1, 1996 to

February 1, 1999 (the "Health Care Facility Policy"), pursuant to the Professional

Injury Liability, Personal Injury Liability and Property Damage Liability

provisions of said Policy, obligated St. Paul Fire to defend Emory and its doctors

in the Underlying RICO/Whistleblower Action, Emory has complied with its

obligations under the Health Care Facility Policy and St. Paul Fire has denied its

defense obligations, Plaintiffs are entitled to summary judgment against St. Paul Fire which breached its defense obligations under the Health Care Facility Policy.

4.

In further support of this Motion for Summary Judgment, Plaintiffs rely upon and incorporate by reference the following documents:

(a) Statement of Material Facts as to Which There is No Genuine Issue to Be Tried, attached hereto as Exhibit "A";

(b) Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment on Defendants' Duty to Defend the Underlying RICO/Whistleblower Action, filed contemporaneously herewith;

(c) Plaintiffs' Exhibits Filed in Support of Plaintiffs' Motions for Summary Judgment, filed contemporaneously herewith;

(d) The Affidavit of Shulamith Klein, filed contemporaneously herewith;

(e) The original Deposition of Duane Cochenour as the Federal Rule of Civil Procedure 30(b)(6) corporate representative of St. Paul Fire and St. Paul Mercury, filed contemporaneously herewith;

(f) The original Deposition of Shulamith Klein as the Federal Rule of Civil Procedure 30(b)(6) corporate representative of Emory University, which Plaintiffs are requesting that Defendants file;

(g) The original Deposition of Joni Mason as the Federal Rule of Civil Procedure 30(b)(6) corporate representative of AIG Technical Services, Inc., which Plaintiffs have requested that Defendants file; and

(h) All other evidence properly before the Court at the time of its consideration of this Motion for Summary Judgment.

WHEREFORE, Plaintiffs pray that their Motion for Summary Judgment on Defendants' Duty to Defend the Underlying RICO/Whistleblower Action be granted.

Respectfully submitted, this ___21st___ day of February, 2003.

_Kelly Amanda Lee_
Nisbet S. Kendrick III
State Bar No. 414075
Kelly Amanda Lee
State Bar No. 443530
Michael F. Hanson
State Bar No. 323964
WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC
1201 West Peachtree Street, Suite 3500
Atlanta, GA 30309
(404) 872-7000
**Attorneys for Plaintiffs**

46206.0001.1.ATLANTA PC DOC:341034\1

# CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for Plaintiffs hereby certified that the size and style of the type used in the foregoing **Plaintiffs' Motion for Summary Judgment on Defendants' Duty to Defend the Underlying RICO/Whistleblower Action** is Times New Roman: 14 point.

WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*

By: _Kelly Amanda Lee_
Nisbet S. Kendrick, III
State Bar No. 414075
Kelly Amanda Lee
State Bar No. 443530
Michael F. Hanson
State Bar No. 323964

One Atlantic Center
1201 West Peachtree Street, Suite 3500
Atlanta, GA 30309
(404) 872-7000

4n200 0001 ATLANTA PC DOCS 341054 1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the within

and foregoing **"PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON**

**DEFENDANTS' DUTY TO DEFEND THE UNDERLYING**

**RICE/WHISTLEBLOWER ACTION"** has been served in this action by

mailing same, first class mail, postage prepaid, upon:

> David Russell Smith
> State Bar No. 655588
> BOVIS, KYLE & BURCH, LLC
> 53 Perimeter Center East
> Third Floor
> Atlanta, GA  30346-2298

This ___21st___ day of February, 2003.

_Kelly Amanda Lee_
Kelly Amanda Lee
Georgia State Bar No. 443530

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 21 2003

LUTHER D. ___
By: ___ Clerk
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

EMORY UNIVERSITY and )
NATIONAL UNION FIRE )
INSURANCE COMPANY OF )
PITTSBURGH, PA. as subrogee )
of Emory University, )
                )
        Plaintiffs, )
                )
v. )
                )
ST. PAUL FIRE AND )
CASUALTY COMPANY and )
ST. PAUL MERCURY )
INSURANCE COMPANY, )
                )
        Defendants. )
                )

CIVIL ACTION FILE
NO. 1:02-CV-1181-GET

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO GENUINE ISSUE TO BE TRIED

**COME NOW** Emory University ("Emory") and National Union Fire

Insurance Company of Pittsburgh, Pa. ("National Union") (collectively, the

"Plaintiffs"), Plaintiffs in the above-captioned action, and, pursuant to LR 56.1(B),

N.D.Ga., hereby submit their Statement of Material Facts as to Which There Exists

No Genuine Issue to Be Tried as follows:

1.

Defendants St. Paul Fire and Casualty Company ("St. Paul Fire") and
St. Paul Mercury Insurance Company ("St. Paul Mercury") (sometimes hereinafter
collectively referred to as "Defendants") are subject to the jurisdiction and venue
of this Court. (Complaint and Answer, ¶¶ 3 and 4.)

## THE ST. PAUL INSURANCE POLICIES

2.

St. Paul Mercury issued a Commercial General Liability Protection Policy,
Policy No. HG 07200088, with a policy period of January 1, 1996 to January 1,
1997 (the "1996 CGL Policy"), to Emory as the Named Insured thereunder.
(Complaint, ¶ 9; 10/03/02 letter from David Smith.) (A true and accurate copy of
the Smith letter and the 1996 CGL Policy are filed separately and
contemporaneously herewith as Exhibits "1" and "2" of Plaintiffs' Exhibits Filed
in Support of Plaintiffs' Motions for Summary Judgment ("Plaintiffs' Exhibit").)

3.

Emory has paid St. Paul Mercury all premiums required under the 1996
CGL Policy as consideration for the coverage provided thereunder and has fully
complied with all terms of the 1996 CGL Policy. (Affidavit of Shulamith Klein
("Klein Affidavit"), ¶ 4 attached to Plaintiffs' Exhibit "3".)

4.

St. Paul Mercury issued a Commercial General Liability Protection Policy, Policy No. HG 07200088, with a policy period of January 1, 1997 to January 1, 1998 (the "1997 CGL Policy"), to Emory as the Named Insured thereunder. (Plaintiffs' Exhibit "1" - 10/03/02 Smith letter; a true and accurate copy of the 1997 CGL Policy is located at Plaintiffs' Exhibit "4".)

5.

Emory has paid St. Paul Mercury all premiums required under the 1997 CGL Policy as consideration for the coverage provided thereunder and has fully complied with all terms of the 1997 CGL Policy. (Klein Affidavit, ¶ 5 at Plaintiffs' Exhibit "3".)

6.

St. Paul Mercury issued a Commercial General Liability Protection Policy, policy number HG 07200110, with a policy period of January 1, 1998 to January 1, 1999 (the "1998 CGL Policy"), to Emory as the Named Insured thereunder. The 1998 CGL Policy was extended through February 1, 1999 as evidenced by the extension made a part of the policy. (Plaintiffs' Exhibit "1" – 10/03/02 Smith letter; a true and accurate copy of the 1998 CGL Policy is located at Plaintiffs' Exhibit "5".)

7.

Emory has paid St. Paul Mercury all premiums required under the 1998

CGL Policy as consideration for the coverage provided thereunder and has fully

complied with all terms of the 1998 CGL Policy. (Klein Affidavit, ¶ 6 at

Plaintiffs' Exhibit "3".)

8.

The 1996 CGL Policy, 1997 CGL Policy and 1998 CGL Policy (hereinafter

collectively referred to as the "CGL Policies") state, in part:

> **"Other Insurance**
>
> This agreement is primary insurance. . ." (the CGL Policies at
> form 47500, p. 15 of 16, located at Plaintiffs' Exhibits "2", "4"
> and "5".)

9.

With respect to the duty to defend under the CGL Policies, the Policies

provide, in part:

> **Right and duty to defend.** We'll have the right and duty to
> defend any claim or suit for covered injury or damage made or
> brought against any protected person. We'll do so even if any
> of the allegations of any such claim or suit are groundless, false
> or fraudulent.

(CGL Policies at form 47500 p. 3 of 16, located at Plaintiffs' Exhibits "2", "4" and
"5".)

10.

St. Paul Fire issued a Professional Liability Protection Policy, Policy No. EM07200141, with a policy period of January 1, 1998 to January 1, 1999 (the "1998 PLP Policy"), to Emory and Emory's students and faculty, as the Named Insureds thereunder. The 1998 PLP Policy was extended through February 1, 1999. (A true and accurate copy of the 1998 PLP Policy is located at Plaintiffs' Exhibit "6"; Plaintiffs' Exhibit "1" - 10/03/02 Smith letter.)

11.

Emory has paid St. Paul Fire all premiums required under the 1998 Professional Liability Policy as consideration for the coverage provided thereunder and has fully complied with all terms of the 1998 PLP Policy. (Klein Affidavit, ¶ 7 located at Plaintiffs' Exhibit "3".)

12.

According to St. Paul, "the profession covered by [the 1998 PLP Policy] is 'faculty, students and staff'." (See Letter of David Russell Smith dated November 18, 2002, a true and accurate copy of which is located at Plaintiffs' Exhibit "7".)

13.

The PLP Policy is primary as it provides:

### "Other Insurance

A professional liability claim that's covered under this agreement may also be covered under other insurance. If it is, we'll pay that portion of the claim equal to our percentage of the total amount of insurance covering the claim. But we won't pay more than our limits of coverage." (Plaintiffs' Exhibit "6" – PLP Policy, Form 43562 at p. 2 of 2.)

14.

The 1998 PLP Policy provides that St. Paul will "defend any suit brought against any protected person for covered claims, even if the suit is groundless or fraudulent." This Policy further provides that St. Paul will "pay all costs of defending the suit, including interest on that part of any judgment that doesn't exceed the limit of coverage." (1998 PLP Policy at form 43562 p. 1 of 2, located at Plaintiffs' Exhibit "6".)

15.

St. Paul Fire issued a Health Care Facility Umbrella Excess Liability Protection/Health Care Facility Professional and General Liability Protection – Claims Made Excess Retention Policy, policy number 566XM1775, with a policy period of January 1, 1996 to January 1, 1999 (the "1996 Health Care Facility Policy"), to Emory as the Named Insured thereunder. The 1996 Health Care Facility Policy was extended through February 1, 1999. (A true and accurate copy of the 1996 Health Care Facility Policy is located at Plaintiffs' Exhibit "8".)

16.

Emory has paid St. Paul Fire all premiums required under the 1996 Health Care Facility Policy as consideration for the coverage provided thereunder. Emory has fully complied with all terms of the 1996 Health Care Facility Policy. (Klein Affidavit, ¶ 8, located at Plaintiffs' Exhibit "3".)

17.

The 1996 Umbrella/Excess Policy encompasses two sub-policies – the Health Care Facility Umbrella Excess Liability Protection Policy (the "Umbrella Policy") and the Health Care Facility Professional and Commercial General Liability Protection – Claims-Made Excess of Self Insured Retention Policy (the "P&CGL Policy") (collectively the "Health Care Facilities Policies" located at Plaintiffs' Exhibit "8".)

18.

St. Paul has a duty to defend under the Umbrella Policy when "Basic Insurance", as listed in the Umbrella policy, does not cover the claim or suit. (Umbrella Policy form A, p. 4 of 15, located at Plaintiffs' Exhibit "8".)

19.

The Umbrella Policy and the P&CGL Policy are primary insurance when other insurance is written to be excess insurance. (Plaintiffs' Exhibit "8" - 1996

Health Care Facility Policy at Umbrella Policy, form A, p. 14 of 15 and at P&CGL Policy, form B, p. 13 of 13.)

## THE UNDERLYING ACTIONS AND PROCEEDINGS

20.

On or about May 14, 1998, James J. Murtagh, Jr., M.D. ("Murtagh") filed against Emory a Complaint with Emory's Office of Equal Opportunity Programs (the "EOP Complaint"). (A true and accurate copy of the EOP Complaint is located at Plaintiffs' Exhibit "9".)

21.

On or about June 11, 1998, Murtagh filed against Emory a Charge of Discrimination with the Equal Employment Opportunity Commission, charge number 110982979 (the "First EEOC Charge"). (A true and accurate copy of the First EEOC Charge is located at Plaintiffs' Exhibit "10".)

22.

On or about August 4, 1999, Murtagh filed against Emory a Complaint with the United States Department of Education Office for Civil Rights, OCR # 04-99-2224 (the "First OCR Complaint").

23.

On or about December 29, 1999, Murtagh filed against Emory a Complaint with the United States Department of Education Office for Civil Rights, OCR # 04-00-2057 (the "Second OCR Complaint"), which was amended on or about February 4, 2000. (A true and accurate copy of the Second OCR Complaint is located at Plaintiffs' Exhibit "11".)

24.

On or about August 30, 1999, Murtagh filed a lawsuit against Emory University, Manuel Martinez-Maldonado, M.D. ("Martinez-Maldonado"), Juha P. Kokko, M.D., Ph.D. ("Kokko"), and Gerald W. Staton, Jr., M.D. ("Staton") in the Superior Court of Dekalb County, Georgia bearing civil action file number 99-9971-4 (the "Underlying Breach of Contract Action"). (A true and accurate copy of the Underlying Breach of Contract Complaint is located at Plaintiffs' Exhibit "12".)

25.

On or about October 12, 1999, the Plaintiffs in the Underlying Breach of Contract Action filed their Amendment to Complaint for Damages and Equitable Relief adding a claim of slander per se for statements made in October 1998 by newly added defendant therein, Samuel M. Aguayo, M.D. ("Aguayo"). The Underlying Breach of Contract Action was subsequently removed to the United

States District Court for the Northern District of Georgia, Atlanta Division and bears civil action file number 1:99-CV-2864. (A true and accurate copy of the Amendment to Complaint in the Underlying Breach of Contract Action is located at Plaintiffs' Exhibit "13".)

26.

A true and accurate copy of Dr. Murtagh's Response in Opposition to Joint Motion to Dismiss of Defendants Emory University, Kokko and Staton in the Underlying Breach of Contract Action is located at Plaintiffs' Exhibit "14".

27.

A true and accurate copy of Dr. Murtagh's Response to Defendants' First Interrogatories to Plaintiff in the Underlying Breach of Contract Action is located at Plaintiffs' Exhibit "15".

28.

On November 9, 1999, Murtagh and Diane Owen ("Owen"), on their own behalf and on behalf of the United States of America, filed civil action file number 1:99-CV-2909 in the United States District Court for the Northern District of Georgia against Emory under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729 et seq. (the "Underlying *Qui Tam* Action"). (A true and accurate

copy of the Complaint in the Underlying *Qui Tam* Action is located at Plaintiffs' Exhibit "16".)

29.

On or about November 13, 2000, plaintiffs in the Underlying *Qui Tam* Action filed an Amended Complaint. (A true and accurate copy of the Amended Complaint in the Underlying *Qui Tam* Action is located at Plaintiffs' Exhibit "17".)

30.

On or about April 30, 2001, plaintiffs in the Underlying *Qui Tam* Action filed a Second Amended Complaint. (A true and accurate copy of the Second Amended Complaint in the Underlying *Qui Tam* Action is located at Plaintiffs' Exhibit "18".)

31.

A true and accurate copy of Dr. Murtagh's Brief in Response to Emory's Motion to Dismiss in the Underlying *Qui Tam* Action is located at Plaintiffs' Exhibits "19".

32.

On or about December 6, 1999, Murtagh filed an action against Fulton-Dekalb Hospital Authority ("Grady"), Emory University, William J. Casarella ("Casarella"), David Guidot ("Guidot"), Staton and other presently unknown

individuals, in the United States District Court Northern District of Georgia, Atlanta Division, Civil Action File No. 1:99-CV-3157 under the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-1 et seq., and the Whistleblower clause of the *Qui Tam* statute, 31 U.S.C. § 3730(h) (the "Underlying RICO/Whistleblower Action"). (A true and accurate copy of the Complaint filed in the Underlying RICO/Whistleblower Action is located at Plaintiffs' Exhibit "20".)

### 33.

On January 21, 2000, Murtagh filed an Amended Complaint in the Underlying RICO/Whistleblower Action. (A true and accurate copy of the Amended Complaint filed in the Underlying RICO/Whistleblower Action is located at Plaintiffs' Exhibit "21".)

### 34.

A true and accurate copy of Plaintiff's Memorandum of Law in Opposition to Defendant Fulton-Dekalb Hosptial Authority's and Defendants Emory University's, David Guidot's and Gerald Staton's Motions to Dismiss Pursuant to Federal Rule 12(b)(6) in the Underlying RICO/Whistleblower Action is located at Plaintiffs' Exhibit "22".

35.

A true and accurate copy of Defendant William J. Casarella's Memorandum

of Law in Support of His Motion to Dismiss Plaintiff's Amended Complaint

Pursuant to Federal Rule of Civil Procedure 12(b)(6) in the Underlying

RICO/Whistleblower Action is located at Plaintiffs' Exhibit "23".

36.

A true and accurate copy of the November 6, 2000 Order entered in the

Underlying RICO/Whistleblower Action is located at Plaintiffs' Exhibit "24". The

Order was intitially placed under seal, but the seal was subsequently lifted.

37.

On or about April 25, 2000, Murtagh filed against Emory a Charge of

Discrimination with the Equal Employment Opportunity Commission, charge

number 110A02422 (the "Second EEOC Charge"). (A true and accurate copy of

the Second EEOC Charge is located at Plaintiffs' Exhibit "25".)

38.

On or about December 20, 2000, Murtagh filed an action against

Drs. Casarella, Guidot and Staton and other unknown individuals, in the Superior

Court of Fulton County, Georgia, Civil Action File No. 2000-CV-32025 (the

"Underlying Contractual Interference Action"). (A true and accurate copy of the

Complaint filed in the Underlying Contractual Interference Action is located at

Plaintiffs' Exhibit "26".) (The Underlying Breach of Contract Action, the Underlying *Qui Tam* Action, the Underlying RICO/Whistleblower Action, the Underlying Contractual Interference Action, the EOP Proceeding, the First EEOC Charge, the First OCR Proceeding, the Second OCR Proceeding and the Second EEOC Charge are referred to, collectively, as the "Underlying Actions and Proceedings".)

39.

True and accurate copies of Dr. Staton's Motion to Dismiss or for Summary Judgment; Memorandum of Law in Support of Dr. Staton's Motion to Dismiss or for Summary Judgment; Dr. James J. Murtagh, Jr's Response to Dr. Staton's Reply Memorandum of Law in Support of Motion to Dismiss or for Summary Judgment in the Underlying Contractual Interference Action are located at Plantiffs' Exhibits "27", "28", "29" and "30", respectively.

40.

A true and accurate copy of the Order granting Dr. Staton's Motion to Dismiss or for Summary Judgment filed April 30, 2001, in the Underlying Contractual Interference Action is located at Plaintiffs' Exhibit "31".

## THE NATIONAL UNION EXCESS POLICY

41.

National Union issued a Directors, Officers and Trustees Insurance and Not-for Profit Organization Reimbursement Policy, policy number 861-57-16, with a policy period of January 20, 1998 to January 29, 2001 (the "Excess Policy"), to Named Insured thereunder Emory University. (A true and correct copy of the Excess Policy is located at Plaintiffs' Exhibit "32".)

42.

Endorsement #8 of the Excess Policy provides that: "[t]his Policy shall be strictly in excess of, and shall not contribute with any other existing insurance, including but not limited to any insurance under which there is a duty to defend, whether such other insurance is stated to be primary, contingent or otherwise, unless such other insurance is written only as specifically in excess of this Policy." (Plaintiffs' Exhibit "32".)

43.

As an accommodation to Emory and as required by law, National Union provided a defense to Emory, Martinez-Maldonado, Kokko, Staton, Casarella and Guidot in each of the above-described Underlying Actions & Proceedings through a reservation of all of its rights to contest its liability to Emory for defense costs, settlements and judgments. (True and accurate copies of the August 7, 1998, July

8, 1999 and October 19, 1999 reservation of rights letters from National Union to Emory or Emory's counsel are located at Plaintiffs' Exhibit "33"; "34" and "35"; see also Plaintiffs' Exhibit "3" – Klein Affidavit, ¶ 9.)

44.

National Union paid in excess of $75,000.00 in defense costs for the above-described Underlying Actions & Proceedings. (Plaintiffs' Exhibit "3" – Klein Affidavit, ¶ 11.)

45.

Emory paid in excess of $75,000.00 in defense costs for the above-described Underlying Actions & Proceedings. (Plaintiffs' Exhibit "3" – Klein Affidavit, ¶ 11.)

**MISCELLANEOUS**

46.

Drs. Martinez-Maldonado, Kokko, Staton, Guidot, Casarella and Aguayo were each employees and faculty members of Emory during the period of time that these doctors were defendants in any of the Underlying Actions and Proceedings described above. (Plaintiffs Exhibit "3" – Klein Affidavit, ¶ 12.)

47.

Pursuant to the By-Laws of Emory University, Emory was required to indemnify its employees in each of the Underlying Actions and Proceedings in which Emory's employees were named as defendants. (A true and accurate copy of Emory University's By-Laws are located at Plaintiffs' Exhibit "36".)

48.

Emory provided St. Paul Mercury and St. Paul Fire with timely and proper notice of each of the Underlying Actions and Proceedings. (Deposition of Duane Cochenour as Fed. R. Civ. P. Rule 30(b)(6) representative of St. Paul Fire and St. Paul Mercury ("Cochenour Deposition") at pp. 56-57 and 139; January 29, 1999 letter, October 4, 1999 letter; July 18, 2000 letter; August 1, 2000 letter and September 21, 2000 letter identified in Cochenour's deposition and located at Plaintiffs Exhibits "37", "38", "39", "40" and "41", respectively. The original Cochenour Deposition is being contemporaneously filed herewith and a true and accurate copy of same is located at Plaintiffs' Exhibit "42". Portions of said Deposition are marked "Confidential" and it is, therefore, filed under seal.)

49.

St. Paul Mercury and St. Paul Fire (collectively "St. Paul") issued four separate coverage opinion letters to Emory and in each such letter, St. Paul denied coverage to Emory for one or more of the Underlying Actions and Proceedings.

(Plaintiffs' Exhibit "42" - Cochenour Deposition at pp. 133-135; 144-146; 161-162; 172-174, and July 10, 2000 letter, September 11, 2000 letter, October 31, 2000 letter and February 15, 2001 letter which are all attached to and identified in Cochenour's deposition, and are located at Plaintiffs' Exhibits "43", "44", "45" and "46", respectively.)

50.

St. Paul consistently received status updates, pleadings, discovery and correspondence for the Underlying Actions and Proceedings from Emory and Emory's underlying defense counsel. (Plaintiffs' Exhibit "42" - Cochenour Deposition at pp. 140-142; 194-195.) True and accurate copies of letters dated May 19, 2000, October 16, 2000, February 1, 2001, March 12, 2001, May 3, 2001 and May 30, 2001 are located at Plaintiffs' Exhibits "47", "48", "49", "50", "51" and "52", respectively, and are only a few examples of correspondence transmitting such information and pleadings to St. Paul.

51.

Emory always provided St. Paul with any information St. Paul sought. (Plaintiffs' Exhibit "42" - Cochenour Deposition at pp. 138-139.)

52.

St. Paul performed no independent investigation of the allegations of any of

the Underlying Actions and Proceedings.  (Plaintiffs' Exhibit "42" -Cochenour

Deposition at pp. 47-53; 63-68; 155 and 197.)

53.

A true and accurate copy of the Deposition and Errata Sheet of Shulamith

Klein as Fed. R. Civ. P. Rule 30(b)(6) representative of Emory University ("Klein

Deposition') is located Plaintiff's Exhibit "53", and Plaintiffs are,

contemporaneously, serving and filing a Request of Defendants to file the original

Klein Deposition with Exhibits and Errata Sheet.

Respectfully submitted, this _21st_ day of February, 2003.

WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*

By: _Kelly Amanda Lee_
Nisbet S. Kendrick III
State Bar No. 414075
Kelly Amanda Lee
State Bar No. 443530
Michael F. Hanson
State Bar No. 323964

One Atlantic Center, Suite 3500                **Attorneys for Plaintiffs**
1201 West Peachtree Street
Atlanta, GA 30309
(404) 872-7000

46206.0001.1\ATLANTA PC DOC 337878.2

# CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for Plaintiffs hereby certifies that the size and style of the type used in the foregoing **STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO GENUINE ISSUE TO BE TRIED** is Times New Roman: 14 point.

**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*

By: *Kelly Amanda Lee*
Nisbet S. Kendrick, III
State Bar No. 414075
Kelly Amanda Lee
State Bar No. 443530
Michael F. Hanson
State Bar No. 323964

One Atlantic Center
1201 West Peachtree Street, Suite 3500
Atlanta, GA 30309
(404) 872-7000

# ORIGINAL

FILED IN CLERK'S OFFICE

FEB 2 1 2003

By: ~~~~ ~~~~, Clerk
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

EMORY UNIVERSITY and )
NATIONAL UNION FIRE )
INSURANCE COMPANY OF )
PITTSBURGH, PA. as subrogee ) CIVIL ACTION FILE
of Emory University, ) NO. 1:02-CV-1181-GET
)
    Plaintiffs, )
v. )
)
ST. PAUL FIRE AND )
CASUALTY COMPANY and )
ST. PAUL MERCURY )
INSURANCE COMPANY, )
)
    Defendants. )
)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT ON
## DEFENDANTS' DUTY TO DEFEND THE
## UNDERLYING RICO/WHISTLEBLOWER ACTION

## <u>INDEX</u>

<u>Page</u>

I.     Adoption of Underlying Breach of Contract Summary
Judgment Memorandum ................................................................2

II.    Argument and Citation of Authority .................................................4

      A.     St. Paul Mercury Breached the CGL Policies. ...................................... 5

            (1)    Personal Injury Liability. .......................................... 7

            (2)    Property Damage Liability...................................... 10

      B.     St. Paul Fire Breached the PLP Policy. ............................................. 14

      C.     St. Paul Fire Breached the Health Care Facility Policy. .................... 18

            (1)    Professional Injury Liability. ................................... 20

            (2)    Personal Injury Liability. ........................................ 21

            (3)    Property Damage Liability....................................... 22

III.   Conclusion  .................................................................................24

COME NOW, Emory University ("Emory") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") (collectively "Plaintiffs"), Plaintiffs in the above-styled action, and hereby file this Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment On Defendants' Duty to Defend the Underlying RICO/Whistleblower Action as follows:

## I. **Adoption of Underlying Breach of Contract Summary Judgment Memorandum**

The Motion for Summary Judgment which this Brief supports relates to Defendants' breach of their duty to defend Emory and Drs. William J. Casarella ("Casarella"), Gerald W. Staton ("Staton") and David Guidot ("Guidot") in the Underlying Racketeering Influenced and Corrupt Organization Act/Whistleblower Action filed against Emory and these doctors (and against Fulton-Dekalb Hospital Authority) on December 9, 1999 in the United States District Court for the Northern District of Georgia, Atlanta Division, Civil Action File Number 1:99-CV-3157 (the "Underlying RICO/Whistleblower Action"). By letters dated September 11, 2000 and October 31, 2000, St. Paul denied coverage for and refused to provide a defense for the Underlying RICO/Whistleblower Action. (Statement of Facts, ¶ 49; Exhibits "44" and "45".)

The instant Motion for Summary Judgment and this Memorandum of Law relate to the same five St. Paul policies and much of the same case law interpreting the Defendants' duty to defend Emory and the above-mentioned doctors under these policies as discussed in the contemporaneously filed Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment On Defendants' Duty to Defend the Underlying Breach of Contract Action (the "Underlying Breach of Contract Summary Judgment Brief"). For this reason and to avoid duplicate statements and arguments, where possible, Plaintiffs hereby adopt by reference the Factual Background and Arguments and Citation of Authority in the Underlying Breach of Contract Summary Judgment Brief. Additionally, and for simplicity, Plaintiffs filed one Statement of Material Facts As to Which There Exists No Genuine Issue to be Tried ("Statement of Facts") and one set of Exhibits which support each of Plaintiffs' five contemporaneously filed Summary Judgment Motions.

The Summary Judgment Motion supported by this Memorandum of Law pertains solely to Defendants' breach of their contractual obligation to defend the Underlying RICO/Whistleblower Action, and Plaintiffs request that this Court enter judgment as a matter of law in favor of the Plaintiffs on this breach of contract claim.

## II.   **Argument and Citation of Authority**

As stated in the Underlying Breach of Contract Brief, Georgia law applies to this breach of contract action.  Interpreting Georgia law, this Court recognized that "[t]he insurer owes a duty to defend whenever a claim seeks damages that would be covered under the policy if a judgment were rendered against the insured *on any theory or cause of action that could be based on the facts involved.*" Tennessee Corp. v. Hartford Acc. & Indemn. Co., 326 F. Supp. 520 (N.D. Ga. 1971) (emphasis added); see also JLM Enter., Inc. v. Houston General Ins. Co., 196 F.Supp.2d 1299, 1304 (S.D.Ga. 2002) ("the court must compare that the allegations of the Complaint, as well as the facts supporting those allegations against the provisions of the insurance contract."); Elan Pharmaceutical Research Corp. v. Employers Ins. Of Wassau, 144 F.3d 1372 (11th Cir. 1998).

"If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." City of Atlanta v. St. Paul Fire & Marine Ins. Co., 231 Ga.App. 206, 498 S.E.2d 782 (1998) (citation omitted).  The duty to defend is broader than the duty to indemnify, and an insurer may have an obligation to defend even when the complaint against an insured falsely indicates non-coverage. Loftin v. U. S. Fire Insurance Co., 106 Ga.App. 287, 294, 127 S.E.2d 53 (1962).

As specifically noted in the Underlying Breach of Contract Summary Judgment Brief, the St. Paul Mercury Commercial General Liability Policies (the "CGL Policies"), one St. Paul Fire Professional Liability Protection Policy (the "PLP Policy") and one St. Paul Fire Health Care Facility Policy (the "Health Care Facility Policy") constitute the St. Paul Insurance Program insuring Emory. Each policy contains an independent duty to defend claims or suits for covered injury or damage brought against any protected person. The CGL Policies and PLP Policy obligate St. Paul to defend, "*even if* any of the allegations of any such claim or suit are groundless, [false] or fraudulent..." (Statement of Facts, ¶¶ 9, 14; Exhibits "2", "4" and "5", form 47500, p. 4 of 16 and Exhibit "6", form 43562, p. 1 of 2.) By refusing to defend Emory in the Underlying RICO/Whistleblower Action, both St. Paul Fire and St. Paul Mercury have exposed themselves to a charge of and penalty for breach of contract. Leader Nat'l Ins. Co. v. Smith, 177 Ga.App. 267, 339 S.E.2d 321 (1985).

**A.  St. Paul Mercury Breached the CGL Policies.**

As noted in the Underlying Breach of Contract Summary Judgment Brief, the St. Paul Mercury CGL Policies provide primary insurance coverage and are "occurrence" based policies with the effective dates of January 1, 1996 to February 1, 1999. (Statement of Facts, ¶¶ 2, 4 and 6; Exhibits "2", "4" and "5", form 47500 at pp. 1, 2, 4 and 15.) The allegations in the nine Underlying Actions

and Proceedings stem from alleged complaints Dr. Murtagh had with Emory and its doctors dating back to between 1995 and 1997 and continuing into 1998 and 1999. (Exhibit "53" - Deposition of Emory corporate representative Shulamith Klein ("Klein Deposition"), pp. 85 – 97.) Furthermore, specific paragraphs of the RICO/Whistleblower Complaint, discussed below, pertain to a number of occurrences, many of which were alleged to have taken place during the period covered by the CGL Policies.

St. Paul Mercury was initially notified of Dr. Murtagh's series of complaints by letter dated January 29, 1999 with enclosed correspondence from Dr. Murtgah's counsel in which he asserts various claims against Emory. (Statement of Facts, ¶ 48; Exhibit "37".) St. Paul was also continually and consistently provided copies of pleadings, including the Complaint and Amended Complaint, orders and correspondence specifically relating to the Underlying RICO/Whistleblower Action. (Statement of Facts, ¶ 50; Exhibits "47"-"52") Defendants do not dispute that they were timely notified of the Underlying RICO/Whistleblower Action. (Statement of Facts, ¶ 48, Exhibit "42" – Deposition of St. Paul Mercury and St. Paul Fire Corporate Representative Duane Cochenour ("Cochenour Deposition"), pp. 56-57 and 139.)

However, by letters dated September 11, 2000 and October 31, 2000,

St. Paul Mercury (and St. Paul Fire) wrongly denied coverage for the Underlying

RICO/Whistleblower Action and is, therefore, in breach of its defense obligation

under the terms of the CGL Policies.

### (1)    Personal Injury Liability.

As the contemporaneously filed Underlying Breach of Contract Summary

Judgment Brief, and the Statement of Facts note, each of St. Paul Mercury's CGL

Policies provide "Personal Injury Liability" coverage to Emory and the Emory

doctors, including those sued in the Underlying RICO/Whistleblower Action.  The

relevant "Personal Injury Offenses" designated by the policy as being covered

under the "Personal Injury Liability" portion of the CGL Policies are: (1) "[l]ibel

or [s]lander" and (2) "[m]aking known to any person or organization written or

spoken material that belittles the products, work or completed work of others."

(Exhibits "2", "4" and "5", form 47500, pp. 1 and 2 of 16.)

As stated hereinabove, "[t]he insurer owes a duty to defend whenever it

claims damages that would be covered under the policy if a judgment were

rendered against the insured on any theory or cause of action that could be based

on the facts involved." See Tennessee Corp., 326 F. Supp. 520.  Dr. Murtagh

clearly asserted factual allegations in the Underlying RICO/Whistleblower Action

which implicate slander/libel and belittlement coverage under the CGL Policies' "Personal Injury Liability" provisions.

For example, in his RICO/Whistleblower Complaint, Dr. Murtagh alleged that "the Defendants, through their agents met and/or conferred telephonically on multiple occasions in 1999, to discuss the progress of false accusations against Dr. Murtagh. . ." (Statement of Facts, ¶ 32; Exhibit "20" – RICO/Whistleblower Complaint at ¶ 19.) Furthermore, in the Amended Complaint Dr. Murtagh alleged injury to his business and to "his professional reputation, professional marketabilitiy, and the economic well being of his medical practice." (Statement of Facts, ¶ 33; Exhibit "21" - Amended Complaint, ¶ 29.) Again, in Plaintiff's Memorandum of Law in Opposition to Defendant Fulton-Dekalb Hospital Authority's and Defendants Emory University's, David Guidot's and Gerald Staton's Motions to Dismiss Pursuant to Federal Rule 12(b)(6), Dr. Murtagh states: "Plaintiff amplifies and alleges the following injuries in Paragraph 26 of the Amended Complaint: (a) harm to his professional reputation by false accusations and meritless investigations; (b) harm to his medical practice and academic credentials due to such accusations ant [sic] due to his suspension from duties at both Emory and Grady; and (c) harm to his personal possessions through the tampering and/or conversion of such personal property." (Statement of Facts, ¶ 34; Exhibit "22", p. 10, ¶ 26.)

Additionally, in Defendant William J. Casarella's Memorandum of Law in Support of His Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Casarella characterizes the injury claimed by Dr. Murtagh as "'reputation' injury, which allegedly was caused by the 'false accusations' made against him." (Statement of Facts, ¶ 35; Exhibit "23".) Dr. Murtagh's claims of damage to his reputation through belittlement of his work are covered personal injury claims.

The express terms of the "Personal Injury Liability" provisions do not limit coverage to publication to third parties of allegedly defamatory representations, but rather specifically include "[m]aking known to *any person or organization* written or spoken material that belittles the products, work or completed work of others." (Emphasis added.) (Exhibits "2", "4" and "5" - CGL Policies at p. 2 of 16.) In this regard, Dr. Murtagh has alleged that "he has been unable to secure at least [sic] one professional appointment" due to the damage to his "professional reputation and professional marketability". (Exhibit "21" – Amended Complaint, ¶ 29.) Clearly, Dr. Murtagh contends statements were made by Emory and its doctors to outside persons so as to prevent him from obtaining professional employment and to damage his reputation. Such allegations fit squarely within the CGL Policy definitions of "Personal Injury Offenses". Therefore, St. Paul

Mercury owed Emory and its doctors a defense in the Underlying RICO/Whistleblower Action.

### (2)    __Property Damage Liability.__

The CGL Policies define "Property Damage Liability" as "damages for covered . . . property damage or premises damage that . . . happens while this agreement is in effect; and is caused by an event." "Property Damage" is defined as "physical damage to tangible property of others, including all resulting loss of use of that property; or . . . loss of use of tangible property of others that isn't physically damaged." "Event" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Exhibits "2", "4" and "6" - CGL Policies at pp. 1 and 2 of 16.)

An example of the allegations of property damage in the RICO/Whistleblower Action is Dr. Murtagh's allegation that his "tangible, personal property" was injured through "tampering and/or destruction" of same. (Exhibit "21" – Amended Complaint at ¶ 29.) Said allegation clearly fits within the CGL Policy definition of "Property Damage".

St. Paul Mercury contends that no coverage exists under the "Property Damage Liability" provisions of the CGL Policies on grounds that the alleged acts, to the extent they were done intentionally, did not constitute an "event" as that term is defined in the CGL Policies. (Statement of Facts, ¶ 49 ; Exhibits "44"

and "45".) This argument is the same as St. Paul's argument with respect to its

denial of coverage under the CGL Bodily Injury Liability provisions in the

Underlying Breach of Contract Action, and, here again, such argument is without

merit. Even if a policy provides such a limitation, Georgia courts narrowly

interpret the concept of willful conduct in the context of insurance policies and

find coverage where there exists an intentional act but no intentional injury.

Southern Guar. Ins. Co. v. Saxon, 190 Ga. App. 652, 379 S.E.2d 577 (1989)

(citation omitted) ("[T]he mere knowledge and appreciation of risk, short of a

substantial certainty, is not the equivalent of intent unless the conduct was

performed with malevolence or with a preconceived design to inflict injury."); see

also West Am. Ins. Co. v. Merritt, 216 Ga.App. 822, 456 S.E.2d 225 (1995). The

Saxon court addressed application of an exclusion for bodily injury or property

damage "expected or intended from the standpoint of the insured" and stated that

"the mere knowledge and appreciation of a risk, short of a substantial certainty, is

not equivalent of intent". Saxon, 190 Ga.App. at 654 (citation omitted).

Regardless of Murtagh's allegations, Emory did not intend to cause injury

or damage to Murtagh. (Exhibit "3" – Klein Affidavit, ¶ 10.) Therefore, the

actions of Emory and its doctors, as alleged in the Underlying

RICO/Whistleblower Action, qualify as an "event" for which "Bodily Injury

Liability" coverage is afforded.

Furthermore, only the "Bodily Injury Liability" and "Property Damage Liability" provisions of the CGL Policies require that the alleged injury arise out of an "event", defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions". Thus, at the very least, a defense should have been forthcoming under the "Personal Injury" provisions of the CGL Policies, which provisions do not require that the injury arise from an "event".

Additionally, a jury could find the alleged conduct negligent and still find in favor of Dr. Murtagh. Moreover, the CGL Policies state that "accidents" may include "continuous or repeated exposure to substantially the same general conditions." (Exhibits "2", "4" and "5" - CGL Policies at p. 2 of 16.) Dr. Murtagh's allegations of damage to personal property relate to more than one instance and, therefore, qualify as an "event" for which "Property Damage Liability" is afforded.

"If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." City of Atlanta v. St. Paul Fire & Marine Ins. Co., 231 Ga.App. 206, 498 S.E.2d 782 (1998) citing Penn-America Ins. Co. v. Disabled American Veterans, 224 Ga.App. 557, 559, 481 S.E.2d 850 (1997) aff'd, 268 Ga. 564, 490 S.E.2d 374 (1997). Notably, when a "complaint on its face shows no coverage, but the insured notifies

the insurer of factual contentions that would place the claim within the policy coverage . . . the insurer has an obligation to give due consideration to its insured's factual contentions and to base its decision on 'true facts' . . . The requirement that an insurer base its decision on true facts will necessitate that the insurer conduct a reasonable investigation into its insured's contentions." Colonial Oil Indus. v. Underwriters Subscribing to Policy Nos. T031504670 & T031504671, 268 Ga. 561, 562, 491 S.E.2d 337 (1997) (citations omitted). Here, Emory continually provided St. Paul with letters and pleadings that revealed Emory's denial of the various allegations contained in the Underlying RICO/Whistleblower Complaint and Amended Complaint, only to be continually rebuffed by St. Paul's Duane Cochenour, who did nothing but reiterate St. Paul's position (which was incorrectly based upon no more than the enumerated claims set forth in the action, rather than the underlying allegations) and intimated that St. Paul did not wish to be kept informed of the various developments in the law suits. (Statement of Facts, ¶ 50; Exhibits "47"-"52".) In fact, St. Paul Mercury did nothing to independently investigate the Underlying RICO/Whistleblower Action, or any of the other Underlying Actions and Proceedings. (Statement of Facts, ¶ 52; Exhibit "42" – Cochenour Deposition, pp. 47 - 53 and 155.) In so doing, St. Paul violated its duty to conduct a reasonable investigation into the allegations in the law suit. See Anderson v. Southern Guar. Ins. Co. of Georgia, 235 Ga.App. 306, 508 S.E.2d

726 (1998). Furthermore, court orders revealed the court's determination that the "true facts" were not those alleged by Dr. Murtagh but those asserted by Emory. (Statement of Facts, ¶ 36; Exhibit "24" – 11/6/00 Order.)

In its Initial Disclosures, St. Paul cites the <u>Pacific Employers Ins. Co. v. Cesnik</u>, 219 F.3d 1328 (11th Cir. 2000), case for the general proposition that RICO claims are not covered under CGL policies. However, this case is inapposite and limited to its own unique facts. The court's decision in that case did not hinge on the facts or insurance provisions discussed in this section, and is therefore inapplicable. The <u>Cesnik</u> court did not address coverage for underlying factual allegations of reputation/personal injury and property injury, and damages related to same. Here, St. Paul owed defense obligations to Emory and its doctors due to the specific terms of the CGL Policies, the allegations of Dr. Murtagh and the true facts.

## B.     St. Paul Fire Breached the PLP Policy.

As also noted in Plaintiffs' Underlying Breach of Contract Summary Judgment Brief, the PLP Policy provides primary insurance coverage for "claims that result from the ***professional service*** you performed or should have performed after [09/01/1985]."[1] (Emphasis added.) It is a "Claims Made" policy issued to Emory University and its students, faculty and staff, with effective dates of

---

[1]  As discussed below "professional service" is not defined in the PLP Policy.

January 1, 1998 to February 1, 1999. (Statement of Facts, ¶ 14; Exhibit "6" – PLP Policy, form 43562, pp. 1 and 2 of 2.) As mentioned above, the initial notice to St. Paul of Dr. Murtagh's claims was on January 29, 1999, and the RICO/Whistleblower Action, as well as each of the Underlying Actions and Proceedings, stem from a common thread of alleged incidents which occurred from 1995 through at least 1999. Therefore, St. Paul was properly notified "while the agreement was in effect" of covered claims.

The "What This Agreement Covers" portion of the PLP Policy states: "**Liability.** We'll pay amounts you or others protected under this agreement are legally required to pay as damages for covered professional liability claims. To be covered, claims must be based on events that arise out of the profession named in the Coverage Summary." The PLP Policy definition of "profession" is 'faculty, students and staff.'" (Statement of Facts, ¶¶ 10, 12; Exhibit "6" – PLP Policy, form 43562 at p. 1 of 2 and Exhibit "7".)

Emory, the organization, is protected under the PLP Policy "against claims that result from *professional services* that were or should have been provided by anyone for whose acts you're legally responsible." (Emphasis added.) In addition to Emory being a protected party under the PLP Policy, others included in the "Who Is Protected Under This Agreement" provision are individuals shown in the Coverage Summary ("faculty, students and staff"), and they are "protected against

claims that result from: (1) Professional services that [they] provided or should have provided. (2) Professional services that were or should have been provided by anyone for whose acts [they are] legally responsible. (3) [Their] service on a formal review board or any similar board or committee." (Exhibit "6" – PLP Policy, form 40502.)

As also mentioned in the Underlying Breach of Contract Summary Judgment Brief, the terms "professional service" and "professional services" noted above are nowhere defined in the policy. Thus, one must attempt to construe the meaning of these terms. The law of insurance contract construction with reference to the terms of "professional service" and "professional services" is discussed at length in the Underlying Breach of Contract Summary Judgment Breif and said argument is adopted herein by reference. In short, viewing the PLP Policy in its entirety yields the conclusion that "professional services" clearly includes the peer review duties conducted by Emory and its doctors. However, if any ambiguity exists as to the meaning of this term, it should be given broad meaning. Where ambiguities in a contract exist and construction is doubtful, pursuant to O.C.G.A § 13-2-2 (5): "that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred". The Georgia Court of Appeals has consistently held that "ambiguities in an insurance contract must be construed strongly against the carrier, and an insurance policy

must be construed to provide coverage unless 'the contrary clearly appears.'" U.S. Fire Ins. Co. v. Capital Ford Truck Sales, Inc., 257 Ga. 77, 78, 355 S.E.2d 428, 429 (1987); see also O.C.G.A § 13-2-2(5); MAG Mutual Ins. Co. v. Gatewood, 186 Ga.App. 169, 367 S.E.2d 63, 67 (1988) (citation omitted).

"In construing an insurance contract the test is not what the insurer intended its words to mean, but rather what a reasonable person in the insured's position would understand them to mean. Where such a provision is susceptible of two or more interpretations, the court will construe it most favorabl[y] to the insured." Gulf Ins. Co. v. Mathis, 183 Ga.App. 323, 358 S.E. 2d 850 (1987). Thus, any uncertainty regarding the scope of "professional services" covered by the PLP Policy is construed against St. Paul and in favor of defense and coverage.

The doctor defendants were alleged to be defaming Dr. Murtagh, belittling his work, damaging his reputation and conspiring against him while said doctors performed professional evaluation services and reported to committees concerning Dr. Murtagh's conduct. Emory and its co-defendant doctors in alleging performing the conduct of which Dr. Murtagh complained in the RICO/Whistleblower Complaint and Amended Complaint were participating in formal peer review processes at Emory which processes are "professional services" covered by the St. Paul Fire PLP Policy. (Exhibits "20", "21" and "53" - Klein Deposition, pp. 46-47, 65-68 and 141-142.)

The terms of the PLP Policy, including the broad definition of "profession" ("faculty, students and staff") covered under the PLP Policy and the lack of definition of "professional services", obligate St. Paul Fire to defend the Underlying RICO/Whistleblower Action, as well as the remaining eight other Underlying Actions and Proceedings. With respect to the Underlying RICO/Whistleblower Action, the defendants were clearly faculty/staff who were sued based upon allegations arising out of their professional practices.

Significantly, the PLP Policy does not circumscribe coverage for Emory or any of the individual defendants who were acting on Emory's behalf and for whose acts Emory was legally responsible. Rather, the PLP Policy was amended to include coverage for Emory and its doctors who are performing peer review services. (Exhibit "6", Named Protected Persons Endorsement, form 40502.) Accordingly, St. Paul Fire had a duty to defend all of the claims set forth in the Underlying RICO/Whistleblower Action under the PLP Policy.

### C.   St. Paul Fire Breached the Health Care Facility Policy.

In addition to its coverage obligations under the CGL Policies and the PLP Professional Liability Policy, St. Paul had a duty to defend the Underlying RICO/Whistleblower Action under the 1996 Health Care Facility Policy. As discussed in the Underlying Breach of Contract Summary Judgment Brief, the 1996 Health Care Facility Policy encompasses two sub-policies – the Health Care

Facility Umbrella Excess Liability Protection Policy (the "Umbrella Policy") and the Health Care Facility Professional and Commercial General Liability Protection. (Statement of Facts, ¶ 17, Exhibit "8" – Health Care Facility Policy.)

St. Paul has a duty to defend under the Umbrella Policy when "Basic Insurance", as listed in the policy, does not cover the claim or suit. The Defendants are all protected persons under the "Who Is Protected By This Agreement" provisions of the Umbrella Policy. The effective dates of the Umbrella Policy are January 1, 1996 through and including February 1, 1999, and the relevant retroactive date is September 1, 1976. Inasmuch as St. Paul has denied coverage under its own policies enumerated in the Schedule of Basic Insurance, and as the remaining policies are inapplicable, the following analysis assumes that the Umbrella Policy is triggered under the "When Basic Insurance Doesn't Apply" provisions.[2] (Statement of Facts, ¶ 18, Exhibit "8" – Form A.)

---

[2] Having denied coverage, St. Paul is estopped from claiming there is coverage under the policies that are the subject of this litigation. Therefore, Emory can rely upon the "When Basic Insurance Doesn't Apply" provisions. Of course, Emory's position is that there is coverage under these policies, and, as such, defense and indemnification should have been forthcoming under the "When Basic Insurance is Claims-Made" and "When Basic Insurance Is Other Than Claims-Made" sections of the "When This Agreement Covers" section of the Umbrella Policy. Assuming coverage under the PLP Policy, which is a claims-made policy, the relevant claims were timely brought while the policy was in effect. Assuming coverage under the CGL Policies, which are not claims-made policies, the relevant injuries were incurred while the policy was in effect.

The Umbrella Policy, at page 14 of 15, specifically states that it is primary

insurance when other insurance is specifically written as excess insurance.

(Statement of Facts, ¶ 17, Exhibit "8".)  The National Union policy expressly

states that it is "strictly excess" of other applicable insurance, as stated in

Endorsement No. 8, Section XI of the National Union policy.  (Statement of Facts,

¶ 42, Exhibit "32".)

### (1)    Professional Injury Liability.

The Umbrella Policy provides coverage for "Professional Injury Liability"

which includes "damages for covered claims or suits resulting from professional

injury caused by professional health care services that were provided or should

have been provided: on or after the umbrella retroactive date, when your Basic

Insurance is claims-made coverage; or . . . while this agreement is in effect, when

your Basic Insurance isn't claims-made coverage."  "Professional injury" means

injury or death that results from the providing or failing to provide professional

health care services, including: . . . the actions of any of your formal review boards

or committees responsible for evaluating the professional qualifications or

performance of others; or . . . the *actions of persons charged with communicating*

*information to such boards or committees, or carrying out the directives of such*

*boards or committees.*"  (Emphasis added.)  (Exhibit "8", form A, p. 2 of 15.)

In the same way that Dr. Murtagh's allegations in the RICO/Whistleblower Action amount to injuries from "professional services" under the PLP Policy, where "professional services" is undefined, these allegations fit within the above-stated definition of "Professional Injury". For example, Dr. Murtagh alleged that the RICO/Whistleblower defendants conspired against him, made false accusations and suspended him. He further alleged, as mentioned above, that "the Defendants . . . met and/or conferred telephonically on multiple occasions in 1999 to discuss the progress of the false accusations against Dr. Murtagh . . . " (Exhibit "20" – RICO/Whistleblower Complaint at p. 5, ¶ 19.)

As with the Underlying Breach of Contract Complaint, Dr. Murtagh's allegations in the RICO/Whistleblower Action are based upon the alleged acts of Emory and doctors and faculty at Emory who were in positions to, and did, review and evaluate Dr. Murtagh's performance and/or competence, as well as those doctors and faculty who provided information to assist in the evaluations. As such, coverage under the "Professional Injury Liability" provisions of the Umbrella Policy was triggered, and St. Paul was obligated to defend Emory and its doctors in the RICO/Whistleblower Action.

**(2)      Personal Injury Liability.**

The Umbrella Policy provides coverage for "Personal Injury Liability", which includes "damages for covered claims or suits resulting from personal

injury. . . that's caused by an offense committed: on or after the umbrella retroactive date, when your coverage is claims-made; or . . . while this agreement is in effect, when your coverage isn't claims-made." Under the policy, "Personal injury" means "injury, other than professional injury or bodily injury, caused by any of the following offenses that result from your business activities, other than advertising, broadcasting, publishing or telecasting done by or for you: . . . libel or slander; [or] written or spoken material made public which belittles the products or work of others." (Exhibit "8", form A, pp. 2 and 3 of 15.)

As with the "Professional Injury Liability" under the Umbrella Policy, Dr. Murtagh has alleged, for example, that his injuries stem from false representations of the defendants, both internally and externally, with respect to his performance and competence, which caused injury to his business and to "his professional reputation, professional marketability, and the economic well being of his medical practice." (Exhibit "21" - Amended RICO/Whistleblower Complaint, ¶29.) As such, the factual allegations trigger coverage under the "Personal Injury Liability" provisions of the Umbrella Policy.

### (3)    Property Damage Liability.

The Umbrella Policy provides coverage for "Property Damage Liability", which includes "damages for covered claims or suits resulting from . . . property damage that's caused by an event and happens . . . on or after the umbrella

retroactive date, when your coverage is claims-made; or . . . while this agreement is in effect, when your coverage isn't claims-made." "Property Damage" is defined as "physical damage to tangible property of others, including all resulting loss of use of that property; or . . . loss of use of tangible property of others that isn't physically damaged." (Exhibit "8", form A, pp. 2 and 3 of 15.)

For the same reasons that the RICO/Whistleblower Action is covered under the "Property Damage Liability" portion of the St. Paul Mercury CGL Policies, it is, likewise, covered under the "Property Damage Liability" portion of the Umbrella Policy.

The five St. Paul policies at issue consist of the CGL Policies, the PLP Policy and the Health Care Facility Policy. It was Emory's understanding that personal injury, professional injury and property damage claims such as those alleged by Dr. Murtagh would be covered by this St. Paul Insurance Program. (Exhibit "53" - Klein Deposition, pp. 104-105.) Under the reasonable expectation doctrine of insurance contract construction, coverage must be afforded. <u>Georgia Farm Bureau Mutual Ins. Co. v. Meyers</u>, 249 Ga.App. 322, 548 S.E.2d 67, 69 (2001) <u>citing</u> <u>Georgia Farm Bureau & Casualty Ins. Co. v. Huncke</u>, 240 Ga.App. 580-581, 524 S.E.2d 302 (1999) and <u>Anderson v. Southern Guar. Ins. Co.</u>, 235 Ga.App. 306, 309, 508 S.E.2d 726 (1998) (An insurance contract should be construed to mean what a reasonable person in the insured's position would

understand the terms to mean, therefore the contract must be construed in accordance with the reasonable expectations of the insured.)

## III.  Conclusion

The three St. Paul Mercury CGL Policies, the St. Paul Fire PLP Policy and the St. Paul Fire Health Care Facility Policy all obligate St. Paul to defend claims asserted by Dr. Murtagh against Emory and its doctors.  Pursuant to clear language of the St. Paul Fire policies, St. Paul Mercury policies and National Union policy, the Defendants had the primary obligation to defend Emory and Emory's doctors in the Underlying RICO/Whistleblower Action and failed to do so.

Due to the Defendants' breach of the insurance contracts and as there exists no genuine issue of material fact as to the Defendants' contractual obligations, summary adjudication against St. Paul Fire and St. Paul Mercury for their failure to defend the Underlying RICO/Whistleblower Action is necessary.

Respectfully submitted, this _____21st_____ day of February, 2003.

*Kelly Amanda Lee*

Nisbet S. Kendrick III
State Bar No. 414075
Kelly Amanda Lee
State Bar No. 443530
Michael F. Hanson
State Bar No. 323964

WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC
1201 West Peachtree Street, Suite 3500
Atlanta, GA 30309
(404) 872-7000

462U6 0001 1 ATLANTA PC DOC\340677\1

**Attorneys for Plaintiffs**

# CERTIFICATE OF TYPE SIZE AND STYLE

Counsel for Plaintiffs hereby certified that the size and style of the type used in the foregoing **Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment on Defendants' Duty to Defend the Underlying RICO/Whistleblower Action** is Times New Roman: 14 point.

**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*

By: _____

Nisbet S. Kendrick, III
State Bar No. 414075
Kelly Amanda Lee
State Bar No. 443530
Michael F. Hanson
State Bar No. 323964

One Atlantic Center
1201 West Peachtree Street, Suite 3500
Atlanta, GA 30309
(404) 872-7000

46206-0001 ATLANTA PC DOCS 340677-1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the within

and foregoing **"PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**

**THEIR MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS'**

**DUTY TO DEFEND THE UNDERLYING RICO/WHISTLEBLOWER**

**ACTION"** has been served in this action by mailing same, first class mail, postage

prepaid, upon:

David Russell Smith
State Bar No. 655588
BOVIS, KYLE & BURCH, LLC
53 Perimeter Center East
Third Floor
Atlanta, GA 30346-2298

This $\underline{21^{st}}$ day of February, 2003.

Kelly Amanda Lee
Georgia State Bar No. 443530